THE STATE OF OHIO, HAMILTON COUNTY

COURT OF COMMON PLEAS

THE STATE OF OHIO

HAMILTON COUNTY, ss:

Case No. B 1003262

INDICTMENT FOR:
CT1:  Aggravated Murder 2903.01(A) With
      Specification SPECIAL FELONY[SF]
CT2:  Having Weapons While Under
      Disability 2923.13(A)(3)[F3]

In the Court of Common Pleas, Hamilton County, Ohio, of the Grand Jury Term Two Thousand and Ten.

### FIRST COUNT

The Grand Jurors of the County of Hamilton, in the name and by authority of the State of Ohio, upon their oaths do find and present that **RUBEN JORDAN, on or about the 31ST day of October in the year Two Thousand and Eight** at the County of Hamilton and State of Ohio aforesaid, **purposely, and with prior calculation and design, caused the death of VICTOR DAVIS**, in violation of Section 2903.01(A) of the Ohio Revised Code and against the peace and dignity of the State of Ohio.

### SPECIFICATION 1 TO COUNT 1

The Grand Jurors further find and specify that the said RUBEN JORDAN did have on or about his person, or under his control, a firearm while committing the offense of Aggravated Murder and displayed the firearm, brandished the firearm, indicated that he possessed a firearm or used it to facilitate the offense as alleged in count 1 hereof.



<u>SECOND COUNT</u>

The Grand Jurors of the County of Hamilton, in the name and by authority of the State of Ohio, upon their oaths do find and present that **RUBEN JORDAN, on or about the 31ST day of October in the year Two Thousand and Eight** at the County of Hamilton and State of Ohio aforesaid, **knowingly acquired or had or carried or used a firearm or dangerous ordnance, to wit: A FIREARM, and at the time the defendant knew he was under indictment for, or had been convicted of an offense involving the illegal possession of, sale of, use of, administration of, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that if committed by an adult, would have been an offense involving the illegal possession of, use of, sale of, administration of, distribution, or trafficking in a drug of abuse, to wit: POSSESSION OF DRUGS, in the Hamilton County, Ohio Court of Common Pleas, Case No. B0309177, on FEBRUARY 6, 2004 and PREPARATION OF MARIHUANA FOR SALE, in the Hamilton County, Ohio Court of Common Pleas, Case No. B0006899, on DECEMBER 14, 2000 and ILLEGAL PROCESSING OF DRUG DOCUMENTS, in the Hamilton County, Ohio Court of Common Pleas, Case No. B955989, on OCTOBER 17, 1995, and AGGRAVATED TRAFFICKING IN DRUGS, in the Hamilton County, Ohio Court of Common Pleas, Case No. B929170, on MARCH 19, 1993 and DRUG ABUSE, in the Hamilton County, Ohio Court of Common Pleas, Case No. B911528, in MAY 1, 1991 and at the time, the defendant had not been relieved from such disability pursuant to section 2923.14 of the Revised Code,** in violation of Section 2923.13(A)(3) of the Ohio Revised Code and against the peace and dignity of the State of Ohio.

Joseph T. Deters
Prosecuting Attorney
Hamilton County, Ohio

Reported and filed this

24 Day of May, A.D. 2010

By: **Patricia M. Clancy**
Clerk of Hamilton County
Common Pleas

By:_____
Deputy

By:_____
Assistant Prosecuting Attorney

A TRUE BILL

By:_____
Foreperson, Grand Jury

# COURT OF COMMOM PLEAS
# HAMILTON COUNTY, OHIO

48

THE STATE OF OHIO
PLAINTIFF

**ENTERED**

**JUN 0 4 2010**

-VS-

**RUBEN JORDAN**
DEFENDANT

NUMBER B 1003262
**WAIVER OF PRESENCE OF
DEFENDANT AT ARRAIGNMENT**

BOND   SET/POSTED

BOND AMOUNT        $1,000,000.00

BOND TERMS         S

I _____ **RUBEN JORDAN** _____ having received a copy of

my indictment, hereby enter a Plea of Not Guilty to all charges, reserving the right to withdraw such Plea.

After consultation with Counsel, I waive the right to be present at an arraignment and the reading to me of

the charges in open court, but hereby retain all other Constitutional rights afforded under the law and do

not waive my right to a speedy trial.

Age   **37**   Sex   **M**   Race   **B**

**ATTORNEY:**

**WILLIAM P WHALEN**

**1. SHERIFF**

   **SERVICE** ⌐

   **HOLD** ⌐

**DEFENDANT:** X

**WITNESS:**

Public Defender or Defense Atty.
Signature

**2. APPROVED BY:**

   **JOSEPH T. DETERS, PROSECUTING ATTY.**

   **BY:**

Asst. Prosecuting Attorney

3. **ASSIGNMENT COMMISSIONER:**

4. After the appropriate signatures have been obtained, this for MUST BE RETURNED to the Criminal

Arraignment Clerk.

Please complete numerically.



D88594051

**EXHIBIT**

**2**

PATRICIA M. CLANCY
CLERK OF COURTS
HAMILTON COUNTY, OH

THE STATE OF OHIO, HAMILTON COUNTY
2010 SEP 13 P 1:44

COURT OF COMMON PLEAS

FILED
CRIMINAL DIVISION

STATE OF OHIO              :     Case No. B1003262

      Plaintiff           :     (Judge Allen)

        vs.            :     <u>MOTION FOR PROTECTIVE</u>
                                                 <u>ORDER AND INSPECTION BY</u>
RUBEN JORDAN        :     <u>THE COURT</u>

      Defendant       :

       Comes now the State of Ohio, by and through Seth S. Tieger, the Assistant Prosecuting Attorney, and moves the Court for a protective order denying discovery sought by Defendant pursuant to Crim. R. 16(B)(1)(e) for the names and addresses of witnesses.

       The motion is made on the following grounds:

       1.    To give Defendant the names and addresses of witnesses may subject the witnesses or others to physical or substantial economic harm or coercion, as certified by the Prosecuting Attorney in the certification attached hereto, pursuant to Crim. R. 16(B)(1)(e).

       The State of Ohio further moves the Court to order that the State of Ohio be permitted to show further reasons for the protective order in the form of a written statement to be inspected by the Court alone.

       The motion is made on the following grounds:



D89986788

EXHIBIT
3

PENGAD 800-631-6989

1. Crim. R. 16(B)(1)(e) permits the Court, in its discretion, to permit a showing of reasons for a protective order in the form of a written statement to be inspected by the Court alone.

A memorandum setting forth reasons and citations of authorities in support of the motion is attached hereto.

*Seth S. Tieger*

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney

## MEMORANDUM

State vs. Gilliard, 40 Ohio St. 3d 226, 533 N.E. 2d 272.
State vs. Daniels, et al (October 27, 1993), App. No. C-920421.

*Seth S. Tieger*

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3125

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon each party or attorney of record in the proceedings for each party by ordinary U.S. mail on the _13_ day of _September_ , 2010.

*Seth S. Tieger*

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney

PATRICIA M. CLANCY
CLERK OF COURTS
HAMILTON COUNTY, OH

THE STATE OF OHIO, HAMILTON COUNTY

2010 SEP 13 P 1: 40

COURT OF COMMON PLEAS

FILED NO. B1003262



D89986623

STATE OF OHIO

Plaintiff          :          (Judge Allen)

vs.,               :

RUBEN JORDAN       :     CERTIFICATION OF PROSECUTING
                         ATTORNEY IN SUPPORT OF MOTION
Defendant          :     FOR NON-DISCLOSURE PURSUANT TO
                         CRIM. R. 16(D)

The undersigned Assistant Prosecuting Attorney seeks non-disclosure of the names and addresses of all the civilian/private witnesses in the above-captioned case. The disclosure of such information will compromise the safety of these witnesses and subject them to intimidation or coercion.

It is the Assistant Prosecuting Attorney's experience that in virtually every homicide case coercion and threats to the witnesses now play a critical role. With today's broad expansion of information via the Internet and cell phones, witnesses' names quickly spread through the communities involved.

In support of its motion for non-disclosure, the State directs the Court to the following cases. In *State of Ohio vs. Keyvonte Criswell*, Case No. B-1001428, *Criswell* is charged with two counts of Murder with Specifications and Having a Weapon under Disability. The Assistant Prosecuting Attorney's sole identifying eyewitness in that case, Aaron Burns, was murdered on June 16, 2010, in order to prevent his testimony. The killers of Aaron Burns clearly relied on the disclosure of the witness' name through the discovery process in order to find and kill him. The State had no advance warning or indication this would occur. The killers of witness Burns

EXHIBIT
4
PENGAD 800-631-6989

include Keyvonte Criswell, his cousin Desmond Criswell and James A. Johnson, who are all currently indicted for killing Aaron Burns. (See Attached **State's Exhibit A**.) (See, also, *State of Ohio vs. Keyvonte Criswell and Desmond Criswell and James A. Johnson*, Case No. B-1004156.)

In another instance actually involving the Defendant in this case, on October 16, 2008, Kareem Gilbert shot and killed Brian Austin in the Findlay Market area. It was a senseless street murder. Gilbert was indicted under case No. B-0901283. There was one known eyewitness – Victor Davis. Mr. Davis gave a taped statement to police identifying Kareem Gilbert as Austin's killer. This was known to Defendant Gilbert. On October 31, 2008, Victor Davis was shot and killed in front of his home. Defendant Gilbert was originally charged with both murders but recently entered a guilty plea to Brian Austin's homicide and received an 18-year prison sentence. The Davis murder was dismissed as part of a plea in exchange for Defendant Gilbert testifying against whom he said was Davis' real killer – Gilbert's own father, Ruben Jordan. (See *State of Ohio vs. Ruben Jordan*, Case No. B-1003262). The second murder was committed solely to silence Davis as the only eyewitness to a previous murder. Again, there was no advance warning or indication this would occur. Since the allegation in this case is that the Defendant killed Mr. Davis to silence him as a witness against his own son, certainly any other witness against him needs to be protected to the utmost extent.

In the Keyvonte Criswell case referenced above, the only remaining civilian witness appeared in the Assistant Prosecuting Attorney's office several days after the murder of his fellow witness. He had with him documents from the Hamilton County Clerk's Office, obtained

through the Internet listing him as the other witness. He felt threatened, as would be expected, and has moved to a different location.

These threats are real and the only way to protect the witness in this case is by a non-disclosure order. Experience has shown that intimidation is present in virtually all major criminal cases. It is impossible to predict how or when it will occur, and the only solution is preventive action.

Pursuant to Crim.R. 16, the State is not disclosing witness names, addresses, or other contact information. All references to such information in police reports and other discoverable material have been redacted.

Respectfully,
JOSEPH T. DETERS, 0012084P
PROSECUTING ATTORNEY

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
513/946-3125

## CERTIFICATION

I hereby certify that on this __13__ day of __September__, 2010, a copy of this pleading was served by regular U.S. mail to counsel for defendant addressed to  , Attorney at Law, .

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney



**ENTERED**
JAN - 7 2011

**JUDGE RALPH E. WINKLER**

### THE STATE OF OHIO
### HAMILTON COUNTY, COMMON PLEAS COURT

THE STATE OF OHO      :     CASE # B _100326 2_

                    :

VS.                    :

                    :     ENTRY _GRANTING_

RUBEN JORDAN          :     _PROTECTIVE ORDER_

       The Court being fully advised and after considering the written pleadings, testimony and arguments of counsel, hereby Grants The States Motion for Protective Order and orders that the witness name and information not be disclosed until the commencement of the trial.

_Seth S Tieger_ 0017339

Asst Pros Atty

**EXHIBIT**
5

PENGAD 800-631-6989

D91382674


THE STATE OF OHIO, HAMILTON COUNTY
COURT OF COMMON PLEAS
CRIMINAL DIVISION

| | | |
|---|---|---|
| State Of Ohio | * | NO. B1003262 |
| Plaintiff | * | |
| | * | Judge: Nadine Allen |
| Vs. | | |
| | * | |
| Ruben Jordan | * | Notice Of Alibi |
| Defendant | * | |

Now comes Defendant, Ruben Jordan, by and through his undersigned counsel, and pursuant to Crim, R, 12.1, hereby notice that he may claim an alibi defense at trial.

Defendant was at 325 Hearne Avenue, Apt 2, Cincinnati, Ohio 45229 at the time of the alleged offenses set forth in counts 1, 2, and 3 of the indictment. Also present during part or all of the time in question was, Dominic Turner, Leshonda Gilbert, Lamar Smith; and Otis Clark.

Respectfully Submitted,

William P. Whalen, Jr. (0016646)
Counsel for Defendant
810 Sycamore St. Fifth Floor
Cincinnati, OH 45202
(513) 579-8700 Ext: 511

FILED

2011 JAN -5 P 3 01

PATRICIA M. CLANCY
CLERK OF COURTS
HAMILTON COUNTY, OH

D91355111

EXHIBIT
6

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was served upon the Hamilton County Prosecutor, 230 E. Nineth Street, Suite 4000, Cincinnati, Ohio 45202, by personal service on this 8th day of December, 2010.

William P. Whalen, jr
Attorney At Law



COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

ENTERED
JAN 2 4 2011

| | | |
|---|---|---|
| STATE OF OHIO,<br>Plaintiff, | : | Case No. B 10 03262 |
| v. | : | Judge Nadine Allen |
| RUBEN JORDAN<br>Defendant. | : | Verdict Form: GUILTY as to<br>Count One: Aggravated Murder<br>R.C. 2903.01(A) |

We, the jury, find the defendant, Ruben Jordan, **GUILTY** of AGGRAVATED

MURDER.

_Daniel W. Burek_        _Brian C. _____

_Charles C. Berry_        _Jessie Matonka Pickett_

_Lena McKinley_        _Michael W. Burke_

_Sherri Kemper_        _Sally B. Coffman_

_Gary _____        _Howard J. Abbott_

_Scott _____        _Beverly Messerschmitt_
                                Foreperson

If you find the Defendant guilty of aggravated murder, continue to the verdict form for specification one.



*1-24-11*



D91631460

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. B 10 03262 |
| Plaintiff, | : | |
| v. | : | Judge Nadine Allen |
| | : | |
| RUBEN JORDAN | : | |
| Defendant. | : | Verdict Form: GUILTY as to |
| | : | Count One: Lesser Included |
| | : | Offense Murder R.C. 2903.02 |
| | : | |

We, the jury, find the defendant, Ruben Jordan, **NOT GUILTY** of AGGRAVATED MURDER, and **GUILTY** of MURDER, a lesser included offense of AGGRAVATED MURDER.

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____
                                                    Foreperson

If you find the Defendant guilty of murder, continue to the verdict form for specification one.

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

STATE OF OHIO,     :  Case No. B 10 03262
   Plaintiff,    :

  v.       :  Judge Nadine Allen
          :

RUBEN JORDAN    :
   Defendant.  :  Verdict Form: Specification to
          :  Count One
          :
          :

We, the jury, find the defendant, Ruben Jordan, _guilty_ * of the SPECIFICATION to Count One: AGGRAVATED MURDER or the lesser included offense of MURDER.

[Signatures]

Foreperson

* Insert in ink: "Guilty" or "Not Guilty."

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

STATE OF OHIO,
          Plaintiff,

     v.

RUBEN JORDAN
          Defendant.

    :    Case No.  B 10 03262
    :
    :    Judge Nadine Allen
    :
    :    Verdict Form: NOT GUILTY as
    :    to Count One: Aggravated
    :    Murder or Murder
    :

We, the jury, find the defendant, Ruben Jordan, **NOT GUILTY** of Count One: AGGRAVATED MURDER and **NOT GUILTY** the lesser included offense of MURDER.

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____
                                            Foreperson

COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO,<br>　　　　Plaintiff, | : | Case No. B 10 03262 |
| v. | : | Judge Nadine Allen |
| RUBEN JORDAN<br>　　　　Defendant. | : | Verdict Form: Count Two:<br>Having Weapons While Under<br>Disability R.C. 2923.13(A)(3) |

We, the jury, find the defendant, Ruben Jordan, _guilty_ † of Count Two:
HAVING WEAPONS WHILE UNDER DISABILITY.

*(twelve juror signatures)*

Foreperson

† Insert in ink: "Guilty" or "Not Guilty."

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: **01/25/2011**
code: **GCC**
judge: **125**

ENTERED
FEB 0 1 2011

Judge: **NADINE ALLEN**

NO: **B 1003262**

### STATE OF OHIO
### VS.
### RUBEN JORDAN

**CAUSE CONCLUDED**
**SENTENCE DEFERRED**

This Cause came on this day to be heard upon verdict of a jury, and said jury having found the Defendant guilty of :

**count 1: AGGRAVATED MURDER WITH SPECIFICATION, 2903-01A/ORCN,SF**

**count 2: HAVING WEAPONS WHILE UNDER DISABILITY, 2923-13A3/ORCN,F3**

**WHEREUPON, THE COURT ORDERED SENTENCE DEFERRED UNTIL FEBRUARY 15, 2011 AT 9:00 A.M.**



D91670875

Page 1
CMSG328

EXHIBIT
**9**

Document electronically filed

### THE STATE OF OHIO, HAMILTON COUNTY
### COURT OF COMMON PLEAS

| STATE OF OHIO | : | CASE NO. B1003262 |
|---|---|---|
| Plaintiff | : | Allen |
| v. | : | |
| RUBEN JORDAN | : | SENTENCING MEMORANDUM |
| Defendant | : | |

### PROCEDURAL POSTURE

This case is set for sentencing on Tuesday, February 15th, 2011 at 9:00 am.

Through counsel, Ruben Jordan submits this memorandum to assist the Court in determining the appropriate sentence. A copy of this memorandum has been forwarded to Seth Tieger, Assistant Hamilton County Prosecutor.

### SENTENCING GUIDELINES

Ohio Revised Code 181.25 (A) sets out guidelines for judges to use in sentencing. It also suggests that certain areas be considered by the court.

### III. A OVERRIDING PURPOSES.

The courts overriding purpose is dictated by Ohio Revised Code 2929.11(A)

(a) Protecting the public from future crime by the offender, and

(b) Punishing the offender.



D91865034

The court must punish the offender. The court should also consider the facts surrounding this crime, there were no eye witnesses who identified the defendant in the commission of this crime. Merely the word of a self admitted drug trafficker, and phlegm found at the scene. The court should also consider that Kareem Gilbert admitted to, and plead guilty to the original killing that precipitated the death of Victor Davis. Victor Davis was killed, because he witnessed Kareem Gilbert committing the initial murder. No matter who committed the killing, Victor Davis was sought out and

PATRICIA M. CLANCY
CLERK OF COURTS
HAMILTON COUNTY, OH
2011 FEB 18  4:03

EXHIBIT
9

gunned down, because of what he saw and his willingness to cooperate with police. This is a singular incident, and would not represent any further danger to the general public.

Another factor the court must take into consideration is the unlikely prospect of recidivism. Ohio Revised Code 2929.12(E). Paragraph four (4) sets out "the offense was committed under circumstances unlikely to recur". From all the testimony, Mr. Davis' death was to keep him from testifying against Kareem Gilbert.

While the prosecutor will point out Mr. Jordan's prior convictions, the court should take into consideration that in that record there is not one (1) charge or conviction for a violent crime. Mr. Jordan freely admitted he was a crack addict, and all of his convictions surround those events.

The last item the court is charged to consider is any other factors. Other factors the court should take into consideration as mentioned above, Mr. Jordan has never been charged until now with a crime of violence. He has entered college and was trying to better his life. He also has a trade and was in fact, living with his fiancé and helping support her three (3) children. Testimony was brought out the defendant, attempted to hire an attorney for his son, and prodded his son to surrender to the police.

## DEFENDANTS SUGGESTION FOR SENTENCING

Defendant suggests to the court that he is sentenced of twenty years (20) to life will fulfill all of the requirements of the sentencing guideline.

## AUTHORITY

Ohio Revised Code 181.25(A)
Ohio Revised Code 2929.11(A)
Ohio Revised Code 2929.12(E)

William P. Whalen, Jr., Esq. (83281)
Attorney for Defendant, Ruben Jordan
810 Sycamore, Suite 511

Cincinnati, Ohio 45202
(513) 579-8700 Ext 511
(513) 579-8703 Fax No.

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing Sentencing Memorandum was delivered to the Hamilton County Prosecutor's Office at, 230 East Ninth Street, Suite 4000, Cincinnati, OH 45202

William P. Whalen, Jr., Esq. (83281)
Attorney for Defendant, Ruben Jordan

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: **NADINE ALLEN**

NO: **B 1003262**

**ENTERED**
**MAR 15 2011**

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:**
**INCARCERATION**

Defendant was present in open Court with Counsel **AMY R WILLIAMS** on the **15th** day of **February 2011** for sentence.

The court informed the defendant that, as the defendant well knew, after defendant entering a plea of not guilty and after trial by jury, the defendant has been found guilty of the offense(s) of:

**count 1: AGGRAVATED MURDER WITH SPECIFICATION, 2903-01A/ORCN,SF**
**count 2: HAVING WEAPONS WHILE UNDER DISABILITY, 2923-13A3/ORCN,F3**

The Court afforded defendant's counsel an opportunity to speak on behalf of the defendant. The Court addressed the defendant personally and asked if the defendant wished to make a statement in the defendant's behalf, or present any information in mitigation of punishment.

Defendant is sentenced to be imprisoned as follows:
**count 1: CONFINEMENT: LIFE WITH ELIGIBILITY FOR PAROLE AFTER TWENTY FIVE (25) YEARS IN THE DEPARTMENT OF CORRECTIONS. CONFINEMENT ON SPECIFICATION: 3 Yrs DEPARTMENT OF CORRECTIONS**
**TO BE SERVED CONSECUTIVELY AND PRIOR TO THE SENTENCE IMPOSED IN UNDERLYING OFFENSE IN COUNT #1.**
**count 2: CONFINEMENT: 2 Yrs DEPARTMENT OF CORRECTIONS**

**THE SENTENCES IN COUNTS #1 AND #2 ARE TO BE SERVED CONSECUTIVELY TO EACH OTHER.**

**THE TOTAL AGGREGATE SENTENCE IS THIRTY (30) YEARS TO LIFE IN THE DEPARTMENT OF CORRECTIONS.**

**THE DEFENDANT IS TO RECEIVE CREDIT FOR TWO HUNDRED EIGHTY NINE (289) DAYS TIME SERVED.**

D92277084

Page 1
CMSG306

**EXHIBIT**
*10*

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: **NADINE ALLEN**

NO: **B 1003262**

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:**
**INCARCERATION**

**THE DEFENDANT IS TO MAKE RESTITUTION IN THE AMOUNT OF $5,500.00 UNLESS THE VICTIM IS REIMBURSED BY THE OHIO VICTIMS OF CRIME FUND.**

**THE DEFENDANT IS INDIGENT. NO COSTS, FINES, OR FEES IMPOSED.**

**FURTHER, IN ACCORDANCE WITH RC 2901.07, THE DEFENDANT IS REQUIRED TO SUBMIT A DNA SPECIMEN WHICH WILL BE COLLECTED AT THE PRISON, JAIL, CORRECTIONAL OR DETENTION FACILITY TO WHICH THE DEFENDANT HAS BEEN SENTENCED. IF THE SENTENCE INCLUDES ANY PERIOD OF PROBATION OR COMMUNITY CONTROL, OR IF AT ANY TIME THE DEFENDANT IS ON PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL, THE DEFENDANT WILL BE REQUIRED, AS A CONDITION OF PROBATION, COMMUNITY CONTROL, PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL, TO SUBMIT A DNA SPECIMEN TO THE PROBATION DEPARTMENT, ADULT PAROLE AUTHORITY, OR OTHER AUTHORITY AS DESIGNATED BY LAW. IF THE DEFENDANT FAILS OR REFUSES TO SUBMIT TO THE REQUIRED DNA SPECIMEN COLLECTION PROCEDURE, THE DEFENDANT WILL BE SUBJECT TO ARREST AND PUNISHMENT FOR VIOLATING THIS CONDITION OF PROBATION, COMMUNITY CONTROL, PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL.**

**AS TO COUNT #1, THE DEFENDANT IS NOT SUBJECT TO THE POST RELEASE CONTROL PROVISIONS OF OHIO LAW AS THIS IS A LIFE SENTENCE. PAROLE ELIGIBILITY FOR THIS OFFENDER IS GOVERNED BY OHIO REVISED CODE §2967.13(A)(1) AND THE DEFENDANT IS SO ADVISED.**

**AS PART OF THE SENTENCE IN THIS CASE AS TO COUNT #2, THE DEFENDANT MAY BE SUPERVISED BY THE ADULT PAROLE AUTHORITY AFTER DEFENDANT LEAVES PRISON, WHICH IS REFERRED TO AS POST-RELEASE CONTROL, FOR UP TO THREE ( 3 ) YEARS AS DETERMINED BY THE ADULT PAROLE AUTHORITY.**

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: **NADINE ALLEN**

NO: **B 1003262**

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:**
**INCARCERATION**

IF THE DEFENDANT VIOLATES POST-RELEASE CONTROL SUPERVISION
OR ANY CONDITION THEREOF, THE ADULT PAROLE AUTHORITY MAY
IMPOSE A PRISON TERM, AS PART OF THE SENTENCE, OF UP TO
NINE ( 9 ) MONTHS, WITH A MAXIMUM FOR REPEATED VIOLATIONS OF
FIFTY PERCENT ( 50% ) OF THE STATED PRISON TERM. IF THE
DEFENDANT COMMITS A NEW FELONY WHILE SUBJECT TO POST-
RELEASE CONTROL, THE DEFENDANT MAY BE SENT TO PRISON FOR
THE REMAINING POST-RELEASE CONTROL PERIOD OR TWELVE ( 12 )
MONTHS, WHICHEVER IS GREATER. THIS PRISON TERM SHALL BE
SERVED CONSECUTIVELY TO ANY PRISON TERM IMPOSED FOR THE
NEW FELONY OF WHICH THE DEFENDANT IS CONVICTED.

## IN THE HAMILTON COUNTY COURT OF COMMON PLEAS
### CRIMINAL DIVISION

| | | |
|---|---|---|
| **STATE OF OHIO** | : | **Case No. B100 3262** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Judge Nadine Allen** |
| | : | |
| **RUBEN JORDAN** | : | |
| | : | **MOTION FOR NEW TRIAL &** |
| **Defendant.** | : | **HEARING PURSUANT TO CRIM.** |
| | : | **R. 33 AND MEMORANDUM IN** |
| | : | **SUPPORT** |

Defendant Ruben Jordan, by and through counsel, respectfully requests a new

trial and hearing on this motion pursuant to Crim. R. 33 based on errors that occurred

during his trial due to ineffective assistance of counsel and prosecutorial misconduct.

These errors, as explained in the following Memorandum in Support[1], resulted in

violations of Jordan's constitutional rights to due process, a fair trial, and the effective

assistance of counsel. Compelling evidence of Jordan's innocence was never introduced

at his trial, which if introduced, would have created a "reasonable probability" of an

acquittal.

D92281213

---

[1] The undersigned counsel does not yet have access to the trial transcripts or other
transcripts (of statements and pretrial hearings); however, Crim. R. 33 requires Jordan to
file this motion within 14 days of the jury verdict, which was handed down on January
24, 2011. Accordingly, the allegations of misconduct discussed herein are presented in
good faith based on counsel's current understanding of the events that unfolded at
Jordan's trial and all other relevant times.



## MEMORANDUM IN SUPPPORT

I.  **Standard of Law: Crim. R. 33(A) Standard for New Trial and Ineffective Assistance of Counsel.**

Crim. R. 33(A) provides that a new trial may be granted to a defendant if his "substantial rights" are "materially affected" by the error or misconduct in question. Rule 33's "material affect" to "substantial rights" standard focuses on infringements of a defendant's constitutional or other trial rights that jeopardize the fundamental fairness of the proceedings. *State v. Johnson* (1988), 40 Ohio St.3d 130, 132.

Rule 33(A) and ORC 2945.79 delineate six grounds on which a defendant's substantial rights may be materially affected. The three relevant grounds are as follows:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abused of discretion by the court, because of which the defendant was prevented from having a fair trial; and
(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
(4) Error of law occurring at the trial.

In the instant case, per Rule 33(A)(1) and (4), irregularity in the proceedings and errors of law occurred at Jordan's trial due to the ineffective assistance of counsel. Likewise, per Rule 33(A)(1),(2), and (4), the State engaged in prosecutorial misconduct, which led to further irregularity in the proceeding and errors of law during Jordan's trial.

To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance." *State v. McGhee*, 2009 WL 2974890 (Ohio App. 1 Dist. 2009) citing *Strickland v. Washington* (1984), 455 U.S. 668, 686. Furthermore, a defendant demonstrates prejudice by showing that, but for counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. *Id.*

2

It is important to deconstruct this standard to give clearer guidance as to Jordan's burden in this motion. First, it is axiomatic that if reasonable doubt exists, a jury must acquit. Juries are instructed to follow this principle in every criminal trial in this state. Second, reasonable doubt can exist even when some evidence of guilt has been presented. In other words, the reasonable doubt standard does not require a defendant to disprove the state's entire case or prove that he is 100 % innocent; a defendant must simply raise a reasonable doubt that he might not be guilty despite the evidence presented by the prosecution suggesting his guilt. Therefore, if the favorable evidence in this case—which was excluded from evidence at trial due to the ineffective assistance of trial counsel— raises reasonable doubt, it would change the outcome of the new trial and the motion for a new trial must be granted, even if some evidence of guilt remains.

Jordan's burden in this case, however, is even *lower* than merely being required to raise reasonable doubt as set forth in the paragraph above. Indeed, the *Strickland* standard requires only a "reasonable probability" rather than a certainty that the outcome of a trial would be different if the exculpatory evidence had been presented and/or the incriminating evidence excluded. Thus, the exculpatory-but-excluded evidence in this case must merely raise a "reasonable probability" that a jury would find reasonable doubt, not that the jury would actually, in fact, find reasonable doubt. Likewise, if the incriminating evidence—which should have been excluded but which was presented to the jury due to prosecutorial misconduct—tipped the scales toward conviction, then a "reasonable probability" exists that the outcome of a trial would have been different but for the improper evidence. In either circumstance, the motion for new trial must be granted.

3

Because the said evidence in this case completely changes the texture and narrative of this case, and strongly suggests Jordan's innocence, it greatly exceeds this standard.

### A. Failure to Properly Investigate Constitutes Ineffective Assistance of Counsel.

The failure to properly investigate evidence on behalf of a defendant is grounds for finding ineffective assistance of counsel. For example, in *State v. Strutton,* 62 Ohio App.3d 248, 575 N.E.2d 466 (Ct. App. 2nd Dist. 1988), the appellate court overturned a trial court's denial of defendant's motion to withdraw a guilty plea. The Appeals Court held that a claim of ineffective assistance of counsel encompasses the failure to pursue evidence that might vindicate defendant. Specifically, the Court opined:

> In his original petition, Strutton alleged that his original trial counsel failed to pursue the evidentiary lead represented by a letter that Strutton had supposedly received from the complainant's mother, in which the mother had written that her daughter had admitted that the charges against Strutton were groundless. That is certainly an important enough evidentiary lead to raise a question whether Strutton's original trial counsel met minimum standards of competence in failing to pursue that lead, assuming that Strutton succeeds, in a hearing, in establishing the facts that he has alleged.

*Id.* at 251.

Several other Ohio courts have made similar holdings. For example, defense counsel must at least interview witnesses that might have relevant and incontrovertible information regarding the alleged crime. *See State v. Hart*, No. 16856, 1995 WL 228715, at * 3 (Ohio Ct. App. 9th Dist. Apr. 12, 1995) (*citing State v. Jackson* (Nov. 9, 1994), Lorain App. No. 5843, unreported, at 11-12). In *Hart*, defense counsel failed to interview the victim of the shooting, a prosecution witness, who, if interviewed, would have stated that she believed the shooting was unintentional. *See Hart* at 3-4, *see also*

*State v. Hignite*, No. 79AP-23, 1979 Ohio App. LEXIS 11387 (Ct. App.10th Dist. May 22, 1979) (upholding claim of failure to investigate). *See also State v. Thomas*, 768 S.W.2d 335, 336-337 (Tex. App. 1989) ("Criminal defense counsel has a responsibility to seek out and interview potential witnesses and the failure to do so is to be ineffective where the result is that any viable defense available to the accused is not advanced. The decision to call a witness is generally a matter of trial strategy, but the failure to interview a witness will be considered ineffective assistance of counsel when inaction precludes the accused from advancing a viable defense." (citations omitted)); *Butler v. State*, 716 S.W.2d 48 (Tex. Ct. App. 1986) (same).

Most important, the duty to investigate is especially required when the investigation could lead to exculpatory evidence. An extended quote from the recently decided *State v. Saxton*, No. 9-03-43, 2004 WL 326732, at * 1-2 (Ohio Ct. App. 3rd Dist. 2004), highlights this point:.

> The failure to properly investigate a case has been determined to be a proper basis for an ineffective assistance of counsel claim. In *Wiggins*, the Supreme Court focused on whether the decision of counsel not to conduct further investigation was reasonable. The failure to conduct a reasonable investigation was found to be ineffective assistance of counsel.
> ....
>
> The failure to properly investigate potentially exculpatory evidence may be the basis for an ineffective assistance of counsel claim. The fact that counsel did some investigation and presented some evidence is not necessarily sufficient to make counsel's assistance effective. The amount of investigation must be reasonable.
>
> *Id.* (citations omitted) (citing to *Wiggins v. Smith*, 123 S.Ct 2527, 2356 (2003)).

Jordan now comes forward with several pieces of evidence—all of which are exculpatory—that trial counsel did not locate and present as evidence but which he easily could have located and presented as evidence. Most of this evidence could have been

admitted into evidence with basic investigation, such as making a reasonable effort to

serve a subpoena on an eyewitness to the shooting in question.

## II. Summary of exculpatory evidence, which was never presented at trial due to ineffective assistance of counsel.

### A. The Bill of Particulars and Indictment in Kareem Gilbert's case, identifying Kareem Gilbert as Victor Davis' shooter.

Over a year prior to Ruben Jordan standing trial for the murder of Victor Davis,

the State indicted Jordan's son Kareem Gilbert for this same murder. *See* Case No.

B0901283 and *Bill of Particulars therein stating: "The defendant [Kareem Gilbert]*

*intimidated Victor Davis who was an eyewitness to [Gilbert's] murder of Bryan*

*Austin….[Gilbert], under a disability for a juvenile adjudication of Possession of*

*Cocaine, shot and killed Victor Davis and fled the scene."* Though a bill of particulars

and indictment constitutes an admission by a party opponent per Evid. R. 801(D)(2)(a),[2]

*trial counsel rendered ineffective assistance of counsel by failing to offer the state's*

admissions against Gilbert as the killer of Victor Davis, as substantive evidence

exonerating Ruben Jordan for this same shooting. *See U.S. v. GAF Corp.*, 928 F.2d 1253

(2d. Cir. 1991) (initial bill of particulars in criminal case is an admission by party

opponent per Evid. R. 801(D)(2)(a); refusal to admit bill of particulars in successive trial

on the same charges was error when government changed its strategy at successive trials

and contradicted its previous strategy).

---

[2] Rule 801(D)(2)(a) Statements which are not hearsay; Admission by party-opponent reads: "A statement is not hearsay if the statement is offered against a party and is the party's own statement, in either an individual or representative capacity."

### B. Anthony Jordan's prior testimony identifying Kareem Gilbert as Victor Davis' shooter.

In the course of prosecuting Gilbert, the State elicited testimony from Anthony Jordan, an eyewitness to the shooting of Victor Davis. Anthony Jordan testified under oath in a pre-trial hearing in Gilbert's case, that he observed Gilbert shoot and kill Victor Davis.

At Ruben Jordan's trial, his trial counsel failed to even attempt to have Anthony Jordan served with a subpoena. Had trial counsel attempted to serve Anthony Jordan with a subpoena, even if service attempts were unsuccessful, Anthony Jordan could have been declared an "unavailable" witness[3] and his prior testimony under oath, identifying Kareem Gilbert as the shooter, could have been admitted as substantive evidence pursuant to Evid. R. 804(B)(1) Hearsay Exceptions; Former Testimony.[4]

An eyewitness to the shooting, who identified Kareem Gilbert as the shooter rather than Ruben Jordan, coupled with the Bill of Particulars and Indictment from the State's case against Kareem Gilbert—also identifying Gilbert as the shooter—at the very least raises a "reasonable probability" that the outcome of Jordan's trial would have been different if trial counsel had presented this evidence to the jury.

---

[3] Rule 804(A)(5) "Hearsay Exceptions; Declarant Unavailable; Definition of Unavailability," reads a witness is "unavailable" when the declarant "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's testimony by process or other reasonable means."

[4] Rule 804(B)(1) reads: Testimony given as a witness at another hearing of the same or different proceeding, or a deposition taken in compliance with the law in the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia or reliability.

### C. Victor Davis' statements leading up to his death, demonstrating his then-existing-state-of-mind: (1) that Kareem Gilbert had been threatening his life; and (2) that he needed law enforcement to locate protective housing for him in a witness protection plan.

Prior to his death, Victor Davis acted as an eyewitness to the shooting of Bryan Austin. Gilbert then made statements to the police *See* Case No. B0901283 and Bill of Particulars therein stating: "The defendant [Kareem Gilbert] intimidated Victor Davis who was an eyewitness to [Gilbert's] murder of Bryan Austin." Davis began feeling intimidated by Gilbert and in fear for his life at the hands of Gilbert, who, according to Davis threatened Davis's life because he witnessed Gilbert kill Austin. Davis reported the intimidation to law enforcement officers who then investigated the threats by taking statements from Davis and collecting Davis's phone records.

In his statements to police, Davis admitted fearing for his life to such a tremendous extent and with such great certainty, that he had already picked the clothing he wanted wear to his funeral. He attested to this future plan in statements he made to police. Davis's statements to police regarding the threats and intimidation by Gilbert were so compelling to law enforcement that law enforcement located witness-protection-housing for Davis. Davis, however, was never able to use the safe-house because the arrangements were finalized the day Davis was, in fact, shot and killed.

Davis made recorded statements to police regarding the threats he received from Kareem Gilbert and his urgent need to live in protected housing. Similarly, a detective testified in a pre-trial hearing in Gilbert's case about his conversations with Victor Davis regarding Gilbert's threats and the witness-protection housing that law enforcement arranged for Victor Davis.

8

Davis's statements to police should have been presented at Ruben Jordan's trial and admitted into evidence per Evid. R. 803(3)[5] to demonstrate Davis's reaction to Gilbert's threats.

### D. Kareem Gilbert's letter to Ruben Jordan admitting that he (Gilbert) needed to "man up" and that he (Gilbert) plans to "take responsibility for his actions."

During Jordan's trial, one of the State's witnesses, Kareem Gilbert, recanted his prior statements that he saw Jordan shoot Victor Davis. During his recantation at trial, Gilbert said that he made up the incriminating statements against Jordan to get a plea deal with the State, because he (Gilbert) was initially indicted for the murder of Victor Davis. Gilbert was about to stand trial for the murder of Victor Davis and the murder of Bryan Austin, whose shooting Victor Davis had witnessed. But instead, Gilbert struck a deal with the State and pointed the finger at Ruben Jordan for the shooting of Victor Davis.

During its direct examination of Gilbert, the State rebutted Gilbert's recantation with the statements Gilbert made during his plea deal. This was in efforts to suggest that Gilbert was telling the truth during his plea deal rather than during his trial testimony/recantation.

Prior to Jordan's trial, trial counsel had a letter that Gilbert sent to Jordan admitting that he (Gilbert) needs to "man up" to what he did and that he plans to "take responsibility for his actions" and what he's doing to Ruben Jordan [meaning blaming the

---

[5] Rule 803(3) Hearsay Exceptions. Then existing, mental, emotional, or physical condition reads: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

shooting on Jordan rather than admitting that he, himself, shot Davis]. Ruben Jordan gave trial counsel this letter to potentially use as evidence in his trial.

After Gilbert recanted on the stand and the State began portraying Gilbert's recantation as a lie (rather than his plea deal statements as a lie), Jordan asked trial counsel to use the letter that Gilbert wrote to Jordan months before Jordan's trial to show that Gilbert privately admitted to Jordan that he would "man up" and "take responsibility for his actions" rather than blaming the shooting on Jordan. But trial counsel could not find the letter during Gilbert's testimony or at any other point during Jordan's trial.

A week after trial, trial counsel's assistant located the letter. *See* attached Affidavit of Michele L. Berry including a copy of said letter. Had trial counsel not misplaced the letter during trial, the defense could have used the letter to demonstrate that Gilbert had been planning to "man up" and admit that he did not witness Jordan shoot Victor Davis. With the aid of this letter, a "reasonable probability exists" that the jury would have believed Gilbert's trial testimony rather than the statements he made during his plea bargain with the State.

III. **Summary of evidence that was erroneously admitted into evidence due to prosecutorial misconduct.**

After Kareem Gilbert, a State's witness, began recanting on the stand and denying that he witnessed Ruben Jordan shoot Victor Davis, the State called for a recess. During the recess, an attorney from the Hamilton County Public Defender's Office (Tim Cutcher) was designated to speak with and counsel Kareem Gilbert. Cutcher advised the State that Gilbert wished to plead the Fifth Amendment and assert his right to remain silent. Following the recess, the trial recommenced, first outside the presence of the jury,

with a statement on the record from Gilbert's attorney explaining that Gilbert was going to assert his Fifth Amendment right to remain silent. After Cutcher's statement, the jury reentered the courtroom, and Gilbert was recalled to the witness stand.

The State continued to question Gilbert. As he continued recanting his prior statements that he witnessed Jordan shoot Davis, the State ultimately cross-examined Gilbert with his prior statements made during his plea agreement with the State. Gilbert entered into this agreement with the State when the State was prosecuting him for the murder of Victor Davis and Bryan Austin. In exchange for reduced charges, Gilbert had agreed to testify against Ruben Jordan. During Jordan's trial, the State not only cross-examined Gilbert with his prior statements (identifying Jordan as Davis's shooter) but also it played the entire recorded statement for the jury.

The State improperly continued to call Gilbert as a state's witness—knowing that his testimony was adverse to the State—solely to enable the State to play for the jury Gilbert's prior statements identifying Jordan as the shooter.

Evid. R. 607 provides that "the credibility of a witness may be attacked by the party calling the witness by means of prior inconsistent statement *only upon a showing of surprise* and affirmative damage." In *State v. Holmes*, 506 N.E.204 (Ohio 1987), the Ohio Supreme Court affirmed the appellate court's decision granting a new trial based on the State improperly impeaching its own witness. The Court explained:

> A party will not be permitted to put a witness on the stand knowing that his testimony will be adverse and then claim surprise in order to impeach such a witness. This is particularly true when the procedure is nothing more than a device or artifice to get into evidence before the jury that which would otherwise be inadmissible.

> Here, the State was well-aware that Gilbert was going to provide testimony that

11

was adverse to the State and favorable to Jordan. For this very reason, the State requested a recess, and an attorney was provided to counsel Gilbert. The State then knew that Gilbert sought to plead the Fifth Amendment and remain silent rather than incriminate himself. Even so, the State continued to call Gilbert to the stand and elicit adverse testimony for the very purpose of being able to impeach him with his prior recorded statements made during his plea agreement wherein he identified Jordan as Davis's shooter. Had the State ended its testimony after the recess—when it knew that Gilbert would either remain silent or provide adverse testimony—Gilbert's prior statements would have been inadmissible.

The State cannot claim "surprise" when, in fact, the prosecuting attorneys were well-informed that Gilbert's testimony would only harm its case. The State was not surprised. Instead, the State sought to recall Gilbert to the stand for the very purpose of being able to impeach its own witness with his prior statements that would have been otherwise inadmissible. For this reason, the State engaged in misconduct by continuing Gilbert's testimony following the recess and impeaching its own witness in violation of Evid. R. 607 and *Holmes.*

The jury should have never heard Gilbert's prior statements and would have never had the opportunity to do so but for the State's improper impeachment of Gilbert in an all-but-surprise hostile witness scenario. Ruben Jordan is entitled to a new trial for this reason alone. Gilbert's testimony could have tipped the scale toward conviction, whereas without his testimony, the jury could have found reasonable doubt.

## IV.    Cumulative Effect.

While each of the foregoing issues standing alone warrants a new trial, the cumulative effect of these errors demands a new trial.  The combination of the evidence that: (1) should have been admitted, coupled with the evidence, that (2) should have been excluded, changes the entire landscape of Jordan's trial.  The jury would have been presented with testimony from an eyewitness who identified Kareem Gilbert as the shooter and statements from the victim himself prior to death explaining his fear of Gilbert.  The jury would have been privy to the State's dramatic change in strategy.  The jury would have been able to consider that the State had an airtight case against Kareem Gilbert for this same shooting until Gilbert struck a deal with the State for lesser charges in exchange for his testimony against Jordan.  Had the jury been able to consider this evidence, a "reasonable probability" exists that the jury would have voted to acquit Jordan in satisfaction of the *Strickland* standard for determining prejudice due to ineffective assistance of counsel.

In sum, the jury never had the opportunity to consider compelling evidence of Jordan's innocence due to trial counsel's shortcomings and the State's improper impeachment of its own witness.  These errors occurred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and the effective assistance of counsel.

13

## CONCLUSION

For the foregoing reasons, Ruben Jordan, by and through counsel, respectfully requests this Court to grant a new trial pursuant to Rule 33(A) and for a hearing on this motion.

Respectfully submitted,

Michele L. Berry (0081939)
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.621.2525
MicheleLBerry@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served on the Hamilton County Prosecutor this 7th day of February 2011.

Michele L. Berry

14

PATRICIA M. CLANCY
CLERK OF COURTS
COUNTY, OH

THE STATE OF OHIO, HAMILTON COUNTY

COURT OF COMMON PLEAS 2009 APR 24 P 1: 37

CRIMINAL DIVISION

| STATE OF OHIO | : | NO. B0901283 |
|---|---|---|
| Plaintiff | : | (Judge Robert C. Winkler) |
| vs. | : | <u>BILL OF PARTICULARS</u> |
| KAREEM GILBERT | : | |
| Defendant | : | |

Now comes the State of Ohio, by and through Assistant Prosecuting Attorney, Seth S. Tieger, and in response to Defendant's Request for Bill of Particulars states as follows:

In addition to the allegations set forth within the Indictment, the State further asserts that the offense in Counts 1 and 2 occurred on or about October 16, 2008 shortly after 1:00 am at or near the area of 19 W. Elder St., City of Cincinnati, Hamilton County, Ohio. The Defendant, under a disability for a juvenile adjudication for Possession of Cocaine, shot and killed Bryan Austin and fled the scene.

The offense described in Count 3 occurred on a number of different occasions between October 16, 2008 and October 31, 2009 in Hamilton County, Ohio. The Defendant intimidated Victor Davis who was an eyewitness to the defendant's murder of Bryan Austin.

The offence described in Count 4 and 5 occurred on or about October 31, 2008 shortly before 11:30 pm at or near the area of 1802 Republic St., City of Cincinnati, Hamilton County, Ohio. The Defendant, under a disability for a juvenile adjudication of Possession of Cocaine, shot and killed Victor Davis and fled the scene.

The indictment is hereby incorporated into this Bill of Particulars.



D83156146

_(signature)_

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3125

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon each party or attorney of record in the proceedings for each party by Ordinary U.S. mail on the 24 day of _April_ , 2009.

_(signature)_

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney

**IN THE HAMILTON COUNTY COURT OF COMMON PLEAS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | **Case No. B1003262** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Judge Nadine Allen** |
| | : | |
| | : | |
| **RUBEN JORDAN** | : | |
| | : | **AFFIDAVIT OF MICHELE L. BERRY** |
| **Defendant.** | : | |
| | : | |

I, Michele Berry, first being duly sworn, attest and say as follows:

1. I am of legal age and sound mind and am competent to testify to the following facts, of which I have personal knowledge.

2. I am an attorney licensed to practice in the State of Ohio. My registration number is 0081939, and I am an attorney in good standing.

3. I am acting as counsel for Ruben Jordan on his Motion for New Trial. Ruben Jordan was convicted of murder on January 24, 2011 in a jury trial presided over by The Honorable Nadine Allen. Mr. Jordan is requesting that I be appointed to represent him on appeal, as he is now indigent. Accordingly, I anticipate representing Mr. Jordan on appeal as well.

4. In efforts to begin learning about the case, I picked up documents from the law office of Mr. Jordan's trial counsel, William (Bill) Whalen Jr.

5. His assistant Erin Whalen handed me a box filled with documents from the case. On top of the box was a letter that Erin said she believed was the same letter that had gone missing during Jordan's trial. I took the entire box of documents, and she held back the letter hoping to verify if it was in fact the same letter that had gone missing during trial.

6. During Mr. Jordan's trial, one of the State's witnesses, Kareem Gilbert, recanted his prior statements that he saw Mr. Victor Jordan commit the shooting of Victor Davis for which he (Jordan) was standing trial. During his recantation at trial, Gilbert said that he made up the incriminating statements against Jordan to get a plea deal with the State, because he (Gilbert) was indicted with murder charges for the same shooting. He (Gilbert) was about to stand trial for the shooting of Victor Davis and another individual, whose shooting Victor Davis had witnessed. But

1

instead, Gilbert struck a deal with the State and pointed the finger at Ruben Jordan.

7.  During its direct examination of Gilbert, the State rebutted Gilbert's recantation with the statements Gilbert made during his plea deal.  This was in efforts to suggest that Gilbert was telling the truth during his plea deal rather than during his trial testimony/recantation.

8.  Mr. Jordan and Mr. Whalen both explained to me that prior to Jordan's trial, Bill Whalen's law office had a letter that Kareem Gilbert sent to Ruben Jordan admitting that he (Gilbert) needs to "man up" to what he did and that he plans to "take responsibility for his actions" and what he's doing to Ruben Jordan, meaning blaming the shooting on Jordan rather than admitting that he, himself, shot Davis.  Ruben Jordan gave Whalen and his assistants this letter to potentially use as evidence in his trial.

9.  A true and accurate copy of the letter is attached.  I have the original.  It is two pages long (the front and back of a single sheet of paper).  It is dated July 6, 2010.  It is from Kareem Gilbert at the Lebanon Correctional Institution to Ruben Jordan at the Hamilton County Justice Center.

10.  After Gilbert recanted on the stand and the State started portraying Gilbert's recantation as a lie (rather than his plea deal statements as a lie), Jordan asked Bill Whalen to use the letter that Gilbert wrote to Jordan months before Jordan's trial (described in paragraph 6 above) to show that Gilbert privately admitted to Jordan that he would "man up" and "take responsibility for his actions" rather than blaming the shooting on Jordan.

11.  But neither Bill Whalen nor anyone in his office could find the letter during Jordan's trial.  They remembered having it prior to his trial, but they could not find it to use during Kareem Gilbert's testimony or any other part of Jordan's trial.

12.  The week after Jordan was convicted, Erin Whalen informed me that the letter she found was in fact the letter referred to in paragraph 8 above (the letter that had gone missing); and that she found the letter amongst other documents in Bill Whalen's office when she was gathering documents for me to begin reviewing.


FURTHER AFFIANT SAYETH NAUGHT.


Michele L. Berry

2

SWORN TO and subscribed before me, a Notary Public, in and for said County and State, on this 7th day of February, 2011.

NOTARY PUBLIC

DEBORAH B. MILLER
Notary Public, State of Ohio
My Commission Expires
October 20, 2015

3

Marcern Gilbert #0d0-620
P.O. Box 56
Lebanon Oh
45036

INMATE CORRESPONDENCE
LEBANON CORRECTIONAL INST

Ruben Jordan # 1388311
900 Sycmore St
Cincinnati, Oh
45202

45202+1317



SEABISCUIT

UNITED STATES POSTAGE
02 1A
000 463.3482
MAILED FROM ZIP C

N51C

7-6-10

How you doin? i hope well but for myself tryna go to school doin somethig with mind learnin more about me you feel me? and to Keep It Real with you only Reason i haven't wrote you back Is because Ima tryna take my mind off the situation In do my bid plus the only thig you talk about IS the situation I Know you you Know i dont wanted do this but It IS what It Is at the End of the day not sayin that's it cool but In some point In life I gotta man up definley In these type's situation I Learned that throw this two year's not sayin that what ima doin to you Is mannin up but ima taken repabitlity for my action Ima mannin up but Let's Keep It Real I didnt ask you do nothig Pops be Real with your self for me what i tell you when we was over your girl house I'dwill handle thig's myself! so i had took thigs In my own hands and I think just because they said 20 years you to you think it's over for you but it aint pops It's mufucka's up he twrice your age still got they youth i Know a man right now that's so somethig that's got 25 year's that's look every bit of 39, 40 as the most oh In he do Plumpin but Ima sayin that to show you it aint never over so you keep tellin yourself it's OVER down there that's what it's gen be Feel me? this shit aint nothing but a mind thig And right now it's mind over the matter oh yea tell your mamn I said hi And that I Love her In that ima grown up ima salty that Int haven't seen her when I was down But it's cool I Know how thigs go In to up date you on

about My mama she just got a new job in ima happy for her But i don't really call home like that no more that shit dead ima at the joint now I dont trip off on that Phone i be Kickin it goin to school now i talk my moms but i dont tryna worrie her about the situatio this aint her life thats some lame shit keep tryna worrie my moms about some shit that i got myself in she cool in thats how it's suppose to be. i dont talk to her about the situation this shit DEAD with me i got 15 years to do in 20 YEARS aint that to far from you think about that? OKAY But if your Lawer can get It down take that shit becaus I aint tryna come back there for this bullshit or go to another trial ima tryna do my time IN get the fuck out these white PEOPLE face they already made me Cold hearted I hate talkin about this just Stop writen me If this all we writen bout because I AINT gon write back because i hate talkin about this write back doe but that letter i get from you gonna be the last we talkin about this in feel me? back to your family in girl how they doin? Love i hope But Stay ima out i got to go to school Write Back soon Love

P.S the dude thats BEEN 50 something absud come home like 5 years from to ima gon good doe i Aint trippin these niggas this shit cakewall

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: **01/25/2011**
code: **GCC**
judge: **125**

**ENTERED**
**FEB 0 1 2011**

Judge: **NADINE ALLEN**

NO: **B 1003262**

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**CAUSE CONCLUDED**
**SENTENCE DEFERRED**

This Cause came on this day to be heard upon verdict of a jury, and said jury having found the Defendant guilty of :

**count 1: AGGRAVATED MURDER WITH SPECIFICATION, 2903-01A/ORCN,SF**
**count 2: HAVING WEAPONS WHILE UNDER DISABILITY, 2923-13A3/ORCN,F3**

**WHEREUPON, THE COURT ORDERED SENTENCE DEFERRED UNTIL FEBRUARY 15, 2011 AT 9:00 A.M.**



D91670875

IN THE HAMILTON COUNTY COURT OF COMMON PLEAS
CRIMINAL DIVISION

STATE OF OHIO                    :

          Plaintiff,          :    Case No. B1003262

                  :

v.                               :    Judge Nadine Allen

                  :

RUBEN JORDAN                     :

          Defendant.          :    __SUPPLEMENTAL MOTION FOR__
                  :    __NEW TRIAL & HEARING__
                  :    __PURSUANT TO CRIM. R. 33 AND__
                  :    __MEMORANDUM IN SUPPORT__

        Since February 7, 2011, when Defendant Ruben Jordan submitted his Motion for

New Trial, compelling new evidence of Jordan's innocence has emerged—a confession

to the shooting of Victor Davis by Kareem Gilbert during his guilty plea and sentencing

hearing on May 18, 2011—which if presented to a jury would create a "strong

probability" of an acquittal in accordance with the *State v. Petro* standard for new

evidence presented pursuant to Rule 33(A)(6).

        Accordingly, Jordan, by and through counsel, herein supplements his Motion for

New Trial on the basis of new evidence per Rule 33(A)(6) and renews his request for a

new trial and hearing per Rule 33(A)(1)(2) and (4) based on prosecutorial misconduct

and ineffective assistance of counsel. These grounds have now been amended and

supplemented as counsel now has the transcript and was previously merely operating in

good faith based on information and belief at the time the original Motion for New Trial

was filed.

        In the Memorandum that follows, Jordan first explains the new evidence, which

standing alone, warrants a new trial. Another man (Kareem Gilbert) confessed under



1

oath to committing the murder for which Jordan is convicted. *See* attached Affidavit of Kareem Gilbert. Without question, a confession from another man, if presented to a jury, creates a "strong probability" of a different outcome to Jordan's trial as the *State v. Petro* standard for evaluating new evidence requires. Next, Jordan amends and supplements the arguments submitted in his original Motion for New Trial now that counsel has the trial transcript and can argue points on firsthand knowledge rather than merely upon information and belief.

## MEMORANDUM IN SUPPORT

**I. New evidence—a confession by Kareem Gilbert—now exists that warrants a new trial. Without a doubt, a jury's consideration of a credible confession, under oath, creates a "strong probability" of a different outcome for Jordan's trial.**

Criminal Rule 33(A)(6) requires a two-step analysis before a new trial may be ordered. A defendant must demonstrate that the new evidence is material to the defense and that the defendant could not, despite reasonable diligence, have discovered and presented the new evidence at trial. Criminal Rule 33 (A)(6) and Ohio Rev. Code § 2945.79(F). The Ohio Supreme Court in *State v. Petro*, 76 N.E.2d 370 (Ohio App. 1947) syllabus, wrote that to warrant a new trial based on newly discovered evidence, it must be shown that the new evidence: (1) discloses a strong probability that it will change the result if a new trial is granted; (2) has been discovered since the trial; (3) could not have been discovered before trial even with the exercise of due diligence; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. The sixth prong of the *Petro* test "does not establish a per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is

2

whether the newly discovered evidence would create a strong probability of a different result at trial." *See City of Dayton v. Martin*, 539 N.E. 2d 646 (Ohio App. 2nd Dist. 1987) syllabus.

It is important at the outset to deconstruct this standard so that clearer guidance can be provided as to Jordan's burden in this motion. First, it is axiomatic that if reasonable doubt exists, a jury must acquit. Juries are instructed to follow this principle in every criminal trial in this state. Second, reasonable doubt can exist even when some evidence of guilt has been presented. In other words, the reasonable doubt standard does not require a defendant to disprove the state's entire case or prove that he is 100 % innocent; a defendant must simply raise a reasonable doubt that he might not be guilty despite the evidence presented by the prosecution suggesting his guilt. Therefore, if the new evidence in this case raises reasonable doubt, it would change the outcome of the new trial and the motion for a new trial must be granted, even if some evidence of guilt remains.

Jordan's burden in this case, however, is even lower than merely being required to raise reasonable doubt as set forth in the paragraph above. Indeed, the *Petro* standard requires only a "strong probability" rather than a certainty that the outcome of the new trial would be different. Thus, the new evidence in this case must merely raise a "strong probability" that a jury would find reasonable doubt, not that the jury would actually in fact find reasonable doubt. Because the new evidence in this case completely changes the texture and narrative of this case, and strongly suggests Jordan's innocence, it greatly exceeds this standard.

While in court on May 18, 2011 for his guilty plea and sentencing for the Bryan

3

Austin murder in Case No. B0901283, (charging Gilbert with the murders of Bryan Austin and Victor Davis), Kareem Gilbert confessed to killing Victor Davis under circumstances indicating credibility and reliability. In a highly volatile environment with media and family members present, Gilbert confessed to shooting Victor Davis even though the confession was likely to lead to a life sentence. On May 19, 2011, Gilbert signed an affidavit swearing that his confession in open court the previous day was truthful. His confession is corroborated by the testimony of Officer Luke who admitted that Anthony Jordan, an eyewitness to the Victor Davis shooting, saw Kareem Gilbert running from scene of the shooting carrying a gun. (T.p. Vol. VII at 785).

At Ruben Jordan's trial, Gilbert admitted that he lied and made up the statements against his dad (that he witnessed Jordan shoot Davis) in his initial plea bargain with the state just to relieve himself of the potential of a double life sentence. But while on the stand, Gilbert never actually confessed to the shooting; he merely said that his dad (Jordan) was not responsible. Now, Gilbert's confession changes the entire landscape of the evidence, and certainly Ruben Jordan's constitutional rights to a fair trial, due process, and to confront all witnesses demand that a jury hear Gilbert's confession.

Even if the State argues that Gilbert's confession is not exonerative to Jordan— for example, because Jordan acting as an accomplice could still be found guilty of murder—at a minimum, a confession by Gilbert establishes a "strong probability" of a different outcome. Indeed, the *Petro* standard requires only a "strong probability" rather than a certainty that the outcome of the new trial would be different. Thus, the confession in this case must merely raise a "strong probability" that a jury would find reasonable doubt, not that the jury actually would find reasonable doubt.

4

II.     **Summary of evidence that was erroneously admitted into evidence due to prosecutorial misconduct and ineffective assistance of counsel.[1]**

    A.     **The State improperly played Gilbert's entire recorded statement (extrinsic evidence of a prior inconsistent statement) despite that Gilbert had already admitted to making the prior inconsistent statement. In such circumstances, extrinsic evidence is inadmissible per Evid. Rule 613(b). Admitting the recorded statement into evidence occurred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, effective assistance of counsel, and to confront all witnesses.**

Kareem Gilbert entered into an agreement with the State when the State was prosecuting him for the murder of Victor Davis and Bryan Austin. In exchange for reduced charges, Gilbert agreed to testify against Ruben Jordan in Jordan's trial for the murder of Victor Davis.

However, during his testimony, Gilbert immediately began recanting on the stand and denying that he witnessed Ruben Jordan shoot Victor Davis, which prompted the State to call for a recess. During the recess, an attorney from the Hamilton County Public Defender's Office (Tim Cutcher) was designated to speak with and counsel Kareem Gilbert. Cutcher advised the State that Gilbert wished to plead the Fifth Amendment and assert his right to remain silent. Following the recess, the trial recommenced, first outside the presence of the jury, with a statement on the record from Gilbert's attorney explaining that Gilbert was going to assert his Fifth Amendment right to remain silent. After Cutcher's statement, Gilbert asserted his Fifth Amendment right, and the jury

---

[1] Jordan amends Section III from the Motion for New Trial and now presents the following argument regarding prosecutorial misconduct. Additionally, Jordan withdraws the Evid. R. 607 lack-of-surprise argument alleging that the State improperly continued to call Gilbert as a state's witness, knowing that his testimony was adverse to the State, solely to enable the State to play for the jury Gilbert's prior statements identifying Jordan as the shooter.

reentered the courtroom. Gilbert was then recalled to the witness stand, and the State was permitted to treat Gilbert as a hostile witness pursuant to Evid. R. 607.[2]

But the State committed misconduct in the manner in which it proceeded to impeach Gilbert as a hostile witness. Despite that the State was permitted to impeach Gilbert as a hostile witness with a showing of surprise, the State was **not permitted** to introduce extrinsic evidence to demonstrate Gilbert's prior inconsistent statements. It is well-settled that in order to admit extrinsic evidence of a prior inconsistent statement into evidence, the declarant must be given the opportunity to explain or deny the statement. Ohio R. Evid. 613(b). And when the declarant admits making the statement, **extrinsic evidence of the statement is inadmissible.** *See Rush v. Illinois Cent. R. Co*, 399 F.3d 705, 722 (6th Cir. 2005) (when a witness admits to making a prior inconsistent statement, extrinsic proof of the statement is inadmissible); *see also Umani v. Caruso*, 2008 WL 2216283 (E.D. Mich. May 27, 2008) citing *Rush*, 399 F.3d at 722 ("The foundational prerequisites of Rule 613(b) require only that the witness be given an opportunity, at some point, to explain or deny the prior inconsistent statement and that the opposing party be given the opportunity to examine the statement, however, when a witness admits to making a prior inconsistent statement, **extrinsic proof of the statement is inadmissible**").

Here, Gilbert **admitted** that he previously made a statement to the police contrary to the testimony he began giving at Jordan's trial. (T.p. Vol. VI at 609 l. 2-7). Then, without asking him the details of that statement, the State (over trial counsel's objection)

_____

[2] Evid. R. 607 provides that "the credibility of a witness may be attacked by the party calling the witness by means of prior inconsistent statement only upon a showing of surprise and affirmative damage."

immediately played his recorded statement (extrinsic evidence) and gave each juror a transcript of the statement (extrinsic evidence) in order to impeach Gilbert and demonstrate Gilbert's prior inconsistent statement. *Id.* at l. 6-14. Given that Gilbert admitted to previously making a statement contrary to and inconsistent with his trial testimony, the admission of extrinsic evidence to demonstrate the prior inconsistent statement is impermissible according to Evid. R. 613(b) and in violation of Jordan's rights to due process, a fair trial, confront all witnesses, and have the effective assistance of counsel (for failure to state the proper grounds for objection).

In other words, the State could have read Gilbert each line of his statement and asked him to admit or deny making each prior inconsistent statement. Instead, however, the State chose to ask Gilbert to comprehensively admit or deny the statement as a whole. Once Gilbert admitted to making the prior inconsistent statement, the State could not use extrinsic evidence to demonstrate the prior inconsistent statements. This logically follows from the fact that Gilbert's prior inconsistent statements could be used by the jury **soley for impeachment purposes**—to decide whether Gilbert was believable as a witness as he testified in court before the jury—**not** for the jury to compare Gilbert's in-court testimony to his prior inconsistent out-of-court statements for the jury to decide which statements to believe. *See State v. Dick*, (1971) 270 Ohio St. 2d 162; 271 N.E.2d 797; *State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist., December 13, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted"); *State v. Risden*, 2010 WL 892083; 2010-Ohio-991 (Ohio App 2 Dist., March 12, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be

taken into evidence to prove the truth of the matter asserted"); *State v. Greene*, 2009 WL 478088; 2009-Ohio-850 (Ohio App. 8 Dist., February 26, 2009) (same).

The importance of this distinction cannot be overlooked because once Gilbert admitted to making the prior inconsistent statements, the jury had the basis of knowledge necessary to decide whether or not Gilbert is a believable witness. Admitting extrinsic evidence to demonstrate each prior inconsistent statement, **after Gilbert has already admitted to it,** is highly prejudicial in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights because it runs the risk of the jury considering the prior inconsistent statements for their truth rather than for impeachment purposes. Once Gilbert admitted to making the prior inconsistent statements, and the jury observed Gilbert on the stand making such admission, the State's impeachment of Gilbert in this regard is complete.

Admitting extrinsic evidence, allegedly to demonstrate the impeachment, is not only prejudicial to Jordan, but also it is illogical given that the impeachment occurred in court as the jury observed Gilbert admitting to the prior inconsistent statement. Extrinsic evidence demonstrating the substance of Gilbert's prior inconsistent statement serves no purpose after Gilbert admitted to making the statements and jury observed Gilbert's demeanor and body language in the process. It follows that the submitting the recording and transcript of the prior inconsistent statements to the jury during trial and to review during deliberations runs the risk of confusing the jury into thinking that it may consider the substance of the prior inconsistent statements for their truth rather than solely for impeachment purposes.

Admission of the recording and transcript of same occurred in violation of Evid.

R. 613(b) and Jordan's rights to due process, a fair trial, confront all witnesses, and the

effective assistance of counsel (for failure to timely object for the proper reason).

Jordan is entitled to a new trial on this ground alone because the risk of prejudice

caused by the jury considering the substance of Gilbert's statement (wherein Gilbert

states that he observes Jordan shoot Victor Davis) is so extreme that the verdict is

unworthy of confidence, and a strong probability exists that but for the improperly

admitted evidence, a different outcome would have resulted.

**B.      The State committed misconduct and reversible error by referring to
the substance of Gilbert's prior inconsistent statements for
consideration of the truth of the statements when the statements were
only admissible for purposes of impeaching Gilbert.**

In a related reversible error, the State committed misconduct by referring to the

substance of Gilbert's prior inconsistent statements when Jordan's Fifth, Sixth, and

Fourteenth Amendment rights strictly limit the State's use of the statements to

impeaching Gilbert's credibility. *See State v. Dick*, (1971) 270 Ohio St. 2d 162; 271

N.E.2d 797; *State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist.,

December 13, 2010) ("a prior inconsistent statement is only admissible to impeach the

declarant and should not be taken into evidence to prove the truth of the matter

asserted"); *State v. Risden*, 2010 WL 892083; 2010-Ohio-991 (Ohio App 2 Dist., March

12, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and

should not be taken into evidence to prove the truth of the matter asserted"); *State v.

Greene*, 2009 WL 478088; 2009-Ohio-850 (Ohio App. 8 Dist., February 26, 2009)

(same).

Referring to the substance of the statements persuades or confuses the jury into:

9

(1) comparing Gilbert's testimony to his prior inconsistent statement to police; (2) comparing Gilbert's prior inconsistent statements to the other evidence presented by the State; and then, (3) based on these comparisons, judging which statement to believe— Gilbert's in-court testimony or his recorded statement to police. Instead, the jury should have only used the statement to consider Gilbert's credibility in court in its decision to believe or disbelieve Gilbert's testimony in Jordan's trial.

Here, in closing argument, the State repeatedly referred to the substance of Gilbert's statements and urged the jury to consider the statement for its **truth.** *See* T.p. Vol. VIII at 917-918). ("And Kareem Gilbert. Again, the defense is asking you to believe what he said in court was true…But as you play the statement…if you read that statement…**The statement has to be truthful.**"); *see also Id.* at 924 l. 11-25 and 925 l. 14-24 (wherein the state, during closing argument, points to details in Gilbert's recorded statement to police (the prior inconsistent statement) and urges the jury to compare the statements to corroborating testimony given in court, such as the number of shots fired, where the car was located, and the lack of shell casings at the crime scene).

Clearly, the State urged the jury to consider the truth of Gilbert's statement to the police (the prior inconsistent statement) wherein he stated that he observed his father, Ruben Jordan, shoot Victor Davis. In other words, the State, in closing, asked the jury to (1) identify details in Gilbert's statement; (2) compare those details to corroborating testimony given by other witnesses; (3) note the similarities; (4) believe Gilbert's prior statement; and (5) accordingly, disbelieve Gilbert's testimony. It is wholly improper to ask the jury to consider the substance of Gilbert's statement to police, such as details of the statement, and compare the substance of the statement to corroborating testimony,

10

because this process, by definition, requires the jury to consider Gilbert's prior inconsistent statement for its truth rather than for impeaching Gilbert's in-court testimony.

In sum, the jury's duty was not to ask, "Which of Gilbert's statements do I believe: his testimony or his prior inconsistent statement to police?" Instead, the jury was required to determine whether to believe Gilbert's in-court testimony given the fact that he gave a prior inconsistent statement to police. Asking the jury to consider the substantive details of Gilbert's prior statement and compare them to the testimony given by the detectives and other state witnesses is akin to asking the jury to consider the truth of inadmissible hearsay.

Referring to inadmissible hearsay during a closing argument asserted for the truth resulted in prosecutorial misconduct in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, to confront all witnesses, and to have the effective assistance of counsel (for failure to specifically object to this error as it occurred). *See State v. Kirk*, 2010 WL 1818894; 2010-Ohio-2006 (Ohio App. 6 Dist., May 7, 2010) (referring to inadmissible hearsay during a closing argument asserted for the truth resulted in prosecutorial misconduct).

**C.** **The limiting instruction given by the court during jury instructions directing the jury to consider Gilbert's prior inconsistent statement solely for impeachment purposes was insufficient to cure the errors explained in Sections A and B.**

During jury instructions, the Court directed the jury to consider Gilbert's prior statement only for purposes of impeachment. (T.p. Vol III at 937, l. 11-17) ("You heard a tape-recorded statement of Kareem Gilbert. This recorded statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only

11

be used to evaluate the credibility of the witness.")

Given the compelling nature of the statement as the State's most crucial evidence in the case, the limiting instruction was insufficient to cure: (1) the improper admission of the recording and transcript of Gilbert's prior inconsistent statement (*see supra* Section A); and (2) the state's misconduct in urging the jury to consider the truth of Gilbert's statement to police (*see supra* Section B).

Extrinsic evidence of Gilbert's prior inconsistent statement should not have been admitted into evidence. *See supra* Section A. Instead, the jury should have been limited to their in-court observations of Gilbert as he admitted to making the prior inconsistent statements. In other words, the jury should have never had any extrinsic evidence of the substance and contents of Gilbert's statements to consider during deliberations to begin with. Accordingly, the improper admission of the extrinsic evidence cannot be cured by limiting the jury in its use of the extrinsic evidence that it should have never heard, read, or otherwise had access. For this reason, a jury instruction is *per se* insufficient to cure the improper admission of extrinsic evidence of Gilbert's statements according to Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, to confront all witnesses, and to have the effective assistance of counsel (for failure to timely object for the proper reason).

This is a situation akin to a *Bruton* scenario in which the incriminating extrajudicial statements of a co-defendant are given to a jury to supposedly consider against one co-defendant in a joint trial but not the other. As the U.S. Supreme Court explained in *Bruton v. United States*, 391 U.S. 123, 135-36 (1968), "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital

to the defendant, that the practical and human limitations of the jury system cannot be ignored." For this reason, the Supreme Court found that a limiting instruction is *per se* ineffective because a jury, as a panel of human beings, cannot dismiss from their minds the extremely prejudicial statements, which if true, prove the State's entire case. *Id.* at 131.

Such is the case here. A jury should have never: (1) had access to extrinsic evidence of Gilbert's statement; or (2) considered the substance of Gilbert's prior inconsistent statement for its truth or consistency with other testimony and evidence presented in trial. And once: (1) given access to extrinsic evidence of Gilbert's statement; and (2) urged by the State to consider the substance and truth of Gilbert's statement—it is humanly impossible for a jury to follow a limiting instruction. As the Supreme Court recognized in *Bruton*, it is impractical to expect the jury to consider the contents of Gilbert's statement only for purposes of evaluating Gilbert's in-court credibility rather than for their substance, wherein Gilbert stated that he observed Jordan shoot Victor Davis. Therefore, a jury instruction is *per se* ineffective to cure the fact that the jury heard the recording in court and was given the recording and transcript (extrinsic evidence) of Gilbert's prior inconsistent statement to consider during deliberations. This error occurred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, to confront all witnesses, and to have the effective assistance of counsel (for failure to timely object for the correct reason).

13

   i.  **Even if the Court finds a limiting instruction curative of the admission of extrinsic evidence of Gilbert's prior inconsistent statements, the limiting instruction itself insufficiently explains the proper use of the statements.**

The instruction given[3] leaves the jury to discern which of Gilbert's statements to believe— his in-court testimony or his prior inconsistent statements to police. The jury, comprised of lay people not trained in the law, was left to believe that they could compare the two statements and decide which one to believe. Nowhere in the instruction is the jury told not to consider the truth of the recorded statement and not to compare the substance of the statements to the other evidence presented during the trial. Nowhere in the instruction is the jury told that they could only use the prior inconsistent statement to evaluate the credibility of Gilbert's **in-court testimony** as opposed to the credibility of Gilbert's prior inconsistent statement.

Because the State urged the jury to compare the substance of Gilbert's statement to other corroborating evidence presented by the State during the trial, the jury needed more detailed instructions. Specifically, the jury needed to be told: (1) to disregard the contents of Gilbert's statement to police; and (2) that they were not permitted to choose which of Gilbert's statements to believe—his testimony or his statement to the police. Rather, the jury's duty was to use the fact that Gilbert made a prior inconsistent statement to evaluate whether they believed Gilbert as he testified in court, and the jury needed so instructed through a more specific instruction.

The jury's clear understanding of this point is crucial to Jordan's due process

---

[3] *See* T.p. Vol III at 937, l. 11-17 ("You heard a tape-recorded statement of Kareem Gilbert. This recorded statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness.")

rights to a fair trial before an impartial jury particularly because the substance of Gilbert's prior inconsistent statement to the police, standing alone, could prove the State's case against Jordan. And while Ohio law and Jordan's constitutional rights prohibit the jury was from using the statements as evidence to prove Jordan's guilt, the U.S. Supreme Court has recognized that a jury cannot separate impeachment from substance when evaluating evidence involving such highly prejudicial statements. Accordingly, Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial by an impartial jury, to confront all witnesses, and have the effective assistance of counsel were violated not only by the jury's access to the extrinsic evidence but also by the inadequate jury instruction.

Notwithstanding Jordan's argument *supra* that a limiting instruction is *per se* ineffective to cure the improper admission of extrinsic evidence of Gilbert's prior inconsistent statement, the inadequate jury instruction runs contrary to Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair trial before an impartial jury, to confront all witnesses, and to have the effective assistance of counsel (for counsel's failure to timely object to the current instruction for the proper reason).

**III.    Clarification regarding other arguments raised in Jordan's Motion for New Trial.**

The undersigned counsel submitted Jordan's Motion for New Trial in good faith based on information and belief obtained without the aid of the trial transcript and transcripts from other related pre-trial hearings. At this point, counsel still has not obtained the transcript from Anthony Jordan's testimony in juvenile court referred to in Section II.B. of Jordan's Motion for New Trial. If Anthony Jordan indeed identifies Gilbert as Victor Davis's shooter, then Ruben Jordan reasserts this argument. However,

if Anthony Jordan only identifies Gilbert as running from the scene of the shooting carrying a gun, Ruben Jordan withdraws this argument as Detective Luke testified to this point during Ruben Jordan's trial. (T.p. Vol. VII at 785).

Counsel will amend or withdraw this section accordingly after obtaining the transcript of Anthony Jordan's testimony in juvenile court.

## CONCLUSION

For the foregoing reasons and the reasons presented in Jordan's Motion for New Trial (except as otherwise amended or withdrawn), Ruben Jordan, by and through counsel, respectfully requests this Court to grant a new trial pursuant to Rule 33(A) and for a hearing on this motion.

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.621.2525
mberry@mberrylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served on the Hamilton County Prosecutor this 23rd day of May 2011.

Michele L. Berry

**IN THE HAMILTON COUNTY COURT OF COMMON PLEAS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | **Case No. B1003262** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Judge Nadine Allen** |
| | : | |
| | : | |
| **RUBEN JORDAN** | : | |
| | : | **AFFIDAVIT OF KAREEM GILBERT** |
| **Defendant.** | : | |
| | : | |

I, Kareem Gilbert, first being duly sworn, attest as follows:

1. I am of legal age and sound mind and am competent to testify to the following facts, of which I have personal knowledge.

2. I appeared in Court on May 18, 2011 for my ~~sentencing~~ *guilty plea* + hearing held in the Honorable Robert C. Winkler's courtroom for Hamilton County Case No. B0901283 (*State of Ohio v. Kareem Gilbert*). *KG*

3. During the ~~sentencing~~ *guilty plea* + hearing I confessed to the murder of Victor Davis. *KG*

4. I hereby incorporate to this affidavit the statements I made during my ~~sentencing~~ *guilty plea* + hearing referred to in Paragraphs 2 and 3 as statements made under oath. *KG*

5. All the statements I made during my ~~sentencing~~ *guilty plea* hearing (referred to in Paragraphs 2 and 3) are true and accurate and I incorporate in this affidavit all those statements as statements made under oath. *KG*

FURTHER AFFIANT SAYETH NAUGHT.

*Kareem Gilbert*

Kareem Gilbert

SWORN TO and subscribed before me, a Notary Public, in and for said County and State, on this ___19th___ day of May, 2011.

NOTARY PUBLIC

LEROY KHEIMER
Notary Public, State of Ohio
My Commission Expires
___ember 23, 2012

PATRICIA M. CLANCY
CLERK OF COURTS
HAMILTON COUNTY, OH
2011 JUN 16 P 1: 36
FILED

THE STATE OF OHIO, HAMILTON COUNTY

COURT OF COMMON PLEAS

CRIMINAL DIVISION

STATE OF OHIO             :    Case No. B1003262

   Plaintiff               :    Judge Nadine L. Allen

   vs.                     :    <u>STATE'S RESPONSE TO
                                 DEFENDANT'S MOTION AND
RUBEN JORDAN              :    SUPPLEMENTAL MOTION FOR
                                 NEW TRIAL</u>
   Defendant               :

                          :

**D93497493**

Now comes the State of Ohio, by and through Assistant Prosecuting Attorney,

Seth S. Tieger, and respectfully petitions the Court to overrule the above Motions and

allow the jury verdict to stand.

The States position is that none of the Defendants arguments calling for a new

trial are well taken. The defense conduced a thorough, hard fought trial where all parties

followed the rules of law.

None of the arguments advanced by the defense regarding alleged new evidence

warrant a new trial. The issues raised by the defense are suited to appellate review after a

guilty finding by the jury, not by the trial court by means of a new trial.

<u>Response to Defendants Memorandum</u>

The Defendant alleges the defense attorneys were ineffective and that there was

prosecutorial misconduct that prevented the Defendant from receiving a fair trial.

The lead defense counsel is an experienced trial lawyer, having tried a large

number of homicide and other felonies over the course of his career. Ms. Berry alleges



EXHIBIT
13

that his performance "fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance" State v. McGhee 2009 WL2974890 (Ohio App 1 Dist 2009) citing Strickland v. Washington (1984) 455 US 668-686.

It was not demonstrated that counsels performance was deficient and that absent these alleged errors, the results of the trial would have been different. The review of counsel's performance must be "highly deferential." State v. Reid (2006) Hamilton County Court of Appeals C050465.

It is alleged that the defense team either did nor failed to do certain things that would have changed the outcome of the trial. The State strongly disagrees.

One of these contentions is that the defense should have introduced the Indictment and the Bill of Particulars in the Kareem Gilbert case B0901283. The theory is that these documents state that Mr. Gilbert, not Mr. Ruben Jordan was the killer of Mr. Davis. Supposedly, according to the motion, had the jury known this, there would have been a different outcome. What the motion fails to say is that the jury was informed of this information, starting in Voir Dire, through opening statement and through the States witnesses, including Det. Luke. The States Theory of the Case was that Mr. Gilbert was involved in that situation but that Mr. Jordan was the hands on killer of Mr. Davis.

The motion next contends that the defense should have "called" Anthony Jordan by way of introducing prior testimony. The State understands Evid Rule 804(A)5 and 804(B) 1, however case law is clear that the defense makes certain strategy decisions during the course of a trial that should not be disturbed. Mr. Anthony Jordan testified at the Juvenile Bind-Over and at the Forfeiture By Wrongdoing Motion before Judge Robert Winkler. During the Forfeiture motion he recanted most of his material earlier testimony

identifying Mr. Gilbert in the area having a weapon. Additionally, both Mr. Ruben Jordan and Mr. Gilbert both alibi themselves calling into question Anthony Jordan's statements. It is clear and it should not be disturbed that this was a trial strategy that Mr. Anthony Jordan would not have been an effective witness in the trial.

The motion next states that the State and Court acted improperly when Mr. Gilbert was testifying at the Ruben Jordan trial. It is contended that the State suggested to the jury to use Gilbert's plea statements for the truth of those statements. This just isn't so, because it was argued and the Court so instructed the jury that this was to impeach his trial testimony and only for that reason. The State followed all of the evidence rules in its playback of Mr. Gilbert's statement. The Court was clear and the State was also clear to the jury that the prior statement was not offered for the truth but to impeach Mr. Gilbert's trial testimony that neither he nor his father were at the scene of the Davis murder. State v. Dearmont 179 Ohio App 3d 63 (Clark County), State v. Jordan 167 Ohio App 3d 157 (Hamilton County).

Regarding the alleged "misplaced" letter attached to the motion, the State wishes this letter were produced by the defense at trial. A simple reading of this letter makes it clear that Mr. Gilbert admits he shot and killed Mr. Austin and that he "manned-up" for his own crime, that is the Austin murder. It is clear from a reading of this letter that Gilbert is taking responsibility for his own crime – the Austin murder – and that Mr. Jordan should take responsibility for Jordan's own crime – the Davis murder. This letter is easy to interpret and is very favorable to the State's theory of the case.

The motion next contends that the State called Mr. Gilbert and that we were "well-aware" that Gilbert was going to provide testimony that was adverse to the State

and favorable to Jordan". The motion goes on to state improper and misleading motives by the prosecutors. The defense arguments are completely without merit and backed up by no facts or evidence. The State and Court completely followed all rules of evidence regarding Gilberts surprise testimony. There is absolutely no evidence that Gilbert's recantation was anything but a total surprise to the State.

The Supplemental Motion filed by the defense simply restates in many ways its arguments in the earlier Motion. However, there is a new contention – that Kareem Gilbert "confessed" to the Davis murder at his own plea hearing on 5/18/11. Just like many of the outrageous contentions made in these motions, this is clearly untrue. Attached please find the transcript from that hearing. Nowhere in the record does Mr. Gilbert admit the Davis murder. The opposite is actually true – he admits the Austin murder but it is made clear by defense counsel, Ms. Gillespie, that Mr. Gilbert's trial testimony was true (that neither he nor his father had anything to do with the Davis murder because they were together in a different area). The fact that now Gilbert signed an affidavit is completely meaningless and without any merit.

In State v. Petro 76 NE 2d 370 (Ohio App 1947), the Ohio Supreme Court held that a new trial based on newly discovered evidence must show 1) discloses a strong probability that it will change the result of a new trial is granted 2) has been discovered since the trial 3) could not have been discovered before trial even with the exercise of due diligence 4) is material to the issues 5) is not merely cumulative to former evidence 6) does not merely impeach or contradict the former evidence.

Following this analyses, it is clear that the defense has not met the Petro standard.

For all of the above reasons the State asks the Court to deny the Defendants

Motions for New Trial.

Respectfully submitted,

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
946-3125

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon each party or attorney of record in the proceedings for each party by ordinary U.S. mail on the __16__ day of ____June____, 2011.

Seth S. Tieger, 0017339P
Assistant Prosecuting Attorney

1

```
 1
 2                COURT OF COMMON PLEAS
 3              HAMILTON COUNTY, OHIO
 4                     - - -
 5   STATE OF OHIO,            )
                              )
 6            PLAINTIFF,       )
                              )
 7                            )  CASE NO. B-0901283
                              )
 8    VS.                     )
                              )
 9   KAREEM GILBERT,          )
                              )
10            DEFENDANT.       )
11            TRANSCRIPT OF PROCEEDINGS
12
13   APPEARANCES:
14      ON BEHALF OF THE PLAINTIFF:
15              SETH TIEGER, ESQ.
16
17
18      ON BEHALF OF THE DEFENDANT:
19              ELIZABETH GILLESPIE, ESQ.
20          BE IT REMEMBERED that upon the PLEA
21   AND SENTENCING of this cause, on May 18, 2011,
22   before the Honorable Robert C. Winkler, a said
23   judge of the said court, the following
24   proceedings were had, to wit:
25
```

2

```
 1          MORNING SESSION, MAY 18, 2011
 2              P-R-O-C-E-E-D-I-N-G-S
 3          THE COURT:  We are on the record in
 4      State of Ohio v. Kareem Gilbert,
 5      B-0912383.  And we are here today
 6      pursuant to request of the State of Ohio
 7      that the separate agreement entered May
 8      18th of last year be enforced at this
 9      time.
10          And, Mr. Tieger, is there anything
11      you wish to add at this time?
12          MR. TIEGER:  Judge, I would make an
13      oral motion to vacate the prior plea that
14      was taken on May 18th, 2010.  Pursuant to
15      that agreement that Mr. Gilbert signed,
16      which is now unsealed, he agreed to give
17      truthful testimony in the case against
18      Ruben Jordan.  He violated that
19      agreement.  As a result, I would ask that
20      the prior plea be vacated.  I think Ms.
21      Gillespie has talked to Mr. Gilbert, and
22      part of that would be a plea to the
23      indictment as it would now be vacated if
24      the Court were to grant that.
25          THE COURT:  Okay.  All right.
```

3

1      Ms. Gillespie, ma'am, is there

2      anything concerning the State's request

3      at this point?

4      MS. GILLESPIE: Your Honor, the

5      defendant does not object to the State's

6      request to vacate the plea based upon the

7      terms of separate agreement that, like

8      you said, was placed under seal at the

9      time and has now been unsealed. However,

10     the only objection would be that the

11     basis is that Mr. Gilbert gave untruthful

12     testimony in the trial against his

13     father, Ruben Jordan.

14     He does admit that he broke his

15     contract with the State by, at some

16     point, giving incomplete information or

17     perhaps inaccurate testimony at the time

18     the agreement was made and thereby not

19     following through with that contract, and

20     so for that reason, he doesn't object to

21     the plea being vacated, but it is his

22     position that he gave truthful testimony

23     during the trial against his father.

24     THE COURT: Okay. But it was

25     apparently in conflict with his prior

1     testimony given to the State of Ohio and

2     the police authorities.

3         MR. TIEGER: Judge, I don't think

4     it was testimony. On May 17th of 2010 --

5     and this has been turned over to

6     Ms. Gillespie as well -- he gave a

7     statement to Cincinnati Police.

8     Ms. Shanahan and I were there.

9     Mr. Issenmann was there.

10        I believe it's a 49- or 50-page

11    document where he laid out exactly what

12    happened in his own murder, how he shot

13    and killed Mr. Austin, and, also, in the

14    Victor Davis murder, how his father had

15    shot and killed Mr. Davis. And he had

16    indicated to us at the time that this was

17    the truth about his own case and about

18    his father's own case, and we relied on

19    that, put that into the separate

20    agreement that the Court talked about.

21    Then, when he came in to the Ruben Jordan

22    trial, he basically said that none of

23    that was true in terms of his father,

24    that I think he said they were home,

25    maybe watching the Steelers game that

1     night, and thereby violated the agreement

2     he gave us May 18th of 2010.

3          THE COURT:  So the record is clear,

4     too, the agreement of May 18th of last

5     year has now been unsealed.  I have

6     actually marked a copy as Court's Exhibit

7     Number 1 for purposes of this record.

8     And based on my understanding of that

9     agreement and the motion that Mr. Tieger

10    has made, I will grant the State's motion

11    to withdraw the earlier plea of guilty as

12    a result of a breach of agreement marked

13    as Court's Exhibit Number 1.

14         (Whereupon, Court's Exhibit Number

15    1 was marked.)

16         THE COURT:  With that, Mr. Gilbert,

17    it is my understanding, given the fact

18    that your prior agreement has been

19    withdrawn, that you do wish to enter a

20    guilty plea today, sir; is that correct?

21         THE DEFENDANT:  Right.

22         THE COURT:  Okay.  I have here in

23    front of me two documents.  The first is

24    a waiver of trial by jury, followed by an

25    entry withdrawing plea of not guilty and

1    entering a plea of guilty to Count 1.

2    It's originally charged as aggravated

3    murder, a special felony.  It looks like

4    it's being reduced to, under Revised Code

5    Section 2903.02(A), to murder with a

6    firearm specification attached to

7    Count 1.  And it looks like you're also

8    entering a guilty plea to Count 2, having

9    weapons while under disability, a felony

10   of the third degree, sir.  Is that your

11   understanding?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  All right.  It looks

14   like the State is moving to dismiss

15   Counts 3, 4, and 5; is that correct,

16   Mr. Tieger?

17           MR. TIEGER:  That's correct.

18           THE COURT:  Mr. Gilbert, I have

19   here in front of me two documents.  The

20   first is the entry withdrawing your plea

21   of not guilty and entering a plea of

22   guilty, as I have outlined and discussed

23   that further.  Then, I also have a waiver

24   of trial by jury.  Have you read over

25   each one of those documents?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you fully understand

3   the contents of those documents?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Your attorney,

6   Ms. Gillespie, has reviewed these

7   documents with you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Has she explained

10  everything and answered all of your

11  questions, sir?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Has she also advised

14  you of all of the constitutional rights

15  you'll be giving up here today?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Mr. Gilbert.  Is this

18  your signature on the jury waiver, sir?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  All right.  Is it also

21  your signature, sir, on this guilty plea?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Okay.  Do you fully

24  understand the meaning of your signing --

25         MR. TIEGER:  I may not have signed

1    that.

2          THE COURT:  -- what it means to

3    sign those documents, sir?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Are you a citizen of

6    the United States?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Are you currently on

9    probation, parole, or any other type of

10   community control?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Today, you're not under

13   the influence of any drugs or alcohol,

14   are you?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  All right.  I take it

17   you're fully satisfied with

18   Ms. Gillespie's representation here today

19   as your attorney?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  In other words, she has

22   explained everything and answered any

23   questions you may have had throughout

24   these proceedings?

25         THE DEFENDANT:  Yes, sir.

1    THE COURT: Okay. Do you fully

2    understand what is happening here today,

3    sir?

4    THE DEFENDANT: Yes, sir.

5    THE COURT: Now, has anyone

6    promised you anything or offered you

7    anything or forced you in any way to

8    plead guilty here today, sir?

9    THE DEFENDANT: No, sir.

10    THE COURT: Are you doing this of

11    your own free will and accord, sir?

12    THE DEFENDANT: Yes, sir.

13    THE COURT: All right. Now, it

14    looks like, concerning Count 1 right now,

15    that carries with it a potential of life

16    without parole. It's my understanding

17    the State is moving to reduce and amend

18    that to a special felony. Is that

19    correct, Mr. Tieger?

20    MR. TIEGER: That's correct.

21    THE COURT: It will be pursuant to

22    Revised Code Section 2903.02(A). Is that

23    your understanding, Ms. Gillespie?

24    MS. GILLESPIE: Yes, Your Honor.

25    THE COURT: Do I have a motion,

1      Mr. Tieger?

2          MR. TIEGER: Judge, just that the

3      Court accept the State's reduction of

4      Count 1 from aggravated murder to murder.

5      I believe it's going to be a plea to

6      Spec 1 to Count 1, which is a three-year

7      spec and also Count 2, weapon under

8      disability.

9          THE COURT: What I will do is grant

10     the State's motion to reduce to murder,

11     now a violation of Revised Code Section

12     2903.02(A). And the significance for

13     you, Mr. Gilbert, is that you -- well, I

14     have no discretion. The sentence on a

15     murder charge is 15 years to life. Do

16     you understand that, sir?

17         THE DEFENDANT: Yes, sir.

18         THE COURT: All right. And, as a

19     result of the firearm specification

20     attached to Count 1, I'm required to

21     impose an additional three-year sentence

22     on that charge. Do you understand that,

23     sir, on that specification?

24         THE DEFENDANT: Yes, sir.

25         THE COURT: All right. Because it

1    is it has to be Specification 1 to

2    Count 1, because there is only one

3    specification attached, right?

4         MR. TIEGER: Right, there is -- the

5    way it got indicted, it wasn't a one-year

6    and a three-year spec. It was just a

7    three-year spec.

8         THE COURT: Do you understand what

9    is happening here, sir?

10        THE DEFENDANT: I'm facing life --

11   given life in jail?

12        THE COURT: Well, the sentence that

13   you're facing is 15 plus 3, which is 18

14   years to life, sir; do you understand

15   that?

16        THE DEFENDANT: Yes.

17        THE COURT: Again, I have no

18   discretion. This is not probationable.

19   The three-year-firearm specification must

20   be served prior to you serving any time

21   on the 15- to -life sentence for the

22   murder charge. The gist of this you will

23   receive a 18-year to -life sentence. Do

24   you understand that?

25        THE DEFENDANT: Yes, sir.

1        THE COURT: In addition, sir, it

2   appears that you're agreeing to that

3   sentence; is that correct?

4        THE DEFENDANT: Yes, sir.

5        THE COURT: All right. And is that

6   correct, Ms. Gillespie?

7        MS. GILLESPIE: Yes, Your Honor.

8        THE COURT: Okay.

9        Mr. Tieger.

10        MR. TIEGER: The State is agreeing

11   with it as well?

12        THE COURT: All right. Now, do you

13   understand, sir, when you plead guilty --

14        (Whereupon, an off-the-record

15   discussion was held.)

16        MS. GILLESPIE: He can't say you're

17   eligible. It's your decision whether or

18   not you get parole; do you understand

19   that?

20        THE DEFENDANT: Yes, ma'am.

21        THE COURT: Okay. And do you

22   understand, sir, that the sentence to

23   which you're agreeing there is the

24   maximum sentence under Count 1. Do you

25   understand that, sir?

 1          THE DEFENDANT:  Yes, sir.

 2          THE COURT:  Okay.  All right.  Now,

 3    concerning Count 2, that's a weapon under

 4    disability.  That's a felony of the third

 5    degree, and the maximum sentence on that

 6    will be a five-year term in the Ohio

 7    Department of Corrections and up to a

 8    $10,000 fine.  Sir, do you understand

 9    that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Okay.  And do you

12    further understand if you were to be

13    sentenced consecutively on each of these

14    charges, it looks like the maximum

15    sentence would be a 23-year term in the

16    Ohio Department of Corrections to life

17    and up to a $30,000 fine, sir?  That

18    would be the maximum sentence.  Do you

19    understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  But you're

22    agreeing you and the State of Ohio have

23    reached an agreement where you believe

24    that an 18-year to -life sentence is

25    appropriate.  Is that your understanding?

14

1 THE DEFENDANT: Yes, sir.

2 THE COURT: Mr. Tieger, I think you

3 have already said for the record that you

4 think that's an appropriate sentence?

5 MR. TIEGER: Yes, I do.

6 THE COURT: All right.

7 (Whereupon, an off-the-record

8 discussion was held between Ms. Gillespie

9 and the defendant.)

10 THE COURT: Okay. Now, when you

11 plead guilty, sir, it's a complete

12 admission of your guilt. Mr. Tieger is

13 going to read a brief statement of the

14 facts involved in Count 1. Once those

15 facts are read, I'll find you guilty of

16 murder, a special felony, along with

17 Specification 1 attached to Count 1, as

18 well as Count 2, weapons under

19 disability. Do you understand that, sir?

20 THE DEFENDANT: Yes, sir.

21 THE COURT: Do you still wish to go

22 forward with the guilty plea here today,

23 sir?

24 THE DEFENDANT: Yes.

25 THE COURT: Mr. Gilbert, it's my

1    intent to go forward with sentence today.

2    Do you understand what that means?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Now, once you're

5    received at the Ohio Department of

6    Corrections, you'll be required to submit

7    a DNA sample to the Ohio Department of

8    Corrections, sir.  Are you aware of that?

9            THE DEFENDANT:  What did you say?

10           THE COURT:  You'll have to give a

11   DNA sample to the Ohio Department of

12   Corrections once you're received there.

13   Do you understand that?

14           THE DEFENDANT:  Okay.

15           THE COURT:  Now, once you have

16   served -- well, you know what?  Since

17   this is murder, you will be under the old

18   parole system.  Do you understand that,

19   sir?

20           THE DEFENDANT:  What you mean by

21   "old parole"?

22           THE COURT:  You're not subject to

23   post-release control, but you would be

24   subject to parole at some point.  Do you

25   understand that, sir?

```
 1              THE DEFENDANT:  What you mean?

 2              MS. GILLESPIE:  Parole, not

 3    post-release control.

 4              THE DEFENDANT:  All right.  Yes.

 5              THE COURT:  Maybe I shouldn't call

 6    it "the old system," but it's the system

 7    in place which you would be subjecting

 8    yourself to once you have served your

 9    sentence, sir.

10              THE DEFENDANT:  Yes.

11              THE COURT:  Do you understand there

12    may be some restrictions on you while

13    you're on parole?

14              THE DEFENDANT:  How long you say I

15    get on parole?

16              MS. GILLESPIE:  I don't know.

17              THE COURT:  It's up to them how

18    long they keep you on parole.

19              THE DEFENDANT:  All right.

20              THE COURT:  If you violate any

21    terms or conditions of your parole, you

22    understand you can always be sent back to

23    prison, sir?  Are you aware of that?

24              THE DEFENDANT:  Okay.

25              THE COURT:  All right.  I know
```

1    Ms. Gillespie has gone over all of your

2    constitutional rights with you, but I'd

3    like to he review those rights at this

4    time.

5           First of all, you have a right to a

6    jury trial here today, Mr. Gilbert.  Do

7    you understand that?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  All right.  Now, if I

10   accept this waiver of trial by jury that

11   you have indicated to me you have read

12   over, that you understand, and you

13   signed, I'll be the one that determines

14   your guilt based upon the guilty plea,

15   sir?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you still wish to

18   give up your right to a jury trial and

19   plead guilty?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Now, I know,

22   Ms. Gillespie, you have had an

23   opportunity to discuss with Mr. Gilbert

24   his right to jury trial.  And after your

25   discussions, in your opinion, is he

1 making a knowing, intelligent, and a

2 voluntary waiver here today?

3  MS. GILLESPIE: Yes, Your Honor.

4  THE COURT: All right.

5 Mr. Gilbert, I'll accept your waiver of

6 trial by jury.

7  And, Mr. Gilbert, you also have the

8 right to require that the State of Ohio

9 prove you guilty beyond a reasonable

10 doubt on each and every element of each

11 one of these offenses to which you're

12 pleading guilty, which includes murder, a

13 firearm specification, and a weapons

14 under disability. Sir, do you understand

15 what that means?

16  THE DEFENDANT: Yes, sir.

17  THE COURT: Okay. Now, if this

18 case were to proceed to a trial,

19 Ms. Gillespie, through you, would have

20 the right to subpoena in witnesses that

21 would testify on your behalf, sir. Do

22 you understand that?

23  THE DEFENDANT: Yes, sir.

24  THE COURT: Then she could also

25 cross-examine any of the State's

1  witnesses that were called in to testify

2  against you, sir. Do you understand

3  that?

4       THE DEFENDANT: Yes, sir.

5       THE COURT: Then nobody could force

6  you or compel you in any way to testify

7  against yourself at the trial. If you

8  choose not to offer any testimony at your

9  own trial, nobody could comment on the

10  fact that you did not testify, sir. Do

11  you understand that?

12       THE DEFENDANT: Yes, sir.

13       THE COURT: Finally, any appeal of

14  any sentence must be filed within 30 days

15  of sentence, sir. Do you understand

16  that?

17       THE DEFENDANT: What is that?

18       MS. GILLESPIE: If you want to

19  appeal.

20       THE COURT: If you want to appeal,

21  you have to let Ms. Gillespie know, and

22  she will file the appropriate paperwork

23  with the Court of Appeals. If you cannot

24  afford an attorney, one will be appointed

25  at no cost to represent you on that

1    appeal, sir.  Do you understand that?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Do you understand all

4    of your constitutional rights, sir?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  Do you have any

7    questions at all, sir?

8         THE DEFENDANT:  No, sir.

9         THE COURT:  Let me ask you this,

10   Mr. Gilbert:  What do you expect to

11   happen here today, sir?

12        THE DEFENDANT:  I have got to man

13   up to my consequences and own up to what

14   I did.

15        THE COURT:  Anything, Ma'am, before

16   we hear the facts?

17        MS. GILLESPIE:  No, Your Honor.

18        THE COURT:  Mr. Tieger, go ahead.

19        MR. TIEGER:  Judge, on Count 1,

20   Kareem Gilbert, on or about the 16th of

21   October, 2008, Hamilton County, State of

22   Ohio, purposely caused the death of Brian

23   Austin.  At the time, he did have on or

24   about his person or under his control a

25   firearm while committing the offense of

1    murder, displayed, brandished, or

2    indicated he possessed it to facilitate

3    the offense.

4         Count 2, same date, time, Hamilton

5    County, knowingly had, acquired, carried,

6    or used a firearm -- in this case, a

7    handgun -- he knew he was under

8    indictment for or had been convicted of

9    an offense involving the illegal

10   possession of, sale of, use of,

11   administration of, distribution of, or

12   trafficking in any drug of abuse or has

13   been adjudicated a delinquent child for

14   the same items in this case, possession

15   of cocaine, Hamilton County, Ohio,

16   Juvenile Court, Case Number 06007072, on

17   5/12/2006.  At the time, the defendant

18   had not been relieved from such

19   disability pursuant to Section 2923.14 of

20   the Revised Code.

21        Judge, we have been through this a

22   lot, but basically what happened was, it

23   was around 1:00 in the morning on that

24   date.  Mr. Austin and Mr. Davis were at

25   or about the corner of Elder and

1  Republic.  There was a verbal dispute
2  between Mr. Gilbert and Mr. Austin.  It
3  got a little bit physical.  It ended up
4  with Mr. Austin throwing or hitting
5  Mr. Gilbert with his meatball sub.  It
6  got on Mr. Gilbert's white T-shirt.  He
7  left the scene.  He went to a hiding
8  place that he had around the corner, got
9  his .40 caliber handgun, returned to the
10  scene and shot Mr. Austin numerous times.
11      Mr. Austin tried to run away, but
12  he only made it as far as across the
13  street before he was gunned down and died
14  in the street there on Elder Street.
15  Then Mr. Gilbert fled the scene.
16      THE COURT:  Okay.  All right.
17  Thank you.
18      Anything on those facts?
19      MS. GILLESPIE:  Nothing on the
20  facts, Your Honor.
21      THE COURT:  All right.
22  Mr. Gilbert, based upon what I have heard
23  here today, I will find you understand
24  all of the rights you're giving up.
25      You understand the nature of the

23

1      charges against you, the effect of the

2      guilty plea, as well as the maximum

3      possible sentence you will be facing

4      here.  I'll find the plea to be voluntary

5      and accept it.  I will make a guilty

6      finding as to Count 1, as reduced.  It's

7      murder, a violation of Revised Code

8      Section 2903.02(A), as well as

9      Specification 1 to Count 1, which is a

10     three-year firearm specification, and

11     guilty on Count 2, weapons under

12     disability, a felony of the third degree.

13           Now, with that, Ms. Gillespie,

14     anything you wish to say by way of

15     mitigation?

16           Before you do, I will also dismiss

17     Count 3, Count 4, as well as the

18     specification attached to Count 4, and

19     then Count 5.

20           Is there anything you want to say

21     by way of mitigation, ma'am?

22           MS. GILLESPIE:  Your Honor, in

23     mitigation, Mr. Gilbert was young.  At

24     the time this occurred, I believe he was

25     16 years old.

1  THE DEFENDANT:  Yes.

2  MS. GILLESPIE:  We would ask that

3  the Court take that into consideration.

4  Obviously, this does not make the crime

5  any less severe, but I think that it goes

6  into Mr. Gilbert's ability to make wise

7  decisions and also the possibility that

8  in the future he could correct this type

9  of thinking and this behavior and change

10  for the better.

11  Your Honor, in addition, as the

12  State has put on the record and the Court

13  is well aware, the defendant did enter a

14  plea this time last year, and the plea

15  negotiations were based on an agreement

16  to testify against his father.  Your

17  Honor, I think that played a role in his

18  decision to eventually tell the truth.

19  It is his position that he told the truth

20  on the stand and that he had lied prior

21  to that to the State and to the officers

22  in order to get a better deal for

23  himself.

24  Your Honor, with that being said, I

25  would ask that the Court grant him the

1    sentence that has been agreed upon by the

2    State and by the defendant at this time.

3         THE COURT:  Okay.  Thank you,

4    ma'am.

5         Mr. Gilbert, is there anything you

6    want me to know, sir?

7         THE DEFENDANT:  No.

8         THE COURT:  Okay.  All right.

9         Mr. Tieger, anything, sir?

10        MR. TIEGER:  Judge, I know this

11   case has a lengthy history.  We went

12   through the whole forfeiture by

13   wrongdoing hearing.  That was a long time

14   ago it seems.  We had a trial set for

15   Mr. Gilbert.  Then he told us what we

16   believed was the truth about his own

17   involvement in his own murder, but then

18   his father's involvement in the death of

19   Victor Davis.

20        Mr. Jordan then was indicted.

21   There was a trial on that.  There was

22   DNA.  I don't know how much the Court

23   knows about that case, but there was -- a

24   very critical part of that case was DNA,

25   which was, I believe, a large amount of

1    spit which was right next to Mr. Davis'

2    body, that turned out to be the DNA of

3    Ruben Jordan.

4         There are other witnesses involved

5    in that case, too, where he had admitted

6    to another person or people that he was

7    the killer of Mr. Davis. He was

8    convicted by a jury. He got a life

9    sentence.

10        During that trial, as Ms. Gillespie

11    said, Mr. Gilbert recanted his 50-page --

12    some of it -- statement, especially as it

13    pertained to Mr. Jordan, him

14    eyewitnessing the murder of Mr. Davis,

15    and saying his father was the one that

16    had killed him. I think he said they

17    were both at home on Hearne Avenue

18    watching a football game.

19        Judge, as far as Kareem, as the

20    Court knows, an important part of the

21    criminal justice system is codefendants

22    and other inmates cooperating against

23    defendants in cases. We take that very

24    seriously because an important part of

25    that is that, when a defendant asks for

1   case consideration for truthful

2   testimony, that's done like in this case,

3   so that you get the actual hands-on

4   killer of a person, so that somebody

5   that's a killer, like in this case,

6   Mr. Gilbert, gets a flat-time sentence,

7   and it's a weighing process that we have

8   to go through.

9       But we felt, in his case, it was

10  important to get justice for Mr. Davis

11  and get the hands-on killer of Mr. Davis

12  at the same time as getting Mr. Gilbert a

13  significant penitentiary sentence, which

14  in this case was 18 years flat.

15      But, because we take that

16  seriously, we also take a violation

17  seriously. So, when Mr. Gilbert didn't

18  follow through as he has agreed, there

19  has to be a price to pay because we will

20  follow through. Just like we do in

21  enforcing if they do cooperate, we will

22  also follow through if they do not

23  cooperate.

24      So now, in this case, what was

25  supposed to be the cooperating

1   codefendant in this case, Kareem Gilbert,

2   when he came to court and recanted, at

3   that point, he violated his agreement,

4   which made us go forward against him at

5   this point.  And now, instead of a flat

6   18-year sentence, he can be doing his own

7   life sentence along with his father

8   that's doing a life sentence as well.

9       THE COURT:  Thank you, Mr. Tieger.

10       So the record is clear, the prior

11   plea entered last year, May 18th, 2010,

12   and the sentence imposed each are

13   withdrawn.

14       So what I am going to do here

15   today, Mr. Gilbert, is based upon what I

16   have heard and what I know about this

17   case -- as Mr. Tieger said, it has a long

18   history -- I don't see any reason not to

19   abide by the agreement that you and the

20   State of Ohio have reached concerning

21   your sentence.  So on Count 1, which is

22   the murder, a special felony, the

23   sentence of the Court is you be confined

24   to the Ohio Department of Corrections for

25   a period of 15 years to life.  I will

1    assess court costs.  I will not fine you.

2         In addition, Specification 1 to

3    Count 1, as you know, there is a

4    mandatory three-year sentence on that to

5    be served prior to and consecutively to

6    the sentence imposed in Count 1 for a

7    total of 18 years to life in the Ohio

8    Department of Corrections.

9         Now, Count 2, the weapons under

10   disability, a felony of the third degree,

11   that sentence will be a five-year

12   sentence in the Ohio Department of

13   Corrections.  I will assess costs.  That

14   will be served concurrently, or together,

15   with your sentence in Count 1.  So the

16   gist of that, Mr. Gilbert, is that you

17   just received a 18-year to -life sentence

18   in the Ohio Department of Corrections.

19        I will remind you that you have

20   thirty days to file an appeal.  If that's

21   what you wish to do, let Ms. Gillespie

22   know.  She will file the appropriate

23   paperwork with the Court of Appeals.  And

24   I am going to commit you to the custody

25   of the sheriff at this time.

1          Anything else?

2          MS. GILLESPIE:  Your Honor, just

3     that we wanted to put on the record that

4     Mr. Gilbert will receive credit for any

5     time he is entitled.

6          THE COURT:  Credit any time to

7     which you're entitled, which starts at

8     the date of your arrest, which we'll

9     calculate.

10          MR. TIEGER:  I believe it was

11     December 31st, 2008.

12          THE DEFENDANT:  I just wanted to

13     say I'm sorry for what happened.  It's my

14     mistake what I did.  I wasn't really

15     thinking, and I'm just tired for real.  I

16     just want to move on to my consequences,

17     I'm sorry for what is going on.  I just

18     got into a fight.  It was over.  It

19     wasn't supposed to go on.  Like, I'm just

20     tired for real.  That's all.

21          THE COURT:  Okay.  Well, based upon

22     what Mr. Tieger said, you left, and you

23     should have never come back.  You

24     wouldn't be standing right here if you

25     had just left.

1        THE DEFENDANT:  Yeah.

2        THE COURT:  All right.  Sir, I'm

3   committing you to the custody of the

4   sheriff.  Once you're released, keep

5   yourself out of trouble.

6        THE DEFENDANT:  Okay.

7        MR. TIEGER:  Thank you, Your Honor.

8        MS. GILLESPIE:  Thank you, Judge.

9   Kareem, good luck.

10        THE DEFENDANT:  Thank you.

11   Appreciate it.

12        MS. GILLESPIE:  Okay.

13        (whereupon, the proceedings were

14   concluded.)

15

16

17

18

19

20

21

22

23

24

25

32

1

2                    C-E-R-T-I-F-I-C-A-T-E

3

4

5              I, DEBORAH KAHLES, RPR, AN OFFICIAL

6    COURT REPORTER IN THE HAMILTON COUNTY COURT OF

7    COMMON PLEAS, DO HEREBY CERTIFY THAT AT THE

8    SAID TIME AND PLACE STATED HEREIN I RECORDED IN

9    STENOTYPE AND THEREAFTER TRANSCRIBED THE WITHIN

10   PAGES AND THAT THE FOREGOING TRANSCRIPT IS A

11   TRUE AND ACCURATE TRANSCRIPT OF MY SAID

12   STENOGRAPHIC NOTES.

13              IN WITNESS HEREOF, I HEREUNTO SET MY

14   HAND THIS 23rd DAY OF May, 2011.

15

16

17          _____

18          DEBORAH KAHLES, RPR
            OFFICIAL COURT REPORTER
            COURT OF COMMON PLEAS
19          HAMILTON COUNTY, OHIO

20

21

22

23

24

25

## IN THE HAMILTON COUNTY COURT OF COMMON PLEAS
### CRIMINAL DIVISION

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | **Case No. B1003262** |
| **Plaintiff,** | : | |
| | : | |
| | : | **Judge Nadine Allen** |
| **v.** | : | |
| | : | |
| | : | |
| | : | **MOTION TO WAIVE HEARING** |
| **RUBEN JORDAN** | : | **& SUBMIT MOTION FOR NEW** |
| | : | **TRIAL & SUPPLEMENTAL** |
| **Defendant.** | : | **MOTION FOR NEW TRIAL FOR** |
| | : | **DECISION BASED ON THE** |
| | : | **FILINGS** |

Now comes Defendant Ruben Jordan, by and through counsel, who respectfully waives the hearing scheduled for June 23, 2011 and requests the Court to decide the Motion for New Trial and Supplemental Motion for New Trial based on Jordan's filings (respectively filed February 7, 2011 and May 23, 2011).

Counsel for the State (Seth Tieger) has been notified by the undersigned counsel on two occasions that Jordan would likely seek the Court's ruling based solely on the written motions without a hearing. Now, this Motion serves as final notice that Jordan waives the hearing and submits the Motion for decision based on the February 7, 2011 and May 23, 2011 filings. The case is now ripe for decision.

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

SCANNING
HAMILTON COUNTY
CRIMINAL DIVISION
CLERK OF

2011 JUN 21 P 10: 25

FILED

EXHIBIT
14

D93566588

1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served on the Hamilton County

Prosecutor this 21st day of June 2011.

_____

Michele L. Berry

IN THE HAMILTON COUNTY COURT OF COMMON PLEAS
CRIMINAL DIVISION

STATE OF OHIO                       :
                                    :        Case No. B1003262  2011 SEP 12 P 3: 14
                Plaintiff,          :
                                    :
                                    :        Judge Nadine Allen  FILED
v.                                  :
                                    :
                                    :
RUBEN JORDAN                        :
                                    :        **BRIEFING ON ADDITIONAL**
                Defendant.          :        **CASES AS REQUESTED BY THE**
                                    :        **COURT REGARDING THE EVID.**
                                    :        **R. 613(B) ISSUE**


The Court requested counsel for Defendant Ruben Jordan and counsel for the State to

brief six additional cases regarding the Evid. R. 613(B) issue raised in Jordan's Motion for New

Trial and the Supplemental Motion for New Trial—that issue being that the State improperly

played/admitted Kareem Gilbert's entire recorded statement (extrinsic evidence of a prior

inconsistent statement) and a transcript of the same despite that Gilbert had already admitted to

making the prior inconsistent statement.

The six cases, which include an Ohio Supreme Court case and a First District case, **all**

indisputably confirm Jordan's position that when a witness admits to making the prior

inconsistent statement, extrinsic evidence of that statement is inadmissible.  Furthermore,

reversible error attaches when erroneous admission of such extrinsic evidence results in

prejudice to the defendant.  As a matter of black letter law, these legal principles (confirmed in

all six cases) support Jordan's claims that: (1) Gilbert's prior inconsistent statement should not

have been played for the jury because he admitted to making the statement; and that (2) playing

the statement resulted in the ultimate prejudice to Jordan.



1



When the extrinsic evidence in question proves each and every element of the State's case, erroneous admission of such necessarily results in the ultimate prejudice to the defendant. Practically speaking, jurors are unable to disregard the substance of the statement even if they are instructed to use the prior inconsistent statement solely for impeachment purposes.

Here, Gilbert claimed in the recorded statement to have been an eyewitness to Defendant Ruben Jordan shooting Victor Davis. If believed, the substance of the recording essentially proved the State's entire case against Jordan. The jurors undoubtedly found themselves comparing Gilbert's in-court testimony to the *substance* of his prior inconsistent out-of-court statements and deciding which statement to believe.

Moreover, because prior inconsistent statements can be used solely for purposes of impeachment (and not for their truth), the jurors had the basis of knowledge necessary to judge Gilbert's credibility as a witness as soon as he admitted making the prior inconsistent statement. In sum, once Gilbert admitted to making the prior inconsistent statements and the jury observed Gilbert on the stand making such admission, the State's impeachment of Gilbert in this regard was complete. Using extrinsic evidence to further prove the prior inconsistent statement was not only unnecessary and impermissible according to the Rules of Evidence, but also contrary to Jordan's Fifth, Sixth, and Fourteenth Amendment rights.

## ANALYSIS OF THE SIX CASES

The six cases are discussed in turn as follows:

### I. *State v. Keith* (1979) 79 Ohio St. 3d 514.

In *State v. Keith*, the Ohio Supreme Court confirms Jordan's contention that when a witness admits to having made a prior inconsistent statement, extrinsic evidence of the statement is inadmissible. In *Keith*, extrinsic evidence (a video recording of a news interview) was played

2

during the trial because the witness in question **denied** making the statement in question.  On

appeal, the Supreme Court upheld the use of extrinsic evidence because according to Rule

613(B), the proper foundation was laid when the witness denied making the statement.

Defendant Keith presented his aunt as an alibi witness who testified that the defendant

was at home with her during the time the killing took place.  On cross-examination, the alibi was

asked if she told a television interviewer, "I can't say that [the defendant] was with me during the

killings."  In response to the question on cross-examination, she **denied** making the statement.

Consequently, in its case-in-rebuttal, the state presented a video of the news segment airing her

prior inconsistent statement.  The defendant appealed the fact that the court played the video, but

to no avail because the witness had denied making the statement.  Therefore, the court was

within its discretion to permit the state to play the recording for impeachment purposes.

The *Keith* case continues with a discussion of a curative instruction issued to the jury.

The defendant challenged the adequacy of this instruction to properly explain why the jury could

not view the video of the news segment during deliberations.

It is important for this Court to understand that the discussion in *Keith* about whether a

jury instruction is adequate to explain the proper use of extrinsic evidence is inapposite to the

issue at bar.  In *Keith*, the use of extrinsic evidence was proper, whereas here, it is improper and

highly prejudicial.  As explained, the proper foundation to play Gilbert's statement was never

laid.  Therefore, a limiting instruction (as offered by the Court in Jordan's case) is insufficient to

cure the error of playing Gilbert's prior statement.  Instead, the jury should have been limited to

its in-court observations of Gilbert as he admitted to making the prior inconsistent statements.

Unlike in *Keith*, the jury never should have had access to extrinsic evidence of Gilbert's

statements to begin with.  Accordingly, the improper use of the extrinsic evidence cannot be

3

cured by limiting the jury in its use of extrinsic evidence that it never should have heard, read, or otherwise had access to. For this reason, a jury instruction is *per se* insufficient to cure the improper admission of extrinsic evidence of Gilbert's statements.

This is a situation akin to a *Bruton* scenario in which the incriminating extrajudicial statements of a co-defendant are given to a jury to supposedly consider against one co-defendant in a joint trial but not the other. As the U.S. Supreme Court explained in *Bruton v. United States*, 391 U.S. 123, 135-36 (1968), "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." For this reason, the Supreme Court found that a limiting instruction is *per se* ineffective because a jury, as a panel of human beings, cannot dismiss from their minds the extremely prejudicial statements, which if true, prove the State's entire case. *Id.* at 131.

Such is the case here. A jury should have never: (1) had access to extrinsic evidence of Gilbert's statement; or (2) considered the substance of Gilbert's prior inconsistent statement for its truth or consistency with other testimony and evidence presented in trial. And once: (1) given access to extrinsic evidence of Gilbert's statement; and (2) urged by the State during closing argument to consider the substance and truth of Gilbert's statement (**See Section II. B. of Jordan's Supplemental Motion for New Trial[1]**)—it is not realistic to believe that a jury will

---

[1] In closing argument, the State repeatedly referred to the substance of Gilbert's statements and urged the jury to consider the statement for its **truth.** *See* T.p. Vol. VIII at 917-918). ("And Kareem Gilbert. Again, the defense is asking you to believe what he said in court was true…But as you play the statement…if you read that statement…**The statement has to be truthful.**"); *see also Id.* at 924 l. 11-25 and 925 l. 14-24 (wherein the state, during closing argument, points to details in Gilbert's recorded statement to police (the prior inconsistent statement) and urges the jury to compare the statements to corroborating testimony given in court, such as the number of shots fired, where the car was located, and the lack of shell casings at the crime scene).

4

follow a limiting instruction. As the Supreme Court recognized in *Bruton*, it is impractical to expect the jury to consider the contents of Gilbert's statement only for purposes of evaluating Gilbert's in-court credibility rather than for its substance when Gilbert's statement includes claims that he observed Jordan shoot Victor Davis. Therefore, a jury instruction is *per se* ineffective to cure the fact that the jury heard the recording in court (extrinsic evidence) and was given the recording and transcript (extrinsic evidence) of Gilbert's prior inconsistent statement to consider during deliberations.

## II. *State v. Carusone*, 2003 Ohio 1018 (Ohio App. 1 Dist. 2003).

The factual scenario addressed in *Carusone* is quite similar to Defendant Jordan's case, although the 613(B) question in *Carusone* involved an erroneous admission of extrinsic evidence far less prejudicial to the defendant. Specifically, the subject matter of the extrinsic evidence in *Carusone* pertained to collateral matters "irrelevant" to the case at hand. 2003 WL 832061 at ¶ 34, 38. Whereas in Defendant Jordan's case, the extrinsic evidence, if believed and considered for its truth, proves the State's entire case. Despite the "irrelevant" subject matter of the prior

---

Clearly, the State urged the jury to consider the truth of Gilbert's statement to the police (the prior inconsistent statement) wherein he stated that he observed his father, Ruben Jordan, shoot Victor Davis. In other words, the State, in closing, asked the jury to (1) identify details in Gilbert's statement; (2) compare those details to corroborating testimony given by other witnesses; (3) note the similarities; (4) believe Gilbert's prior statement; and (5) accordingly, disbelieve Gilbert's testimony. It is wholly improper to ask the jury to consider the substance of Gilbert's statement to police, such as details of the statement, and compare the substance of the statement to corroborating testimony, because this process, by definition, requires the jury to consider Gilbert's prior inconsistent statement for its truth rather than for impeaching Gilbert's in-court testimony.

In sum, the jury's duty was not to ask, "Which of Gilbert's statements do I believe: his testimony or his prior inconsistent statement to police?" Instead, the jury was required to determine whether to believe Gilbert's in-court testimony given the fact that he gave a prior inconsistent statement to police. Asking the jury to consider the substantive details of Gilbert's prior statement and compare them to the testimony given by the detectives and other state witnesses is akin to asking the jury to consider the truth of inadmissible hearsay.

5

inconsistent statements in *Carusone*, the First District held that the trial court committed reversible error in admitting extrinsic evidence of such statements.

While the First District omits any discussion of whether the witness in *Carusone* admitted, denied, or failed to recall the prior inconsistent statement in question, the discussion implies that the witness either denied or failed to recall the statement. The witness necessarily had to have denied or failed to recall the statements, because the *Carusone* case turns on whether the admission of extrinsic evidence on an "irrelevant" topic constitutes reversible error. And when the defendant denies or fails to recall the prior inconsistent statement, and the subject matter of the statement is a "collateral matter to the issue being tried" whether to admit the prior inconsistent statement is within the trial court's sound discretion. 2003 WL 832061 at ¶ 37. In other words, the admissibility of extrinsic evidence involving a "collateral matter" only arises when the witness denies or fails to recall the statement. In contrast, the witness in the instant case (Gilbert) admitted his prior inconsistent statement.

Despite this key distinction between *Carusone* and the instant case, the *Carusone* case is instructive to Jordan's case on two counts. First, it affirms the proper foundation for the admission of extrinsic evidence under Rule 613(B)—"extrinsic evidence is only admissible when a witness denies making a prior statement or states that he is unable to recall the prior statement." 2003 WL 832061 at ¶ 37. Second, *Carusone* is instructive for its finding of prejudice to the defendant in a factual scenario far less damaging to the defendant than the scenario involved in the instant case.

Regarding the first count, the First District explains that, "when a witness denies making a prior statement, or states that he is unable to recall the prior statement, the prior inconsistent statement may be proved by extrinsic evidence." 2003 WL 832061 at ¶ 37. Furthermore,

6

"whether to admit a prior inconsistent statement which is collateral to the issue being tried and pertinent to the credibility of a witness is a matter within the trial court's sound discretion." *Id.* In *Carusone*, the trial court decided that the subject matter of the prior inconsistent statements pertained to collateral matters "irrelevant" to the case at hand, thus making it easy for the defendant to argue that the prejudice outweighed the probative value of the prior inconsistent statements. 2003 WL 832061 at ¶ 34. Nevertheless, the trial court admitted extrinsic evidence of the statements, failed to redact prejudicial "other acts" evidence, and failed to instruct the jury to only consider the statements as impeachment evidence and not as substantive evidence. Furthermore, in closing, the state in *Carusone* encouraged the jury to use the statements as substantive evidence—just as the State did here[2]. For these reasons, the First District reversed on the basis of the erroneous admission of extrinsic evidence under Rule 613(B).

Regarding the second count, in *Carusone* the subject matter of prior inconsistent statements pertained to "collateral matters" that the trial court (and the First District) deemed "irrelevant" to the case at hand. 2003 WL 832061 at ¶ 34. Accordingly, the trial court had the discretion to admit the extrinsic evidence because it involved "collateral matters."[3] Furthermore, the lack of probative value made it easy for the defendant to demonstrate a level prejudice that outweighed what little probative value the statements carried.

---

[2] In closing, the State repeatedly referred to the substance of Gilbert's statements and urged the jury to consider the statement for its **truth.** *See* T.p. Vol. VIII at 917-918). ("And Kareem Gilbert. Again, the defense is asking you to believe what he said in court was true…But as you play the statement…if you read that statement…**The statement has to be truthful.**"); *see also Id.* at 924 l. 11-25 and 925 l. 14-24 (wherein the state, during closing argument, points to details in Gilbert's recorded statement to police (the prior inconsistent statement) and urges the jury to compare the statements to corroborating testimony given in court, such as the number of shots fired, where the car was located, and the lack of shell casings at the crime scene).

[3] "Whether to admit a prior inconsistent statement which is collateral to the issue being tried and pertinent to the credibility of a witness is a matter within the trial court's sound discretion." 2003 WL 832061 at ¶ 37.

Jordan's case, in contrast, could not involve a more prejudicial statement than Gilbert's prior inconsistent statement to police. And the use/admission of extrinsic evidence of Gilbert's statement is absolutely improper.

The problems in *Carusone* identified by the First District were: (1) the lack of a jury instruction explaining that the extrinsic evidence was to be used solely for impeachment; (2) the prosecutor encouraging the jury to use the extrinsic evidence as substantive evidence; and (3) the trial court's failure to redact the prejudicial "other acts" evidence involved in the extrinsic evidence.

Applying these three concerns to Defendant Jordan's case (as explained above and in the Supplemental Motion for New Trial), the jury instruction given by the Court was insufficient to cure the improper admission of Gilbert's recorded statement because the jury never should have had access to this statement. The improper admission of extrinsic evidence cannot be cured by limiting the jury's use of extrinsic evidence that it should have never heard, read, or otherwise had access to—especially when its substance proves the State's entire case. Second, like the state in *Carusone,* the State in this case encouraged the jury to consider the truth of Gilbert's recorded statement. When urged by the State in its closing argument to consider the truth of the recording, one cannot reasonably expect the jurors to follow the limiting instruction and completely disregard the contents of Gilbert's statement that they never should have heard or read. Finally, because Gilbert admitted to making the prior inconsistent statement, extrinsic evidence of such never should have been admitted in whole or part. Thus, a redacted version of Gilbert's statement would be equally improper.

8

### III. *State v. Hill*, 2004 Ohio 2048 (Ohio App. 2 Dist. 2004).

In *Hill*, the Second District found that extrinsic evidence of the complaining witness's prior inconsistent statement was improperly admitted but that such admission constituted harmless error. In so holding, the Second District adhered to the same principle—that extrinsic evidence of a prior inconsistent statement made by a witness is not admissible if the witness admits to making the prior inconsistent statement. 2004 WL 870439 at ¶ 40. In *Hill*, the complaining witness admitted making the prior inconsistent statements. Nevertheless, the trial court admitted extrinsic evidence of the statement. While the Second District found admission of the extrinsic evidence to be improper, the court deemed the erroneous admission harmless error because during cross-examination the witness admitted each line of her prior inconsistent statement. Accordingly, admission of the written statement did not result in the jury having access to any statements it had not already heard during cross-examination. In other words, the jury had already heard the contents of the prior inconsistent statement during a thorough and proper cross-examination in which the defense attorney asked the complaining witness to admit or deny each line of the prior statement. Consequently, admission of the statement did not prejudice the defendant.

As explained above and in Jordan's Supplemental Motion for New Trial, the improper admission of Gilbert's recorded statement creates the ultimate prejudice to Jordan. Once Gilbert admitted the prior inconsistent statement, the jury should have never heard, read, or otherwise had access to Gilbert's statement. Instead, the jury heard and read a statement that proved the State's entire case.

To be sure, the State could have engaged in more thorough cross-examination, as described in *Hill*, asking Gilbert to admit or deny each line of his prior inconsistent statement.

9

Instead, however, the State chose to ask Gilbert to comprehensively admit or deny the statement as a whole. Once Gilbert admitted to making the prior inconsistent statement, the State could not use extrinsic evidence to demonstrate the prior inconsistent statements. This logically follows from the fact that Gilbert's prior inconsistent statements could be used by the jury solely for impeachment purposes—to decide whether Gilbert was believable as a witness as he testified in court before the jury—not for the jury to compare Gilbert's in-court testimony to his prior inconsistent out-of-court statements for the jury to decide which statements to believe.

**IV.** *State v. Mulvey,* **2009 Ohio 6756 (Ohio App. 7 Dist. 2009).**

The Seventh District in *Mulvey* affirmed the trial court's ruling prohibiting the admission of extrinsic evidence (a written statement) of a witness's prior statement. Like *Hill*, the defense attorney engaged in a rigorous cross-examination of the witness, asking the witness about his statement line by line. In this process, the witness ultimately admitted that his written statement omitted the additional details to which he testified during his direct testimony. Accordingly, the trial court held that if the statements could even be construed as inconsistent (rather than simply less-detailed prior statements versus more-detailed testimony), the admission of extrinsic evidence was improper because the witness admitted that the written statement omitted the details about which he testified in his direct testimony. The Seventh District affirmed, holding that "because a witness's admission of inconsistency of a prior statement renders extrinsic evidence of the prior statement inadmissible, the trial court did not err…let alone abuse its discretion, in disallowing the admission of extrinsic evidence." 2009 WL 4895265 at ¶ 70.

Here, as explained above, the State could have engaged Gilbert in a rigorous line-by-line inquiry, asking him to admit or deny each individual statement of his recorded statement. However, the State chose to ask Gilbert to comprehensively admit or deny the statement as a

whole. Once Gilbert admitted to making the prior inconsistent statement, the State could not use extrinsic evidence to demonstrate the prior inconsistent statements.

### V. *State v. Sales,* 2011 Ohio 2505 (Ohio App. 9 Dist. 2011).

The factual scenario involved in *Sales* is vastly distinguishable from the instant case, but the Rule 613(B) ruling is consistent with the body of law already discussed. In *Sales,* during cross-examination both witnesses admitted that their prior statements omitted details about which they testified. Furthermore, to the extent that their prior statements could be considered inconsistent (rather than less-detailed prior statements versus more-detailed testimony), the witnesses admitted the discrepancies. Because the witnesses admitted any discrepancies, the trial court disallowed extrinsic evidence of the prior statements. The Ninth District affirmed the trial court's exclusion of the extrinsic evidence reasoning that "if a witness denies making a statement and the issue is not collateral, then extrinsic evidence is admissible to impeach the witness. However, if a witness admits making the conflicting statement, then extrinsic evidence of the prior statement is not admissible." 2011 WL 2041114 at ¶ 25, *8.

### VI. *In re M.E.G.,* 2007 Ohio 4308 (Ohio App. 10 Dist. 2007).

Finally, *In re M.E.G.* involves three statements. Regarding the first two statements, the trial court disallowed (and the Tenth District affirmed the exclusion of) the extrinsic evidence because the proper foundation for admission per Rule 613(B) had not been laid. In the first instance, the witness was not asked to confirm or deny the statement in question. In the second instance, the witness, much like Gilbert, admitted and explained the contradiction. In affirming the trial court, the Tenth District detailed the same well-established principle that "if a witness denies making the statement, a proper foundation has been laid, and extrinsic evidence does not

11

relate to a collateral matter, extrinsic evidence is admissible.  If a witness admits having made the contradictory statements, then extrinsic evidence is inadmissible." 2007 WL 2398503 at ¶ 37.

Regarding the third statement, while the proper foundation was laid (the witness denied having made the prior inconsistent statement), the Tenth District affirmed the trial court's exclusion of extrinsic evidence of the prior inconsistent statement reasoning that the defendant could not establish prejudice.  In his factual findings, the magistrate acting as the fact-finder had already accounted for the discrepancy involved in the third statement, and thus extrinsic evidence of the prior inconsistent statement could not have changed the outcome.

Here, as explained above and in the Supplemental Motion for New Trial, the prejudicial impact of the jury hearing and reading Gilbert's prior statement cannot be underestimated.  If believed and considered for the truth—which the State urged the jurors to do during its closing argument—Gilbert's prior statement establishes the State's entire case against Jordan.  And once improperly given access to the statement, the jurors could not disregard its substance and consider it solely for purposes of impeachment.

Accordingly, Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial by an impartial jury, to confront all witnesses, and have the effective assistance of counsel were violated by the erroneous admission of extrinsic evidence.

## CONCLUSION

For the foregoing reasons, the reasons presented in Jordan's Motion for New Trial (except as otherwise amended or withdrawn), and his Supplemental Motion for New Trial (except as otherwise amended or withdrawn), Ruben Jordan, by and through counsel, respectfully requests this Court to grant a new trial pursuant to Rule 33(A).

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served on the Hamilton County Prosecutor this 12th day of September 2011.

Michele L. Berry

13

THE STATE OF OHIO, HAMILTON COUNTY

COURT OF COMMON PLEAS

CRIMINAL DIVISION

*FILED*
*2011 SEP 21 P 2:11*

STATE OF OHIO,  :  Case No. B1003262

    Plaintiff,  :  Judge Nadine L. Allen

    vs.  :  **STATE'S MEMORANDUM**
**REGARDING CASES UNDER**
RUBEN JORDAN,  :  **THIS COURT'S**
**CONSIDERATION**
    :

    Defendant.

    :

      This Court has asked the parties to further brief how to apply six cases the Court has been considering in regards to Jordan's motion for a new trial. There is a steady theme that flows through each of the cases that this Court has been considering: When a witness is confronted with a prior inconsistent statement and admits to the statement then the statement will not be admitted into evidence.

      Gilbert's statement, while played for the jury, was not admitted as evidence. Just because a prior inconsistent statement may not be admitted as evidence in a case when the witness admits to making the inconsistent statement does not mean a party cannot use the statement to impeach the witness.

      For example, in *State v. Johnson*, a defendant was permitted to extensively use a witness's prior statement for impeachment purposes. But because the witness admitted making the statement it could not be admitted as an exhibit.[1] This is also seen in the Ohio Supreme Court case of *State v. Keith* that this Court has been considering. There, just as happened here, the jury heard the statement during trial but the statement itself

---

[1] *State v. Johnson* (1983), 10 Ohio App. 3d 14, 460 N.E.2d 625.



D94695602

EXHIBIT
*16*

was not admitted into evidence.[2] The jury in that case even asked if they could have the statement and was told no.[3]

Gilbert's prior inconsistent statement was played for the jury, but it was not admitted into evidence. This Court followed the law when it allowed the trial to proceed in this manner.

Yet even if the law would have taken issue with playing the tape, it would not matter because Jordan did not object to playing the tape to the jury. Instead, he only initially objected to playing the statement because he felt that the State needed to lay a foundation for playing the tape first:

> MR. WHALEN: I do [object], Your Honor. I don't know that they have laid the groundwork to play that at this point in time.
>
> THE COURT: Is that the only objection?
>
> MR. WHALEN: Yes.

Once the state laid the foundation he did not raise any further objection to the tape being played. By failing to object, presuming there was any error in playing the tape, all but plain error has been waived.

In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[4]

This is not a case of plain error. There was other evidence that proved Jordan was guilty. His DNA put him at the scene of the murder. Kenneth Heard testified that Jordan

---

[2] *State v. Keith*, 79 Ohio St. 3d 514, 526, 684 N.E.2d 47.
[3] *Id.*
[4] *State v. Long*, (1978), 53 Ohio St. 2d 91, 372 N.E.2d 804, at paragraph three of the syllabus; Crim. R. 52(B).

twice confessed to him that he committed the murder. Playing Gilbert's statement, even if doing so could be considered erroneous, does not amount to an exceptional circumstance where a miscarriage of justice occurred. The outcome of Jordan's trial would not have been different but for his statement being played. And even if it had not been waived, the other theme that reoccurs in each of the cases this Court has been considering is that, absent extraordinary circumstances, improperly admitted a statement will be harmless error.

Such an exceptional circumstance existed in *State v. Carusone*.[5] The statement in *Carusone*, however, was more than just a prior inconsistent statement used for impeachment purposes. It included other acts evidence that was highly prejudicial to the defendant and that should never have been placed in front of the jury. No such evidence exists in Gilbert's statement.

Jordan, of course, argues that the jury's ability to judge that evidence simply must have been overwhelmed and that they focused on nothing more than Jordan's statement. This Court's instructions on how the jury was to use the statement only to judge credibility, he argues, just could not have been followed by the jury. This argument is best addressed by the *State v. Keith* case that this Court has been considering.

In *Keith*, during its deliberations, the jury asked the court, "We would like to know why we can't see the taped interview of Grace Keith? If it was not introduced as evidence why was it shown to us?"[6] The trial court explained that the statement was only there to help the jury judge a witness's credibility. The defendant there argued that those

---

[5] *State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018.
[6] *State v. Keith*, 79 Ohio St. 3d 514, 526, 684 N.E.2d 47.

3

instructions had left the jury "hopelessly confused."[7]  The Ohio Supreme Court rejected

that argument and found that the trial court's instructions properly informed the jury as to

how they were to use the statement.  The same is true here.  This Court carefully and

properly explained how Gilbert's statement could be used when it instructed the jury.

There is no reason to think that the jury misunderstood this Court's instructions.

## Conclusion

Gilbert's statement may have been played for the jury, but it was not admitted

into evidence.  Even if it had been admitted, the cases that this Court has been examining

all show that, absent something extreme, improperly admitting a prior inconsistent

statement amounts to harmless error.  In this case, Jordan did not even object to the

statement being played.  Given the other evidence against him, even if he could overcome

waiving this issue, any error would be harmless.  This Court should, therefore, deny his

motion for a new trial.

Scott M. Heenan,  0075734P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
946-3227

---

[7] *Id.*

4

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon Michele L. Berry, 114 East 8th Street, Cincinnati, Ohio 45202, by ordinary U.S. mail on the _____ day of _____,
2011.

Scott M. Heenan, 0075734P
Assistant Prosecuting Attorney

5

**IN THE HAMILTON COUNTY COURT OF COMMON PLEAS**
**CRIMINAL DIVISION**

FILED

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | **Case No. B1003262** |
| **Plaintiff,** | : | |
| | : | 2011 OCT -4 P 7: 47 |
| **v.** | : | **Judge Nadine Allen** |
| | : | |
| | : | SCANNING |
| **RUBEN JORDAN** | : | |
| | : | **DEFENDANT'S REPLY TO** |
| **Defendant.** | : | **STATE'S MEMORANDUM** |
| | : | **REGARDING CASES UNDER** |
| | : | **COURT'S CONSIDERATION** |

In its Memorandum Regarding Cases Under the Court's Consideration dated September 21, the State has now conceded the key issue at hand and no further issue remains for debate. Ruben Jordan is entitled to relief.

In its latest filing, the State conceded that "when a witness is confronted with a prior inconsistent statement and admits to the statement then the statement will not be admitted into evidence." (State's Memo Regarding Cases at 1). That is exactly what happened here. Kareem Gilbert admitted to making the prior inconsistent statement. Then the State played the statement for the jury and gave them transcripts of the statement to follow along with the recording. As soon as the recording was played for the jury, it was admitted into evidence.

While it is unclear in the record whether the recording and transcript were marked as exhibits (although a transcript of the recording is part of the record), they clearly were admitted as evidence. Whether they were marked as exhibits is beside the point. The State in its September 21 filing nonsensically suggests that because the statement was "played for jury" that it was not admitted into evidence. (State's Memo Regarding Cases at 1). This suggestion is clearly erroneous and illogical. Simply because a recorded statement is not an exhibit does not

1





D94879804

EXHIBIT
17

mean it was not "admitted" as evidence. To the contrary, once the statement was played for the jury, it was admitted as evidence, just as when a witness takes the stand in any trial, his or her testimony is admitted as evidence. To be sure, when a witness offers testimony from the witness stand, the witness does not then accompany the jury to deliberations in the jury room with an exhibit sticker attached to his or head. The witness nevertheless has given testimony, which has been admitted into evidence; an exhibit physically memorializing the evidence is not necessary to make the evidence become "admitted" evidence. Instead, as soon as the jury hears the testimony (or in this case this case, heard and read Gilbert's statement), the recording was admitted into evidence.

Additionally, although Jordan resubmits that the jury instruction attempting to limit the use of the recording to impeachment was inadequate for the reasons stated in his Supplemental Motion for New Trial, the Court is also well-aware that Gilbert's recorded statement was "admitted" into evidence as soon as it was played (despite whether it was marked as an exhibit for the jury to replay during deliberations). *See* (T.p. Vol III at 937, l. 11-17) ("You heard a tape-recorded statement of Kareem Gilbert. **This recorded statement was *admitted*** for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness.").

Furthermore, to add to the prejudice, the State in its closing argument repeatedly referred to the substance of Gilbert's statements and urged the jury to consider the statement for its **truth.** *See* T.p. Vol. VIII at 917-918). ("And Kareem Gilbert. Again, the defense is asking you to believe what he said in court was true…But as you play the statement…if you read that statement…**The statement has to be truthful.**"); *see also Id.* at 924 l. 11-25 and 925 l. 14-24 (wherein the state, during closing argument, points to details in Gilbert's recorded statement to

2

police (the prior inconsistent statement) and urges the jury to compare the statements to corroborating testimony given in court, such as the number of shots fired, where the car was located, and the lack of shell casings at the crime scene).

Clearly the State urged the jury to consider the truth of Gilbert's statement to the police (the prior inconsistent statement) wherein he stated that he observed his father, Ruben Jordan, shoot Victor Davis. In other words, the State, in closing, asked the jury to (1) identify details in Gilbert's statement; (2) compare those details to corroborating testimony given by other witnesses; (3) note the similarities; (4) believe Gilbert's prior statement; and (5) accordingly, disbelieve Gilbert's testimony. It is wholly improper to ask the jury to consider the substance of Gilbert's statement to police, such as details of the statement, and compare the substance of the statement to corroborating testimony, because this process, by definition, requires the jury to consider Gilbert's prior inconsistent statement for its truth rather than for impeaching Gilbert's in-court testimony.

In sum, the jury's duty was not to ask, "Which of Gilbert's statements do I believe: his testimony or his prior inconsistent statement to police?" Instead, the jury was required to determine whether to believe Gilbert's in-court testimony given the fact that he gave a prior inconsistent statement to police. Asking the jury to consider the substantive details of Gilbert's prior statement and compare them to the testimony given by the detectives and other state witnesses is akin to asking the jury to consider the truth of inadmissible hearsay.

Referring to inadmissible hearsay during a closing argument asserted for the truth resulted in prosecutorial misconduct in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, to confront all witnesses, and to have the effective assistance of counsel (for failure to specifically object to this error as it occurred). *See State v.*

*Kirk*, 2010 WL 1818894; 2010-Ohio-2006 (Ohio App. 6 Dist., May 7, 2010) (referring to

inadmissible hearsay during a closing argument asserted for the truth constituted prosecutorial

misconduct).

With the State having conceded the key issue, Ruben Jordan is now clearly entitled to

relief.

**CONCLUSION**

For the foregoing reasons and the reasons presented in Jordan's Motion for New Trial

(except as otherwise amended or withdrawn), Supplemental Motion for New Trial, and Briefing

on Additional Cases, Ruben Jordan, by and through counsel, respectfully requests this Court to

grant a new trial pursuant to Rule 33(A).

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this motion was served on the Hamilton County

Prosecutor this 4th day of October 2011.

Michele L. Berry

4

**COURT OF COMMON PLEAS**

**HAMILTON COUNTY, OHIO**

ENTERED

NOV 21 2011

| | | |
|---|---|---|
| STATE OF OHIO, | } | Case No.: B 10 03262 |
| | } | |
| Plaintiff(s) | } | |
| | } | Judge Nadine Allen |
| v. | } | |
| | } | |
| RUBEN JORDAN, | } | ENTRY DENYING MOTION |
| | } | FOR NEW TRIAL |
| Defendant(s) | } | |
| | } | |

This matter is before the court on the defendant's February 7, 2011 motion for new trial. Based upon the evidence submitted and the arguments of counsel this court finds that the motion is not well taken. The motion is DENIED.

IT IS SO ORDERED.

ENTER

NOV 21 2011



Judge Nadine Allen     NADINE L. ALLEN, JUDGE
Hamilton County Court of
Common Pleas



D95449749

EXHIBIT

18

## IN THE HAMILTON COUNTY COURT OF COMMON PLEAS

STATE OF OHIO,                               :    Trial Court Case No. B1003262

       Plaintiff-Appellee,           :    Judge Nadine Allen          C 1 1 0 0 8 3 3

v.                                           :

RUBEN JORDAN,                                :    **NOTICE OF APPEAL**

       Defendant-Appellant.          :

Defendant-Appellant Ruben Jordan hereby appeals to the First District Court of Appeals

from the findings of fact, conclusions of law, judgment, order, and decision of the Hamilton

County Court of Common Pleas entered on November 21, 2011 denying Jordan's Rule 33

Motion for New Trial which was timely filed on February 7, 2011 following Jordan's January

24, 2011 conviction.

Accordingly, pursuant to Appellate Rule 4(B)(3), Jordan also appeals the January 24,

2011 conviction and sentence entered on March 15, 2011, which he challenged in said Motion

for New Trial.

A copy of the November 21, 2011 entry (officially entering the findings of fact and

conclusions of law rendered by the court on October 7, 2011) is attached as well as the March

15, 2011 entry (entering Jordan's conviction and sentence).

**FILED**
**COURT OF APPEALS**

Respectfully submitted,

DEC 19 2011

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

D95748554 INI

FILED
2011 DEC 19 A 11: 21
TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH

EXHIBIT
19

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served on the Hamilton County

Prosecutor this 19th day of December 2011.

Michele L. Berry

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

ENTERED
NOV 21 2011

| | | |
|---|---|---|
| STATE OF OHIO, | } | Case No.: B 10 03262 |
| Plaintiff(s) | } | |
| | } | Judge Nadine Allen |
| v. | } | |
| | } | ENTRY DENYING MOTION |
| RUBEN JORDAN, | } | FOR NEW TRIAL |
| Defendant(s) | } | |
| | } | |

This matter is before the court on the defendant's February 7, 2011 motion for new trial. Based upon the evidence submitted and the arguments of counsel this court finds that the motion is not well taken. The motion is DENIED.

IT IS SO ORDERED.



ENTER
NOV 21 2011

Judge Nadine Allen    NADINE L. ALLEN, JUDGE
Hamilton County Court of
Common Pleas

D95449749

THE STATE OF OHIO, HAMILTON COUNTY
COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

**ENTERED**
**MAR 1 5 2011**

Judge: NADINE ALLEN

NO: **B 1003262**

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:**
**INCARCERATION**

Defendant was present in open Court with Counsel AMY R WILLIAMS on the 15th day of **February 2011** for sentence.

The court informed the defendant that, as the defendant well knew, after defendant entering a plea of not guilty and after trial by jury, the defendant has been found guilty of the offense(s) of:

**count 1: AGGRAVATED MURDER WITH SPECIFICATION,**
**2903-01A/ORCN,SF**
**count 2: HAVING WEAPONS WHILE UNDER DISABILITY,**
**2923-13A3/ORCN,F3**

The Court afforded defendant's counsel an opportunity to speak on behalf of the defendant. The Court addressed the defendant personally and asked if the defendant wished to make a statement in the defendant's behalf, or present any information in mitigation of punishment.

Defendant is sentenced to be imprisoned as follows:
**count 1: CONFINEMENT: LIFE WITH ELIGIBILITY FOR PAROLE AFTER**
**TWENTY FIVE (25) YEARS IN THE DEPARTMENT OF CORRECTIONS.**
**CONFINEMENT ON SPECIFICATION: 3 Yrs DEPARTMENT OF**
**CORRECTIONS**
**TO BE SERVED CONSECUTIVELY AND PRIOR TO THE SENTENCE**
**IMPOSED IN UNDERLYING OFFENSE IN COUNT #1.**
**count 2: CONFINEMENT: 2 Yrs DEPARTMENT OF CORRECTIONS**

**THE SENTENCES IN COUNTS #1 AND #2 ARE TO BE SERVED**
**CONSECUTIVELY TO EACH OTHER.**

**THE TOTAL AGGREGATE SENTENCE IS THIRTY (30) YEARS TO LIFE IN**
**THE DEPARTMENT OF CORRECTIONS.**

**THE DEFENDANT IS TO RECEIVE CREDIT FOR TWO HUNDRED EIGHTY**
**NINE (289) DAYS TIME SERVED.**

D92277084

Page 1
CMSG306N

THE STATE OF OHIO, HAMILTON COUNTY
COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: **NADINE ALLEN**

NO: **B 1003262**

**STATE OF OHIO
VS.
RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:
INCARCERATION**

THE DEFENDANT IS TO MAKE RESTITUTION IN THE AMOUNT OF
$5,500.00 UNLESS THE VICTIM IS REIMBURSED BY THE OHIO VICTIMS
OF CRIME FUND.

THE DEFENDANT IS INDIGENT. NO COSTS, FINES, OR FEES IMPOSED.

FURTHER, IN ACCORDANCE WITH RC 2901.07, THE DEFENDANT IS
REQUIRED TO SUBMIT A DNA SPECIMEN WHICH WILL BE COLLECTED
AT THE PRISON, JAIL, CORRECTIONAL OR DETENTION FACILITY TO
WHICH THE DEFENDANT HAS BEEN SENTENCED. IF THE SENTENCE
INCLUDES ANY PERIOD OF PROBATION OR COMMUNITY CONTROL, OR
IF AT ANY TIME THE DEFENDANT IS ON PAROLE, TRANSITIONAL
CONTROL OR POST-RELEASE CONTROL, THE DEFENDANT WILL BE
REQUIRED, AS A CONDITION OF PROBATION, COMMUNITY CONTROL,
PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL, TO
SUBMIT A DNA SPECIMEN TO THE PROBATION DEPARTMENT, ADULT
PAROLE AUTHORITY, OR OTHER AUTHORITY AS DESIGNATED BY LAW.
IF THE DEFENDANT FAILS OR REFUSES TO SUBMIT TO THE REQUIRED
DNA SPECIMEN COLLECTION PROCEDURE, THE DEFENDANT WILL BE
SUBJECT TO ARREST AND PUNISHMENT FOR VIOLATING THIS
CONDITION OF PROBATION, COMMUNITY CONTROL, PAROLE,
TRANSITIONAL CONTROL OR POST-RELEASE CONTROL.

AS TO COUNT #1, THE DEFENDANT IS NOT SUBJECT TO THE POST
RELEASE CONTROL PROVISIONS OF OHIO LAW AS THIS IS A LIFE
SENTENCE. PAROLE ELIGIBILITY FOR THIS OFFENDER IS GOVERNED
BY OHIO REVISED CODE §2967.13(A)(1) AND THE DEFENDANT IS SO
ADVISED.

AS PART OF THE SENTENCE IN THIS CASE AS TO COUNT #2, THE
DEFENDANT MAY BE SUPERVISED BY THE ADULT PAROLE AUTHORITY
AFTER DEFENDANT LEAVES PRISON, WHICH IS REFERRED TO AS POST-
RELEASE CONTROL, FOR UP TO THREE ( 3 ) YEARS AS DETERMINED BY
THE ADULT PAROLE AUTHORITY.

THE STATE OF OHIO, HAMILTON COUNTY
COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: **NADINE ALLEN**

NO: **B 1003262**

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:**
**INCARCERATION**

**IF THE DEFENDANT VIOLATES POST-RELEASE CONTROL SUPERVISION OR ANY CONDITION THEREOF, THE ADULT PAROLE AUTHORITY MAY IMPOSE A PRISON TERM, AS PART OF THE SENTENCE, OF UP TO NINE ( 9 ) MONTHS, WITH A MAXIMUM FOR REPEATED VIOLATIONS OF FIFTY PERCENT ( 50% ) OF THE STATED PRISON TERM. IF THE DEFENDANT COMMITS A NEW FELONY WHILE SUBJECT TO POST-RELEASE CONTROL, THE DEFENDANT MAY BE SENT TO PRISON FOR THE REMAINING POST-RELEASE CONTROL PERIOD OR TWELVE ( 12 ) MONTHS, WHICHEVER IS GREATER. THIS PRISON TERM SHALL BE SERVED CONSECUTIVELY TO ANY PRISON TERM IMPOSED FOR THE NEW FELONY OF WHICH THE DEFENDANT IS CONVICTED.**