

FILED
COURT OF APPEALS

MAR - 7 2012

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF OHIO

| | | |
|---|---|---|
| **STATE OF OHIO** | : | **Court of Appeals Case No.** |
| | : | **C1100833** |
| Plaintiff-Appellee, | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | **Appeal from the Hamilton County** |
| **RUBEN JORDAN** | : | **Court of Common Pleas** |
| | : | **Criminal Division** |
| Defendant-Appellant. | : | **Case No. B1003262 (Judge Nadine Allen)** |

---

## BRIEF OF THE APPELLANT
## RUBEN JORDAN

---



D96699564

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Attorney for Defendant-Appellant*
*Ruben Jordan*

HAMILTON COUNTY, OH
CLERK OF COURTS
TRACY WINKLER
2012 MAR - 1 P 3:09

FILED



EXHIBIT
20

PENGAD 800-631-6989

## TABLE OF CONTENTS & ASSIGNMENTS OF ERROR

I.  STATEMENT OF THE CASE................................................................1

    Procedural Posture.....................................................................1

    Statement of the Facts................................................................1

II.  ARGUMENT................................................................................5

FIRST ASSIGNMENT OF ERROR...............................................................5

    1.    The trial court committed plain error in violation of Evid. Rule 613(B) and Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when it permitted the State to play Gilbert's entire recorded statement (extrinsic evidence of a prior inconsistent statement) during trial despite that earlier in his testimony Gilbert admitted to making said statement. Alternatively, trial counsel provided ineffective assistance in violation of Jordan's Sixth and Fourteenth Amendment rights by failing to object on the proper basis to the recording being played at trial and admitted into evidence. The trial court further abused its discretion by failing to correct these errors when it denied Jordan's Motion for New Trial asserting same.

Issues Presented for Review

Whether plain error results when: (1) the trial court permits extrinsic evidence of a prior inconsistent statement to be admitted into evidence; (2) earlier in his testimony, the declarant of the prior inconsistent statement already admitted to making the statement; and (3) the extrinsic evidence, if considered for its truth, proves each essential element of the charges against the defendant.

Whether extrinsic evidence of a prior inconsistent statement is improperly admitted into evidence in violation of Evid. Rule 613(B) and a defendant's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses when, earlier in his testimony, the declarant of the prior inconsistent statement already admitted to making the statement.

Whether a trial court abuses its discretion when it permits extrinsic evidence of a prior inconsistent statement to be admitted into evidence when, earlier in his testimony, the declarant of the prior inconsistent statement already admitted to making the statement, and the extrinsic evidence, if considered for its truth, proves each essential element of the charges against the defendant.

Whether ineffective assistance of counsel results when counsel fails to properly object to the improper admission into evidence of extrinsic evidence of a prior inconsistent statement when the extrinsic evidence, if considered for its truth, proves each essential element of the charges against the defendant.

Whether the trial court unreasonably determined the facts in its October 7, 2011 decision denying Jordan's Motion for New Trial when it held that the recording was not admitted into evidence despite that it was admitted into evidence as State's Exhibit 31, played for the jury during trial, provided to the jury in transcript-form, and made available to the jury for review during deliberations both as a recording and as a transcript.

A. Kareem Gilbert's recorded statement................................................6

    1. Gilbert admitted that he made a prior inconsistent statement, which had been recorded, wherein he claimed to have witnessed Jordan intentionally shoot Davis; nevertheless, the court permitted the State to play the recording during trial and admit the statement into evidence for the jury's review during deliberations....................................6

B. Background of Jordan's Motion for New Trial....................................10

C. The trial court misinterpreted the applicable case law...........................11

    1. *State v. Keith* (1979), 79 Ohio St. 3d 514; 684 N.E.2d 47................12

    2. *State v. Carusone,* 2003 WL 832061; 2003-Ohio-1018 (Ohio App. 1 Dist. 2003)....................................................13

    3. *State v. Johnson*, 10 Ohio App.3d 14; 460 N.E.3d 625 (Ohio App. 10 Dist. 1983); & *State v. Hill,* 2004 WL 870439; 2004-Ohio-2048 (Ohio App. 2 Dist. 2004)................................15

Authorities

Cases

*Rush v. Illinois Cent. R. Co*, 399 F.3d 705 (6th Cir. 2005)...............................................7
*State v. Carusone,* 2003 WL 832061; 2003-Ohio-1018 (Ohio App. 1 Dist. 2003)....11, 13, 14, 15
*State v. Dick* (1971), 270 Ohio St. 2d 162; 271 N.E.2d 797..................................8
*State v. Gibson*, 2011WL 51422; 2011-Ohio-5614 (Ohio App. 10 Dist., Nov. 1, 2011)...........17
*State v. Greene,* 2009 WL 478088; 2009-Ohio-850 (Ohio App. 8 Dist., Feb. 26, 2009)............8
*State v. Haynes,* 2011 WL 5353070 (Ohio App. 12 Dist., Nov. 7, 2011)...............................9
*State v. Hill,* 2004 WL 870439; 2004-Ohio-2048 (Ohio App. 2 Dist. 2004)...........11, 15, 16, 17
*State v. Johnson,* 10 Ohio App.3d 14; 460 N.E.3d 625 (Ohio App. 10 Dist. 1983)............11, 15
*State v. Keith* (1979), 79 Ohio St. 3d 514; 684 N.E.2d 47..........................11, 12, 13
*State v. Risden,* 2010 WL 892083; 2010-Ohio-991 (Ohio App. 2 Dist., March 12, 2010)...........8
*State v. Suman,* 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist., Dec. 13, 2010)................................................................8
*Strickland v. Washington* (1984), 466 U.S. 668; 104 S.Ct. 2052.........................9
*Umani v. Caruso,* 2008 WL 2216283 (E.D. Mich. May 27, 2008)....................................7

## Rules

Ohio Crim. R. 52(B)............................................................................17
Ohio Evid. R. 607.................................................................................6
Ohio Evid. R. 613(B)...........................................................5, 7, 8, 10, 12, 17

SECOND ASSIGNMENT OF ERROR.........................................................18

II.   The State committed plain error in violation of Jordan's Fifth, Sixth, and
      Fourteenth Amendment rights to due process, a fair trial before an impartial jury,
      and to confront witnesses, by urging the jury to consider the substance of
      Gilbert's prior inconsistent statements when the statements were only admissible
      for purposes of impeaching Gilbert. Alternatively, trial counsel provided
      ineffective assistance for failure to timely object to the State's improper remarks.
      The trial court further abused its discretion by failing to correct this error when it
      denied Jordan's Motion for New Trial, which asserted this error.

## Issues Presented for Review

Whether plain error in violation of a defendant's constitutional rights to due process, a fair trial
before an impartial jury, and to confront witnesses attaches when the State urges the jury to
consider the substance of a recording that: (1) the court deemed admissible solely for
impeachment purposes; and (2) if considered for its truth, proves each essential element of the
charges against the defendant.

Whether ineffective assistance of counsel results when counsel fails to properly object to the
State's improper comments during its closing argument, urging the jury to consider the substance
of a recording that: (1) the court deemed admissible solely for impeachment purposes; and (2) if
considered for its truth, proves each essential element of the charges against the defendant.

Whether a trial court abuses its discretion when it upholds improper comments by the State
during its closing argument, urging the jury to consider the substance of a recording that: (1) the
court deemed admissible solely for impeachment purposes; and (2) if considered for its truth,
proves each essential element of the charges against the defendant.

## Authorities

## Cases

*Donnelly v. DeChristoforo* (1974), 416 U.S. 637; 94 S.Ct. 1868...................................18-19
*Gordon v. Kelly*, 205 F.3d 1340; 2000 WL 145144 (6th Cir. Feb. 1, 2000).........................19
*State v. Dick* (1971), 270 Ohio St. 2d 162; 271 N.E.2d 797............................................19
*State v. Greene*, 2009 WL 478088; 2009-Ohio-850 (Ohio App. 8 Dist., Feb. 26, 2009)...........19
*State v. Kirk*, 2010 WL 1818894; 2010-Ohio-2006 (Ohio App. 6 Dist., May 7, 2010)............20
*State v. Risden*, 2010 WL 892083; 2010-Ohio-991 (Ohio App. 2 Dist., March 12, 2010).........19
*State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204
      (Ohio App. 4 Dist., Dec. 13, 2010)..............................................................19

THIRD ASSIGNMENT OF ERROR.............................................................21

III.     The State committed misconduct in violation Jordan's Fifth, Sixth, and Fourteenth
         Amendment rights to due process, a fair trial before an impartial jury, and to
         confront all witnesses when the prosecuting attorney remarked to the jury about
         his personal role in the plea agreement with Gilbert wherein Gilbert gave the
         recorded statement which was admitted solely for impeachment purposes. In
         doing so, the prosecuting attorney: (1) acted as a witness whom Jordan was
         unable to confront; and (2) undermined the jury's ability to impartially determine
         the facts and weigh the evidence.

Issues Presented for Review

Whether the prosecuting attorney acts as a witness for the State in violation of the defendant's
Sixth Amendment right to confront all witnesses when the prosecuting attorney remarks to the
jury about his personal role in obtaining a recorded statement from and plea agreement with the
state's key witness.

Whether the State violates a defendant's Fifth, Sixth, and Fourteenth Amendment rights to have
an impartial jury determine the facts and weigh the evidence when, during the State's closing
argument, the prosecuting attorney personally vouches for the credibility and truthfulness of a
key state witness's recorded statement.

Whether the trial court abuses its discretion in failing to grant a mistrial when, during the State's
closing argument, the prosecuting attorney personally vouches for the credibility and truthfulness
of a key state witness's recorded statement.

Authorities

Cases

*Donnelly v. DeChristoforo* (1974), 416 U.S. 637; 94 S.Ct. 1868......................................22
*Gordon v. Kelly*, 205 F.3d 1340; 2000 WL 145144 (6th Cir. Feb. 1, 2000)........................23
*United States v. Young* (1985), 470 U.S. 1; 105 S.Ct. 1038......................................22, 23

FOURTH ASSIGNMENT OF ERROR.............................................................24

IV.     The State committed plain error in violation Jordan's Fifth, Sixth, and Fourteenth
        Amendment rights to due process, a fair trial before an impartial jury, and to
        confront all witnesses when the prosecuting attorney cautioned the jury that if it
        acquitted Appellant on the basis that Gilbert actually committed the murder, then
        the following events would unfold: (1) at Gilbert's future murder trial, Appellant
        could freely admit to the murder without repercussion (due to Double Jeopardy
        protections); (2) Gilbert likely also would be acquitted due to Appellant's
        confession; (3) no one would stand convicted for Victor Davis' murder; and thus,
        (4) Appellant and Gilbert would have successfully executed an elaborate scheme
        to both trick the criminal justice system and evade convictions for the murder of
        Victor Davis. Alternatively, trial counsel provided ineffective assistance in

violation of the Sixth and Fourteenth Amendments by failing to object to the prosecutorial misconduct.

Issues Presented for Review

Whether plain error in violation of a defendant's Fifth, Sixth, and Fourteenth Amendment rights to confront all witnesses and have an impartial jury determine the facts and weigh the evidence attaches when, during the State's closing argument, the prosecuting attorney cautions the jury about the alleged future consequences of an acquittal.

Whether ineffective assistance of counsel results when counsel fails to properly object to the State's improper comments during its closing argument warning a jury about the potential future consequences of an acquittal.

FIFTH ASSIGNMENT OF ERROR.............................................................26

V.    The trial court erred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the errors explained in the First, Second, Third, and Fourth Assignments of Error. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to ensure that the jury instruction sufficiently and properly conveyed the applicable law.

Issues Presented for Review

Whether a limiting instruction is *per se* inadequate to cure the improper use and admission of extrinsic evidence that, if considered for its truth, proves the State's entire case against the defendant.

Whether the trial court committed plain error in violation of the defendant's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the improper use and admission of extrinsic evidence.

Whether ineffective assistance of counsel attaches when trial counsel fails to ensure that the jury instructions sufficiently and properly convey the applicable law regarding the proper use of extrinsic evidence of a prior inconsistent statement.

A.    Even if the Court finds a limiting instruction curative of the admission of extrinsic evidence of Gilbert's prior inconsistent statements, the limiting instruction itself insufficiently explains the proper use of the statements...............................................................................29

Authorities

Cases

*Bruton v. United States* (1968), 391 U.S. 123; 88 S.Ct. 1620.....................................27, 28

III.   CONCLUSION..................................................................30

IV.   CERTIFICATE OF SERVICE...........................................30

Appendix A: Judgment Entries of Conviction, Sentence, and Denial of Motion for New Trial

## STATEMENT OF THE CASE

### A.  Procedural Posture

Appellant Ruben Jordan stands convicted of murdering Victor Davis by shooting him on

October 31, 2008.  In this direct appeal, Jordan appeals his aggravated murder conviction in

violation of ORC §2903.01(A), its accompanying firearm specification, and his conviction of

having weapons while under disability in violation of ORC §2923.13(A)(3).  After a jury trial

beginning on January 10, 2011, Jordan was convicted on January 24, 2011 and sentenced to life

in prison with parole eligibility after 30 years (calculated as life in prison with parole eligibility

after 25 years for the aggravated murder, 3 years imprisonment served prior and consecutively to

the life sentence, and 2 years imprisonment served consecutively to the aggravated murder

sentence).

Jordan asserts this appeal on the basis that a multitude of constitutional violations

occurred during his trial.  These constitutional violations primarily involve: (1) the improper use

during trial and admission into evidence of a recording and transcript of a prior inconsistent

statement made by the state's key witness (Kareem Gilbert), wherein Gilbert claims that he

observed Appellant Jordan intentionally shoot and kill Victor Davis; (2) the State's urgings to the

jury to consider the recording for its substance and truth; and (3) the prosecuting attorney's

egregiously improper remarks personally vouching the truth of the recording.

Jordan also appeals the denial of his motion for new trial, timely filed on February 7,

2011 and supplemented at the trial court's request on May 23, 2011, September 12, 2011, and

October 4, 2011 wherein Jordan asserted these same errors as constitutional violations.

### B.  Statement of the Facts

On October 16, 2008, prior to his death, Victor Davis (the deceased victim of the

shooting involved in the instant case) witnessed Kareem Gilbert (Appellant Ruben Jordan's son)

1

shoot and kill Bryan Austin. T.p. Vol. IV at 427-429. Soon thereafter, Victor Davis began

getting death threats from Kareem Gilbert's family, T.p. Vol. III at 360, namely from Kareem

himself, *id.* at 386, and Kareem's brother, Shawn Gilbert. *Id.* at 373, 389. According to Davis,

the Gilberts threatened his life because he witnessed Kareem Gilbert kill Bryan Austin. *Id.* at

373, 385-386. Davis informed his son, Victor Davis Jr., about the threats. *Id.* at 409-410. Once

on notice, Davis Jr. then also observed Shawn Gilbert flash a gun at him on several occasions as

a gesture of intimidation. *Id.* at 419-420. To add to the tension, Kareem Gilbert, Kareem

Gilbert's mother, and Shawn Gilbert lived next door to Victor Davis.[1] *Id.* at 380-381.

On October 31, 2008, Victor Davis was killed by a gunshot wound to the head outside the

apartment complex where he, Kareem, and Shawn Gilbert all lived. T.p. Vol. IV at 453-454.

Dean Shade, a resident of the same complex heard the gunshots from inside his fourth floor

apartment. *Id.* at 453. He rushed to the window and observed Victor Davis lying wounded on

the ground 10 to 15 feet away, apparently dying. *Id.* at 454. He also noticed a bald, black man

walking away from the scene. *Id.* Shade never saw the bald man's face, and had repeatedly told

law enforcement that he "[couldn't] say exactly who" the bald man was. *Id.* Desperate to get

Shade to identify Appellant Ruben Jordan as the bald, black man Shade observed walking away

from the scene of the shooting, the State asked Shade to compare characteristics of the bald,

black male's physical appearance to characteristics of Jordan's physical appearance. *Id.* at 455.

Shade noted that both men are black and have clean-shaven heads, but that Jordan is bigger and

bulkier than the bald, black man he observed. *Id.* at 455-456. When pressed, Shade testified that

he could only be 75% certain that the bald, black man he observed was Ruben Jordan. *Id.* at 456.

---

[1] At trial, much was made of a spot of Jordan's phlegm located in the vicinity of Davis' body.
T.p. Vol. VIII at 731-732. However, many members of Jordan's family lived in the apartment
complex where the shooting took place. Accordingly, Jordan was innocently present at the scene
on many occasions and could have deposited the phlegm on one of these occasions.

Setting aside Jordan's incredulous "identification" of Jordan, the only person who directly linked Jordan to the crime scene is the far-fetched, multi-felon, drug dealer Kenneth Heard. T.p. Vol. V at 620. Heard claimed to have been Jordan's drug dealer five times a week for approximately a year and a half when, in Spring of 2009, Jordan supposedly confessed to killing a man and allowing his son to be prosecuted for his crime. *Id.* at 631. Prior to this, Heard and Jordan never spoke more than necessary to complete the drug transaction. *Id.* at 628. In fact, Heard never even knew Jordan's name, *id.* at 622, until Jordan supposedly divulged his full name to the drug dealer shortly after his alleged confession. *Id.* at 634, 639.

Even after Kenneth Heard reported Jordan's alleged confession, it was widely believed by law enforcement and the Hamilton County Prosecutor's Office that Kareem Gilbert killed Victor Davis. *See* T.p. Vol. VIII at 736, 740; *see also* Hamilton County Case No. B0901283.[2] Gilbert was indicted for the murders of both Bryan Austin and Victor Davis. In May 2010, the State was ready to proceed to trial in its case against Gilbert for both murders when Gilbert struck a deal with the State. T.p. Vol. IV at 660-661; 690. Gilbert gave a recorded statement wherein he claimed to have witnessed Jordan intentionally shoot and kill Davis. *Id.* In exchange for his testimony to this effect at Jordan's trial, Gilbert agreed to plead guilty to reduced charges for Austin's killing while the charges for intimidating Davis as a witness and then killing him, were dismissed.

When Gilbert took the stand at Jordan's trial, he immediately began recanting his recorded statement and attesting that on the night Davis was shot, he and Jordan were at Jordan's home. Gilbert was asked if he previously made a contrary statement to police, which was

---

[2] The Bill of Particulars in Case No. B0901283 reads, "The defendant [Kareem Gilbert] intimidated Victor Davis who was an eyewitness to [Gilbert's] murder of Bryan Austin....[Gilbert], under a disability for a juvenile adjudication of Possession of Cocaine, shot and killed Victor Davis and fled the scene."

3

recorded, and wherein he claimed to have witnessed Jordan shoot Davis. T.p. Vol. IV at 664. Gilbert admitted to making a prior inconsistent statement and explained that he lied during the recorded statement to save himself, as he was facing two aggravated murder charges—two life sentences. *Id.* at 664-665; 692-693. Despite Gilbert's admission, the State played the recording for the jury and provided the jury with transcripts of the statement. *Id.* at 690-692. The recording and its accompanying transcript were marked as State's Exhibit 31 and admitted into evidence, T.p. Vol. VIII at 796, 797, supposedly for the sole purpose of impeaching Gilbert's testimony. *Id.* at 937.

Even so, during the State's closing argument, the prosecuting attorney repeatedly vouched for the substance, truth, and credibility of Gilbert's recorded statement. *Id.* at 917-918; 924-926. He urged the jury to consider the recording's substance and compare it to other corroborating evidence presented by the State. *Id.* He explained his role in the interrogation during which Gilbert claimed to have witnessed Jordan kill Davis. *Id.* at 917-919. He cautioned the jury that an acquittal of Jordan would result in a future trial against Kareem Gilbert that would transpire as follows: (1) Jordan would confess to the Davis murder; (2) Gilbert would win an acquittal due to Jordan's confession; then (3) both men would escape further prosecution due to double jeopardy protections. *Id.* at 900-902. The jury returned guilty verdicts on all counts.

Jordan requests oral argument and presents the following written argument in support of his request for this Court to reverse his convictions.

## ARGUMENT

### FIRST ASSIGNMENT OF ERROR

I.     **The trial court committed plain error in violation of Evid. Rule 613(B) and Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when it permitted the State to play Gilbert's entire recorded statement (extrinsic evidence of a prior inconsistent statement) during trial despite that earlier in his testimony Gilbert admitted to making said statement. Alternatively, trial counsel provided ineffective assistance in violation of Jordan's Sixth and Fourteenth Amendment rights by failing to object on the proper basis to the recording being played at trial and admitted into evidence. The trial court further abused its discretion by failing to correct these errors when it denied Jordan's Motion for New Trial asserting same.**

### Issues Presented for Review

Whether plain error results when: (1) the trial court permits extrinsic evidence of a prior inconsistent statement to be admitted into evidence; (2) earlier in his testimony, the declarant of the prior inconsistent statement already admitted to making the statement; and (3) the extrinsic evidence, if considered for its truth, proves each essential element of the charges against the defendant.

Whether extrinsic evidence of a prior inconsistent statement is improperly admitted into evidence in violation of Evid. Rule 613(B) and a defendant's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses when, earlier in his testimony, the declarant of the prior inconsistent statement already admitted to making the statement.

Whether a trial court abuses its discretion when it permits extrinsic evidence of a prior inconsistent statement to be admitted into evidence when, earlier in his testimony, the declarant of the prior inconsistent statement already admitted to making the statement, and the extrinsic evidence, if considered for its truth, proves each essential element of the charges against the defendant.

Whether ineffective assistance of counsel results when counsel fails to properly object to the improper admission into evidence of extrinsic evidence of a prior inconsistent statement when the extrinsic evidence, if considered for its truth, proves each essential element of the charges against the defendant.

Whether the trial court unreasonably determined the facts in its October 7, 2011 decision denying Jordan's Motion for New Trial when it held that the recording was not admitted into evidence despite that it was admitted into evidence as State's Exhibit 31, played for the jury during trial, provided to the jury in transcript-form, and made available to the jury for review during deliberations both as a recording and as a transcript.

## A. Kareem Gilbert's recorded statement.

### 1. Gilbert admitted that he made a prior inconsistent statement, which had been recorded, wherein he claimed to have witnessed Jordan intentionally `shoot Davis; nevertheless, the court permitted the State to play the recording during trial and admit the statement into evidence for the jury's review during deliberations.

Kareem Gilbert entered into an agreement with the State when the State was prosecuting him for the murders of both Victor Davis and Bryan Austin. T.p. Vol. IV at 660-661; 690. In exchange for reduced charges, Gilbert agreed to testify against Appellant Jordan in Jordan's trial for the murder of Victor Davis. *Id.*

However, during his testimony, Gilbert immediately began recanting on the stand and denying that he witnessed Jordan shoot Victor Davis, which prompted the State to call for a recess. T.p. Vol. IV at 660-661, 664-665. During the recess, an attorney from the Hamilton County Public Defender's Office (Tim Cutcher) was designated to speak with and counsel Kareem Gilbert. *Id.* at 675. Cutcher advised the State that Gilbert wished to plead the Fifth Amendment and assert his right to remain silent. *Id.* at 685-687. Following the recess, the trial recommenced, first outside the presence of the jury, with a statement on the record from Gilbert's attorney explaining that Gilbert was going to assert his Fifth Amendment right to remain silent. *Id.* After Cutcher's statement, Gilbert asserted his Fifth Amendment right, and the jury reentered the courtroom. *Id.* at 686. Gilbert was then recalled to the witness stand, and the State was permitted to treat Gilbert as a hostile witness pursuant to Evid. R. 607.[3] *Id.* at 689-690; *see also id.* at 683-684 (the court ruling that the State may cross-examine Gilbert as a hostile witness).

---

[3] Evid. R. 607 provides that "the credibility of a witness may be attacked by the party calling the witness by means of prior inconsistent statement only upon a showing of surprise and affirmative damage."

But the State erred in violation of Jordan's due process rights in the manner in which it proceeded to impeach Gilbert as a hostile witness. Despite that the State was permitted to impeach Gilbert as a hostile witness, the State was **not permitted** to introduce extrinsic evidence to demonstrate Gilbert's prior inconsistent statements. It is well-settled that in order to admit extrinsic evidence of a prior inconsistent statement into evidence, the declarant must be given the opportunity to explain or deny the statement. Ohio R. Evid. 613(B). And when the declarant **admits** to making the statement, **extrinsic evidence of the statement is inadmissible.** *See Rush v. Illinois Cent. R. Co*, 399 F.3d 705, 722 (6th Cir. 2005) (when a witness admits to making a prior inconsistent statement, extrinsic proof of the statement is inadmissible); *see also Umani v. Caruso*, 2008 WL 2216283 (E.D. Mich. May 27, 2008) citing *Rush*, 399 F.3d at 722 ("The foundational prerequisites of Rule 613(b) require only that the witness be given an opportunity, at some point, to explain or deny the prior inconsistent statement and that the opposing party be given the opportunity to examine the statement, however, when a witness admits to making a prior inconsistent statement, **extrinsic proof of the statement is inadmissible**").

Here, Gilbert **admitted** that he previously made a statement to the police contrary to the testimony he began giving at Jordan's trial. T.p. Vol. IV at 664-665; 689-690. Then, without asking him the details of that statement, the State (over trial counsel's objection) immediately played his recorded statement and gave each juror a transcript of the statement in order to impeach Gilbert and demonstrate Gilbert's prior inconsistent statement. *Id.* at 690, 692. The recording was admitted into evidence as State's Exhibit 31. T.p. Vol. VIII at 796, 797. Jurors were even given access to the recording during deliberations and urged by the State during its closing argument to consider the recording for its substance and truth. *See infra* Second and Third Assignments of Error; *see e.g.* T.p. Vol. VIII at 917-918). ("And Kareem Gilbert. Again,

the defense is asking you to believe what he said in court was true…But as you play the statement…if you read that statement…The statement has to be truthful.")

Given that Gilbert admitted to previously making a statement contrary to and inconsistent with his trial testimony, the admission of extrinsic evidence to demonstrate the prior inconsistent statement is impermissible according to Evid. R. 613(B) and in violation of Jordan's rights to due process, a fair trial before an impartial jury, confront all witnesses, and have the effective assistance of counsel (for failure to state the proper grounds for objection). *See State v. Dick* (1971), 270 Ohio St. 2d 162; 271 N.E.2d 797; *State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist., Dec. 13, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted"); *State v. Risden*, 2010 WL 892083; 2010-Ohio-991 (Ohio App. 2 Dist., March 12, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted"); *State v. Greene*, 2009 WL 478088; 2009-Ohio-850 (Ohio App. 8 Dist., Feb. 26, 2009) (same).

Once Gilbert admitted to making the prior inconsistent statements, the jury had the basis of knowledge necessary to decide whether Gilbert was a believable witness. Admitting extrinsic evidence to demonstrate each prior inconsistent statement, **after Gilbert has already admitted to it,** is highly prejudicial in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights because it misleads the jury into considering the prior inconsistent statements for their truth rather than for impeachment purposes. Once Gilbert admitted to making the prior inconsistent statements, and the jury observed Gilbert on the stand making such admission, the State's impeachment of Gilbert in this regard is complete.

Consequently, submitting the recording and transcript of the prior inconsistent statements to the jury during trial and to review during deliberations misleads the jury into thinking that it

8

may consider the substance of the prior inconsistent statements for their truth rather than solely for impeachment purposes—especially in light of the State's personal vouching for the recorded statement and urgings, during closing argument, to consider the recording for its truth. *See infra* Second and Third Assignments of Error.

Because trial counsel failed to object on the proper basis and a recording that established the State's entire case against Jordan was then admitted into evidence,[4] ineffective assistance of counsel resulted as well.[5] Proper and timely action by trial counsel potentially could have prevented this error from occurring. Instead, Jordan suffered the ultimate prejudice—a recording that, standing alone, proves the State's murder case against him. But for counsel's failure to object on the proper basis and ensure that the trial court: (1) understood the issue at hand; and (2) ruled on that specific issue, the trial court may have prevented the State from playing the recording and admitting it into evidence.

---

[4] Additionally, at the close of the State's case when the trial court ultimately admitted the recording into evidence as State's Exhibit 31, counsel failed to object. *See* T.p. Vol. VIII at 796, 797.

[5] Although trial counsel objected to the State playing the recording, this court may construe counsel to have couched his objection in Gilbert's Fifth Amendment right against self-incrimination rather than Jordan's aforementioned constitutional rights and the principle that once Gilbert admitted to making the prior inconsistent statement, extrinsic evidence of said statement is inadmissible. In order to prove a violation of the Sixth Amendment due to ineffective assistance of counsel, there must be a determination that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced as a result. *State v. Haynes*, 2011 WL 5353070, ¶16 (Ohio App. 12 Dist., Nov. 7, 2011) citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-688; 104 S.Ct. 2052. In order to establish prejudice, an appellant must establish that but for trial counsel's error, a reasonable probability exists that the result of his trial would have been different. *Haynes*, 2011 WL 5353070 at ¶16 citing *Strickland*, 466 U.S. at 687-688; 104 S.Ct. 2052.

**B. Background of Jordan's Motion for New Trial.**

In his Motion for New Trial,[6] Jordan alleged several errors, but primarily claimed that the recording of Gilbert's statement to police, (in which Gilbert told authorities that he witnessed Jordan intentionally shoot and kill Victor Davis), was improperly played for the jury and admitted into evidence, because Gilbert **admitted** that he made this prior inconsistent statement. And because Gilbert admitted to making the statement, extrinsic evidence of said statement was admitted in violation of Evid. Rule 613(B) and Jordan's constitutional rights to due process, a fair trial before an impartial jury, to confront all witnesses, and the effective assistance of counsel.

In litigating the Motion for New Trial, the State has repeatedly conceded the issue at hand—that **"a prior inconsistent statement may not be admitted as evidence in a case when the witness admits to making the inconsistent statement."** *See* State's Memorandum Regarding Cases under this Court's Consideration at 1. *See also id.* (the State again conceding that "when a witness is confronted with a prior inconsistent statement and admits to the statement then the statement will not be admitted into evidence.").

In fact, that is exactly what happened here as is unambiguously demonstrated in the record. T.p. Vol. VIII at 796, 797 (the State explaining that State's Exhibit 31, which was

---

[6] *See* Supplemental Motion for New Trial (filed May 23, 2011), Briefing on Additional Cases (filed on September 12, 2011), and Reply to State's Briefing on Additional Cases (filed on October 4, 2011) in which Jordan presents this argument. Jordan's original Motion for New Trial (filed on February 7, 2011) was prepared by undersigned counsel without the aide of a transcript of proceedings because the transcript had not yet been prepared. Therefore, the allegations of misconduct discussed in the original Motion for New Trial were presented in good faith based on counsel's current understanding of the events that unfolded at Jordan's trial and all other relevant times. Once counsel had access to the transcript, she submitted the Supplemental Motion for New Trial presenting amended claims that properly asserted the errors that occurred at trial.

admitted into evidence, is Gilbert's recorded statement). Without question, Jordan is entitled to a new trial.

But bizarrely—and despite Jordan's assertions to the contrary (*see* Reply to State's Briefing on Additional Cases, filed October 4, 2011)—the trial court and the State have been continually operating on the (plainly erroneous) basis that the statement was *not* admitted into evidence. And it is primarily for this very reason that the trial court denied Jordan's Motion for New Trial. *See* October 7, 2011 Decision (the trial court denied Jordan's motion for new trial on the basis that the statement was not admitted into evidence).

### C. The trial court misinterpreted the applicable case law.

In its October 7, 2011 decision denying Jordan's Motion for New Trial, the court relied on four cases that address the use of extrinsic evidence of prior inconsistent statements: *State v. Keith* (1979), 79 Ohio St. 3d 514; 684 N.E.2d 47; *State v. Carusone,* 2003 WL 832061; 2003-Ohio-1018 (Ohio App. 1 Dist. 2003); *State v. Johnson,* 10 Ohio App. 3d 14; 460 N.E.3d 625 (Ohio App. 10 Dist. 1983); and *State v. Hill,* 2004 WL 870439; 2004-Ohio-2048 (Ohio App. 2 Dist. 2004).

These four cases, which include an Ohio Supreme Court case and a First District case, **all** indisputably confirm Jordan's position that when a witness admits to making the prior inconsistent statement, extrinsic evidence of that statement is inadmissible. Furthermore, reversible error attaches when erroneous admission of such extrinsic evidence results in prejudice to the defendant. As a matter of black letter law, these legal principles (confirmed in all four cases) support Jordan's claims that: (1) Gilbert's prior inconsistent statement should not have been played for the jury, given to the jury for use during deliberations, or admitted into evidence, because Gilbert admitted to making the statement; and that (2) playing the statement resulted in the ultimate prejudice to Jordan. After all, if true and if believed, Gilbert's recorded

11

statement proves the State's entire case against Jordan.

**1. *State v. Keith* (1979), 79 Ohio St. 3d 514; 684 N.E.2d 47.**

In *State v. Keith*, the Ohio Supreme Court affirms Jordan's contention that when a witness **admits** to having made a prior inconsistent statement, extrinsic evidence of the statement is inadmissible. In *Keith*, extrinsic evidence (a video recording of a news interview) was played during the trial because the witness in question **denied** making the statement in question. On appeal, the Supreme Court upheld the use of extrinsic evidence because according to Rule 613(B), the proper foundation was laid when the witness **denied** making the statement. Accordingly, the court was within its discretion to permit the state to play the recording for impeachment purposes.

Because the witness in *Keith* denied the prior inconsistent statement, the foundation for the extrinsic evidence in *Keith* is exactly the opposite as here. Had Gilbert denied making the statement, use of the recording for impeachment purposes would have been proper and this case would mirror the factual scenario in *Keith*. But here, to the contrary, Gilbert admitted that he previously made a statement to the police contrary to his testimony at Jordan's trial. T.p. Vol. IV at 664-665; 689-690.

Despite the mirror opposite factual scenarios, the *Keith* case is instructive for its reaffirmation of Rule 613(B)'s foundation requirements and its limit on the jurors' access to the extrinsic evidence—even when the foundation for using extrinsic evidence properly has been laid. Quite significantly, the jurors in *Keith* were *denied permission to review the video during deliberations* to ensure that the jurors only used the recording for impeachment of the in-court testimony rather than for it substance. *Keith*, 79 Ohio St.3d 514, 526; 684 N.E.2d 47. Here, despite that jurors never should have heard the recording to begin with (because Gilbert admitted having made prior inconsistent statements), to add to Jordan's prejudice, the jurors also were

given free reign during deliberations to re-listen to the recording and/or re-read its transcript. They were even urged by the State during closing arguments to consider the statement for its truth and substance. *See infra* Second, Third, and Fourth Assignments of Error.

### 2. *State v. Carusone,* 2003 WL 832061; 2003-Ohio-1018 (Ohio App. 1 Dist. 2003).

The trial court also relied on *State v. Carusone,* 2003 Ohio 1018 (Ohio App. 1 Dist. 2003) in its October 7, 2011 decision. As in *Keith,* the First District in *Carusone* addressed a scenario where the witness **denied** or **failed to recall** the prior inconsistent statement; thus, the foundation was properly laid for the use of extrinsic evidence of the prior inconsistent statement to impeach the witness's testimony. For this reason, *Carusone,* like *Keith,* involves an opposite factual scenario to the instant case where Gilbert **admitted** to making his prior inconsistent statement.

Despite that the foundation in *Carusone* was properly laid for the use of extrinsic evidence, the subject matter of the statement in question was a "collateral matter to the issue being tried." 2003 WL 832061 at ¶ 34, 38. In other words, the subject matter of the extrinsic evidence was "irrelevant" to the case at hand. *Id.* Accordingly, despite that the foundation was properly laid for the use of the extrinsic evidence, the trial court had the discretion to preclude use of the extrinsic evidence if the prejudicial impact on the defendant outweighed the benefit of the state impeaching the witness on a "collateral" "irrelevant" point. *Id.* at ¶ 37. Ultimately, the First District reversed the conviction due to the prejudicial impact of the extrinsic evidence on the defendant.

The First District's discussion of a trial court's discretion to permit the use of extrinsic evidence and "collateral matters" is inapposite to the instant case because the admissibility of extrinsic evidence involving a "collateral matter" only arises when the witness denies or fails to recall the statement. In this case, Gilbert admitted to making his prior inconsistent statement.

Even so, the First District's discussion of the "collateral matters" seemingly distracted the trial court in the instant case from focusing on the relevant points in *Carusone* that incontrovertibly demonstrate that a new trial is in order for Jordan. The *Carusone* Court reaffirms the general rule that "extrinsic evidence is **only admissible** when a witness **denies** making a prior statement or states that he is **unable to recall** the prior statement." *Id.*

But what is more, the First District in *Carusone* identified three problems that led to reversal, each of which is present in this case: (1) the lack of a jury instruction explaining that the extrinsic evidence was to be used solely for impeachment (*see infra* Fifth Assignment of Error for full discussion); (2) the prosecutor encouraging the jury to use the extrinsic evidence as substantive evidence (*see infra* Second and Third Assignments of Error for full discussion); and (3) the trial court's failure to redact the prejudicial "other acts" evidence involved in the extrinsic evidence.

Applying these three concerns to Jordan's case, the jury instruction given by the Court was insufficient to cure the improper admission of Gilbert's recorded statement because the jury never should have heard or had access to this statement. *See infra* Fifth Assignment of Error for full discussion. The improper admission of extrinsic evidence cannot be cured by limiting the jury's use of extrinsic evidence that it never should have heard, read, or otherwise had access to—especially when its substance proves the State's entire case.

Second, like the state in *Carusone,* the State in this case encouraged the jury to consider the truth of Gilbert's recorded statement. *See infra* Second and Third Assignments of Error for full discussion. When urged by the State in its closing argument to consider the truth of the recording, one cannot reasonably expect the jurors to follow the limiting instruction and completely disregard the contents of Gilbert's statement that they never should have heard or read. *See infra* Second, Third, Fourth, and Fifth Assignments of Error.

Third, because Gilbert admitted to making the prior inconsistent statement, extrinsic evidence of such never should have been admitted in whole or part. Thus, a redacted version of Gilbert's statement would be equally improper.

Finally, *Carusone* is instructive for its finding of prejudice to the defendant in a factual scenario far less damaging to the defendant than the scenario involved in the instant case. Whereas the subject matter of the extrinsic evidence in *Carusone* pertained to collateral matters "irrelevant" to the case at hand, *id.* at ¶ 34, 38, in this case, the extrinsic evidence, if considered for its truth and believed, proves the State's entire case.

For these reasons, this Court should not be misguided by the trial court's discussion of *Carusone*, but instead, should use the authority of *Carusone* to grant Jordan a new trial.

### 3. *State v. Johnson*, 10 Ohio App.3d 14; 460 N.E.3d 625 (Ohio App. 10 Dist. 1983); & *State v. Hill*, 2004 WL 870439; 2004-Ohio-2048 (Ohio App. 2 Dist. 2004).

Finally, the trial court discussed *State v. Hill* and *State v. Johnson* in its October 7, 2011 decision. And again, the trial court has utterly misconstrued these authorities. The trial court held that "A witness' prior inconsistent statement may be used for impeachment purposes even when the witness admits the statement." *See* October 7 Decision, T.p. Vol. X at 992. The trial court's summary is simply wrong. Neither the *Hill* Court nor the *Johnson* Court renders such a decision, and if either did, the holding would be contrary to every state and federal court in Ohio and beyond.

In fact, in *Johnson*, extrinsic evidence of the prior inconsistent statement was **excluded** from evidence. When the defendant claimed as an error on appeal that the trial court should have admitted transcripts of the statements into evidence, the error was denied. 10 Ohio App.3d at 17-18; 460 N.E. at 630-631.

In *Hill* the Second District found that extrinsic evidence of the complaining witness's prior inconsistent statement was improperly admitted but that such admission constituted

15

harmless error. In so holding, the Second District adhered to the same principle—that extrinsic evidence of a prior inconsistent statement made by a witness **is not admissible if the witness admits** to making the prior inconsistent statement. 2004 WL 870439 at ¶ 40. In *Hill*, the complaining witness admitted making the prior inconsistent statements. Nevertheless, the trial court admitted extrinsic evidence of the statement. While the Second District found admission of the extrinsic evidence to be improper, the court deemed the erroneous admission harmless error because during cross-examination the witness admitted each line of her prior inconsistent statement. Accordingly, admission of the written statement did not result in the jury having access to any statements it had not already heard during cross-examination. In other words, the jury had already heard the contents of the prior inconsistent statement during a thorough and proper cross-examination in which the defense attorney asked the complaining witness to admit or deny each line of the prior statement. Consequently, admission of the statement did not prejudice the defendant.

As explained *supra*, the improper admission of Gilbert's recorded statement creates the ultimate prejudice to Jordan. Once Gilbert admitted the prior inconsistent statement, the jury should have never heard, read, or otherwise had access to Gilbert's statement. Instead, the jury heard and read a statement that proved the State's entire case. To Jordan's further prejudice, the jury had access to the recording and its transcript during deliberations and was urged by the State to consider its substance and truth. *See infra* Second and Third Assignments of Error.

To be sure, the State could have engaged in more thorough cross-examination, as described in *Hill*, asking Gilbert to admit or deny each line of his prior inconsistent statement. Instead, however, the State chose to ask Gilbert to comprehensively admit or deny the statement as a whole. Once Gilbert admitted to making the prior inconsistent statement, the State could not use extrinsic evidence to demonstrate the prior inconsistent statements. And this is because

16

Gilbert's prior inconsistent statements could be used by the jury solely for impeachment purposes—to decide whether Gilbert was believable as a witness as he testified in court before the jury—not for the jury to compare Gilbert's in-court testimony to his prior inconsistent out-of-court statements and then decide which statements to believe.

In sum, admission of the recording and transcript of same constitutes plain error in violation of Evid. R. 613(B) and Jordan's rights to due process, a fair trial before an impartial jury, and to confront all witnesses.[7] Alternatively, ineffective assistance of counsel attaches, for trial counsel's failure to timely object (1) for the proper reason regarding the State's use of the recording during trial; and (2) to the admission of the recording into evidence as an exhibit for the jury to use during deliberations.

Jordan is entitled to a new trial on this assignment of error alone because the risk of prejudice caused by the jury considering the substance of Gilbert's statement (wherein Gilbert claims to have witnessed Jordan intentionally shoot Davis) is so extreme that the verdict is unworthy of confidence, and a strong probability exists that but for the improperly admitted evidence, a different outcome would have resulted.

---

[7] Pursuant to Crim. R. 52(B), plain error exists when there is an obvious deviation from a legal rule that affected the defendant's substantial rights or influenced the outcome of the proceedings. *State v. Gibson*, 2011WL 51422; 2011-Ohio-5614 (Ohio App. 10 Dist., Nov. 1, 2011).

## SECOND ASSIGNMENT OF ERROR

**II.      The State committed plain error in violation of Jordan's Fifth, Sixth, and
         Fourteenth Amendment rights to due process, a fair trial before an impartial jury,
         and to confront witnesses, by urging the jury to consider the substance of Gilbert's
         prior inconsistent statements when the statements were only admissible for purposes
         of impeaching Gilbert. Alternatively, trial counsel provided ineffective assistance
         for failure to timely object to the State's improper remarks. The trial court further
         abused its discretion by failing to correct this error when it denied Jordan's Motion
         for New Trial, which asserted this error.**

### Issues Presented for Review

Whether plain error in violation of a defendant's constitutional rights to due process, a fair trial
before an impartial jury, and to confront witnesses attaches when the State urges the jury to
consider the substance of a recording that: (1) the court deemed admissible solely for
impeachment purposes; and (2) if considered for its truth, proves each essential element of the
charges against the defendant.

Whether ineffective assistance of counsel results when counsel fails to properly object to the
State's improper comments during its closing argument, urging the jury to consider the substance
of a recording that: (1) the court deemed admissible solely for impeachment purposes; and (2) if
considered for its truth, proves each essential element of the charges against the defendant.

Whether a trial court abuses its discretion when it upholds improper comments by the State
during its closing argument, urging the jury to consider the substance of a recording that: (1) the
court deemed admissible solely for impeachment purposes; and (2) if considered for its truth,
proves each essential element of the charges against the defendant.

In a related reversible error, the State committed misconduct by referring to the substance

of Gilbert's prior inconsistent statements when Jordan's Fifth, Sixth, and Fourteenth Amendment

rights strictly limit the State's use of the statements to impeaching Gilbert's credibility.

Referring to the substance of the statements runs afoul of due process and misleads the jury into:

(1) comparing Gilbert's testimony to his prior inconsistent statement to police; (2) comparing

Gilbert's prior inconsistent statements to the other evidence presented by the State; and then, (3)

based on these comparisons, judging which statement to believe—Gilbert's in-court testimony or

his recorded statement to police.  Instead, in its decision to believe or disbelieve Gilbert's

testimony in Jordan's trial, the jury should have used the statement only to consider Gilbert's

credibility in court that day.  *See Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 643; 94 S.Ct.

1868 (The Supreme Court of the United States holding that when a prosecutor's improper comments "so infect the trial with unfairness" a denial of due process results and the conviction must be reversed). *See e.g. Gordon v. Kelly*, 205 F.3d 1340; 2000 WL 145144 (6th Cir. Feb. 1, 2000) (prosecutorial misconduct in violation of defendant's due process rights resulted when prosecutor's comments ran a high risk of misleading the jury about the evidence). *See also State v. Dick* (1971), 270 Ohio St. 2d 162; 271 N.E.2d 797; *State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist., Dec. 13, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted"); *State v. Risden*, 2010 WL 892083; 2010-Ohio-991 (Ohio App. 2 Dist., March 12, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted"); *State v. Greene*, 2009 WL 478088; 2009-Ohio-850 (Ohio App. 8 Dist., Feb. 26, 2009) (same). Although trial counsel failed to object to these errors as they occurred at trial, Jordan presented this error in his Motion for New Trial, which was denied on October 7, 2011.

Here, in closing argument, the State repeatedly referred to the substance of Gilbert's statements and urged the jury to consider the statement for its **truth.** *See* T.p. Vol. VIII at 917-918). ("And Kareem Gilbert. Again, the defense is asking you to believe what he said in court was true…But as you play the statement…if you read that statement…**The statement has to be truthful…**[A] lot of people want to cooperate with us in investigations, and we have to make an independent determination of whether what they are saying is **true** "); *see also Id.* at 924-926 (wherein the state, during closing argument, points to details in Gilbert's recorded statement to police (the prior inconsistent statement) and urges the jury to compare the statements to corroborating testimony given in court, such as the number of shots fired, where the car was

located, and the lack of shell casings at the crime scene).[8]

Clearly, the State urged the jury to consider the truth of Gilbert's statement to the police (the prior inconsistent statement) wherein he stated that he observed Jordan shoot Davis. In other words, the State, in closing, asked the jury to: (1) identify details in Gilbert's statement; (2) compare those details to corroborating testimony given by other witnesses; (3) note the similarities; (4) believe Gilbert's prior statement; and (5) accordingly, disbelieve Gilbert's testimony. It is wholly improper to ask the jury to consider the substance of Gilbert's statement to police, such as details of the statement, and compare the substance of the statement to corroborating testimony, because this process, by definition, requires the jury to consider Gilbert's prior inconsistent statement for its truth rather than for impeaching Gilbert's in-court testimony.

In sum, the jury's duty was not to ask, "Which of Gilbert's statements do I believe: his testimony or his recorded statement to police?" Instead, the jury was required to determine whether to believe Gilbert's in-court testimony given the fact that he gave a prior inconsistent statement to police. Asking the jury to consider the substantive details of Gilbert's prior statement and compare them to the testimony given by the detectives and other state witnesses is, by definition, asking the jury to consider the truth of inadmissible hearsay.

Referring to inadmissible hearsay during a closing argument asserted for the truth resulted in prosecutorial misconduct in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial by an impartial jury, and to confront all witnesses. *See State v. Kirk*, 2010 WL 1818894; 2010-Ohio-2006 (Ohio App. 6 Dist., May 7, 2010) (referring to inadmissible hearsay during a closing argument asserted for the truth resulted in

---

[8] The prosecutor makes additional improper remarks throughout the closing argument. *See* T.p. Vol. VIII at 865-930.

prosecutorial misconduct).

Alternatively, trial counsel's failure to object to this error on the proper basis constitutes ineffective assistance of counsel. Proper and timely action by trial counsel potentially could have prevented these errors from occurring. Instead, Jordan was prejudiced by the jury improperly considering the substance of Gilbert's recorded statement.

## THIRD ASSIGNMENT OF ERROR

III.    **The State committed misconduct in violation Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney remarked to the jury about his personal role in the plea agreement with Gilbert wherein Gilbert gave the recorded statement which was admitted solely for impeachment purposes. In doing so, the prosecuting attorney: (1) acted as a witness whom Jordan was unable to confront; and (2) undermined the jury's ability to impartially determine the facts and weigh the evidence.**

### Issues Presented for Review

Whether the prosecuting attorney acts as a witness for the State in violation of the defendant's Sixth Amendment right to confront all witnesses when the prosecuting attorney remarks to the jury about his personal role in obtaining a recorded statement from and plea agreement with the state's key witness.

Whether the State violates a defendant's Fifth, Sixth, and Fourteenth Amendment rights to have an impartial jury determine the facts and weigh the evidence when, during the State's closing argument, the prosecuting attorney personally vouches for the credibility and truthfulness of a key state witness's recorded statement.

Whether the trial court abuses its discretion in failing to grant a mistrial when, during the State's closing argument, the prosecuting attorney personally vouches for the credibility and truthfulness of a key state witness's recorded statement.

In addition to the improper remarks discussed *supra* in the Second Assignment of Error, the prosecuting attorney effectively acted as a witness for the State and vouched for Gilbert's credibility in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights.

During the State's closing argument, the prosecuting attorney (over defense objection and motion for mistrial, T.p. Vol. VIII at 919) explained to the jury his personal role in the interrogation of and plea agreement with Gilbert wherein Gilbert gave his recorded statement:

21

[A]s you play the statement…if you read the statement…It's five trained people. ***I'm not trying to toot my own horn***, but you got Det. McGuffey and Luke and Vaughn and they're all homicide investigators. And ***Ms. Shanahan and myself all part of a plea agreement***, as you can see that it says that. ***The Statement has to be truthful….We have got a duty, we are officers of the court, we are here to see that justice is done***. So that's why we, I don't want to say grill him for an hour, but some of the questions were hard questions."[9]

T.p. Vol. VIII at 917-918.

Then the prosecuting attorney continued to recite details from Gilbert's recorded

statement, compare those details with corroborating evidence, and explain why Gilbert's

statement in the recording "has to be truthful," due to not only its corroboration with other

evidence presented by the State, but also to the manner in which he and the detectives questioned

him with open-ended rather than leading questions. *See* T.p. Vol. VIII at 918, 924-926.

In doing so, the prosecutor effectively acted as a witness for the State in an egregious

violation of Jordan's rights under the Confrontation Clause, vouched for Gilbert's credibility in

the recorded statement (and thus, again improperly urged the jury to consider the recording for

its substance and truth rather than for impeachment, *see supra* Second Assignment of Error), and

undermined the jury's ability to render impartial credibility determinations in violation of

Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial by an

impartial jury. *See Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 643; 94 S.Ct. 1868 (The

Supreme Court of the United States holding that when a prosecutor's comments upon summation

"so infect the trial with unfairness" a denial of due process results and the conviction must be

reversed). *See also United States v. Young* (1985), 470 U.S. 1, 18-19; 105 S.Ct. 1038 (U.S.

Supreme Court explaining that "the prosecutor's vouching for the credibility of witnesses and

expressing his personal opinion concerning the guilt of the accused pose two dangers: such

---

[9] The prosecutor makes additional improper remarks throughout the closing argument. *See* T.p. Vol. VIII at 865-930.

comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.").

In sum, the U.S. Supreme Court has emphasized that a defendant has the constitutional right to have his guilt decided solely on the evidence properly presented to the jury without the suggestion of other evidence known to the prosecutor. *Young*, 470 U.S. at 18. *See e.g. Gordon v. Kelly*, 205 F.3d 1340; 2000 WL 145144 (6th Cir. Feb. 1, 2000) (prosecutorial misconduct in violation of defendant's due process rights resulted when prosecutor's comments injected fear into the jurors about their personal safety and ran a high risk of misleading the jury about the evidence).

Here, without question, the prosecutor's improper remarks constitute an egregious error that caused Jordan significant prejudice in the eyes of the jury. The prosecutor emphatically attested to his (and the detectives') honorable search for truth and justice. T.p. Vol. VIII at 917-918. He explained that the plea agreement involves a lot of "legal language" but that it also bears his signature, implying that he vouches for it and may know evidence of Jordan's guilt beyond what has been presented at trial. *Id.* at 902. *See e.g. Young*, 470 U.S. at 18. He explained the interrogation method he and the detectives used on Gilbert as well as why this method leads to truthful statements. T.p. Vol. VIII at 918, 924-926. He personally vouched for the credibility of Gilbert's recorded statement, told the jurors the recorded statement "has to be truthful," *id.* at 917-918, and explained how the details of the recording are corroborated by other State evidence and witnesses. *Id.* at 918, 924-926. In sum, the prosecuting attorney essentially stamped Gilbert's recorded statement with the State's seal of approval for its truthfulness.

Due to the prosecutor's egregious misconduct, the jurors: (1) considered Gilbert's recorded statement for its substance and truth; and (2) deemed Gilbert's recorded statement to be credible and truthful due to the prosecuting attorney's personal vouching and urgings to compare the details of the statement to other evidence presented by the State. For these reasons, the verdict is unworthy of confidence, Jordan's due process and confrontation rights have been violated, and reversal is in order.

## FOURTH ASSIGNMENT OF ERROR

IV. **The State committed plain error in violation Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney cautioned the jury that if it acquitted Appellant on the basis that Gilbert actually committed the murder, then the following events would unfold: (1) at Gilbert's future murder trial, Appellant could freely admit to the murder without repercussion (due to Double Jeopardy protections); (2) Gilbert likely also would be acquitted due to Appellant's confession; (3) no one would stand convicted for Victor Davis' murder; and thus, (4) Appellant and Gilbert would have successfully executed an elaborate scheme to both trick the criminal justice system and evade convictions for the murder of Victor Davis. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to object to the prosecutorial misconduct.**

## Issues Presented for Review

Whether plain error in violation of a defendant's Fifth, Sixth, and Fourteenth Amendment rights to confront all witnesses and have an impartial jury determine the facts and weigh the evidence attaches when, during the State's closing argument, the prosecuting attorney cautions the jury about the alleged future consequences of an acquittal.

Whether ineffective assistance of counsel results when counsel fails to properly object to the State's improper comments during its closing argument warning a jury about the potential future consequences of an acquittal.

Similar to the Second and Third Assignments of Error, the prosecuting attorney committed misconduct during the State's closing argument when he said the following:

> The whole thing is that they [Appellant Ruben Jordan and Kareem Gilbert] knew there was going to be a jury somewhere down the road, and this is his clear final test, his final obstacle is you folks, and we are asking that you not let him get past justice by a jury trial in this particular case, because when he is found not guilty, I don't know whether you have heard, it's a term called double jeopardy. And at a later point, if Kareem Gilbert is

charged with Davis's homicide, there is nothing to prevent Ruben Jordan from coming down here, another jury months and months from now and saying, yes, I did do it. Now that would be pretty monumental, and I don't know if anybody would believe him, but double jeopardy prevents him from being tried twice for the same crime. So again, this is the kind of plan that you don't know where it's going to go, but it's certainly foreseen that type of thing could happen depending on how this thing goes with you folks....

T.p. Vol. VIII at 900-901. The remarks continue, as well, with a discussion of the consequences Kareem Gilbert will face for "lying" during his testimony.[10]

By making these statements, the prosecutor committed plain error and invaded the jury's duty to impartially determine the facts, make credibility determinations, and base its decision solely on the evidence presented during trial. Additionally, the prosecutor acted as a witness against Jordan who essentially presented to the jury testimony about an alleged scheme Jordan and Gilbert masterminded to avoid conviction for the murder of Victor Davis. Jordan, of course, had no opportunity to confront this improper testimony as the Sixth Amendment guarantees. Consequently, rather than basing its verdict on the evidence adduced at trial, the jurors also factored the alleged future consequences of an acquittal of Jordan (as testified to by the prosecutor) into the equation.

The prosecutor's improper comments conveyed the impression that evidence of a sinister scheme to avoid conviction existed between Jordan and his son (Kareem Gilbert); and that despite not being presented at trial, this evidence is known to the prosecutor (due to his role in securing the Gilbert's recorded statement and plea agreement, for which the prosecutor personally vouched, *see supra* Third Assignment of Error). These improper considerations gravely jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury. What is more, in light of the Second and Third Assignments of Error incorporated herein, the prosecutor's testimony during closing argument about the future consequences of an

---

[10] The prosecutor makes additional improper remarks throughout the closing argument. *See* T.p. Vol. VIII at 865-930.

25

acquittal appeared in the jurors' eyes to carry the imprimatur of "the Government" and law enforcement. Consequently, the improper remarks undoubtedly induced the jury to trust the Government's caution—that the jury **must** render a guilty verdict lest the actual killer, whoever it may be, will never face justice—and to trust this caution above its own view of the evidence presented at trial.

For these reasons, the prosecutor's improper remarks during closing arguments (as discussed in the Second, Third, and Fourth Assignments of Error) so egregiously infected the jury's impartial consideration of the evidence presented at trial and infringed on Jordan's right to confront this unconstitutional testimony, that Jordan was deprived of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments.

Alternatively, trial counsel's failure to object to the improper remarks constitutes ineffective assistance of counsel. Proper and timely action by trial counsel potentially could have prevented these errors from occurring. Instead, Jordan was prejudiced by the jurors improperly considering unchecked evidence, which was never presented at trial.

## FIFTH ASSIGNMENT OF ERROR

**V.      The trial court erred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the errors explained in the First, Second, Third, and Fourth Assignments of Error. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to ensure that the jury instruction sufficiently and properly conveyed the applicable law.**

## Issues Presented for Review

Whether a limiting instruction is *per se* inadequate to cure the improper use and admission of extrinsic evidence that, if considered for its truth, proves the State's entire case against the defendant.

Whether the trial court committed plain error in violation of the defendant's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the improper use and admission of extrinsic evidence.

Whether ineffective assistance of counsel attaches when trial counsel fails to ensure that the jury instructions sufficiently and properly convey the applicable law regarding the proper use of extrinsic evidence of a prior inconsistent statement.

During jury instructions, the Court directed the jury to consider Gilbert's prior statement only for purposes of impeachment. T.p. Vol. VIII at 937 ("You heard a tape-recorded statement of Kareem Gilbert. This recorded statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness.").

Given the compelling nature of the statement as the State's most crucial evidence in the case, the limiting instruction was insufficient to cure: (1) the improper admission of the recording and transcript of Gilbert's prior inconsistent statement (*see supra* First Assignment of Error); and (2) the state's misconduct in personally vouching for the statement and urging the jury to consider the statement for its truth (*see supra* Second and Third Assignments of Error).

Extrinsic evidence of Gilbert's prior inconsistent statement should not have been admitted into evidence. *See supra* First Assignment of Error. Instead, the jury should have been limited to their in-court observations of Gilbert as he admitted to making the prior inconsistent statement. In other words, the jury should have never heard or seen any extrinsic evidence of the substance and contents of Gilbert's statements to consider during deliberations to begin with. Accordingly, the improper admission of the extrinsic evidence cannot be cured by limiting the jury in its use of the extrinsic evidence that it should have never heard, read, or otherwise had access to. For this reason, a jury instruction is *per se* insufficient to cure the improper admission of extrinsic evidence of Gilbert's statements according to Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, to confront all witnesses, and to have the effective assistance of counsel (for failure to timely object for the proper reason).

This is a situation akin to a *Bruton* scenario in which the incriminating extrajudicial

statements of a co-defendant are given to a jury to supposedly consider against one co-defendant in a joint trial but not the other. As the U.S. Supreme Court explained in *Bruton v. United States* (1968), 391 U.S. 123, 135-36; 88 S.Ct. 1620, "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." For this reason, the Supreme Court found that a limiting instruction is *per se* ineffective because a jury, as a panel of human beings, cannot dismiss from their minds the extremely prejudicial statements, which if true, prove the State's entire case. *Id.* at 131.

Such is the case here. A jury should have never: (1) had access to extrinsic evidence of Gilbert's statement; or (2) considered the substance of Gilbert's prior inconsistent statement for its truth or consistency with other testimony and evidence presented in trial. And once: (1) given access to extrinsic evidence of Gilbert's statement; and (2) urged by the State to consider the substance and truth of Gilbert's statement—it is humanly impossible for a jury to follow a limiting instruction. As the Supreme Court recognized in *Bruton*, it is impractical to expect the jury to consider the contents of Gilbert's recorded statement only for purposes of evaluating Gilbert's in-court credibility rather than for its substance, when in the recording, Gilbert claims to have observed Jordan intentionally shoot Davis. Therefore, a jury instruction is *per se* ineffective to cure the fact that the jury heard the recording in court and was given the recording and transcript to consider during deliberations. This error occurred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, to confront all witnesses, and to have the effective assistance of counsel (for failure to timely object for the correct reason).

28

**A. Even if the Court finds a limiting instruction curative of the admission of extrinsic evidence of Gilbert's prior inconsistent statements, the limiting instruction itself insufficiently explains the proper use of the statements.**

The instruction given[11] leaves the jury to discern which of Gilbert's statements to believe—his in-court testimony or his prior inconsistent statements to police. The jury, comprised of lay people not trained in the law, was left to believe that they could compare the two statements and decide which one to believe. Nowhere in the instruction is the jury told not to consider the truth of the recorded statement and not to compare the substance of the statements to the other evidence presented during the trial. Nowhere in the instruction is the jury told that they could only use the prior inconsistent statement to evaluate the credibility of Gilbert's **in-court testimony** as opposed to the credibility of Gilbert's prior inconsistent statement.

Because the State urged the jury to compare the substance of Gilbert's statement to other corroborating evidence presented by the State during the trial, the jury needed more detailed instructions. Specifically, the jury needed to be told: (1) to disregard the contents of Gilbert's statement to police; and (2) that they were not permitted to choose which of Gilbert's statements to believe—his testimony or his statement to the police. Rather, the jurors' duty was to use the fact that Gilbert made a prior inconsistent statement to evaluate whether they believed Gilbert as he testified in court, and the jury needed so instructed through a more specific instruction.

The jury's clear understanding of this point is crucial to Jordan's due process rights to a fair trial before an impartial jury particularly because the substance of Gilbert's prior inconsistent statement to the police, standing alone, could prove the State's case against Jordan. And while Ohio law and Jordan's constitutional rights prohibit the jury was from using the statements as evidence to prove Jordan's guilt, the U.S. Supreme Court has recognized that a jury cannot

---

[11] *See* T.p. Vol VIII at 937 ("You heard a tape-recorded statement of Kareem Gilbert. This recorded statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness.")

separate impeachment from substance when evaluating evidence involving such highly prejudicial statements that proves the State's entire case. Accordingly, Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial by an impartial jury, to confront all witnesses, and have the effective assistance of counsel were violated not only by the jury's access to the extrinsic evidence but also by the inadequate jury instruction.

Notwithstanding Jordan's argument *supra* that a limiting instruction is *per se* ineffective to cure the improper admission of extrinsic evidence of Gilbert's prior inconsistent statement, the inadequate jury instruction runs contrary to Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair trial before an impartial jury, to confront all witnesses, and to have the effective assistance of counsel (for counsel's failure to timely object to the current instruction for the proper reason).

## CONCLUSION

For all the reasons stated herein, Defendant Ruben Jordan respectfully requests this Court to vacate his convictions and grant a new trial.

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Attorney for Ruben Jordan*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Brief of the Appellant Ruben Jordan was delivered this 7th day of March, 2012 to the Hamilton County Prosecutor's Office by hand delivery.

Michele L. Berry

30

**Appendix A: Judgment Entries of Conviction, Sentence, and Denial of Motion for New Trial by the Hamilton County Court of Common Pleas**

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: 02/15/2011
code: GJEI
judge: 125

**ENTERED**
**MAR 15 2011**

Judge: NADINE ALLEN    3-15-11

NO: B 1003262

STATE OF OHIO
VS.
RUBEN JORDAN

**JUDGMENT ENTRY: SENTENCE:
INCARCERATION**

Defendant was present in open Court with Counsel **AMY R WILLIAMS** on the **15th** day of **February 2011** for sentence.

The court informed the defendant that, as the defendant well knew, after defendant entering a plea of not guilty and after trial by jury, the defendant has been found guilty of the offense(s) of:
**count 1: AGGRAVATED MURDER WITH SPECIFICATION, 2903-01A/ORCN,SF**
**count 2: HAVING WEAPONS WHILE UNDER DISABILITY, 2923-13A3/ORCN,F3**

The Court afforded defendant's counsel an opportunity to speak on behalf of the defendant. The Court addressed the defendant personally and asked if the defendant wished to make a statement in the defendant's behalf, or present any information in mitigation of punishment.

Defendant is sentenced to be imprisoned as follows:
**count 1: CONFINEMENT: LIFE WITH ELIGIBILITY FOR PAROLE AFTER TWENTY FIVE (25) YEARS IN THE DEPARTMENT OF CORRECTIONS.
CONFINEMENT ON SPECIFICATION: 3 Yrs DEPARTMENT OF CORRECTIONS
TO BE SERVED CONSECUTIVELY AND PRIOR TO THE SENTENCE IMPOSED IN UNDERLYING OFFENSE IN COUNT #1.
count 2: CONFINEMENT: 2 Yrs DEPARTMENT OF CORRECTIONS**

**THE SENTENCES IN COUNTS #1 AND #2 ARE TO BE SERVED CONSECUTIVELY TO EACH OTHER.**

**THE TOTAL AGGREGATE SENTENCE IS THIRTY (30) YEARS TO LIFE IN THE DEPARTMENT OF CORRECTIONS.**

**THE DEFENDANT IS TO RECEIVE CREDIT FOR TWO HUNDRED EIGHTY NINE (289) DAYS TIME SERVED.**

D92277084

## THE STATE OF OHIO, HAMILTON COUNTY
## COURT OF COMMON PLEAS

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: NADINE ALLEN

NO:  B 1003262

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

JUDGMENT ENTRY: SENTENCE:
INCARCERATION

THE DEFENDANT IS TO MAKE RESTITUTION IN THE AMOUNT OF
$5,500.00 UNLESS THE VICTIM IS REIMBURSED BY THE OHIO VICTIMS
OF CRIME FUND.

THE DEFENDANT IS INDIGENT. NO COSTS, FINES, OR FEES IMPOSED.

FURTHER, IN ACCORDANCE WITH RC 2901.07,   THE DEFENDANT IS
REQUIRED TO SUBMIT A DNA SPECIMEN WHICH WILL BE COLLECTED
AT THE PRISON, JAIL, CORRECTIONAL OR DETENTION FACILITY TO
WHICH THE DEFENDANT HAS BEEN SENTENCED.   IF THE SENTENCE
INCLUDES ANY PERIOD OF PROBATION OR COMMUNITY CONTROL, OR
IF AT ANY TIME THE DEFENDANT IS ON PAROLE, TRANSITIONAL
CONTROL OR POST-RELEASE CONTROL, THE DEFENDANT WILL BE
REQUIRED, AS A CONDITION OF PROBATION, COMMUNITY CONTROL,
PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL, TO
SUBMIT A DNA SPECIMEN TO THE PROBATION DEPARTMENT, ADULT
PAROLE AUTHORITY, OR OTHER AUTHORITY AS DESIGNATED BY LAW.
IF THE DEFENDANT FAILS OR REFUSES TO SUBMIT TO THE REQUIRED
DNA SPECIMEN COLLECTION PROCEDURE, THE DEFENDANT WILL BE
SUBJECT TO ARREST AND PUNISHMENT FOR VIOLATING THIS
CONDITION OF PROBATION, COMMUNITY CONTROL, PAROLE,
TRANSITIONAL CONTROL OR POST-RELEASE CONTROL.

AS TO COUNT #1, THE DEFENDANT IS NOT SUBJECT TO THE POST
RELEASE CONTROL PROVISIONS OF OHIO LAW AS THIS IS A LIFE
SENTENCE. PAROLE ELIGIBILITY FOR THIS OFFENDER IS GOVERNED
BY OHIO REVISED CODE §2967.13(A)(1) AND THE DEFENDANT IS SO
ADVISED.

AS PART OF THE SENTENCE IN THIS CASE AS TO COUNT #2, THE
DEFENDANT MAY BE SUPERVISED BY THE ADULT PAROLE AUTHORITY
AFTER DEFENDANT LEAVES PRISON, WHICH IS REFERRED TO AS POST-
RELEASE CONTROL, FOR UP TO THREE ( 3 ) YEARS AS DETERMINED BY
THE ADULT PAROLE AUTHORITY.

date: **02/15/2011**
code: **GJEI**
judge: **125**

Judge: **NADINE ALLEN**

NO:  B 1003262

**STATE OF OHIO**
**VS.**
**RUBEN JORDAN**

**JUDGMENT ENTRY: SENTENCE:**
**INCARCERATION**

IF THE DEFENDANT VIOLATES POST-RELEASE CONTROL SUPERVISION OR ANY CONDITION THEREOF, THE ADULT PAROLE AUTHORITY MAY IMPOSE A PRISON TERM, AS PART OF THE SENTENCE, OF UP TO NINE ( 9 ) MONTHS, WITH A MAXIMUM FOR REPEATED VIOLATIONS OF FIFTY PERCENT ( 50% ) OF THE STATED PRISON TERM. IF THE DEFENDANT COMMITS A NEW FELONY WHILE SUBJECT TO POST-RELEASE CONTROL, THE DEFENDANT MAY BE SENT TO PRISON FOR THE REMAINING POST-RELEASE CONTROL PERIOD OR TWELVE ( 12 ) MONTHS, WHICHEVER IS GREATER. THIS PRISON TERM SHALL BE SERVED CONSECUTIVELY TO ANY PRISON TERM IMPOSED FOR THE NEW FELONY OF WHICH THE DEFENDANT IS CONVICTED.

ENTERED
NOV 21.2011

**COURT OF COMMON PLEAS**

**HAMILTON COUNTY, OHIO**

STATE OF OHIO,                     }          Case No.: B 10 03262
                                   }
    Plaintiff(s)      }
                                   }          Judge Nadine Allen
    v.                }
                                   }
RUBEN JORDAN,                      }          ENTRY DENYING MOTION
                                   }          FOR NEW TRIAL
    Defendant(s)      }
                                   }

This matter is before the court on the defendant's February 7, 2011 motion for new trial. Based upon the evidence submitted and the arguments of counsel this court finds that the motion is not well taken. The motion is DENIED.

IT IS SO ORDERED.

ENTER

NOV 21 2011

Judge Nadine Allen    NADINE L. ALLEN, JUDGE
Hamilton County Court of
Common Pleas

D95449749

1              COURT OF COMMON PLEAS

2              HAMILTON COUNTY, OHIO

3                    - - -

4    STATE OF OHIO,              :

5              Plaintiff.    :

6    vs.                    :Case Number B1003262

7    RUBEN JORDAN,          :Appeal Number C1100833

8         Defendant.    :Volume X of X

9

10                   - - -

11         TRANSCRIPT OF PROCEEDINGS

12                   - - -

13   APPEARANCES:

14       Seth S. Tieger, Esq.
         Megan E. Shanahan, Esq.
15            On behalf of the State of Ohio.

16       Michele Berry, Jr., Esq.
              On behalf of the Defendant.
17

18

19         BE IT REMEMBERED that upon the hearing

20   of this cause, on October 7, 2011, before the

21   Honorable NADINE L. ALLEN, a judge of the said

22   court, the following proceedings were had, to

23   wit:

24

25

1    MORNING SESSION, October 7, 2011

2        THE COURT:  This is the matter of

3    State vs. Ruben Jordan on B1003262.  This

4    is the Court's decision.  This matter is

5    before the Court on the defendant's

6    February 27, 2011 Motion for New Trial.

7        Based upon the evidence submitted,

8    this Court finds that the motion is not

9    well taken and is denied.

10       The primary argument presented by

11   defendant is that the playing of the tape

12   with a witness' prior inconsistent

13   statement to the jury was a violation of

14   Ohio Rules of Evidence 613(B), even

15   though the tape was not admitted into

16   evidence as an exhibit.

17       On this point, the Ohio Supreme

18   Court has ruled that when a case of a

19   witness' prior inconsistent statement is

20   played for the jury, but not admitted

21   into evidence, there is no error by this

22   Court.

23       That's State v. Keith, 79 Ohio

24   St.3d 526, and it's cited in this

25   decision.

1    In another upheld appellate

2 decision the Court ruled that even when

3 the prior inconsistent statement was

4 erroneously admitted into evidence, in

5 violation of Ohio Rules of Evidence

6 613(B), that error was harmless.

7    State v. Hill, 2004-Ohio-2948 2nd

8 District.  A witness' prior inconsistent

9 statement may be used for impeachment

10 purposes even when the witness admits the

11 statement.  State v. Johnson, 1983 case,

12 10 Ohio App. 3d 14.

13    And in contrast, in State v.

14 Carusone, 2003-Ohio-1018, that's a 1st

15 Appellate District decision.  The Court

16 ruled prior inconsistent statements may

17 only be used as extrinsic evidence when

18 the proper foundation is laid under Ohio

19 Rules of Evidence 613(B).  However the

20 Carusone ruling was extrinsically based

21 on other factors.  And the statement in

22 that case included other bad acts that

23 the prosecutor incited the jury to

24 consider the statement purely as proof of

25 the defendant's guilt and that the Judge

1  did not give the jury a curative
2  instruction.
3      The defendant also argued that the
4  prosecutor remarked in closing argument
5  inviting the jury to consider the taped
6  statement as substantive evidence were
7  overly prejudicial.
8      In this case the prosecutor also
9  told the jury that the same statement
10 should be used for impeachment purposes
11 only.  Additionally, this Court gave a
12 curative instruction that the statement
13 shall only be considered for impeachment
14 purposes following the Keith case.
15     The defendant claims that the
16 motion should be granted because
17 compelling new evidence of the
18 defendant's innocence has emerged based
19 upon the confession of Kareem Gilbert.
20     The transcript of the proceedings
21 in the case of Kareem Gilbert does not
22 reveal a confession since the exculpatory
23 statements were made by Defendant
24 Gilbert's attorney in mitigation;
25 therefore, the motion is denied as it

 1     fails to meet the Petro standard.  In

 2     State vs. Petro, 76 N.E.2d 370 it is so

 3     ordered.

 4          Counsel, I'm going to prepare a

 5     written document for you and send it in

 6     the mail.  Thank you.

 7          Who's on the case today?

 8          MR. TIEGER:  Seth Tieger.

 9          MS. SHANAHAN:  And Megan Shanahan.

10          THE COURT:   And for the defendant?

11          MS. BERRY:  Michele Berry.

12          THE COURT:  Thank you for your

13     presence.  There is also an appeal going

14     on, is there not?

15          MS. BERRY:  There will be now.

16          THE COURT:  And all these matters

17     will be assumed that it will be appealed

18     and you're going to handle the appeal?

19          MS. BERRY:  Yes.  Now that this

20     decision has come down it will be

21     appealed.

22          (Proceeding concluded.)

23

24

25

```
 1                    CERTIFICATE

 2          I, SHERI D. RENKEN, RMR, the

 3   undersigned, an Official Court Reporter for the

 4   Hamilton County Court of Common Pleas, do hereby

 5   certify that I transcribed Pat Nash's notes, and

 6   that the transcribed within five pages is a

 7   true, complete, and accurate transcript of her

 8   said stenotype notes.

 9          IN WITNESS WHEREOF, I hereunto set my

10   hand this 26th day of January, 2012.

11

12                      _____
                        SHERI D. RENKEN, RMR
13                      Official Court Reporter
                        Court of Common Pleas
14                      Hamilton County, Ohio

15

16

17

18

19

20

21

22

23

24

25
```

COURT OF APPEALS

FIRST APPELLATE DISTRICT

HAMILTON COUNTY, OHIO

FILED
COURT OF APPEALS

JUN - 1 2012

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY

STATE OF OHIO                     :     NO. C-110833

      Plaintiff-Appellee          :     Trial Court Case No. B-1003262

vs.                               :     Brief of Plaintiff-Appellee

RUBEN JORDAN                      :

      Defendant-Appellant         :

## BRIEF OF PLAINTIFF-APPELLEE



D97861814



MICHELE L. BERRY
Attorney at Law
114 East 8th Street
Cincinnati, Ohio 45202
(513) 919-5315

COUNSEL FOR DEFENDANT-APPELLANT

Joseph T. Deters (0012084P)
Prosecuting Attorney

Rachel Lipman Curran (0078850P)
Assistant Prosecuting Attorney

230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3091
Fax No. (513) 946-3021

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT
21

# TABLE OF CONTENTS

**PAGE**

**STATEMENT OF THE CASE**
   a) Procedural Posture: ................................................................................................ 1

   b) Facts: ...................................................................................................................... 2

**CROSS-ASSIGNMENT OF ERROR**
   Jordan's appeal of his trial, conviction, and sentence is untimely, and barred from review.
   The only aspect of Jordan's case which may be reviewed by this Court is his complaint
   regarding the trial court's denial of his motion for a new trial. .......................................... 7

   **ISSUE FOR REVIEW**
   Because Jordan was sentenced in March of 2011, and counsel failed to file an appeal
   within 30 days, his appeal is untimely. The current version of App.R. 4(B) does not
   apply to this case because it did not take effect until July 2011, and is not retroactive. .... 7

   **AUTHORITIES CITED:**
   App.R. 4 ............................................................................................................................ 7
   App.R. 5 ............................................................................................................................ 7

**FIRST ASSIGNMENT OF ERROR**
   The trial court committed plain error in violation of Evid. Rule 613(B) and Jordan's Fifth,
   Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial
   jury, and to confront all witnesses when it permitted the State to play Gilbert's entire
   recorded statement (extrinsic evidence of a prior inconsistent statement) during trial
   despite that earlier in his testimony Gilbert admitted to making said statement.
   Alternatively, trial counsel provided ineffective assistance in violation of Jordan's Sixth
   and Fourteenth Amendment rights by failing to object on the proper basis to the recording
   being played at trial and admitted into evidence. The trial court further abused its
   discretion by failing to correct these errors when it denied Jordan's Motion for New Trial
   asserting same. ................................................................................................................ 8

   **ISSUE FOR REVIEW**
   The court did not err in admitting Gilbert's statement. The statement was properly
   admitted under Evid.R. 613(B). Even if the court did err, the admission of Gilbert's
   statement did not likely affect the outcome of trial, and does not rise to the level of plain
   error. ................................................................................................................................ 8

   **AUTHORITIES CITED:**
   Evid.R. 613(B) ............................................................................................................ 8, 10
   *State v. Davenport*, 1st Dist. No. C-980516, (July 30, 1999) ........................................... 8
   *State v. Burns*, 5th Dist. No. 10CA130, 2011-Ohio-5926 ............................................... 8
   *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 ........................... 9
   *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) ................................................. 9
   *State v. Brown*, 112 Ohio App.3d 583, 679 N.E.2d 361 (1996) ........................................ 9
   *Rush v. Illinois Cent. R. Co*, 399 F.3d 705 (6th Cir. 2005) ............................................... 9

i

*Umani v. Caruso*, 2008 WL 2216283 (E.D. Mich. May 27, 2008) .................................. 9

*State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997) ................................. 10

*State v. Johnson*, 10 Ohio App.3d 14, 460 N.E.2d 625 (1983) ........................... 10

*State v. Hill*, 2nd Dist. No. 20028, 2004-Ohio-2048. .................................... 10

*State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018 ........................ 10

*State v. Jordan*, 167 Ohio App.3d 157, 2006-Ohio-2759, 854 N.E.2d 520 .................... 10

## SECOND ASSIGNMENT OF ERROR

The State committed plain error in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront witnesses, by urging the jury to consider the substance of Gilbert's prior inconsistent statements when the statements were only admissible for purposes of impeaching Gilbert. Alternatively, trial counsel provided ineffective assistance for failure to timely object to the State's improper remarks. The trial court further abused its discretion by failing to correct this error when it denied Jordan's Motion for New Trial, which asserted this error.

## THIRD ASSIGNMENT OF ERROR

The State committed misconduct in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney remarked to the jury about his personal role in the plea agreement with Gilbert wherein Gilbert gave the recorded statement which was admitted solely for impeachment purposes. In doing so, the prosecuting attorney: (1) acted as a witness whom Jordan was unable to confront; and (2) undermined the jury's ability to impartially determine the facts and weigh the evidence.

## FOURTH ASSIGNMENT OF ERROR

The State committed plain error in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney cautioned the jury that if it acquitted Appellant on the basis that Gilbert actually committed the murder, then the following events would unfold: (1) at Gilbert's future murder trial, Appellant could freely admit to the murder without repercussion (due to Double Jeopardy protections); (2) Gilbert likely also would be acquitted due to Appellant's confession; (3) no one would stand convicted for Victor Davis' murder; and thus, (4) Appellant and Gilbert would have successfully executed an elaborate scheme to both trick the criminal justice system and evade convictions for the murder of Victor Davis. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to object to the prosecutorial misconduct.

(ARGUED TOGETHER) .............................................................................. 12

**ISSUE FOR REVIEW**

The prosecutor did not engage in misconduct during closing argument, and Jordan enjoyed a fair trial. ............................................................................... 12

AUTHORITIES CITED:
*State v. Maurer*, 15 Ohio St. 3d 239, 473 N.E.2d 768 (1984) ........................... 13

*State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990) ................................................. 13
*State v. Black*, 75 Ohio App.3d 667, 600 N.E.2d 389 (1991) ............................................ 13
*Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940 (1982) .................................................. 13
*State v. Draughn*, 76 Ohio App.3d 664, 602 N.E.2d 790 (1992) ..................................... 13
*State v. Smith*, 1st Dist. No. C-080126, 2009-Ohio-3727................................................. 13
*State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191 ............................................. 13
*U.S. v. Young*, 470 U.S. 1, 105 S.Ct. 1038 (1985)...................................................... 13, 15
*State v. Smith*, 97 Ohio St.3d 367, 780 N.E.2d 221 (2002) ............................................ 14
*State v. Williams*, 79 Ohio St.3d 1, 679 N.E.2d 646 (1997) ........................................... 14
*State v. Tapke*, 1st Dist. No. C-060494, 2007-Ohio-5124 ............................................... 14
*State v. Jones*, 1st Dist. No. C-110059, 2011-Ohio-6633................................................. 16
*Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974)..................................... 16

## FIFTH ASSIGNMENT OF ERROR

The trial court erred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the errors explained in the First, Second, Third, and Fourth Assignments of Error. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to ensure that the jury instruction sufficiently and properly conveyed the applicable law. ........................................................................................................ 17

### ISSUE FOR REVIEW

The court's instruction correctly instructed the jury that Gilbert's previous statement was not testimony. The court explicitly told the jurors that the statement was only to be used for impeachment purposes, so they could evaluate Gilbert's credibility........................... 17

### AUTHORITIES CITED:

Crim.R. 30.................................................................................................................... 17
*State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981) ........................................... 17
*State v. Lewis*, 67 Ohio St. 3d 200, 616 N.E.2d 921 (1993)............................................ 17
*U.S. v. Bruton*, 391 U.S. 123, 88 S.Ct. 1620 (1968)....................................................... 18

### ADDITIONAL ISSUE FOR REVIEW

Trial counsel was not ineffective. .................................................................................... 19

### AUTHORITIES CITED:

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) ..................................... 19
*State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989)........................................... 19

### ADDITIONAL ISSUE FOR REVIEW

The trial court did not err in denying Jordan's motion for a new trial.............................. 20

### AUTHORITIES CITED:

*State v. Lopa*, 96 Ohio St. 410, 117 N.E.319 (1917) ....................................................... 20
*State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980) ........................................... 20
*Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993) ............. 20

*Kenkel v. Hamilton County Bd. Of County Com'rs*, 1st Dist. No. C-010347, 2001-Ohio-3917............................................................................................................................... 20
*State v. Roberts*, 156 Ohio App.3d 352, 805 N.E.2d 594 (2004) ...................................... 20
*State v. Herring*, 94 Ohio St.3d 246, 762 N.E.2d 940 (2002) .......................................... 20
*State v. Baker*, 1st Dist. No. C-080157, 2009-Ohio-4188 ................................................ 20
Crim.R. 33(A)(1) ................................................................................................................ 21
*State v. Spurlock*, 2nd Dist. No. 17954 (2000) ................................................................ 21
*State v. Luckett*, 144 Ohio App.3d 648, 761 N.E.2d 105 (2000) ...................................... 21

**CONCLUSION** .................................................................................................................... 22

**CERTIFICATE OF SERVICE** ............................................................................................... 22

COURT OF APPEALS

FIRST APPELLATE DISTRICT

HAMILTON COUNTY, OHIO

STATE OF OHIO        :     NO. C-110833

      Plaintiff-Appellee     :

vs.                     :

RUBEN JORDAN        :    <u>BRIEF OF PLAINTIFF-APPELLEE</u>

      Defendant-Appellant   :

## <u>STATEMENT OF THE CASE</u>

**a)**    **Procedural Posture:**

A Hamilton County Grand Jury indicted Ruben Jordan with one count of aggravated murder with firearm specifications and one count of having weapons while under disability. (T.d. 1). Jordan filed a notice of alibi, claiming that he was at 325 Hearne Avenue, Apt. 2, with Dominic Turner, Leshonda Gilbert, Lamar Smith, and Otis Clark. (T.d. 40). After trial, a jury found him guilty as charged. (T.d. 52).

The court deferred sentencing. (T.d. 56). Jordan filed a motion for a new trial and a sentencing memorandum. (T.d. 57, 59). The court sentenced Jordan to 25 years to life for the aggravated murder charge, three years for the firearm specification, and sentenced him to a consecutive term of two years for the WUD. (T.d. 60). The aggregate sentence was thirty years to life imprisonment, with credit for time served, and the court ordered Ruben to make restitution of $5,500. (T.d. 60).

Two months later, Jordan filed a supplemental motion for new trial. (T.d. 67). The State filed a response to both the original and supplemental motions. (T.d. 71). After both parties filed additional memoranda, the court denied the motion for a new trial. (T.d. 76-78, 82).

1

Jordan did not file his appeal until December 2011. (T.d. 83). Here, he raises five assignments of error, all relating to statements by Kareem Gilbert, Jordan's son and codefendant.

**b)  Facts:**

At about 1:00 in the morning on October 16, 2008, Officer Brendon Rock responded to a radio run for shots fired and saw Brian Austin staggering to the ground. (T.p. 341). Victor Davis was right beside Austin when he fell and died. (T.p. 343).

Rock watched as another bystander, Shawn Gilbert, started talking to Davis in a heated, animated manner. (T.p. 343-347). Detective Kurt Ballman investigated the Austin murder. He believed that Shawn Gilbert was trying to influence Davis to not cooperate with the police. (T.p. 373). Still, Davis gave two statements to Ballman. (T.p. 375). Although he initially was reluctant to identify him, Davis eventually told police that "Little Red" had shot and murdered Austin. (T.p. 380). Davis identified Kareem Gilbert in a photo lineup, and told police he knew him as "Little Red." (T.p. 380).

Davis, Gilbert, and Gilbert's family lived in the same apartment building. (T.p. 381). Gilbert's family knew he was wanted for homicide. (T.p. 397-402).

Detective Ron Avant was a polygraph examiner for the Cincinnati Police Department's Criminal Investigation Section. (T.p. 354). Avant was friends with Davis and knew he had witnessed Austin's murder. (T.p. 359). He also knew that Gilbert's family was threatening Davis. (T.p. 360).

On October 31, 2008, Avant talked with Davis for the last time. He told Davis to leave downtown because he was being threatened. (T.p. 361). Avant testified that he "could hear the fear in his voice" as Davis told Avant that "it's getting hot" and that he was very afraid. (T.p. 361).

2

That night, Victor Davis was shot and killed in front of his home. He had Ballman's card in his pocket. (T.p. 387, 436). A "big glob of spit" lay near his body, within six or seven feet. (T.p. 434, 498, 731). All responding officers testified that the spit was very fresh. (T.p. 434, 483, 493, 732). It was thick phlegm and had bubbles in it. (T.p. 434, 438). And, because the area was near Findlay Market, it was typically clean of trash and debris. (T.p. 438-439).

Davis' son, Victor Warren Davis, Jr., testified that Davis "knew it was coming." (T.p. 409). Davis had told his son about Austin's murder, and that Gilbert's family had approached him. (T.p. 410). Davis did not feel comfortable. (T.p. 410). He went so far as to tell his son what he wanted to be buried in, and laid out his clothes. (T.p. 415).

Davis Jr. knew Ruben Jordan, and had dated his daughter. (T.p. 411-412). He thought it was odd that later, Jordan broke down, cried, and apologized to him for his father's death. (T.p. 414). Jordan told Davis Jr. that he did not know Davis was his father. (T.p. 413).

Dean Shade lived in the same building as Davis and the Gilbert family. (T.p. 441-444). He knew Jordan, but not well. (T.p. 446).

Shade testified that he saw Brian Austin die. (T.p. 449). Shade was friendly with Davis, who told him about witnessing Austin's murder. (T.p. 451). Davis confided that "he wasn't going to let him go out like that . . .he was gonna tell them whoever done it." (T.p. 451).

On October 31, 2008, Shade was in bed when he heard a little scuffling, then "a muffle, pop, pop." (T.p. 457, 453). Shade heard someone say "Dread, get up." (T.p. 453). He opined the person was taunting Davis. (T.p. 458). The person who said it was pulling on Davis' arm, then turned and walked away. (T.p. 454). That man was six-feet-tall with a clean-shaven head, and similar size and stature to Jordan. (T.p. 454-455). Shade was only 75% sure that the man was Jordan. (T.p. 456). But he was positive it was not Kareem or Shawn Gilbert. (T.p. 458).

Shade testified that "there was nobody else out there that night." (T.p. 462). From his window, Shade watched his friend laying down, flinching, with a gunshot to his head. (T.p. 453). He testified that he saw Davis "take his last two breaths." (T.p. 453).

Davis was dead within minutes. (T.p. 602). He died from a gunshot wound to his head that perforated his skull and brain. (T.p. 601). Davis also could have died from the additional gunshot to his chest, which hit his liver. (T.p. 600). And Davis had another gunshot wound to his head, which was close-range, but would not have killed him. (T.p. 581).

Paul Glindmeyer was the criminalist who responded to the scene of Davis' murder. (T.p. 481). He immediately noticed the spit by Davis' body, thought it was fresh, and wanted to protect it. (T.p. 483). Glindmeyer had 31 years' experience as a police officer, and he explained that some people spit as a way to mark their territory. (T.p. 498-499, 504). Glindmeyer took a DNA sample from the spit, which was sent to the lab. (T.p. 502-503). He also searched the area for shell casings, but found none. (T.p. 504).

William Harry was a serologist and DNA analyst with the Hamilton County Coroner's Crime Laboratory. (T.p. 545). He testified that the DNA in the phlegm found by Davis' body was that of Ruben Jordan. (T.p. 558). Jordan spit by Davis' body. (T.p. 559).

John Heile was a firearm examiner at the Hamilton County Coroner's Crime Laboratory. (T.p. 515). He testified that different guns were used to kill Austin and Davis. (T.p. 538-539).

Kenneth Heard was a drug dealer who sold crack cocaine to Jordan. (T.p. 622). He testified that Jordan told him that his son was in jail for something he did. (T.p. 630). Jordan told Heard that he "collapsed somebody," which Heard testified meant Jordan had shot and killed someone. (T.p. 630). Jordan told Heard that he did it so the person would not testify against his son. (T.p. 630). As Jordan confessed to Heard, he started crying. (T.p. 630).

4

Later, Jordan told Heard that his family was trying to get him to admit to the killing on tape. (T.p. 632).

Heard told Police Officer Darren Sneed about Jordan's statements. (T.p. 633, 646). Heard then parlayed the information to Detective Jenny Luke. (T.p. 634, 738).

When Luke talked with Jordan, he denied being at the scene of Davis' murder. (T.p. 746). He was agitated about being a suspect. (T.p. 746). Police took a DNA sample from him. (T.p. 745, 747).

Heard told Luke that after police took his DNA sample, Jordan was nervous because he thought he left some DNA at the scene. (T.p. 635). Heard did not receive any case consideration for the information he provided to police. (T.p. 637).

Luke testified that she watched Jordan; he behaved strangely throughout Gilbert's court proceedings. (T.p. 736). Police questioned Jordan regarding a separate incident, and he had an odd reaction. Initially, he "looked like he had been punched in the stomach." (T.p. 742). But when he realized police did not suspect him to be involved in Davis' murder, he smirked and acted like he did not care. (T.p. 742).

Kareem Gilbert had made a statement to police and prosecutors as part of a plea agreement in the murder of Austin. (T.p. 660, 689, 690, 712). In it, he had identified his father, Jordan, as Davis' shooter. (T.p. 692, 700; State's Exhibit 31). On the stand, Gilbert said he had lied. (T.p. 661, 690). Instead, he testified that he was with his father the entire night, watching the Steelers play football. (T.p. 695-696). Detective Luke later testified that the Steelers did not play on Halloween. (T.p. 750).

Gilbert did not want to testify against his father. (T.p. 706). He admitted to killing Brian Austin, and said he told Jordan about it. (T.p. 693). Gilbert testified that he "told him

everything about the murder." (T.p. 696). But he claimed that his father did not know Davis was a witness. (T.p. 696-697). Gilbert and Jordan spent time awaiting trial in the same cell at the Justice Center. (T.p. 710).

Jordan's fiancée, Leshuande Ramsey, testified that she was with him and Gilbert on the night of Davis' murder. (T.p. 817). Ramsey testified that they were watching movies, not football. (T.p. 818).

After Ramsey testified, the defense recalled Detective Ballman. On cross, Ballman testified about the interview with Gilbert on May 17, 2010, when Gilbert entered into his plea agreement. (T.p. 847-854).

## CROSS-ASSIGNMENT OF ERROR

**Jordan's appeal of his trial, conviction, and sentence is untimely, and barred from review. The only aspect of Jordan's case which may be reviewed by this Court is his complaint regarding the trial court's denial of his motion for a new trial.**

## ISSUE FOR REVIEW

**Because Jordan was sentenced in March of 2011, and counsel failed to file an appeal within 30 days, his appeal is untimely. The current version of App.R. 4(B) does not apply to this case because it did not take effect until July 2011, and is not retroactive.**

## ARGUMENT

The trial court sentenced Jordan in March 2011. (T.d. 60). The court appointed appellate counsel three weeks later, but counsel had already acted on Jordan's behalf, filing a motion for a new trial in February 2011. (T.d. 57, 62). Jordan's appellate counsel did not file a notice of appeal until December 2011. (T.d. 83). As such, Jordan's appeal of his trial, conviction, and sentence is untimely. Jordan's appeal of the trial court's decision on his motion for a new trial is the only aspect of his appeal which this Court should consider.

Jordan's counsel, although appointed and acting on his behalf before the trial court, failed to comply with Rule 4 of the Ohio Rules of Appellate Procedure. She failed to file his notice within thirty days of the entry of judgment from which he appeals, and she has not filed a motion for delayed appeal pursuant to App.R. 5.

Counsel indicated in her notice of appeal that Jordan would challenge his conviction and sentence pursuant to App.R. 4(B)(3). But the current version of that rule, which extends the time for filing an appeal of a judgment of conviction until a motion for new trial has been decided, did not take effect until July 2011; it was not in effect at the time of Jordan's sentencing, and therefore, does not apply to his case. The Court should dismiss all of Jordan's appellate claims regarding his underlying conviction and sentence.

7

## FIRST ASSIGNMENT OF ERROR

**The trial court committed plain error in violation of Evid. Rule 613(B) and Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when it permitted the State to play Gilbert's entire recorded statement (extrinsic evidence of a prior inconsistent statement) during trial despite that earlier in his testimony Gilbert admitted to making said statement. Alternatively, trial counsel provided ineffective assistance in violation of Jordan's Sixth and Fourteenth Amendment rights by failing to object on the proper basis to the recording being played at trial and admitted into evidence. The trial court further abused its discretion by failing to correct these errors when it denied Jordan's Motion for New Trial asserting same.**

## ISSUE FOR REVIEW

**The court did not err in admitting Gilbert's statement. The statement was properly admitted under Evid.R. 613(B). Even if the court did err, the admission of Gilbert's statement did not likely affect the outcome of trial, and does not rise to the level of plain error.**

## ARGUMENT

In his first assignment of error, Jordan claims that the trial court erred by admitting Gilbert's prior inconsistent statement into evidence. None of the cases he cites in support of his argument are applicable to the facts of this case.

Pertinent portions of Evid.R. 613(B) state that extrinsic evidence of a prior inconsistent statement of a witness is admissible if: 1) the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement (or the interests of justice otherwise require), and 2) the statement's subject matter is a fact that is of consequence to the determination of the action. As long as the elements of Evid.R. 613(B) are met, extrinsic evidence of the prior inconsistent statement may be admitted. See *State v. Davenport*, 1st Dist. No. C-980516, (July 30, 1999); *State v. Burns*, 5th Dist. No. 10CA130, 2011-Ohio-5926.

Here, the court properly admitted Gilbert's prior inconsistent statement because the requirements of Evid.R. 613(B) were met. The statement was offered solely to impeach Gilbert's testimony at trial that his father, Jordan, did not murder Davis. (T.p. 661). Gilbert testified that he and Jordan were together that night watching TV. (T.p. 662). The court found that Gilbert was a hostile witness, the State was surprised by his testimony, and allowed the State to play Gilbert's previous inconsistent statement. (T.p. 663-666).

Moreover, Jordan did not object to the admission of Gilbert's taped statement, and admits he has waived all but plain error. (T.p. 690-692, 796-798). Thus, Jordan must show that this alleged error affected the outcome of trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Plain error is recognized only in exceptional circumstances to avoid a miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 94-95, 372 N.E.2d 804 (1978).

Jordan fails to demonstrate plain error. A trial court has broad discretion in admitting or excluding evidence. *State v. Brown*, 112 Ohio App.3d 583, 601, 679 N.E.2d 361, 372 (1996); citing *State v. Duncan*, 53 Ohio St.2d 215, 219, 7 O.O.3d 380, 383, 373 N.E.2d 1234, 1236-1237 (1978). Here, Jordan cannot show that the court abused its discretion in admitting Gilbert's prior statement. Moreover, Jordan's attorneys used Gilbert's statement to cross-examine Detective Luke. (T.p. 774-780). And, the State would have properly been able to use Gilbert's statement as a prior inconsistent statement after Jordan's attorneys questioned Gilbert about letters he had sent to his father saying "I know you didn't do nothing." (T.p. 709).

Jordan cites *Rush v. Illinois Cent. R. Co*, 399 F.3d 705, 722 (6th Cir. 2005) and *Umani v. Caruso*, 2008 WL 2216283 (E.D. Mich. May 27, 2008) to support his argument that extrinsic evidence of Gilbert's statement was inadmissible. However, neither of these cases is binding authority on this Court, and both are factually inapposite to this case. *Rush* relates to the

9

admission of a witness' statement for purposes of refreshing recollection under the federal rules of evidence. And *Umani*'s dicta regarding *Rush* is made in the context of review of a motion for summary judgment, not admission of a prior inconsistent statement at trial.

Two other cases cited by Jordan – *State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997), and *State v. Johnson*, 10 Ohio App.3d 14, 460 N.E.2d 625 (1983) – are inapplicable because they were decided in reliance on the common law, which was altered by Evid.R. 613(B) in 1998.

The other two cases cited by Jordan do not apply here. This Court is not bound by the Second District's decision in *State v. Hill*, 2nd Dist. No. 20028, 2004-Ohio-2048. But even so, in *Hill*, the admission of extrinsic evidence was harmless because the witness was properly cross-examined about the previous statement and the court gave a limiting instruction. Similarly, the State and Jordan questioned Gilbert about his prior statement, and the court repeatedly instructed the jury that they could only consider it for impeachment purposes. And in *State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018, this Court found that extrinsic evidence of the witness' prior inconsistent statement was erroneously admitted because it contained prejudicial "other acts" evidence. No such prejudice occurred here.

However, in *State v. Jordan*, 167 Ohio App.3d 157, 2006-Ohio-2759, 854 N.E.2d 520, this Court found that the trial court had not erred when it admitted a witness' prior inconsistent statement. The prior statement involved only what the witness had observed, and the court gave a limiting instruction directing the jury to consider the witness' statements for impeachment purposes only. *Id.* at ¶44. Similarly, Gilbert's previous statement related only to his own observations and the court instructed the jury to only consider the statement for impeachment purposes. (T.p. 937, 913). The court properly admitted Gilbert's statement.

Even if the court erred in allowing the State to play Gilbert's statement for the jury, the error is harmless. The State presented enough other evidence to prove that Jordan murdered Davis. Dean Shade testified that a man matching Jordan's description walked away from Davis immediately after he was shot. (T.p. 454-455). And although Jordan denied being at the area on that day, his spit was found within seven feet of Davis' body. (T.p. 558, 746). Moreover, Kenneth Heard testified that Jordan admitted to him that he had killed Davis. (T.p. 630).

The court did not err in admitting Gilbert's statement. The first assignment of error should be overruled.

## SECOND ASSIGNMENT OF ERROR

The State committed plain error in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront witnesses, by urging the jury to consider the substance of Gilbert's prior inconsistent statements when the statements were only admissible for purposes of impeaching Gilbert. Alternatively, trial counsel provided ineffective assistance for failure to timely object to the State's improper remarks. The trial court further abused its discretion by failing to correct this error when it denied Jordan's Motion for New Trial, which asserted this error.

## THIRD ASSIGNMENT OF ERROR

The State committed misconduct in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney remarked to the jury about his personal role in the plea agreement with Gilbert wherein Gilbert gave the recorded statement which was admitted solely for impeachment purposes. In doing so, the prosecuting attorney: (1) acted as a witness whom Jordan was unable to confront; and (2) undermined the jury's ability to impartially determine the facts and weigh the evidence.

## FOURTH ASSIGNMENT OF ERROR

The State committed plain error in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney cautioned the jury that if it acquitted Appellant on the basis that Gilbert actually committed the murder, then the following events would unfold: (1) at Gilbert's future murder trial, Appellant could freely admit to the murder without repercussion (due to Double Jeopardy protections); (2) Gilbert likely also would be acquitted due to Appellant's confession; (3) no one would stand convicted for Victor Davis' murder; and thus, (4) Appellant and Gilbert would have successfully executed an elaborate scheme to both trick the criminal justice system and evade convictions for the murder of Victor Davis. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to object to the prosecutorial misconduct.

## (ARGUED TOGETHER)

## ISSUE FOR REVIEW

The prosecutor did not engage in misconduct during closing argument, and Jordan enjoyed a fair trial.

## ARGUMENT

In his second assignment of error, Jordan claims that the State committed prosecutorial misconduct by urging jurors to consider the details of Gilbert's previous statement to police. In his third assignment of error, Jordan claims that the prosecutor engaged in misconduct during closing argument when he described how Gilbert was questioned by the police and prosecutors when he made his statement as part of his plea agreement. In his fourth assignment of error, Jordan claims that the prosecutor engaged in misconduct when he explained how Jordan and Gilbert could both avoid liability for Davis' murder.

Prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St. 3d 239, 266, 473 N.E.2d 768 (1984). The relevant inquiry an appellate court must apply when reviewing a claim of prosecutorial misconduct is: 1) whether the prosecutor's remarks were indeed improper, and 2) if so, whether a substantial right of the accused was adversely affected. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990); *State v. Black*, 75 Ohio App.3d 667, 674, 600 N.E.2d 389 (1991). The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982).

When judging a prosecutor's comments in closing argument, they must be reviewed in the context of the entire case, and the entire argument. *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 794 (1992); *State v. Smith*, 1st Dist. No. C-080126, 2009-Ohio-3727, ¶49. Prosecutorial misconduct constitutes reversible error only in rare instances. *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶36, citing *State v. Edgington*, Ross App. No. 05CA2866, 2006-Ohio-3712, ¶18. And, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *U.S. v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985).

Jordan did not object to most of the offenses which he now raises, so he has waived all but plain error. *State v. Smith*, 97 Ohio St.3d 367, 376, 780 N.E.2d 221, 232, (2002), citing *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992). Thus, he must show: 1) that the prosecutor's conduct was improper, and 2) that but for the error, the outcome of trial clearly would have been otherwise. *State v. Williams*, 79 Ohio St.3d 1, 12, 679, N.E.2d 646, 657 (1997); *State v. Tapke*, 1st Dist. No. C-060494, 2007-Ohio-5124, ¶77.

### *Did they really say that?*

During closing argument, the State recommended that the jury should examine the details of Gilbert's prior inconsistent statement. And, prosecutors explicitly told the jury to do so only to determine whether or not to believe Gilbert's testimony that he and Jordan were together on the night of Davis' murder, watching football. (T.p. 924-926). This was entirely proper. The jury was required to determine the credibility of Gilbert's testimony. The jury was entitled to compare the details of what Gilbert had said previously with his trial testimony – such careful consideration does not mean that the jury had to believe Gilbert's prior statement and consider it for its truth. But it was one way the jury could examine Gilbert's truthfulness, or lack thereof.

### *Was the prosecutor really a witness?*

Although Jordan claims that the prosecutor acted as a witness for the state, he did not. Here, the prosecutor's comments described what the jurors already knew – that three homicide investigators and two prosecutors took part in questioning Gilbert, and that they challenged his version of events. (T.p. 917-919). Detective Ballman had described how the interview was done, who was present, what Gilbert said, and why he believed Gilbert's statement. (T.p. 847-855). The recording of the interview had already been played for the jury. (T.p. 690-692). As in *U.S. v. Young*, "when viewed in context, the prosecutor's remarks cannot be read as implying

that the prosecutor had access to evidence outside the record." 470 U.S. 1, 19, 105 S.Ct. 1038, 1048 (1985).

Jordan also argues that the prosecutor vouched for the credibility of Gilbert's prior statement. He points to the prosecutor's description of Gilbert's plea agreement, including the fact that it bears his signature, as an implication that the prosecutor vouched for the credibility of the statement. But the prosecutor described the plea agreement in response to defense counsel's closing, which referenced the agreement and its consequences for Gilbert. (T.p. 889, 902-903).

Gilbert's credibility was an issue at trial because Gilbert claimed an alibi for Jordan, and his testimony was contrary to his previous statement. (T.p. 905, 917). The prosecutor should not have, and did not, vouch for the credibility of anything Gilbert said. In fact, the prosecutor repeatedly told the jury to consider Gilbert's statement only for the purposes of determining the credibility of his in-court testimony. (T.p. 917, 924-926).

### *What is double jeopardy?*

During closing argument, the prosecutor stated that if the jury acquitted Jordan, and Gilbert later went to trial for Davis' murder, and then Jordan testified that he had murdered Davis, the State could not retry Jordan. (T.p. 901). Jordan claims that this statement somehow violated his rights, but fails to cite any case law in support of this claim. The prosecutor's comment was a correct statement of the law. It was relevant to Jordan's trial because of the way Gilbert had behaved in his dealings with the State as a witness. And, it does not rise to the level of plain error; it is not "particularly egregious," nor does it "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Young* at 15-16, 105 S.Ct. 1038, 1046.

The jury is allowed to make reasonable inferences from the facts shown in trial. Here, the prosecutor elaborated one such reasonable inference when he said that Jordan and Gilbert had

planned to have Gilbert lie on the stand. (T.p. 900). Jordan's attorneys elicited testimony that he and Gilbert spent time together in the Justice Center awaiting trial. (T.p. 710). And Gilbert's testimony was drastically different from the statement he had previously given to police and prosecutors. The only aspect of this case that seriously affects the fairness, integrity or public reputation of the legal system is Gilbert's stunt – he entered into a plea agreement, and then completely recanted his statement, instead providing an alibi for his father at trial. That Gilbert laughed while testifying and repeatedly covered his face to hide his smile illustrates the irony of Jordan's entire argument. (T.p. 875).

### *Does any of it matter?*

Even if the prosecutor made improper statements, Jordan cannot show that they affected the outcome of his trial. If the prosecutor had vouched for the credibility of Gilbert's previous statement, it does not follow that the statement would be considered for its content, as Jordan claims. More importantly, the court instructed the jury that they could only consider Gilbert's statement to determine his credibility. (T.p. 937, 913). A jury is presumed to follow the trial court's curative instructions. *State v. Jones*, 1st Dist. No. C-110059, 2011-Ohio-6633, ¶17, citing *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623.

The court also told the prosecutor not to discuss what happened in the room when Gilbert made his statement. (T.p. 920). Pursuant to that admonition, the prosecutor made no further comments about it. (T.p. 922-930). This is exactly what the Supreme Court has indicated should happen during trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974).

And here, where the State presented significant proof of Jordan's guilt, the prosecutor's comments do not warrant reversal.

The second, third, and fourth assignments of error should be overruled.

16

## FIFTH ASSIGNMENT OF ERROR

**The trial court erred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the errors explained in the First, Second, Third, and Fourth Assignments of Error. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to ensure that the jury instruction sufficiently and properly conveyed the applicable law.**

## ISSUE FOR REVIEW

**The court's instruction correctly instructed the jury that Gilbert's previous statement was not testimony. The court explicitly told the jurors that the statement was only to be used for impeachment purposes, so they could evaluate Gilbert's credibility.**

## ARGUMENT

In his final assignment of error, Jordan claims that the court's instruction that Gilbert's statement was only to be considered as impeachment evidence was *per se* insufficient to cure the alleged defects raised in the four previous assignments of error. Counsel relies on *Bruton* for the proposition that "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (Defendant's brief, p.28).

First, it should be noted that Jordan never objected to the court's jury instructions; he therefore has waived this specific appellate claim. Crim.R. 30. Moreover, the giving of jury instructions is within the sound discretion of the trial court and will not be disturbed upon appeal unless the record affirmatively demonstrates that the trial court abused its discretion. See *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157, 161 (1981). A jury instruction must be viewed in the context of the entire charge rather than in isolation. *State v. Lewis*, 67 Ohio St. 3d 200, 203, 616 N.E.2d 921, 924 (1993).

*Bruton* is inapplicable to this case. In *Bruton*, the Supreme Court considered the admission of a codefendant's statement implicating Bruton against the defendant. The

codefendant never testified and could not be cross-examined. That is not the case here. Gilbert testified and was cross-examined regarding his statement at trial, as well as regarding his prior inconsistent statement. And, Gilbert's prior statement was not admitted for its contents, it was properly admitted to impeach his testimony, which was an alibi for Jordan. *Bruton*'s rule is inapplicable here.

Moreover, in *Bruton*, the Court stated that there are many instances where the court may rely on the jury's ability to follow instructions. "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions . . .a defendant is entitled to a fair trial but not a perfect one." *Bruton*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627 (1968). Jordan enjoyed a fair trial.

Here, where the court properly admitted extrinsic evidence of Gilbert's previous inconsistent statement, the court's instruction to the jury that the statement was not evidence, it was not testimony, and was only to be used for a very specific purpose of weighing credibility, was sufficient. (T.p. 913). During jury instructions, the court also stated that Gilbert's "statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness." (T.p. 937). This instruction was clear, and the jury reasonably may be presumed to have followed it. Jordan fails to overcome this presumption and show that he was prejudiced by what he claims is an insufficient instruction.

Jordan fails to show that the trial court abused its discretion, or acted in an arbitrary, unconscionable, or unreasonable way when it instructed the jury. The fifth assignment of error should be overruled.

18

## ADDITIONAL ISSUE FOR REVIEW

**Trial counsel was not ineffective.**

## ARGUMENT

In his first, second, fourth, and fifth assignments of error, Jordan raises "alternative" claims that trial counsel was ineffective. All of his arguments focus on counsel's failure to object to the admission of Gilbert's prior inconsistent statement, failure to object to alleged prosecutorial misconduct, and failure to object to the jury instructions.

In order to prove a claim of ineffective assistance of counsel, a defendant must show: 1) that trial counsel's performance fell below an objective standard of reasonable representation, and 2) that prejudice arose from this performance. Counsel's performance is presumed to be within the range of reasonable professional assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 690, 104 S.Ct. 2052, 2065. The issue in judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. To show prejudice, a defendant "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373, 380 (1989).

Here, Jordan fails to rebut the presumption that trial counsel's representation was reasonable. He only makes summary allegations that counsel was ineffective, and fails to support his claim with any argument. (Defendant's brief, p. 9, 17, 21, 26, 30).

If the Court examines Jordan's claims, it will see that this argument is baseless. As argued above, the trial court properly admitted Gilbert's prior inconsistent statement, the State did not engage in prosecutorial misconduct, and the court's instructions to the jury were proper. Additionally, Jordan fails to show that the result of trial would have been different if counsel had

19

objected more. The State presented sufficient evidence of Jordan's guilt, notwithstanding the admission of Gilbert's previous inconsistent statement. Jordan's spit was found seven feet from Davis' body, Shade saw a man that looked like Jordan leaving the scene, and Jordan confessed to Heard that he had killed Davis because he witnessed Gilbert's murder of Austin.

Counsel was not ineffective for failing to object on these grounds.

## ADDITIONAL ISSUE FOR REVIEW

**The trial court did not err in denying Jordan's motion for a new trial.**

## ARGUMENT

In his first and second assignments of error, Jordan raises "alternative" claims that the court erred in denying his motion for a new trial.

When reviewing the trial court's decision regarding a motion for a new trial, this Court should not reverse unless there has been a gross abuse of discretion. *State v. Lopa*, 96 Ohio St. 410, 411, 117 N.E. 319, 320 (1917). An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149 (1980). More specifically, abuse of discretion is the result of perversity of will, passion, prejudice, partiality, or moral delinquency. *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750-751 (1993); *Kenkel v. Hamilton County Bd. Of County Com'rs*, 1st Dist. No. C-010347, 2001-Ohio-3917; *State v. Roberts*, 156 Ohio App.3d 352, 356, 805 N.E.2d 594, 597 (2004). When applying an abuse-of-discretion standard, a reviewing court is not free to substitute its judgment for that of the trial judge. *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940, 952 (2002).

New trial motions are not to be granted lightly. *State v. Baker*, 1st Dist. No. C-080157, 2009-Ohio-4188, ¶69, citing *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus. In order to prevail on a motion for a new trial, a defendant must show that he was prevented from

having a fair trial. Crim.R. 33(A)(1). Only when the defendant can show that prejudice flowed from an error or irregularity may his motion for a new trial be sustained. *State v. Spurlock*, 2nd Dist. No. 17954 (2000), citing *State v. Porter*, 14 Ohio St.2d 10 (1968). The decision to grant a motion for a new trial "is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party. *State v. Luckett* (2000), 144 Ohio App.3d 648, 761 N.E.2d 105.

Here, Jordan claims that his motion for a new trial should have been granted because the court erroneously admitted Gilbert's prior inconsistent statement. As has been extensively discussed above, the court properly admitted Gilbert's statement. And the court repeatedly instructed the jury that they were only supposed to consider Gilbert's prior statement to evaluate Gilbert's credibility.

### Form over substance.

Jordan cannot show that the admission of Gilbert's statement prejudiced him in any way. In fact, his entire argument is based on a complaint that the manner of admitting the statement was more important than whether it could be admitted at all.

Jordan argues that the State could have read each line of Gilbert's prior statement, piece by piece, to impeach him, but should not have played the entire statement in whole to do so. (Appellant's brief, p. 16). But the substance of his statement would have been the same either way. Jordan cannot show that he was prejudiced by the manner in which the State impeached Gilbert. To find otherwise would be to honor form over substance.

Jordan was not prevented from having a fair trial. And the trial court did not grossly abuse its discretion in denying his motion for a new trial.

All of Jordan's assignments of error should be overruled.

21

## CONCLUSION

The court properly admitted Gilbert's prior inconsistent statement under Evid.R. 613(B). Jordan was not a victim of prosecutorial misconduct; he enjoyed a fair trial. And he was well-represented by competent trial counsel. Plaintiff-Appellee submits that the judgment below must be affirmed.

Respectfully,

Joseph T. Deters, 0012084P
Prosecuting Attorney

Rachel Lipman Curran, 0078850P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
Phone: 946-3091
Attorneys for Plaintiff-Appellee

## CERTIFICATE OF SERVICE

I hereby certify that I have sent a copy of the foregoing Brief of Plaintiff-Appellee, by United States mail, addressed to Michele L. Berry, 114 East 8th Street, Cincinnati, Ohio 45202, counsel of record, this 1st day of June, 2012.

Rachel Lipman Curran, 0078850P
Assistant Prosecuting Attorney

22

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

STATE OF OHIO,          :          APPEAL NO. C-110833
                                   TRIAL NO. B-1003262
   Plaintiff-Appellee,    :

vs.                     :          *JUDGMENT ENTRY.*

RUBEN JORDAN,           :          

   Defendant-Appellant.   :

> **ENTERED**
> AUG 2 4 2012

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty and orders that costs are taxed under App. R. 24.

The Court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App. R. 27.

To the clerk:

**Enter upon the journal of the court on August 24, 2012 per order of the court.**

By: _____
         **Presiding Judge**



D98911555

PENGAD 800-631-6989   EXHIBIT   22

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :     APPEAL NO. C-110833
                                        TRIAL NO. B-1003262
    Plaintiff-Appellee,       :

vs.                              :     *O P I N I O N.*

RUBEN JORDAN,                     :     PRESENTED TO THE CLERK
                                        OF COURTS FOR FILING
    Defendant-Appellant.      :
                                        AUG 24 2012

                                        COURT OF APPEALS

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 24, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michele L. Barry*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

ENTERED
AUG 24 2012

**HILDEBRANDT, Presiding Judge.**

{¶1}     Defendant-appellant Ruben Jordan appeals the judgment of the Hamilton County Court of Common Pleas convicting him of aggravated murder with a firearm specification and possessing a weapon while under a disability. He was convicted after a jury trial.

### The Murder of Victor Davis

{¶2}     In October 2008, Brian Austin was murdered. Victor Davis identified Jordan's son, Kareem Gilbert, as the perpetrator.

{¶3}     After he had identified Gilbert as Austin's killer, Davis told the police that he feared for his life because of threats from Gilbert's family. On October 31, 2008, Davis's fears were confirmed, as he was fatally shot outside of his apartment building.

{¶4}     Gilbert was indicted for the murders of both Austin and Davis. But in May 2010, Gilbert gave a recorded statement to police and prosecutors in which he implicated Jordan as Davis's assailant. As part of a written plea arrangement, Gilbert agreed to plead guilty to reduced charges for the killing of Austin in exchange for his testimony against Jordan.

{¶5}     The case against Jordan proceeded to trial in January 2011. At trial, the state presented the testimony of Dean Shade, a resident of Davis's apartment complex. Shade testified that on the night of Davis's murder, he had heard shots and had looked out of his window. He stated that he had seen a man who matched Jordan's general physical description walking from the scene of the shooting.

{¶6}     Kenneth Heard was a drug dealer from whom Jordan had regularly bought crack cocaine. Heard testified that, after the murder of Davis, Jordan had

ENTERED
AUG 2 4 2012

confessed to him that he had killed Davis and that he had let Gilbert take the blame for the murder.

{¶7}    Criminalist Paul Glindmeyer responded to the scene immediately after Davis had been shot, and he noticed a quantity of what appeared to be fresh saliva near Davis's body. Glindmeyer testified it was a custom among some people to mark their "turf" by spitting on the street or sidewalk. He took a sample of the saliva and submitted it for deoxyribonucleic acid (DNA) testing. The testing revealed that the DNA in the saliva matched that of Jordan.

{¶8}    Kareem Gilbert took the stand and immediately repudiated his prior statement implicating Jordan. Although he admitted having made the statement, he contended that it had been fabricated and that neither he nor Jordan had been present at the scene of Davis's murder. The trial court admitted the recording of the statement as well as a transcript into evidence with the limiting instruction that the jury was to consider the statement for impeachment purposes only.

{¶9}    Jordan offered the testimony of his fiancée, Leshuande Ramsey, who testified that both Jordan and Gilbert had been at home with her the entire night of Davis's murder. Jordan also called one of the detectives who had testified for the state and questioned him about the possibility that Gilbert's brother might have killed Davis.

{¶10}    The jury found Jordan guilty, and the trial court sentenced him to life imprisonment with parole eligibility after 25 years for aggravated murder, a consecutive three-year term of imprisonment for the firearm specification, and another consecutive two-year term for possessing a weapon while under a disability. The trial court denied Jordan's motion for a new trial under Crim.R. 33.

ENTERED
AUG 2 4 2012

3

### Timeliness of Jordan's Appeal

{¶11}     Before we discuss Jordan's assignments of error, we address the state's contention regarding this court's jurisdiction to review the conviction. The state maintains that because Jordan did not file his notice of appeal until more than nine months after the sentence had been journalized, this court has jurisdiction to review only the trial court's denial of Jordan's motion for a new trial.

{¶12}     We find no merit in the state's argument. Jordan's motion for a new trial stayed the time for appealing the conviction until 30 days after the trial court's ruling on the motion. App.R. 4. *See also State v. Klein*, 1st Dist. No. C-970788, 1998 Ohio App. LEXIS 5757 (Dec. 4, 1998). Thus, Jordan's notice of appeal was timely, and this court has jurisdiction to review the conviction.

### Admissibility of Kareem Gilbert's Statement

{¶13}     In his first assignment of error, Jordan argues that the trial court erred in admitting extrinsic evidence of Kareem Gilbert's prior statement implicating Jordan in the murder of Davis. But because Jordan did not object to the admission of the statement, we review the record for plain error. Under the plain-error standard, we must affirm the conviction unless, but for the allegedly inadmissible evidence, the outcome of the trial would have been different. *See State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 34 (1st Dist.).

{¶14}     Evid.R. 613 provides for the admissibility of a witness's prior inconsistent statement for the purpose of impeaching the witness's credibility. *See State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018. But extrinsic evidence of the prior statement is admissible only "[w]hen a witness denies making a prior statement, or states that he is unable to recall the prior statement." *Id.* at ¶ 37, citing *State v. Davenport*, 1st Dist. No. C-980516, 1999 Ohio App. LEXIS 3469 (July 30,

ENTERED

AUG 2 4 2012

1999); *see also State v. Johnson,* 10 Ohio App.3d 14, 17, 460 N.E.2d 625 (10th Dist.1983).

{¶15}     Thus, because Gilbert admitted having made the prior statement, extrinsic evidence of the statement was not admissible.  Nonetheless, the trial court did not commit plain error.  In light of the limiting instruction, we must presume that the jury did not consider the prior statement as substantive evidence.  And because of the other evidence adduced by the state—including eyewitness testimony, the statement of Jordan, and forensic evidence gathered at the crime scene—we cannot say that the outcome of the trial would have been different absent the error.  Moreover, as Jordan himself concedes, the state could have properly engaged in a line-by-line cross-examination of Gilbert with respect to the prior statement, and the jury would have had been provided the identical evidence.  *See State v. Hill,* 2d Dist. No. 20028, 2004-Ohio-2048, ¶ 41.  Under these circumstances, Jordan was not deprived of a fair trial, and we overrule the first assignment of error.

### Prosecutorial Misconduct

{¶16}     In his second, third, and fourth assignments of error, Jordan claims that he was deprived of a fair trial because of prosecutorial misconduct.  We address these assignments together.

{¶17}     The test for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights.  *State v. Glenn,* 1st Dist. No. C-090205, 2011-Ohio-829, ¶ 52, citing *State v. Smith,* 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984) and *State v. Canyon,* 1st Dist. Nos. C-070729, C-070730, and C-070731, 2009-Ohio-1263, ¶ 17.

ENTERED
AUG 2 4 2012

{¶18}     Jordan first argues that the assistant prosecutor improperly invited the jury to consider Gilbert's prior statement as substantive evidence rather than mere impeachment.

{¶19}     We agree that a number of the assistant prosecutor's statements tended to suggest that the jury could consider the prior statement for its truth. Nonetheless, we must presume that the jury followed the trial court's instruction that the prior statement was to be considered only for purposes of impeachment. *See State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994). Thus, we find no prejudice to have resulted from the asserted misconduct.

{¶20}     Jordan next argues that the assistant prosecutor improperly vouched for the credibility of Gilbert's out-of-court statement when he emphasized his own role in eliciting the statement. In this regard, the assistant prosecutor stated the following;

> I'm not trying to toot my own horn, but you got Detective McGuffey and Luke and Vaughn and they're all homicide investigators. And Ms. Shanahan and myself all part of a plea agreement, as you can see that it says that. The statement has to be truthful. And as Detective Ballman told you, a lot of people want to cooperate with us in investigations, and we have to make an independent determination of whether what they are saying is true, because we have got a duty, we are officers of the court, we are here to see that justice is done.

The prosecutor also emphasized that his and the other interrogators' techniques were calculated to reveal the truth, and he noted that the plea agreement included his signature.

{¶21}     A prosecutor may elicit testimony that a witness has agreed to tell the truth as part of a plea agreement. *State v. Jackson*, 92 Ohio St.3d 436, 448, 751

ENTERED

AUG 2 4 2012

N.E.2d 946 (2001). But he may not express his belief or opinion regarding the credibility of a witness. *Id.*

{¶22}     In this case, the assistant prosecutor went beyond merely eliciting testimony that Gilbert had agreed to tell the truth. He vouched for the truth of the prior statement and went so far as to take personal credit for its trustworthiness. Such comments went beyond the limits of proper argument. Still, because of the trial court's admonitions about the prior statement, we cannot say that the comments deprived Jordan of a fair trial.

{¶23}     Finally, Jordan argues that the state engaged in misconduct by referring to matters not in evidence. Specifically, he argues that the assistant prosecutor improperly alleged that he and Gilbert had formulated a plot to ensure that they would both be acquitted of Davis's murder. In closing argument, the prosecutor made the following remarks:

> Don't think this was something that had not been thought through. The whole thing is that they [Jordan and Gilbert] knew there was going to be a jury somewhere down the road, and this is his clear final test, his final obstacle is you folks, and we are asking that you not let him get past justice by a jury trial in this particular case, because when he is found not guilty, I don't know whether you have heard, it's a term called double jeopardy. And at a later point, if Kareem Gilbert is charged with Davis's homicide, there is nothing to prevent Ruben Jordan from coming in here, another jury months and months from now and saying, yes, I did do it. Now that would be pretty monumental, and I don't know if anybody would believe him, but double jeopardy prevents him from being tried twice for the same crime. So again, this is the kind of plan that you don't know where it's



ENTERED
AUG 2 4 2012

going to go, but it's certainly foreseen that type of thing could happen depending on how this thing goes with you folks.

{¶24} Once again, we find these comments to be inappropriate. A prosecutor may not express his personal beliefs or opinions regarding the guilt of the accused and may not refer to matters not supported by admissible evidence. *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), citing *Smith,* 14 Ohio St.3d at 14, 470 N.E.2d 883. Here, the state asked the jury to convict Jordan not on the basis of the evidence, but to prevent Jordan and Gilbert from playing what the prosecutor referred to as a "grade-school simplistic trick." Such collusion on the part of Jordan and Gilbert was not demonstrated by the record, and the comments therefore went beyond the limits of proper argument.

{¶25} Nonetheless, Jordan did not object to these comments about collusion and therefore must demonstrate that, but for the misconduct, the outcome of the trial would have been different. *State v. Rucker,* 1st Dist. No. C-110082, 2012-Ohio-185, ¶ 20, citing *State v. Williams,* 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). In this instance, Jordan has not met his burden. As we have already commented, there was ample evidence to support the conviction, and we cannot say that the comments deprived Jordan of a fair trial. But we strongly caution the state that, in a closer case than the one before us now, such comments could very well result in reversal. But on the basis of the record before us, we overrule the second, third, and fourth assignments of error.

{¶26} In his fifth assignment of error, Jordan contends that the trial court erred in failing to provide the jury with a proper limiting instruction concerning Gilbert's out-of-court statement. Specifically, he argues that the court failed to adequately inform the jury that it could consider the statement for impeachment purposes only and not as substantive evidence. Once again, Jordan

ENTERED

AUG 2 4 2012

did not object to the jury instructions, and we therefore review the matter under the plain-error standard. Crim.R. 30(A); *State v. Coley,* 93 Ohio St.3d 253, 266, 754 N.E.2d 1129 (2001).

{¶27}     We find no plain error. The trial court informed the jury that the "statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness." This instruction was accurate and fully explained the import of the prior statement. Although Jordan contends that the instruction was deficient, he essentially reiterates his argument that extrinsic evidence of the statement was simply inadmissible. Having already addressed that argument, we need not do so again. The fifth assignment of error is overruled.

{¶28}     Although not separately assigned as error, Jordan makes the alternative arguments that he was deprived of the effective assistance of trial counsel and that the trial court erred in overruling his motion for a new trial. We choose to recast these arguments as the sixth and seventh assignments of error, respectively.

{¶29}     To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶30}     As we have already noted, trial counsel failed to lodge a number of objections that were warranted. As a result, the jury was presented with an inadmissible out-of-court statement as well as a number of inappropriate comments on the part of the assistant prosecutor. But counsel's lapses did not deprive Jordan of a fair trial, and we accordingly overrule the sixth assignment of error.

ENTERED
AUG 2 4 2012

{¶31} As for the seventh assignment of error, we review the denial of a motion for a new trial under an abuse-of-discretion standard. *State v. Davis,* 1st Dist. No. C-090220, 2010-Ohio-5125, ¶ 41, citing *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). A new trial cannot be granted on the basis of irregularities that do not affect the substantial rights of the defendant. *Glenn,* 2011-Ohio 829, at ¶ 88.

{¶32} We find no abuse of discretion in the trial court's denial of the motion. Although there were irregularities in the proceedings, they did not affect Jordan's substantial rights. The evidence produced by the state was such that the asserted errors cannot be said to have affected the outcome of the proceedings. Accordingly, we overrule the seventh assignment of error.

### Conclusion

{¶33} The judgment of the trial court is affirmed.

Judgment affirmed.

**HENDON** and **FISCHER, JJ.,** concur.

Please note:
The court has recorded its own entry this date.



ENTERED
AUG 24 2012

# NOTICE OF APPEAL FROM A COURT OF APPEALS

**12-1685**

| | | |
|---|---|---|
| **THE STATE OF OHIO** | : | **On Appeal from the Hamilton** |
| | : | **County Court of Appeals, First** |
| | : | **Appellate District** |
| **Plaintiff-Appellee,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **RUBEN JORDAN** | : | **Court of Appeals Case No.** |
| | : | **C1100833** |
| **Defendant-Appellant.** | : | |

---

## NOTICE OF APPEAL OF APPELLANT RUBEN JORDAN

---

Joseph T. Deters
Hamilton County Prosecutor
230 E. 9th Street
Cincinnati, OH 45202
513.946.3000
*Counsel for Appellee, State of Ohio*

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Counsel for Appellant, Ruben Jordan*



FILED
OCT 05 2012
CLERK OF COURT
SUPREME COURT OF OHIO

1

EXHIBIT
23

PENGAD 800-631-6989

## NOTIC OF APPEAL OF APPELLANT RUBEN JORDAN

Appellant Ruben Jordan hereby gives notice of appeal to the Supreme Court of Ohio from the judgment of the Hamilton County Court of Appeals, First Appellate District, entered in the Court of Appeals Case No. C1100833 on August 24, 2012.

This case raises involves constitutional questions regarding a felony (aggravated murder) and is one of great public interest due to the structural defect to the defendant's trial caused by the constitutional violations at issue.

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Counsel for Appellant, Ruben Jordan*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this Notice of Appeal to the Ohio Supreme Court was served on counsel for Appellee, the State of Ohio, Joe Deters, Hamilton County Prosecuting Attorney via hand-delivery at 230 East 9th Street, Suite 4000, Cincinnati, OH 45202 this 5th day of October, 2012.

Michele L. Berry

## MEMORANDUM IN SUPPORT OF JURISDICTION
## IN THE SUPREME COURT OF OHIO

**12-1685**

| | | |
|---|---|---|
| **THE STATE OF OHIO,** | : | **On Appeal from the Hamilton** |
| | : | **County Court of Appeals, First** |
| **Plaintiff-Appellee,** | : | **Appellate District** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **RUBEN JORDAN,** | : | |
| | : | **Court of Appeals Case No.** |
| **Defendant-Appellant.** | : | **C1100833** |
| | : | |

## MEMORANDUM IN SUPPORT OF JURISDICTION
## OF APPELLANT RUBEN JORDAN

Joseph T. Deters
Hamilton County Prosecutor
230 E. 9th Street
Cincinnati, OH 45202
513.946.3000
*Counsel for Appellee, State of Ohio*

Michele L. Berry (0081939) (Counsel of Record)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Counsel for Appellant, Ruben Jordan*



FILED

OCT 05 2012

CLERK OF COURT
SUPREME COURT OF OHIO



EXHIBIT
24

# TABLE OF CONTENTS

EXPLANATION OF WHY THIS CASE IS A CASE OF GREAT PUBLIC INTEREST AND INVOLVES SUBSTANTIAL CONSTITUTIONAL QUESTIONS........................................1

STATEMENT OF THE CASE AND FACTS................................................................2

    A.    Procedural Posture....................................................................................2

    B.    Statement of the Facts...............................................................................2

ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW...........................................5

Proposition of Law No. I:  Commenting to the jury about a criminal defendant's protections against double jeopardy in the event of acquittal and urging jurors to fear such consequence is a due process violation and a structural defect warranting automatic reversal.......................................................................................................5

Proposition of Law No II:  Plain error in violation of a criminal defendant's constitutional rights to due process, to confront all witnesses/evidence, and to have an impartial jury determine the facts and weigh the evidence attaches when the prosecutor cautions the jury that a threat to public safety will result if defendant is acquitted, basing these cautions on allegations outside the record and an explanation of defendant's protection against double jeopardy..........................................................5

Proposition of Law No. III: Plain error in violation a criminal defendant's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses/evidence attaches when: (1) the prosecutor undisputedly personally vouches for the credibility and truth of the improperly admitted statement; and (2) the prosecutor undisputedly urges the jury to both review the statement during deliberations and improperly consider it for its truth........................................................7

Proposition of Law No. IV: Plain error in violation a criminal defendant's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses/evidence attaches when: (1) the trial court undisputedly, improperly permits extrinsic evidence of a prior inconsistent statement to be admitted into evidence and reviewed by the jury during deliberations; (2) the extrinsic evidence, if improperly considered for the truth, proves each essential element of the charges against the defendant; (3) the prosecutor undisputedly personally vouches for the credibility and truth of the improperly admitted statement; and (4) the prosecutor undisputedly urges the jury to both review the statement during deliberations and improperly consider it for its truth............12

Proposition of Law No. V: A limiting instruction is *per se* inadequate to cure the constitutional violations that result from the improper use, admission into evidence, and review-by-the-jury-during-deliberations of undisputedly inadmissible extrinsic evidence of a prior inconsistent statement that, if considered for its truth, proves each essential element of the charges against the defendant, particularly when the state urges the jury to improperly consider the evidence for its truth...............................................................14

Proposition of Law No VI: Ineffective assistance of counsel attaches when trial counsel fails to properly object to the State's improper comments during its closing argument: (1) cautioning the jury to consider the consequences of an acquittal (specifically Jordan's protection against double jeopardy and an alleged threat to public safety); (2) personally vouching for the truth and credibility of an inadmissible recording; and (3) urging the jury to consider the truth of this same recording, which if considered for its truth, proves each essential element of the charges against the defendant...........................................15

Proposition of Law No. VII: Ineffective assistance of counsel attaches when trial counsel fails to ensure that the jury instructions sufficiently and properly convey the applicable law regarding the proper use of extrinsic evidence of a prior inconsistent statement.

CONCLUSION...............................................................................................15

CERTIFICATE OF SERVICE

APPENDIX

Appendix A: Opinion and Judgment Entry of the Hamilton County Court of Appeals, First Appellate District (August 24, 2012)

## EXPLANATION OF WHY THIS CASE IS A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND INVOLVES A SUBSTANTIAL CONSTITUTIONAL QUESTION

This case presents the opportunity for this Court to clarify that a prosecutor commenting to a jury about a criminal defendant's protections against double jeopardy in the event of an acquittal, and urgings to the jury to convict the defendant so that he cannot escape future prosecution, is a structural defect warranting automatic reversal.

Moreover, this case presents a clear constitutional question regarding how far a prosecutor's undisputedly improper remarks during closing argument can go before a criminal defendant's constitutional rights are violated. In this case, the prosecutor vouched for the credibility and truthfulness of a key State witness's inadmissible statements. The prosecutor proceeded to repeatedly urge the jurors to improperly consider the truth of this inadmissible statement, which—if considered for its truth and believed—proved the State's entire case against the defendant. Then, based on evidence outside the record and improper comments about defendant's protection against double jeopardy, the prosecutor cautioned the jury that an acquittal could endanger public safety. Finally, the trial court improperly permitted the jury during deliberations to re-review the recording and transcript of the same inadmissible statement referred to above. To be sure, the First District agreed with Jordan holding that, indeed, all of these errors occurred.

Even so, while the First District held that prosecutorial misconduct and the improper admission of evidence occurred, it nonetheless held these errors to be "harmless." The First District now stands alone in constitutionally sanctioning a prosecutor's egregious misconduct: (1) vouching for the State's key witness; (2) urging the jury to consider the truth of an inadmissible statement from the same key witness (a statement that, if true and if believed, proves the State's entire case against the defendant); (3) commenting that a threat to public safety would result if the defendant was acquitted because he would escape future prosecution due to his constitutional protection against double jeopardy.

1

The fundamental unfairness and arbitrary nature by which the First District decided that these undisputed constitutional violations are "harmless" is an outcome that this Court should not permit to stand. A prosecutor commenting on a defendant's protections against double jeopardy should be considered a structural defect warranting automatic reversal.

## STATEMENT OF THE CASE

### A. Procedural Posture

Appellant Ruben Jordan stands convicted of murdering Victor Davis by shooting him on October 31, 2008. Jordan is serving a sentence of life in prison with parole eligibility after 30 years (calculated as life in prison with parole eligibility after 25 years for the aggravated murder, 3 years imprisonment served prior and consecutively to the life sentence, and 2 years imprisonment served consecutively to the aggravated murder sentence) due to his convictions for aggravated murder conviction in violation of ORC §2903.01(A), an accompanying firearm specification, and having weapons while under disability in violation of ORC §2923.13(A)(3).

The First District Court of Appeals affirmed Jordan's convictions holding that although prosecutorial misconduct and the improper admission of evidence occurred, the errors were "harmless" to the fairness of Jordan's trial. Jordan now requests this Court to accept jurisdiction of his case to correct the constitutional errors that occurred in his trial and to clarify the prejudice that necessarily attaches when constitutional errors of this nature occur.

### B. Statement of the Facts

On October 16, 2008, prior to his death, Victor Davis (the deceased victim of the shooting involved in this case) witnessed Kareem Gilbert (Appellant Ruben Jordan's son) shoot and kill Bryan Austin. T.427-429. Soon thereafter, Victor Davis began getting death threats from Kareem Gilbert's family, T.360, namely from Kareem himself, T.386, and Kareem's brother, Shawn Gilbert. T.373, 389. According to Davis, the Gilberts threatened his life because he witnessed

2

Kareem Gilbert kill Bryan Austin. T. 373, 385-386. Davis informed his son, Victor Davis Jr., about the threats. T.409-410. Once on notice, Davis Jr. then also observed Shawn Gilbert flash a gun at him on several occasions as a gesture of intimidation. T.419-420. To add to the tension, Kareem Gilbert, Kareem Gilbert's mother, and Shawn Gilbert lived next door to Victor Davis.[1] T.380-381.

On October 31, 2008, Victor Davis was killed by a gunshot wound to the head outside the apartment complex where he, Kareem, and Shawn Gilbert all lived. T.453-454. Dean Shade, a resident of the same complex heard the gunshots from inside his fourth floor apartment. T.453. He rushed to the window and observed Victor Davis lying wounded on the ground 10 to 15 feet away, apparently dying. T.454. He also noticed a bald, black man walking away from the scene. *Id.* Shade never saw the bald man's face, and had repeatedly told law enforcement that he "[couldn't] say exactly who" the bald man was. *Id.* Desperate to get Shade to identify Appellant Ruben Jordan as the bald, black man Shade observed walking away from the scene of the shooting, the State asked Shade to compare characteristics of the bald, black male's physical appearance to characteristics of Jordan's physical appearance. T.455. Shade noted that both men are black and have clean-shaven heads, but that Jordan is bigger and bulkier than the bald, black man he observed. T.455-456. When pressed, Shade testified that he could only be 75% certain that the bald, black man he observed was Ruben Jordan. T.456.

Setting aside Jordan's incredulous "identification" of Jordan, the only person who directly linked Jordan to the crime scene is the far-fetched, multi-felon, drug dealer Kenneth Heard. T.620. Heard claimed to have been Jordan's drug dealer five times a week for approximately 1.5 years when, in Spring of 2009, Jordan supposedly confessed to killing a man and allowing his son to be prosecuted for his crime. T.631. Prior to this, Heard and Jordan never spoke more than necessary

---

[1] At trial, much was made of a spot of Jordan's phlegm located in the vicinity of Davis' body. T.731-732. However, many members of Jordan's family lived in the apartment complex where the shooting took place. Accordingly, Jordan was innocently present at the scene on many occasions and could have deposited the phlegm on one of these occasions.

to complete the drug transaction. T.628. In fact, Heard never even knew Jordan's name, T.622, until Jordan supposedly divulged his full name to the drug dealer shortly after his alleged confession. T.634, 639.

Even after Kenneth Heard reported Jordan's alleged confession, it was widely believed by law enforcement and the Hamilton County Prosecutor's Office that Kareem Gilbert killed Victor Davis. T.736, 740; *see also* Hamilton County Case No. B0901283.[2] Gilbert was indicted for the murders of both Bryan Austin and Victor Davis. In May 2010, the State was ready to proceed to trial in its case against Gilbert for both murders when Gilbert struck a deal with the State. T.660-661; 690. Gilbert gave a recorded statement wherein he claimed to have witnessed Jordan intentionally shoot and kill Davis. *Id.* In exchange for his testimony to this effect at Jordan's trial, Gilbert agreed to plead guilty to reduced charges for Austin's killing while the charges for intimidating Davis as a witness and then killing him, were dismissed.

When Gilbert took the stand at Jordan's trial, he immediately began recanting his recorded statement and attesting that on the night Davis was shot, he and Jordan were at Jordan's home. Gilbert was asked if he previously made a contrary statement to police, which was recorded, and wherein he claimed to have witnessed Jordan shoot Davis. T.664. Gilbert admitted to making a prior inconsistent statement and explained that he lied during the recorded statement to save himself, as he was facing two aggravated murder charges—two life sentences. T.664-665; 692-693. Despite Gilbert's admission to making the prior inconsistent statement, the State played the recording for the jury and provided the jury with transcripts of the statement. T.690-692. The recording and its accompanying transcript were marked as State's Exhibit 31 and admitted into evidence, T.796, 797, supposedly for the sole purpose of impeaching Gilbert's testimony. T.937.

---

[2] The Bill of Particulars in Case No. B0901283 reads, "The defendant [Kareem Gilbert] intimidated Victor Davis who was an eyewitness to [Gilbert's] murder of Bryan Austin....[Gilbert], under a disability for a juvenile adjudication of Possession of Cocaine, shot and killed Victor Davis and fled the scene."

Even so, during the State's closing argument, the prosecuting attorney repeatedly vouched for the substance, truth, and credibility of Gilbert's recorded statement. T.917-918; 924-926. He urged the jury to consider the recording's substance and compare it to other corroborating evidence presented by the State. *Id.* He explained his role in the interrogation during which Gilbert claimed to have witnessed Jordan kill Davis. T.917-919. He cautioned the jury that an acquittal of Jordan would result in a future trial against Kareem Gilbert that would transpire as follows: (1) Jordan would confess to the Davis murder; (2) Gilbert would win an acquittal due to Jordan's confession; then (3) both men would escape further prosecution due to double jeopardy protections. T.900-902. The jury returned guilty verdicts on all counts.

Jordan submits the following argument in support of his Propositions of Law.

### ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW

**Proposition of Law No. I: Commenting to the jury about a criminal defendant's protections against double jeopardy in the event of acquittal and urging jurors to fear such consequence is a due process violation and a structural defect warranting automatic reversal.**

**Proposition of Law No II: Plain error in violation of a criminal defendant's constitutional rights to due process, to confront all witnesses/evidence, and to have an impartial jury determine the facts and weigh the evidence attaches when the prosecutor cautions the jury that a threat to public safety will result if defendant is acquitted, basing these cautions on allegations outside the record and an explanation of defendant's protection against double jeopardy.**

The prosecuting attorney committed misconduct to the extent of creating a structural defect in the trial when he remarks as follows during closing argument:

> The whole thing is that they [Appellant Ruben Jordan and Kareem Gilbert] knew there was going to be a jury somewhere down the road, and this is his clear final test, his final obstacle is you folks, and we are asking that you not let him get past justice by a jury trial in this particular case, because when he is found not guilty, I don't know whether you have heard, it's a term called double jeopardy. And at a later point, if Kareem Gilbert is charged with Davis's homicide, there is nothing to prevent Ruben Jordan from coming down here, another jury months and months from now and saying, yes, I did do it. Now that would be pretty monumental, and I don't know if anybody would believe him, but double jeopardy prevents him from being tried twice for the same crime. So again, this is the kind of plan that you don't know where it's going to go, but it's certainly foreseen that type of thing could happen depending on how this thing goes with you folks....T.900-901.

5

The remarks continued, as well, with a discussion of the consequences Kareem Gilbert will face for "lying" during his testimony for attesting that he previously fabricated witnessing Jordan shoot Davis in order to strike a deal with the State for one manslaughter conviction as opposed to being prosecuted for two aggravated murders.[3]

While the First District recognized that the prosecutor's comments were improper, the Court deemed the error harmless. In the same regard that adversely commenting about a criminal defendant's right to remain silent is a structural defect, this Court should hold that a structural violation occurs when a prosecutor comments to the jury about a criminal defendant's protections against double jeopardy and urges the jurors to consider their fear of such consequence as a factor in rendering a guilty verdict.

By making these statements the prosecutor committed a structural error and invaded the jury's duty to impartially determine the facts, make credibility determinations, and base its decisions solely on the evidence presented during trial. Additionally, the prosecutor violated Jordan's due process rights and acted as a witness against Jordan who essentially presented to the jury testimony about an alleged scheme Jordan and Gilbert masterminded to avoid conviction for the murder of Davis. Jordan, of course, had no opportunity to confront this improper testimony as the Sixth Amendment guarantees. Consequently, rather than basing its verdict on the evidence adduced at trial, the jurors also factored the alleged future consequences of an acquittal of Jordan (as testified to by the prosecutor) into the equation.

The prosecutor's improper comments conveyed the impression that evidence of a sinister scheme to avoid conviction existed between Jordan and Gilbert; and that despite not being presented at trial, this evidence was known to the prosecutor (due to his role in securing Gilbert's

---

[3] The prosecutor makes additional improper remarks during closing argument. T.865-930.

recorded statement and plea agreement, for which the prosecutor personally vouched. *See infra*
Proposition of Law III. These improper considerations gravely jeopardize a defendant's right to be
tried solely on the basis of the evidence presented to the jury. What is more, in light of Proposition
of Law III incorporated fully herein, the prosecutor's testimony during closing argument about the
future consequences of an acquittal appeared in the jurors' eyes to carry the imprimatur of "the
Government" and law enforcement. Consequently, the improper remarks undoubtedly induced the
jury to trust the Government's caution—that the jury **must** render a guilty verdict lest the actual
killer, whoever it may be, will never face justice due to constitutional protections against double
jeopardy—and to trust this caution above its own view of the evidence presented at trial.

A defendant has the constitutional right to have his guilt decided solely on the evidence
properly presented to the jury without the suggestion of other evidence known to the prosecutor.
*United States v. Young* (1985), 470 U.S. 1, 18-19; 105 S.Ct. 1038. *See also Gordon v. Kelly*, 205
F.3d 1340; 2000 WL 145144 (6th Cir. 2000) (prosecutorial misconduct in violation of defendant's
due process rights results when prosecutor's comments inject fear into the jurors about their
personal safety; such comments run a high risk of misleading the jury about the evidence).

For these reasons, the prosecutor's improper remarks during closing arguments (as discussed
in Propositions of Law I-IV) infected the jury's impartial consideration of the evidence and
infringed on Jordan's rights to a fair trial by an impartial jury, and to confront this unconstitutional
testimony. As a result, Jordan was deprived of his constitutional rights under the Fifth, Sixth, and
Fourteenth Amendments. Such error should be considered structural in nature resulting in
automatic reversal.

**<u>Proposition of Law No. III</u>: Plain error in violation a criminal defendant's constitutional
rights to due process, a fair trial before an impartial jury, and to confront all
witnesses/evidence attaches when: (1) the prosecutor undisputedly personally vouches for the
credibility and truth of the improperly admitted statement; and (2) the prosecutor
undisputedly urges the jury to both review the statement during deliberations and improperly
consider it for its truth.**

In addition to the constitutionally improper remarks discussed *supra*, the prosecuting attorney effectively acted as a witness for the State and vouched for Gilbert's credibility in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights. During the State's closing argument, the prosecuting attorney (over defense objection and motion for mistrial, T.919) explained to the jury his personal role in the interrogation of and plea agreement with Kareem Gilbert[4] wherein Gilbert gave his recorded statement. *See* T.917-918:

> [A]s you play the statement...if you read the statement...It's five trained people. ***I'm not trying to toot my own horn***, but you got Det. McGuffey and Luke and Vaughn and they're all homicide investigators. And ***Ms. Shanahan and myself all part of a plea agreement***, as you can see that it says that. ***The Statement has to be truthful....We have got a duty, we are officers of the court, we are here to see that justice is done.*** So that's why we, I don't want to say grill him for an hour, but some of the questions were hard questions."[5]

Then the prosecuting attorney continued to recite details from Gilbert's recorded statement, compare those details with corroborating evidence, and explain why Gilbert's statement in the recording "has to be truthful," due to not only its corroboration with other evidence presented by the State, but also to the manner in which he and the detectives questioned him with open-ended rather than leading questions. T. 918, 924-926.

In doing so, the prosecutor effectively acted as a witness for the State in violation of Jordan's rights under the Confrontation Clause, vouched for Gilbert's credibility in the recorded statement (and thus urged the jury to consider the recording for its substance and truth rather than for impeachment), and undermined the jury's ability to render impartial credibility determinations in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair

---

[4] Kareem Gilbert entered into an agreement with the State when the State was prosecuting him for the murders of both Victor Davis and Bryan Austin. T.660-661; 690. In exchange for reduced charges, Gilbert agreed to testify against Appellant Jordan in Jordan's trial for the murder of Victor Davis. *Id.* In the course of reaching this agreement, Gilbert made a recorded statement to law enforcement explaining that he witnessed Appellant Jordan shoot Davis. However, during his trial testimony, Gilbert immediately began recanting on the stand and, in contradiction to his recorded statement, denying that he witnessed Jordan shoot Victor Davis.

[5] The prosecutor makes additional improper remarks during closing argument. T. 865-930.

trial by an impartial jury. *See Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 643; 94 S.Ct. 1868 (The U.S. Supreme Court holding that when a prosecutor's comments upon summation "so infect the trial with unfairness" a denial of due process results and the conviction must be reversed). *See also United States v. Young* (1985), 470 U.S. 1, 18-19; 105 S.Ct. 1038 (U.S. Supreme Court explaining that "the prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.").

Here, without question, the prosecutor's improper remarks constitute an egregious error that caused Jordan significant prejudice to the jury. The prosecutor emphatically attested to his (and the detectives') honorable search for truth and justice. T.917-918. He explained that the plea agreement involves a lot of "legal language" but that it also bears his signature, implying that he vouches for it and may know evidence of Jordan's guilt beyond what has been presented at trial. T.902. *See e.g. Young*, 470 U.S. at 18. He explained the interrogation method he and the detectives used on Gilbert as well as why this method leads to truthful statements. T.918, 924-926. He personally vouched for the credibility of Gilbert's recorded statement, told the jurors the recorded statement "has to be truthful," T.917-918, and explained how the details of the recording are corroborated by other State evidence and witnesses. T.918, 924-926. In sum, the prosecuting attorney essentially stamped Gilbert's recorded statement with the State's seal of approval for its truthfulness. The First District's holding of harmless error cannot stand. A finding of reversible constitutional violations is the only proper result.

In a related constitutional violation, the State committed misconduct by referring to the substance of Gilbert's prior inconsistent statements when Jordan's Fifth, Sixth, and Fourteenth Amendment rights strictly limit the State's use of the statements to impeaching Gilbert's credibility. The First District properly held that the recorded statement was: (1) improperly played at trial and admitted into evidence; and (2) could only be used for impeachment purposes. Nevertheless, the First District held these errors to be harmless, despite that the recorded statement, if true and believed, proved each essential element of the charges against Jordan.

The prosecutor's references to the substance of the statements ran afoul of due process and misled the jury into: (1) comparing Gilbert's testimony to his prior inconsistent statement to police; (2) comparing Gilbert's prior inconsistent statements to the other evidence presented by the State; and then, (3) based on these comparisons, judging which statement to believe—Gilbert's in-court testimony, or his recorded statement to police. Instead, in its decision to believe or disbelieve Gilbert's testimony in Jordan's trial, the jury should have used the statement only to consider Gilbert's credibility in court that day. *See Donnelly*, 416 U.S. at 643; 94 S.Ct. 1868; *See e.g. Gordon v. Kelly*, 205 F.3d 1340; 2000 WL 145144 (6th Cir. Feb. 1, 2000) (prosecutorial misconduct in violation of defendant's due process rights resulted when prosecutor's comments ran a high risk of misleading the jury about the evidence).[6]

Here, in closing argument, the State repeatedly referred to the substance of Gilbert's statements and urged the jury to consider the statement for its **truth.** T.917-918). ("[T]he defense is asking you to believe what he (Gilbert) said in court was true...But as you play the statement...if you read that statement...**The statement has to be truthful...**[A] lot of people want to cooperate with us in investigations, and we have to make an independent determination of whether what they

---

[6] *See also State v. Dick* (1971), 270 Ohio St. 2d 162; 271 N.E.2d 797; *State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist., Dec. 13, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted").

are saying is **true** "); T.924-926 (wherein the state, during closing argument, points to details in Gilbert's recorded statement to police (the prior inconsistent statement) and urges the jury to compare the statements to corroborating testimony given in court, such as the number of shots fired, where the car was located, and the lack of shell casings at the crime scene).[7]

Clearly, the State urged the jury to consider the truth of Gilbert's recorded statement to the police (the prior inconsistent statement) wherein he stated that he observed Jordan shoot Davis. In other words, the State asked the jury to: (1) identify details in Gilbert's statement; (2) compare those details to corroborating testimony given by other witnesses; (3) note the similarities; (4) believe Gilbert's prior statement (the recording); and (5) accordingly, disbelieve Gilbert's testimony. It is wholly improper to ask the jury to consider the substance of Gilbert's statement to police by comparing details of the statement to corroborating testimony, because this process, by definition, requires the jury to consider Gilbert's prior inconsistent statement for its truth rather than solely for impeaching Gilbert's in-court testimony.

In sum, the jury's duty was not to ask, "Which of Gilbert's statements do I believe: his testimony or his recorded statement to police?" Instead, the jury was required to determine whether to believe Gilbert's in-court testimony given the fact that he gave a prior inconsistent statement to police. Arguing inadmissible hearsay for its truth resulted in prosecutorial misconduct in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial by an impartial jury, and to confront all witnesses. *See State v. Kirk*, 2010 WL 1818894; 2010-Ohio-2006 (Ohio App. 6 Dist., May 7, 2010) (referring to inadmissible hearsay during a closing argument asserted for the truth resulted in prosecutorial misconduct).

Due to the prosecutor's misconduct, the jurors: (1) considered Gilbert's recorded statement for its substance and truth; and (2) deemed Gilbert's recorded statement to be credible and truthful

---

[7] The prosecutor makes additional improper remarks during closing argument. T.865-930.

due to the prosecuting attorney's personal vouching and urgings to compare the details of the statement to other evidence presented by the State. For these reasons, a guilty verdict under such circumstances is unworthy of confidence, and these errors cannot be considered harmless. A defendant's due process and confrontation rights are violated in such circumstances. This Court cannot allow the First District's finding of harmless error to stand.

**Proposition of Law No. IV: Plain error in violation a criminal defendant's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses/evidence attaches when: (1) the trial court undisputedly, improperly permits extrinsic evidence of a prior inconsistent statement to be admitted into evidence and reviewed by the jury during deliberations; (2) the extrinsic evidence, if improperly considered for the truth, proves each essential element of the charges against the defendant; (3) the prosecutor undisputedly personally vouches for the credibility and truth of the improperly admitted statement; and (4) the prosecutor undisputedly urges the jury to both review the statement during deliberations and improperly consider it for its truth.**

The First District agreed with Jordan's position that the State erred in the manner it impeached Gilbert as a hostile witness. Specifically, the First District correctly held that, because Gilbert freely admitted to making the prior inconsistent recorded statement,[8] the State should not have been permitted to introduce extrinsic evidence (Gilbert's recorded statement and its transcript) to demonstrate Gilbert's prior inconsistent statements.[9]

The First District properly held that the recording should **not** have been: (1) played for the jury; (2) considered for its truth; or (3) given to the jury for its review during deliberations. Despite

---

[8] Gilbert freely admitted that he previously made a statement to the police contrary to the testimony he began giving at Jordan's trial. T.664-665; 689-690. Then, without asking him the details of that statement, the State (over trial counsel's objection) immediately played his recorded statement and gave each juror a transcript of the statement in order to impeach Gilbert and demonstrate Gilbert's prior inconsistent statement. T.690, 692. The recording was admitted into evidence as State's Exhibit 31. T.796, 797. Jurors were even given access to the recording during deliberations and urged by the State during its closing argument to consider the recording for its substance and truth. *See supra* Proposition of Law III; *see* T.917-918).

[9] In order to admit extrinsic evidence of a prior inconsistent statement into evidence, the declarant must be given the opportunity to explain or deny the statement. Ohio R. Evid. 613(B). And when the declarant **admits** to making the statement, **extrinsic evidence of the statement is inadmissible.** *See Rush v. Illinois*, 399 F.3d 705, 722 (6th Cir. 2005).

its proper holding on the evidentiary issue, and despite the fact that the recording, if true and if believed, proved the State's entire case against Jordan, the First District held that the State's improper use of the recording during trial and its improper admission into evidence constitute harmless errors. To the contrary, the improper admission of the recording caused the ultimate prejudice to Jordan in violation of his rights to due process, to a fair trial before an impartial jury, and to confront all witnesses.

Once Gilbert admitted to making the prior inconsistent statements, the jury had the proper basis to decide whether Gilbert was a believable witness. Admitting extrinsic evidence to demonstrate each prior inconsistent statement, after Gilbert already admitted to it, was highly prejudicial because it misled the jury into considering the prior inconsistent statement for its truth rather than for impeachment purposes. Once Gilbert admitted to making the prior inconsistent statement, and the jury observed him on the stand making such admission, the State's impeachment of Gilbert in this regard was complete. As the First District properly recognized, the State should not have been permitted to use extrinsic evidence to demonstrate the prior inconsistent statements. And this is because Gilbert's prior inconsistent statements could be used by the jury solely for impeachment purposes—to decide whether Gilbert was believable as a witness as he testified in court before the jury—not for the jury to compare Gilbert's in-court testimony to his prior inconsistent out-of-court statements and then decide which statements to believe.[10]

Consequently, submitting the recording and its transcript to the jury during trial and deliberations misled the jury into thinking that it could consider the substance of the recording for its truth rather than solely for impeachment purposes—especially in light of the prosecutor's personal vouching for the recording's truthfulness and his urgings to the jury to consider the

---

[10] *See State v. Dick* (1971), 270 Ohio St. 2d 162; 271 N.E.2d 797; *State v. Suman*, 2010 WL 5238625; 2010-Ohio-6204 (Ohio App. 4 Dist., Dec. 13, 2010) ("a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted").

recording's substance. Furthermore, all of these errors occurred in circumstances where the recording, if true and if believed, proved the State's entire case against Jordan. *See supra* Propositions of Law I, II, and III fully incorporated by reference herein.

The improper use and admission into evidence of the recording and its transcript should be considered plain error in violation of Jordan's rights to due process, a fair trial before an impartial jury, and to confront all witnesses. The risk of prejudice caused by the jury considering the substance of Gilbert's statement (wherein Gilbert claims to have witnessed Jordan intentionally shoot Davis) is so extreme that the verdict is unworthy of confidence, and a strong probability exists that but for the improperly admitted evidence, a different outcome would have resulted. The First District's finding of harmless error cannot stand.

**Proposition of Law No. V: A limiting instruction is *per se* inadequate to cure the constitutional violations that result from the improper use, admission into evidence, and review-by-the-jury-during-deliberations of undisputedly inadmissible extrinsic evidence of a prior inconsistent statement that, if considered for its truth, proves each essential element of the charges against the defendant, particularly when the state urges the jury to improperly consider the evidence for its truth.**

The improper admission of extrinsic evidence cannot be cured by limiting the jury's use of extrinsic evidence that it never should have heard, read, or otherwise had access to—especially when its substance proves the State's entire case. When urged by the State in its closing argument to consider the truth of the recording, one cannot reasonably expect the jurors to follow the limiting instruction and completely disregard the contents of Gilbert's statement that they never should have heard or read. This error occurred in violation of Jordan's due process rights.[11] *See supra* Propositions of Law I, II, III, and IV fully incorporated by reference herein.

---

[11] As the U.S. Supreme Court explained in *Bruton v. United States* (1968), 391 U.S. 123, 135-36; 88 S.Ct. 1620, "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." The Supreme Court found that a limiting instruction is *per se* ineffective because a jury, as a panel of human beings, cannot dismiss from their minds the extremely prejudicial statements, which if true, prove the State's entire case. *Id.* at 131.

**Proposition of Law No VI: Ineffective assistance of counsel attaches when trial counsel fails to properly object to the State's improper comments during its closing argument: (1) cautioning the jury to consider the consequences of an acquittal (specifically Jordan's protection against double jeopardy and an alleged threat to public safety); (2) personally vouching for the truth and credibility of an inadmissible recording; and (3) urging the jury to consider the truth of this same recording, which if considered for its truth, proves each essential element of the charges against the defendant.**

**Proposition of Law No. VII: Ineffective assistance of counsel attaches when trial counsel fails to ensure that the jury instructions sufficiently and properly convey the applicable law regarding the proper use of extrinsic evidence of a prior inconsistent statement.**

In the event that trial counsel failed to properly object to the constitutional errors explained in Propositions of Law I-V, such failure constitutes ineffective assistance of counsel. Proper and timely action by trial counsel potentially could have prevented these errors from occurring. Instead, the ultimate prejudice to Jordan resulted. The jury improperly considered: (1) the substance of Gilbert's recorded statement (which alone proved the State's case against Jordan); (2) the consequences of an acquittal, specifically Jordan's protection against double jeopardy, and an alleged threat to public safety attested to by the prosecutor based on unsupported speculation.

## CONCLUSION

For all the foregoing reasons, this case involves matters of great public interest and substantial constitutional questions. Appellant Ruben Jordan respectfully requests this Court to accept jurisdiction.

Respectfully submitted,

Michele L. Berry (0081939)
www.mberrylaw.com
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Counsel for Appellant Ruben Jordan*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this Memorandum in Support of Jurisdiction was served on counsel for Appellee, the State of Ohio, Joe Deters, Hamilton County Prosecuting Attorney via hand-delivery at 230 East 9th Street, Suite 4000, Cincinnati, OH 45202 this 5th day of October, 2012.

Michele L. Berry

**Appendix A:  Opinion and Judgment Entry of the Hamilton County Court of Appeals, First Appellate District (August 24, 2012)**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110833 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1003262 |
| vs. | : | *JUDGMENT ENTRY.* |
| RUBEN JORDAN, | : | |
| Defendant-Appellant. | : | |

ENTERED
AUG 2 4 2012

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty and orders that costs are taxed under App. R. 24.

The Court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App. R. 27.

To the clerk:

Enter upon the journal of the court on August 24, 2012 per order of the court.

By: _____

Presiding Judge

D98911555

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

STATE OF OHIO,      :      APPEAL NO. C-110833
                           TRIAL NO. B-1003262
    Plaintiff-Appellee,      :

vs.      :      *O P I N I O N.*

RUBEN JORDAN,      :      **PRESENTED TO THE CLERK**
                           **OF COURTS FOR FILING**
    Defendant-Appellant.      :
                           AUG 24 2012

                           **COURT OF APPEALS**

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 24, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michele L. Barry*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**ENTERED**
AUG 24 2012

**HILDEBRANDT, Presiding Judge.**

{¶1}    Defendant-appellant Ruben Jordan appeals the judgment of the Hamilton County Court of Common Pleas convicting him of aggravated murder with a firearm specification and possessing a weapon while under a disability. He was convicted after a jury trial.

### The Murder of Victor Davis

{¶2}    In October 2008, Brian Austin was murdered. Victor Davis identified Jordan's son, Kareem Gilbert, as the perpetrator.

{¶3}    After he had identified Gilbert as Austin's killer, Davis told the police that he feared for his life because of threats from Gilbert's family. On October 31, 2008, Davis's fears were confirmed, as he was fatally shot outside of his apartment building.

{¶4}    Gilbert was indicted for the murders of both Austin and Davis. But in May 2010, Gilbert gave a recorded statement to police and prosecutors in which he implicated Jordan as Davis's assailant. As part of a written plea arrangement, Gilbert agreed to plead guilty to reduced charges for the killing of Austin in exchange for his testimony against Jordan.

{¶5}    The case against Jordan proceeded to trial in January 2011. At trial, the state presented the testimony of Dean Shade, a resident of Davis's apartment complex. Shade testified that on the night of Davis's murder, he had heard shots and had looked out of his window. He stated that he had seen a man who matched Jordan's general physical description walking from the scene of the shooting.

{¶6}    Kenneth Heard was a drug dealer from whom Jordan had regularly bought crack cocaine. Heard testified that, after the murder of Davis, Jordan had

2

ENTERED

AUG 24 2012

confessed to him that he had killed Davis and that he had let Gilbert take the blame for the murder.

{¶7}  Criminalist Paul Glindmeyer responded to the scene immediately after Davis had been shot, and he noticed a quantity of what appeared to be fresh saliva near Davis's body. Glindmeyer testified it was a custom among some people to mark their "turf" by spitting on the street or sidewalk. He took a sample of the saliva and submitted it for deoxyribonucleic acid (DNA) testing. The testing revealed that the DNA in the saliva matched that of Jordan.

{¶8}  Kareem Gilbert took the stand and immediately repudiated his prior statement implicating Jordan. Although he admitted having made the statement, he contended that it had been fabricated and that neither he nor Jordan had been present at the scene of Davis's murder. The trial court admitted the recording of the statement as well as a transcript into evidence with the limiting instruction that the jury was to consider the statement for impeachment purposes only.

{¶9}  Jordan offered the testimony of his fiancée, Leshuande Ramsey, who testified that both Jordan and Gilbert had been at home with her the entire night of Davis's murder. Jordan also called one of the detectives who had testified for the state and questioned him about the possibility that Gilbert's brother might have killed Davis.

{¶10}  The jury found Jordan guilty, and the trial court sentenced him to life imprisonment with parole eligibility after 25 years for aggravated murder, a consecutive three-year term of imprisonment for the firearm specification, and another consecutive two-year term for possessing a weapon while under a disability. The trial court denied Jordan's motion for a new trial under Crim.R. 33.



ENTERED
AUG 2 4 2012

3

## Timeliness of Jordan's Appeal

{¶11}     Before we discuss Jordan's assignments of error, we address the state's contention regarding this court's jurisdiction to review the conviction. The state maintains that because Jordan did not file his notice of appeal until more than nine months after the sentence had been journalized, this court has jurisdiction to review only the trial court's denial of Jordan's motion for a new trial.

{¶12}     We find no merit in the state's argument. Jordan's motion for a new trial stayed the time for appealing the conviction until 30 days after the trial court's ruling on the motion. App.R. 4. *See also State v. Klein*, 1st Dist. No. C-970788, 1998 Ohio App. LEXIS 5757 (Dec. 4, 1998). Thus, Jordan's notice of appeal was timely, and this court has jurisdiction to review the conviction.

## Admissibility of Kareem Gilbert's Statement

{¶13}     In his first assignment of error, Jordan argues that the trial court erred in admitting extrinsic evidence of Kareem Gilbert's prior statement implicating Jordan in the murder of Davis. But because Jordan did not object to the admission of the statement, we review the record for plain error. Under the plain-error standard, we must affirm the conviction unless, but for the allegedly inadmissible evidence, the outcome of the trial would have been different. *See State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 34 (1st Dist.).

{¶14}     Evid.R. 613 provides for the admissibility of a witness's prior inconsistent statement for the purpose of impeaching the witness's credibility. *See State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018. But extrinsic evidence of the prior statement is admissible only "[w]hen a witness denies making a prior statement, or states that he is unable to recall the prior statement." *Id.* at ¶ 37, citing *State v. Davenport*, 1st Dist. No. C-980516, 1999 Ohio App. LEXIS 3469 (July 30,

ENTERED

AUG 2 4 2012

4

1999); *see also State v. Johnson*, 10 Ohio App.3d 14, 17, 460 N.E.2d 625 (10th Dist.1983).

{¶15}   Thus, because Gilbert admitted having made the prior statement, extrinsic evidence of the statement was not admissible. Nonetheless, the trial court did not commit plain error. In light of the limiting instruction, we must presume that the jury did not consider the prior statement as substantive evidence. And because of the other evidence adduced by the state—including eyewitness testimony, the statement of Jordan, and forensic evidence gathered at the crime scene—we cannot say that the outcome of the trial would have been different absent the error. Moreover, as Jordan himself concedes, the state could have properly engaged in a line-by-line cross-examination of Gilbert with respect to the prior statement, and the jury would have had been provided the identical evidence. *See State v. Hill*, 2d Dist. No. 20028, 2004-Ohio-2048, ¶ 41. Under these circumstances, Jordan was not deprived of a fair trial, and we overrule the first assignment of error.

### Prosecutorial Misconduct

{¶16}   In his second, third, and fourth assignments of error, Jordan claims that he was deprived of a fair trial because of prosecutorial misconduct. We address these assignments together.

{¶17}   The test for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Glenn*, 1st Dist. No. C-090205, 2011-Ohio-829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984) and *State v. Canyon*, 1st Dist. Nos. C-070729, C-070730, and C-070731, 2009-Ohio-1263, ¶ 17.



ENTERED
AUG 2 4 2012

{¶18}     Jordan first argues that the assistant prosecutor improperly invited the jury to consider Gilbert's prior statement as substantive evidence rather than mere impeachment.

{¶19}     We agree that a number of the assistant prosecutor's statements tended to suggest that the jury could consider the prior statement for its truth. Nonetheless, we must presume that the jury followed the trial court's instruction that the prior statement was to be considered only for purposes of impeachment. *See State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994). Thus, we find no prejudice to have resulted from the asserted misconduct.

{¶20}     Jordan next argues that the assistant prosecutor improperly vouched for the credibility of Gilbert's out-of-court statement when he emphasized his own role in eliciting the statement. In this regard, the assistant prosecutor stated the following;

> I'm not trying to toot my own horn, but you got Detective McGuffey and Luke and Vaughn and they're all homicide investigators. And Ms. Shanahan and myself all part of a plea agreement, as you can see that it says that. The statement has to be truthful. And as Detective Ballman told you, a lot of people want to cooperate with us in investigations, and we have to make an independent determination of whether what they are saying is true, because we have got a duty, we are officers of the court, we are here to see that justice is done.

The prosecutor also emphasized that his and the other interrogators' techniques were calculated to reveal the truth, and he noted that the plea agreement included his signature.

{¶21}     A prosecutor may elicit testimony that a witness has agreed to tell the truth as part of a plea agreement. *State v. Jackson*, 92 Ohio St.3d 436, 448, 751

ENTERED
AUG 2 4 2012

N.E.2d 946 (2001). But he may not express his belief or opinion regarding the credibility of a witness. *Id.*

{¶22} In this case, the assistant prosecutor went beyond merely eliciting testimony that Gilbert had agreed to tell the truth. He vouched for the truth of the prior statement and went so far as to take personal credit for its trustworthiness. Such comments went beyond the limits of proper argument. Still, because of the trial court's admonitions about the prior statement, we cannot say that the comments deprived Jordan of a fair trial.

{¶23} Finally, Jordan argues that the state engaged in misconduct by referring to matters not in evidence. Specifically, he argues that the assistant prosecutor improperly alleged that he and Gilbert had formulated a plot to ensure that they would both be acquitted of Davis's murder. In closing argument, the prosecutor made the following remarks:

> Don't think this was something that had not been thought through. The whole thing is that they [Jordan and Gilbert] knew there was going to be a jury somewhere down the road, and this is his clear final test, his final obstacle is you folks, and we are asking that you not let him get past justice by a jury trial in this particular case, because when he is found not guilty, I don't know whether you have heard, it's a term called double jeopardy. And at a later point, if Kareem Gilbert is charged with Davis's homicide, there is nothing to prevent Ruben Jordan from coming in here, another jury months and months from now and saying, yes, I did do it. Now that would be pretty monumental, and I don't know if anybody would believe him, but double jeopardy prevents him from being tried twice for the same crime. So again, this is the kind of plan that you don't know where it's

7

ENTERED

AUG 2 4 2012

going to go, but it's certainly foreseen that type of thing could happen depending on how this thing goes with you folks.

{¶24} Once again, we find these comments to be inappropriate. A prosecutor may not express his personal beliefs or opinions regarding the guilt of the accused and may not refer to matters not supported by admissible evidence. *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), citing *Smith,* 14 Ohio St.3d at 14, 470 N.E.2d 883. Here, the state asked the jury to convict Jordan not on the basis of the evidence, but to prevent Jordan and Gilbert from playing what the prosecutor referred to as a "grade-school simplistic trick." Such collusion on the part of Jordan and Gilbert was not demonstrated by the record, and the comments therefore went beyond the limits of proper argument.

{¶25} Nonetheless, Jordan did not object to these comments about collusion and therefore must demonstrate that, but for the misconduct, the outcome of the trial would have been different. *State v. Rucker,* 1st Dist. No. C-110082, 2012-Ohio-185, ¶ 20, citing *State v. Williams,* 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). In this instance, Jordan has not met his burden. As we have already commented, there was ample evidence to support the conviction, and we cannot say that the comments deprived Jordan of a fair trial. But we strongly caution the state that, in a closer case than the one before us now, such comments could very well result in reversal. But on the basis of the record before us, we overrule the second, third, and fourth assignments of error.

{¶26} In his fifth assignment of error, Jordan contends that the trial court erred in failing to provide the jury with a proper limiting instruction concerning Gilbert's out-of-court statement. Specifically, he argues that the court failed to adequately inform the jury that it could consider the statement for impeachment purposes only and not as substantive evidence. Once again, Jordan

8

ENTERED

AUG 2 4 2012

did not object to the jury instructions, and we therefore review the matter under the plain-error standard. Crim.R. 30(A); *State v. Coley*, 93 Ohio St.3d 253, 266, 754 N.E.2d 1129 (2001).

{¶27}     We find no plain error. The trial court informed the jury that the "statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness." This instruction was accurate and fully explained the import of the prior statement. Although Jordan contends that the instruction was deficient, he essentially reiterates his argument that extrinsic evidence of the statement was simply inadmissible. Having already addressed that argument, we need not do so again. The fifth assignment of error is overruled.

{¶28}     Although not separately assigned as error, Jordan makes the alternative arguments that he was deprived of the effective assistance of trial counsel and that the trial court erred in overruling his motion for a new trial. We choose to recast these arguments as the sixth and seventh assignments of error, respectively.

{¶29}     To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶30}     As we have already noted, trial counsel failed to lodge a number of objections that were warranted. As a result, the jury was presented with an inadmissible out-of-court statement as well as a number of inappropriate comments on the part of the assistant prosecutor. But counsel's lapses did not deprive Jordan of a fair trial, and we accordingly overrule the sixth assignment of error.

ENTERED
AUG 2 4 2012

9

{¶31}    As for the seventh assignment of error, we review the denial of a motion for a new trial under an abuse-of-discretion standard. *State v. Davis*, 1st Dist. No. C-090220, 2010-Ohio-5125, ¶ 41, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). A new trial cannot be granted on the basis of irregularities that do not affect the substantial rights of the defendant. *Glenn*, 2011-Ohio 829, at ¶ 88.

{¶32}    We find no abuse of discretion in the trial court's denial of the motion. Although there were irregularities in the proceedings, they did not affect Jordan's substantial rights. The evidence produced by the state was such that the asserted errors cannot be said to have affected the outcome of the proceedings. Accordingly, we overrule the seventh assignment of error.

### Conclusion

{¶33}    The judgment of the trial court is affirmed.

Judgment affirmed.

**HENDON** and **FISCHER, JJ.,** concur.

Please note:
    The court has recorded its own entry this date.



ENTERED
AUG 2 4 2012



IN THE

SUPREME COURT OF OHIO

| STATE OF OHIO | : | NO. 12-1685 |
| Plaintiff-Appellee | : | On Appeal from the Hamilton County Court of Appeals, First Appellate |
| vs. | : | District |
| RUBEN JORDAN | : | Court of Appeals Case Number C-1100833 |
| Defendant-Appellant | : | |

## MEMORANDUM IN RESPONSE

Joseph T. Deters (0012084P)
Prosecuting Attorney

James Michael Keeling (0068810P)
Assistant Prosecuting Attorney

230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3178
Fax No. (513) 946-3021

COUNSEL FOR PLAINTIFF-APPELLEE, STATE OF OHIO

Michele L. Berry
Attorney at Law
114 East 8th St.
Cincinnati, Ohio 45202
513.919.5315



COUNSEL FOR DEFENDANT-APPELLANT, RUBEN JORDAN



FILED

OCT 18 2012

CLERK OF COURT
SUPREME COURT OF OHIO

RECEIVED

OCT 18 2012

CLERK OF COURT
SUPREME COURT OF OHIO

EXHIBIT
25

# TABLE OF CONTENTS

EXPLANATION OF WHY THIS CASE IS NOT A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION ................................................................................................. 1

STATEMENT OF THE CASE AND FACTS ............................................................................. 1

ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW ...................................................... 6

    Proposition of Law No. 1: The prosecutor did not engage in misconduct during closing argument, and Jordan enjoyed a fair trial ......................................................................... 6

    Proposition of Law No. 2: The court did not err in admitting Gilbert's statement. The statement was properly admitted under Evid.R. 613(B). Even if the court did err, the admission of Gilbert's statement did not likely affect the outcome of trial, and does not rise to the level of plain error. ........................................................................................ 10

    Proposition of Law No. 3: The court's instruction correctly instructed the jury that Gilbert's previous statement was not testimony. The court explicitly told the jurors that the statement was only to be used for impeachment purposes, so they could evaluate Gilbert's credibility. ..................................................................................................... 12

    Proposition of Law No. 4: Trial counsel was not ineffective. ......................................... 14

CONCLUSION ..................................................................................................................... 15

PROOF OF SERVICE ........................................................................................................... 16

Jordan makes no real claim that his case involves a substantial constitutional question or one of great public interest. Instead he dislikes the jury's verdict finding him guilty.

But the trial court and the First District correctly applied Ohio law to his case and reached a proper result. There are no real issues in Jordan's case for this Court to consider.

## STATEMENT OF THE CASE AND FACTS

**Procedural Posture:**

A Hamilton County Grand Jury indicted Ruben Jordan with one count of aggravated murder with firearm specifications and one count of having weapons while under disability. (T.d. 1). Jordan filed a notice of alibi, claiming that he was at 325 Hearne Avenue, Apt. 2, with Dominic Turner, Leshonda Gilbert, Lamar Smith, and Otis Clark. (T.d. 40). After trial, a jury found him guilty as charged. (T.d. 52).

The court deferred sentencing. (T.d. 56). Jordan filed a motion for a new trial and a sentencing memorandum. (T.d. 57, 59). The court sentenced Jordan to 25 years to life for the aggravated murder charge, three years for the firearm specification, and sentenced him to a consecutive term of two years for the WUD. (T.d. 60). The aggregate sentence was thirty years to life imprisonment, with credit for time served, and the court ordered Ruben to make restitution of $5,500. (T.d. 60).

Two months later, Jordan filed a supplemental motion for new trial. (T.d. 67). The State filed a response to both the original and supplemental motions. (T.d. 71). After both parties filed additional memoranda, the court denied the motion for a new trial. (T.d. 76-78, 82).

1

Jordan did not file his appeal until December 2011. (T.d. 83). Despite this the First District allowed him an appeal. And after being briefed on all the issues and hearing oral argument, the First District Court of Appeals affirmed Jordan's conviction. He now asks this Court to exercise jurisdiction to reverse that decision.

**Facts:**

At about 1:00 in the morning on October 16, 2008, Officer Brendon Rock responded to a radio run for shots fired and saw Brian Austin staggering to the ground. (T.p. 341). Victor Davis was right beside Austin when he fell and died. (T.p. 343).

Rock watched as another bystander, Shawn Gilbert, started talking to Davis in a heated, animated manner. (T.p. 343-347). Detective Kurt Ballman investigated the Austin murder. He believed that Shawn Gilbert was trying to influence Davis to not cooperate with the police. (T.p. 373). Still, Davis gave two statements to Ballman. (T.p. 375). Although he initially was reluctant to identify him, Davis eventually told police that "Little Red" had shot and murdered Austin. (T.p. 380). Davis identified Kareem Gilbert in a photo lineup, and told police he knew him as "Little Red." (T.p. 380).

Davis, Gilbert, and Gilbert's family lived in the same apartment building. (T.p. 381). Gilbert's family knew he was wanted for homicide. (T.p. 397-402).

Detective Ron Avant was a polygraph examiner for the Cincinnati Police Department's Criminal Investigation Section. (T.p. 354). Avant was friends with Davis and knew he had witnessed Austin's murder. (T.p. 359). He also knew that Gilbert's family was threatening Davis. (T.p. 360).

On October 31, 2008, Avant talked with Davis for the last time. He told Davis to leave downtown because he was being threatened. (T.p. 361). Avant testified that he "could hear the fear in his voice" as Davis told Avant that "it's getting hot" and that he was very afraid. (T.p. 361).

2

That night, Victor Davis was shot and killed in front of his home. He had Ballman's card in his pocket. (T.p. 387, 436). A "big glob of spit" lay near his body, within six or seven feet. (T.p. 434, 498, 731). All responding officers testified that the spit was very fresh. (T.p. 434, 483, 493, 732). It was thick phlegm and had bubbles in it. (T.p. 434, 438). And, because the area was near Findlay Market, it was typically clean of trash and debris. (T.p. 438-439).

Davis' son, Victor Warren Davis, Jr., testified that Davis "knew it was coming." (T.p. 409). Davis had told his son about Austin's murder, and that Gilbert's family had approached him. (T.p. 410). Davis did not feel comfortable. (T.p. 410). He went so far as to tell his son what he wanted to be buried in, and laid out his clothes. (T.p. 415).

Davis Jr. knew Ruben Jordan, and had dated his daughter. (T.p. 411-412). He thought it was odd that later, Jordan broke down, cried, and apologized to him for his father's death. (T.p. 414). Jordan told Davis Jr. that he did not know Davis was his father. (T.p. 413).

Dean Shade lived in the same building as Davis and the Gilbert family. (T.p. 441-444). He knew Jordan, but not well. (T.p. 446).

Shade testified that he saw Brian Austin die. (T.p. 449). Shade was friendly with Davis, who told him about witnessing Austin's murder. (T.p. 451). Davis confided that "he wasn't going to let him go out like that . . .he was gonna tell them whoever done it." (T.p. 451).

On October 31, 2008, Shade was in bed when he heard a little scuffling, then "a muffle, pop, pop." (T.p. 457, 453). Shade heard someone say "Dread, get up." (T.p. 453). He opined the person was taunting Davis. (T.p. 458). The person who said it was pulling on Davis' arm, then turned and walked away. (T.p. 454). That man was six-feet-tall with a clean-shaven head, and similar size and stature to Jordan. (T.p. 454-455). Shade was only 75% sure that the man was Jordan. (T.p. 456). But he was positive it was not Kareem or Shawn Gilbert. (T.p. 458).

Shade testified that "there was nobody else out there that night." (T.p. 462). From his

3

window, Shade watched his friend laying down, flinching, with a gunshot to his head. (T.p. 453).
He testified that he saw Davis "take his last two breaths." (T.p. 453).

Davis was dead within minutes. (T.p. 602). He died from a gunshot wound to his head that perforated his skull and brain. (T.p. 601). Davis also could have died from the additional gunshot to his chest, which hit his liver. (T.p. 600). And Davis had another gunshot wound to his head, which was close-range, but would not have killed him. (T.p. 581).

Paul Glindmeyer was the criminalist who responded to the scene of Davis' murder. (T.p. 481). He immediately noticed the spit by Davis' body, thought it was fresh, and wanted to protect it. (T.p. 483). Glindmeyer had 31 years' experience as a police officer, and he explained that some people spit as a way to mark their territory. (T.p. 498-499, 504). Glindmeyer took a DNA sample from the spit, which was sent to the lab. (T.p. 502-503). He also searched the area for shell casings, but found none. (T.p. 504).

William Harry was a serologist and DNA analyst with the Hamilton County Coroner's Crime Laboratory. (T.p. 545). He testified that the DNA in the phlegm found by Davis' body was that of Ruben Jordan. (T.p. 558). Jordan spit by Davis' body. (T.p. 559).

John Heile was a firearm examiner at the Hamilton County Coroner's Crime Laboratory. (T.p. 515). He testified that different guns were used to kill Austin and Davis. (T.p. 538-539).

Kenneth Heard was a drug dealer who sold crack cocaine to Jordan. (T.p. 622). He testified that Jordan told him that his son was in jail for something he did. (T.p. 630). Jordan told Heard that he "collapsed somebody," which Heard testified meant Jordan had shot and killed someone. (T.p. 630). Jordan told Heard that he did it so the person would not testify against his son. (T.p. 630). As Jordan confessed to Heard, he started crying. (T.p.630).

Later, Jordan told Heard that his family was trying to get him to admit to the killing on tape. (T.p. 632).

Heard told Police Officer Darren Sneed about Jordan's statements. (T.p. 633, 646). Heard then parlayed the information to Detective Jenny Luke. (T.p. 634, 738).

When Luke talked with Jordan, he denied being at the scene of Davis' murder. (T.p. 746). He was agitated about being a suspect. (T.p. 746). Police took a DNA sample from him. (T.p. 745, 747).

Heard told Luke that after police took his DNA sample, Jordan was nervous because he thought he left some DNA at the scene. (T.p. 635). Heard did not receive any case consideration for the information he provided to police. (T.p. 637).

Luke testified that she watched Jordan; he behaved strangely throughout Gilbert's court proceedings. (T.p. 736). Police questioned Jordan regarding a separate incident, and he had an odd reaction. Initially, he "looked like he had been punched in the stomach." (T.p. 742). But when he realized police did not suspect him to be involved in Davis' murder, he smirked and acted like he did not care. (T.p. 742).

Kareem Gilbert had made a statement to police and prosecutors as part of a plea agreement in the murder of Austin. (T.p. 660, 689, 690, 712). In it, he had identified his father, Jordan, as Davis' shooter. (T.p. 692, 700; State's Exhibit 31). On the stand, Gilbert said he had lied. (T.p. 661, 690). Instead, he testified that he was with his father the entire night, watching the Steelers play football. (T.p. 695-696). Detective Luke later testified that the Steelers did not play on Halloween. (T.p. 750).

Gilbert did not want to testify against his father. (T.p. 706). He admitted to killing Brian Austin, and said he told Jordan about it. (T.p. 693). Gilbert testified that he "told him everything about the murder." (T.p. 696). But he claimed that his father did not know Davis was a witness. (T.p. 696-697). Gilbert and Jordan spent time awaiting trial in the same cell at the Justice Center. (T.p. 710).

5

Jordan's fiancée, Leshuande Ramsey, testified that she was with him and Gilbert on the night of Davis' murder. (T.p. 817). Ramsey testified that they were watching movies, not football. (T.p. 818).

After Ramsey testified, the defense recalled Detective Ballman. On cross, Ballman testified about the interview with Gilbert on May 17, 2010, when Gilbert entered into his plea agreement. (T.p. 847-854).

## ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW

**Proposition of Law No. 1:** **The prosecutor did not engage in misconduct during closing argument, and Jordan enjoyed a fair trial.**

In his first three propositions, Jordan claims that the State committed prosecutorial misconduct. First, Jordan claims the prosecutor erred by urging jurors to consider the details of Gilbert's previous statement to police. Secondly, when in closing argument the prosecutor described how Gilbert was questioned by the police and prosecutors when he made his statement as part of his plea agreement. Thirdly, by explaining to the jury how Jordan and Gilbert could both avoid liability for Davis' murder.

Prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St. 3d 239, 266, 473 N.E.2d 768 (1984). The relevant inquiry an appellate court must apply when reviewing a claim of prosecutorial misconduct is: 1) whether the prosecutor's remarks were indeed improper, and 2) if so, whether a substantial right of the accused was adversely affected. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990); *State v. Black*, 75 Ohio App.3d 667, 674, 600 N.E.2d 389 (1991). The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982).

When judging a prosecutor's comments in closing argument, they must be reviewed in the context of the entire case, and the entire argument. *State v. Draughn*, 76 Ohio App.3d 664, 671,

602 N.E.2d 790, 794 (1992); *State v. Smith*, 1st Dist. No. C-080126, 2009-Ohio-3727, ¶49. Prosecutorial misconduct constitutes reversible error only in rare instances. *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶36, citing *State v. Edgington*, Ross App. No. 05CA2866, 2006-Ohio-3712, ¶18. And, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *U.S. v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985).

Jordan did not object to most of the offenses which he now raises, so he has waived all but plain error. *State v. Smith*, 97 Ohio St.3d 367, 376, 780 N.E.2d 221, 232, (2002), citing *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992). Thus, he must show: 1) that the prosecutor's conduct was improper, and 2) that but for the error, the outcome of trial clearly would have been otherwise. *State v. Williams*, 79 Ohio St.3d 1, 12, 679, N.E.2d 646, 657 (1997); *State v. Tapke*, 1st Dist. No. C-060494, 2007-Ohio-5124, ¶77.

### *Did they really say that?*

During closing argument, the State recommended that the jury should examine the details of Gilbert's prior inconsistent statement. And, prosecutors explicitly told the jury to do so only to determine whether or not to believe Gilbert's testimony that he and Jordan were together on the night of Davis' murder, watching football. (T.p. 924-926). This was entirely proper. The jury was required to determine the credibility of Gilbert's testimony. The jury was entitled to compare the details of what Gilbert had said previously with his trial testimony – such careful consideration does not mean that the jury had to believe Gilbert's prior statement and consider it for its truth. But it was one way the jury could examine Gilbert's truthfulness, or lack thereof.

### *Was the prosecutor really a witness?*

Although Jordan claims that the prosecutor acted as a witness for the state, he did not. Here, the prosecutor's comments described what the jurors already knew – that three homicide

7

investigators and two prosecutors took part in questioning Gilbert, and that they challenged his version of events. (T.p. 917-919). Detective Ballman had described how the interview was done, who was present, what Gilbert said, and why he believed Gilbert's statement. (T.p. 847-855). The recording of the interview had already been played for the jury. (T.p. 690-692). As in *U.S. v. Young*, "when viewed in context, the prosecutor's remarks cannot be read as implying that the prosecutor had access to evidence outside the record." 470 U.S. 1, 19, 105 S.Ct. 1038, 1048 (1985).

Jordan also argues that the prosecutor vouched for the credibility of Gilbert's prior statement. He points to the prosecutor's description of Gilbert's plea agreement, including the fact that it bears his signature, as an implication that the prosecutor vouched for the credibility of the statement. But the prosecutor described the plea agreement in response to defense counsel's closing, which referenced the agreement and its consequences for Gilbert. (T.p. 889, 902-903).

Gilbert's credibility was an issue at trial because Gilbert claimed an alibi for Jordan, and his testimony was contrary to his previous statement. (T.p. 905, 917). The prosecutor should not have, and did not, vouch for the credibility of anything Gilbert said. In fact, the prosecutor repeatedly told the jury to consider Gilbert's statement only for the purposes of determining the credibility of his in-court testimony. (T.p. 917, 924-926).

### *What is double jeopardy?*

During closing argument, the prosecutor stated that if the jury acquitted Jordan, and Gilbert later went to trial for Davis' murder, and then Jordan testified that he had murdered Davis, the State could not retry Jordan. (T.p. 901). Jordan claims that this statement somehow violated his rights, but fails to cite any case law in support of this claim. The prosecutor's comment was a correct statement of the law. It was relevant to Jordan's trial because of the way Gilbert had behaved in his dealings with the State as a witness. And, it does not rise to the level of plain error; it is not "particularly egregious," nor does it "seriously affect the fairness, integrity or public reputation of

judicial proceedings." *Young* at 15-16, 105 S.Ct. 1038, 1046.

The jury is allowed to make reasonable inferences from the facts shown in trial. Here, the prosecutor elaborated one such reasonable inference when he said that Jordan and Gilbert had planned to have Gilbert lie on the stand. (T.p. 900). Jordan's attorneys elicited testimony that he and Gilbert spent time together in the Justice Center awaiting trial. (T.p. 710). And Gilbert's testimony was drastically different from the statement he had previously given to police and prosecutors. The only aspect of this case that seriously affects the fairness, integrity or public reputation of the legal system is Gilbert's stunt – he entered into a plea agreement, and then completely recanted his statement, instead providing an alibi for his father at trial. That Gilbert laughed while testifying and repeatedly covered his face to hide his smile illustrates the irony of Jordan's entire argument. (T.p. 875).

### *Does any of it matter?*

Even if the prosecutor made improper statements, Jordan cannot show that they affected the outcome of his trial. If the prosecutor had vouched for the credibility of Gilbert's previous statement, it does not follow that the statement would be considered for its content, as Jordan claims. More importantly, the court instructed the jury that they could only consider Gilbert's statement to determine his credibility. (T.p. 937, 913). A jury is presumed to follow the trial court's curative instructions. *State v. Jones*, 1st Dist. No. C-110059, 2011-Ohio-6633, ¶17, citing *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623.

The court also told the prosecutor not to discuss what happened in the room when Gilbert made his statement. (T.p. 920). Pursuant to that admonition, the prosecutor made no further comments about it. (T.p. 922-930). This is exactly what the Supreme Court has indicated should happen during trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974).

And here, where the State presented significant proof of Jordan's guilt, the prosecutor's

comments do not warrant reversal.

The first three propositions of law should be overruled.

**Proposition of Law No. 2:** **The court did not err in admitting Gilbert's statement. The statement was properly admitted under Evid.R. 613(B). Even if the court did err, the admission of Gilbert's statement did not likely affect the outcome of trial, and does not rise to the level of plain error.**

In his next proposition of law of error, Jordan claims that the trial court erred by admitting Gilbert's prior inconsistent statement into evidence. None of the cases he cites in support of his argument are applicable to the facts of this case.

Pertinent portions of Evid.R. 613(B) state that extrinsic evidence of a prior inconsistent statement of a witness is admissible if: 1) the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement (or the interests of justice otherwise require), and 2) the statement's subject matter is a fact that is of consequence to the determination of the action. As long as the elements of Evid.R. 613(B) are met, extrinsic evidence of the prior inconsistent statement may be admitted. See *State v. Davenport*, 1st Dist. No. C-980516, (July 30, 1999); *State v. Burns*, 5th Dist. No. 10CA130, 2011-Ohio-5926.

Here, the court properly admitted Gilbert's prior inconsistent statement because the requirements of Evid.R. 613(B) were met. The statement was offered solely to impeach Gilbert's testimony at trial that his father, Jordan, did not murder Davis. (T.p. 661). Gilbert testified that he and Jordan were together that night watching TV. (T.p. 662). The court found that Gilbert was a hostile witness, the State was surprised by his testimony, and allowed the State to play Gilbert's previous inconsistent statement. (T.p. 663-666).

Moreover, Jordan did not object to the admission of Gilbert's taped statement, and admits he has waived all but plain error. (T.p. 690-692, 796-798). Thus, Jordan must show that this alleged error affected the outcome of trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759

N.E.2d 1240. Plain error is recognized only in exceptional circumstances to avoid a miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 94-95, 372 N.E.2d 804 (1978).

Jordan fails to demonstrate plain error. A trial court has broad discretion in admitting or excluding evidence. *State v. Brown*, 112 Ohio App.3d 583, 601, 679 N.E.2d 361, 372 (1996); citing *State v. Duncan*, 53 Ohio St.2d 215, 219, 7 O.O.3d 380, 383, 373 N.E.2d 1234, 1236-1237 (1978). Here, Jordan cannot show that the court abused its discretion in admitting Gilbert's prior statement. Moreover, Jordan's attorneys used Gilbert's statement to cross-examine Detective Luke. (T.p. 774-780). And, the State would have properly been able to use Gilbert's statement as a prior inconsistent statement after Jordan's attorneys questioned Gilbert about letters he had sent to his father saying "I know you didn't do nothing." (T.p. 709).

Jordan cites *Rush v. Illinois Cent. R. Co*, 399 F.3d 705, 722 (6th Cir. 2005) and *Umani v. Caruso*, 2008 WL 2216283 (E.D. Mich. May 27, 2008) to support his argument that extrinsic evidence of Gilbert's statement was inadmissible. However, neither of these cases is binding authority on this Court, and both are factually inapposite to this case. *Rush* relates to the admission of a witness' statement for purposes of refreshing recollection under the federal rules of evidence. And *Umani*'s dicta regarding *Rush* is made in the context of review of a motion for summary judgment, not admission of a prior inconsistent statement at trial.

Two other cases cited by Jordan – *State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997), and *State v. Johnson*, 10 Ohio App.3d 14, 460 N.E.2d 625 (1983) – are inapplicable because they were decided in reliance on the common law, which was altered by Evid.R. 613(B) in 1998.

The other two cases cited by Jordan do not apply here. This Court is not bound by the Second District's decision in *State v. Hill*, 2nd Dist. No. 20028, 2004-Ohio-2048. But even so, in *Hill*, the admission of extrinsic evidence was harmless because the witness was properly cross-examined about the previous statement and the court gave a limiting instruction. Similarly, the

State and Jordan questioned Gilbert about his prior statement, and the court repeatedly instructed the jury that they could only consider it for impeachment purposes. And in *State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018, the First Appellate District found that extrinsic evidence of the witness' prior inconsistent statement was erroneously admitted because it contained prejudicial "other acts" evidence. No such prejudice occurred here.

However, in *State v. Jordan*, 167 Ohio App.3d 157, 2006-Ohio-2759, 854 N.E.2d 520, the First District Court of Appeals found that the trial court had not erred when it admitted a witness' prior inconsistent statement. The prior statement involved only what the witness had observed, and the court gave a limiting instruction directing the jury to consider the witness' statements for impeachment purposes only. *Id.* at ¶44. Similarly, Gilbert's previous statement related only to his own observations and the court instructed the jury to only consider the statement for impeachment purposes. (T.p. 937, 913). The court properly admitted Gilbert's statement.

Even if the court erred in allowing the State to play Gilbert's statement for the jury, the error is harmless. The State presented enough other evidence to prove that Jordan murdered Davis. Dean Shade testified that a man matching Jordan's description walked away from Davis immediately after he was shot. (T.p. 454-455). And although Jordan denied being at the area on that day, his spit was found within seven feet of Davis' body. (T.p. 558, 746). Moreover, Kenneth Heard testified that Jordan admitted to him that he had killed Davis. (T.p. 630).

The court did not err in admitting Gilbert's statement. Jordan's fourth proposition of law should be overruled.

> **Proposition of Law No. 3: The court's instruction correctly instructed the jury that Gilbert's previous statement was not testimony. The court explicitly told the jurors that the statement was only to be used for impeachment purposes, so they could evaluate Gilbert's credibility.**

In his fifth proposition of law, Jordan claims that the court's instruction that Gilbert's statement was only to be considered as impeachment evidence was *per se* insufficient to cure the

alleged defects raised in the four previous assignments of error. Counsel relies on *Bruton* for the proposition that "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (Defendant's brief, p.28).

First, it should be noted that Jordan never objected to the court's jury instructions; he therefore has waived this specific appellate claim. Crim.R. 30. Moreover, the giving of jury instructions is within the sound discretion of the trial court and will not be disturbed upon appeal unless the record affirmatively demonstrates that the trial court abused its discretion. See *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157, 161 (1981). A jury instruction must be viewed in the context of the entire charge rather than in isolation. *State v. Lewis*, 67 Ohio St. 3d 200, 203, 616 N.E.2d 921, 924 (1993).

*Bruton* is inapplicable to this case. In *Bruton*, the Supreme Court considered the admission of a codefendant's statement implicating Bruton against the defendant. The codefendant never testified and could not be cross-examined. That is not the case here. Gilbert testified and was cross-examined regarding his statement at trial, as well as regarding his prior inconsistent statement. And, Gilbert's prior statement was not admitted for its contents, it was properly admitted to impeach his testimony, which was an alibi for Jordan. *Bruton*'s rule is inapplicable here.

Moreover, in *Bruton*, the Court stated that there are many instances where the court may rely on the jury's ability to follow instructions. "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions . . .a defendant is entitled to a fair trial but not a perfect one." *Bruton*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627 (1968). Jordan enjoyed a fair trial.

Here, where the court properly admitted extrinsic evidence of Gilbert's previous inconsistent statement, the court's instruction to the jury that the statement was not evidence, it was not

testimony, and was only to be used for a very specific purpose of weighing credibility, was sufficient. (T.p. 913). During jury instructions, the court also stated that Gilbert's "statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness." (T.p. 937). This instruction was clear, and the jury reasonably may be presumed to have followed it. Jordan fails to overcome this presumption and show that he was prejudiced by what he claims is an insufficient instruction.

Jordan fails to show that the trial court abused its discretion, or acted in an arbitrary, unconscionable, or unreasonable way when it instructed the jury. Jordan's fifth proposition of law should be overruled.

### **Proposition of Law No. 4:  Trial counsel was not ineffective.**

In his last two propositions of law, Jordan raises "alternative" claims that trial counsel was ineffective. All of his arguments focus on counsel's failure to object to the admission of Gilbert's prior inconsistent statement, failure to object to alleged prosecutorial misconduct, and failure to object to the jury instructions.

In order to prove a claim of ineffective assistance of counsel, a defendant must show: 1) that trial counsel's performance fell below an objective standard of reasonable representation, and 2) that prejudice arose from this performance. Counsel's performance is presumed to be within the range of reasonable professional assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 690, 104 S.Ct. 2052, 2065. The issue in judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. To show prejudice, a defendant "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373, 380 (1989).

14

Here, Jordan fails to rebut the presumption that trial counsel's representation was reasonable. He only makes summary allegations that counsel was ineffective, and fails to support his claim with any argument. (Defendant's brief, p. 9, 17, 21, 26, 30).

If the Court examines Jordan's claims, it will see that this argument is baseless. As argued above, the trial court properly admitted Gilbert's prior inconsistent statement, the State did not engage in prosecutorial misconduct, and the court's instructions to the jury were proper. Additionally, Jordan fails to show that the result of trial would have been different if counsel had objected more. The State presented sufficient evidence of Jordan's guilt, notwithstanding the admission of Gilbert's previous inconsistent statement. Jordan's spit was found seven feet from Davis' body, Shade saw a man that looked like Jordan leaving the scene, and Jordan confessed to Heard that he had killed Davis because he witnessed Gilbert's murder of Austin.

Counsel was not ineffective for failing to object on these grounds.

## CONCLUSION

None of Jordan's alleged error support this Court's exercise of jurisdiction. Jordan's Memorandum in Support should be overruled.

Respectfully,

Joseph T. Deters, 0012084P
Prosecuting Attorney

James Michael Keeling, 0068810P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
Phone: 946-3178

Attorneys for Plaintiff-Appellee, State of Ohio

## PROOF OF SERVICE

I hereby certify that I have sent a copy of the foregoing Memorandum in Response, by United States mail, addressed to Michele L. Berry, 114 East 8th St., Cincinnati, Ohio 45202, counsel of record, this __17__ day of October, 2012.

James M. Kali

James Michael Keeling, 0068810P
Assistant Prosecuting Attorney

16

# The Supreme Court of Ohio

State of Ohio

v.

Ruben Jordan

Case No. 2012-1685

E N T R Y

Upon consideration of the jurisdictional memoranda filed in this case, the court declines to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

(Hamilton County Court of Appeals; No. C-110833)

Maureen O'Connor
Chief Justice



PENGAD 800-631-6989

EXHIBIT
26





Logged in as: SAG9860GA |

Hamilton County Court
1000 Main St, Cincinna

Directions | Policies | C

Powered by
Windows Live    Site

| ▲Home | ▲Court Records | ▲Court Date | ▲Forms | ▲Services | ▲D |

**Case Summary**      [ Add to Portfolio ]        Case C

| | |
|---|---|
| **Case Number:** | B 1003262 |
| **Municipal Case Number:** | /10/CRA/15264 |
| **Case Caption:** | STATE OF OHIO vs. RUBEN JORDAN |
| **Judge:** | NADINE ALLEN |
| **Filed Date:** | 5/24/2010 |
| **Case Type:** | 5 - WARRANT ON INDICTMENT |
| **Race:** | BLACK - AFRICAN AMERICAN |
| **Sex:** | M |
| **Age:** | 41 |
| **Date of Birth:** | 7/3/1972 |
| **Bond Amount:** | $1000000 STRAIGHT |
| **Count 1:** | AGGRAVATED MURDER WITH SPECIFICATION 2903-01A ORCN |
| **Disposition:** | 3/15/2011 - DEPARTMENT OF CORRECTIONS |
| **Count 2:** | HAVING WEAPONS WHILE UNDER DISABILITY 2923-13A3 ORCN |
| **Disposition:** | 3/15/2011 - DEPARTMENT OF CORRECTIONS |

Document Rec
** Revised 12/0
Common Plea

Municipal

**Case History**       [ Printer Fi

| Doc | Image# | Date | Description | A |
|---|---|---|---|---|
| ⌴ | | 2/13/2013 | ENTRY FROM THE SUPREME COURT OF OHIO DECLINING TO ACCEPT JURISDICTION OF THE APPEAL (C 1100833) | |
| ⌴ | | 10/15/2012 | COPY OF NOTICE OF APPEAL TO THE SUPREME COURT OF OHIO FILED 10/05/12 S.C.# 12-1685 (C 1100833) | |
| 🗋 | | 8/24/2012 | JUDGMENT ENTRY AND OPINION AFFIRMING (C 1100833) | |
| 🗋 | | 1/27/2012 | TRANSCRIPT OF PROCEEDINGS - TEN VOLUMES PLUS MASTER INDEX (C 1100833) | |
| ⌴ | | 1/13/2012 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED | |
| ⌴ | | 1/9/2012 | COURT OF APPEALS OF HAMILTON COUNTY CASE NO. C 1100833, TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES FILED | |
| 🗋 | | 1/3/2012 | ENTRY ALLOWING ADDITIONAL COMPENSATION | |
| ⌴ | | 12/31/2011 | ENTRY APPROVING COUNSEL FEES $4,338 | |
| 🗋 | | 12/19/2011 | NOTICE OF APPEAL FILED NO. C1100833COPY SENT TO HAMILTON COUNTY PROSECUTOR | |
| 🗋 | | 11/21/2011 | ENTRY DENYING: MOTION FOR NEW TRIAL | |
| 🗋 | | 10/11/2011 | ENTRY OF CONTINUANCE 1/5/11 | |

EXHIBIT
27
PENGAD 800-631-6989

| | | |
|---|---|---|
| | 10/11/2011 | APPLIC. REQUESTING PERMISSION TO BROADCAST,TELEVISE,PHOTO., RECORD COURTROOM PROCEEDINGS. |
| | 10/11/2011 | AFFIDAVIT OF INDIGENCY |
| | 10/4/2011 | DEFENDANT'S REPLY TO STATE'S MEMORANDUM REGARDING CASES UNDER COURT'S CONSIDERATION |
| | 9/21/2011 | STATE'S MEMORANDUM REGARDING CASES UNDER THE COURT'S CONSIDERATION |
| | 9/12/2011 | BRIEFING ON ADDITIONAL CASES AS REQUESTED BY THE COURT REGARDING THE EVID. R. 613(B) ISSUE. |
| | 6/21/2011 | MOTION TO WAIVE HEARING & SUBMIT MOTION FOR NEW TRIAL & SUPPLEMENTAL MOTION FOR NEW TRIAL FOR DECISION BASED ON THE FILINGS. |
| | 6/21/2011 | MOTION TO WAIVE HEARING & SUBMIT MOTION FOR NEW TRIAL & SUPPLEMENTAL MOTION FOR NEW TRIAL FOR DECISION BASED ON THE FILINGS. |
| | 6/20/2011 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED KAREEM GILBERT |
| | 6/17/2011 | ENTRY ORDERING RETURN OF INMATE |
| | 6/16/2011 | STATE'S RESPONSE TO DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION FOR NEW TRIAL |
| | 6/15/2011 | SUBPOENA FOR WITNESS ISSUED TO KAREEM GILBERT |
| | 6/3/2011 | CLERK'S TRANSCRIPT FILING FEE |
| | 6/3/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 5/23/2011 | SUPPLEMENTAL MOTION FOR NEW TRIAL & HEARING PURSUANT TO CRIM. R. 33 AND MEMORANDUM IN SUPPORT. |
| | 4/22/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 4/22/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 4/8/2011 | CLERK'S TRANSCRIPT FILING FEE |
| | 4/8/2011 | CLERK'S TRANSCRIPT FILING FEE |
| | 4/6/2011 | ENTRY APPOINTING APPELLATE COUNSEL. |
| | 3/19/2011 | ENTRY APPROVING COUNSEL FEES $9,000 |
| | 3/15/2011 | JUDGMENT ENTRY: SENTENCE: INCARCERATION LIFE THE SENTENCES IN COUNTS #1 AND #2 ARE TO BE SERVED CONSECUTIVELY TO EACH OTHER. THE TOTAL AGGREGATE SENTENCE IS THIRTY (30) YEARS TO LIFE IN THE DEPARTMENT OF CORRECTIONS. THE DEFENDANT IS TO RECEIVE CREDIT FOR TWO HUNDRED EIGHTY NINE (289) DAYS TIME SERVED. THE DEFENDANT IS TO MAKE RESTITUTION IN THE AMOUNT OF $5,500.00 UNLESS THE VICTIM IS REIMBURSED BY THE OHIO VICTIMS OF CRIME FUND. THE DEFENDANT IS INDIGENT. NO COSTS, FINES, OR FEES IMPOSED. |
| | 3/15/2011 | SENTENCED COUNT 2: HAVING WEAPONS WHILE UNDER DISABILITY CONFINEMENT: 2 YRS DEPARTMENT OF CORRECTIONS |
| | 3/15/2011 | SENTENCED COUNT 1: AGGRAVATED MURDER WITH SPECIFICATION CONFINEMENT: LIFE DEPARTMENT OF CORRECTIONS LIFE WITH ELIGIBILITY FOR PAROLE AFTER TWENTY FIVE (25) YEARS. CONFINEMENT ON SPECIFICATION: 3 YRS TO BE SERVED CONSECUTIVELY AND PRIOR TO THE SENTENCE IMPOSED IN UNDERLYING OFFENSE IN COUNT #1. |
| | 2/14/2011 | SENTENCING MEMORANDUM |
| | 2/12/2011 | ENTRY APPROVING COUNSEL FEES $5,175.00 |
| | 2/7/2011 | MOTION FOR NEW TRIAL & HEARING |
| | 2/1/2011 | CAUSE CONCLUDED SENTENCE DEFERRED WHEREUPON, THE COURT ORDERED SENTENCE DEFERRED UNTIL FEBRUARY 15, 2011 AT 9:00 A.M. |

| | | |
|---|---|---|
| | 2/1/2011 | SENTENCE DEFERRED B 1003262--2 |
| | 2/1/2011 | SENTENCE DEFERRED B 1003262--1 |
| | 1/28/2011 | CLERK'S TRANSCRIPT FILING FEE |
| | 1/28/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 1/28/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 1/24/2011 | VERDICT FORMS |
| | 1/20/2011 | ENTRY APPOINTING COUNSEL CO COUNSEL |
| | 1/14/2011 | CLERK'S TRANSCRIPT FILING FEE |
| | 1/14/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 1/14/2011 | CLERK'S TRANSCRIPT FILING FEE |
| | 1/14/2011 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 1/12/2011 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED ERNEST SEAY |
| | 1/10/2011 | SUBPOENA FOR WITNESS ISSUED TO ERBEST SEAT |
| | 1/10/2011 | ENTRY ORDERING RETURN OF INMATE |
| | 1/10/2011 | ENTRY ORDERING RETURN OF INMATE |
| | 1/7/2011 | ENTRY GRANTING: PROTECTIVE ORDER |
| | 1/7/2011 | MOTION TO VIEW PREMISES. |
| | 1/5/2011 | NOTICE OF ALIBI. |
| | 1/4/2011 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED KAREEM GILBERT |
| | 12/16/2010 | ENTRY ORDERING RETURN OF INMATE |
| | 12/16/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO KAREEM GILBERT, #A628650 |
| | 12/10/2010 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED JOHN HEILE |
| | 12/10/2010 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED DR. GRETEL STEPHENS |
| | 12/10/2010 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED WILLIAM HARRY |
| | 12/10/2010 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED DR. KAREN LOOMAN |
| | 12/10/2010 | SUBPOENA FOR WITNESS RETURNED AND ENDORSED JOAN BURKE |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO WILLIAM HARRY |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO JOHN HEILE |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO JOAN BURKE |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO DR. KAREN LOOMAN |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO DR. GRETEL STEPHENS |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO VICTOR DAVIS JR |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO KENYADA DAVIS |
| | 12/9/2010 | PROSECUTOR SUBPOENA FOR WITNESS ISSUED TO DEAN SHADE |
| | 10/26/2010 | ENTRY OF CONTINUANCE 1/4/10 |
| | 10/22/2010 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |
| | 10/22/2010 | CLERK'S TRANSCRIPT FILING FEE |
| | 10/22/2010 | CLERK'S TRANSCRIPT FILING FEE |
| | 10/22/2010 | CLERK'S TRANSCRIPT FEE FOR AN INDIGENT DEFENDANT - FILED |

| | 9/13/2010 | CERTIFICATION OF PROSECUTING ATTORNEY IN SUPPORT OF MOTION FOR NON-DISCLOSURE |
| | 9/13/2010 | MOTION FOR PROTECTIVE ORDER AND INSPECTION BY THE COURT |
| | 9/2/2010 | ENTRY OF CONTINUANCE 10/26/10 1/10/11 |
| | 8/18/2010 | DEPENDANTS MOTION TO RESTRAIN CERTAIN PARTIES FROM DISCUSSING THE CASE WITH ACCUSED. |
| | 8/18/2010 | DEFENDANT'S MOTION TO RESTRAIN CERTAIN PARTIES FROM DISCUSSING THE CASE WITH ACCUSED. |
| | 7/28/2010 | ENTRY OF CONTINUANCE 9/2/10 |
| | 7/26/2010 | STATE'S RESPONSE TO DEFENDANT'S DEMAND FOR DISCOVERY. |
| | 7/26/2010 | BILL OF PARTICULARS |
| | 7/26/2010 | STATE'S MOTION FOR DISCOVERY. |
| | 7/10/2010 | ENTRY OF CONTINUANCE 7/28/10 |
| | 6/17/2010 | ENTRY OF CONTINUANCE 7/13/10 |
| | 6/15/2010 | DEFENDANT'S DEMAND FOR DISCOVERY |
| | 6/15/2010 | DEFENDANT'S DEMAND FOR DISCLOSURE OF FAVORABLE EVIDENCE. |
| | 6/15/2010 | MOTION FOR DISCLOURE & FORMAL NOTICE OF STATE'S INTENT TO USE EVIDENCE |
| | 6/15/2010 | MOTION FOR BILL OF PARTICULARS |
| | 6/4/2010 | WAIVER OF PRESENCE OF DEFENDANT AT ARRAIGNMENT BOND: $1,000,000 - S |
| | 6/1/2010 | JUDGE ASSIGNED CASE ROLLED TO ALLEN/NADINE PRIMARY |
| | 5/26/2010 | HAMILTON COUNTY SHERIFF: I HAVE IN CUSTODY AND HAVE SERVED COPY OF INDICTMENT ON SAID DEFENDANT BY BROGAN DEPUTY |
| | 5/25/2010 | BOND $1,000,000 - S |
| | 5/24/2010 | INDICTED  /10/CRA/15264 |
| | 5/24/2010 | PRECIPE FOR WARRANT FILED AND WARRANT ISSUED. |
| | 5/24/2010 | INDICTMENT REPORTED AND FILED. INDICTMENT FOR COUNT 1: 2903-01A ORCN AGGRAVATED MURDER WITH SPECIFICATION SPECIAL FELON COUNT 2: 2923-13A3 ORCN HAVING WEAPONS WHILE UNDER DISABILITY |
| | 5/19/2010 | DESIGNATION OF TRIAL ATTORNEY. PUBLIC DEFENDER ASSIGNED. ASSESS PUBLIC DEFENDER FEE. |
| | 5/19/2010 | ENTRY SETTING BOND  /10/CRA/15264 |
| | 5/18/2010 | ENTRY SETTING BOND  /10/CRA/15264 |
| | 5/18/2010 | COMPLAINT FILED AND PHYSICAL ARREST EXECUTED.  /10/CRA/15264 |
| | 5/18/2010 | ARREST DATE/TIME (Arrest does not necessarily mean physical arrest,but may just be the issuance of a citation.) |
| | 5/18/2010 | ENTRY SETTING BOND  /10/CRA/15264 |
| | 5/18/2010 | CHARGED |
| | 10/31/2008 | WHEN OCCURED DATE/TIME |

About the Clerk | FAQ | Links | Directions | Policies | Contact Us | Site Map

Alternate languages: Deutsch | Español | Francais | Italiano



Logged in as: SAG9860GA

Hamilton County Court
1000 Main St, Cincinn:

Directions | Policies | C


Powered by
Windows Live | Site

| Home | Court Records | Court Date | Forms | Services | D |

## Case Summary

[ Add to Portfolio ]

Case (

| | |
|---|---|
| **Case Number:** | C 1100833 |
| **Case Caption:** | STATE OF OHIO vs. RUBEN JORDAN |
| **Judge:** | Unavailable |
| **Filed Date:** | 12/19/2011 |
| **Case Type:** | A105 - NOTICE OF APPEAL - CRIMINAL - POVERTY AFFIDAVIT |
| **Total Deposits:** | $ 0.00 |
| **Total Costs:** | $ 110.00 |

Document Rec
\*\* Revised 12/0
Common Ple:



**Municipal**



## Case History

[ Printer Fi

| Doc | Image# | Date | Description |
|---|---|---|---|
| 🗋 | | 2/13/2013 | ENTRY FROM THE SUPREME COURT OF OHIO DECLINING TO ACCEPT JURISDICTION OF THE APPEAL |
| 🗋 | | 10/15/2012 | COPY OF NOTICE OF APPEAL TO THE SUPREME COURT OF OHIO FILED 10/05/12 S.C.# 12-1685 |
| 🗋 | | 8/24/2012 | OPINION AFFIRMING |
| 🗋 | | 8/24/2012 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. |
| 🗋 | | 8/24/2012 | JUDGMENT ENTRY AND OPINION AFFIRMING |
| 🗋 | | 6/1/2012 | BRIEF OF PLAINTIFF-APPELLEE |
| 🗋 | | 5/30/2012 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. |
| 🗋 | | 5/30/2012 | ENTRY GRANTING EXTENSION OF TIME TO FILE APPELLEE'S BRIEF UNTIL 06/01/12. |
| 🗋 | | 5/25/2012 | MOTION TO EXTEND TIME TO FILE BRIEF OF PLAINTIFF-APPELLEE |
| 🗋 | | 5/11/2012 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. |
| 🗋 | | 5/11/2012 | ENTRY GRANTING EXTENSION OF TIME TO FILE APPELLANT'S BRIEF UNTIL 05/25/12. |
| 🗋 | | 5/10/2012 | MOTION TO EXTEND TIME TO FILE BRIEF OF PLAINTIFF-APPELLEE |
| 🗋 | | 4/26/2012 | |



EXHIBIT

28

PENGAD 800-631-6989

| | | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. |
|---|---|---|
| | 4/26/2012 | ENTRY GRANTING EXTENSION OF TIME TO FILE APPELLEE'S BRIEF UNTIL 05/11/12. |
| | 4/26/2012 | MOTION TO EXTEND TIME TO FILE BRIEF OF PLAINTIFF-APPELLEE |
| | 4/5/2012 | NOTIFICATION OF MERIT HEARING ON 06/25/12 IN COURTROOM B SENT TO JOSEPH DETERS MICHELE BERRY |
| | 3/28/2012 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. |
| | 3/28/2012 | ENTRY GRANTING MOTION TO ENLARGE PAGE LIMITATION FOR BRIEFS. APPELLEE'S BRIEF ENLARGED TO 30 PAGES AND EXTENDS TIME TO FILE UNTIL 04/27/12 |
| | 3/7/2012 | APPELLANTS UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF PAGE LIMIT: ALTERNATIVELY, APPELLANTS MOTION TO REMOVE CASE FROM ACCELERATED CALENDAR |
| | 3/7/2012 | BRIEF OF THE APPELLANT RUBEN JORDAN |
| | 1/27/2012 | TRANSCRIPT OF PROCEEDINGS - TEN VOLUMES PLUS MASTER INDEX |
| | 1/9/2012 | NOTICE OF FILING OF RECORD EXCLUDING TRANCRIPT OF PROCEEDINGS MAILED TO HAMILTON COUNTY PROSECUTOR, MICHELE L BERRY FOR TRIAL COURT NUMBER B 1003262 |
| | 1/9/2012 | TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES FILED |
| | 1/3/2012 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. |
| | 1/3/2012 | ACCELERATED CALENDAR SCHEDULING ORDER, ENTERED. 02/07/12 RECORD DUE. 03/07/12 APPELLANT'S BRIEF DUE. 04/10/12 APPELLEE'S BRIEF DUE. |
| | 12/19/2011 | DOCKET STATEMENT FILED. |
| | 12/19/2011 | COPY SENT BY ORDINARY MAIL TO HAMILTON COUNTY PROSECUTOR |
| | 12/19/2011 | COMMON PLEAS TRIAL COURT # B 1003262 |
| | 12/19/2011 | NO DEPOSIT REQUIRED-POV.AFF. MICHELE L BERRY |
| | 12/19/2011 | NOTICE OF APPEAL FILED. |
| | 12/19/2011 | APPEAL - ON QUESTIONS OF LAW |

About the Clerk | FAQ | Links | Directions | Policies | Contact Us | Site Map

Alternate languages: Deutsch | Español | Francais | Italiano



ABOUT SSL CERTIFICATES

© 2014 Tracy Winkler, Hamilton County Clerk of Courts. All rights reserved.

# The Supreme Court of Ohio & The Ohio Judicial System

Clerk's Office
65 South Front Street, 8th Floor
Columbus, Ohio 43215-3431
800.826.9010
614.387.9530

**Mark H. Reed**
Clerk

## Search Results: Case Number 2012-1685

## The Supreme Court of Ohio

### CASE INFORMATION

### GENERAL INFORMATION

**Case:** **2012-1685** Discretionary Appeal (Felony); Claimed Appeal of Right
**Filed:** 10/05/12
**Status:** Case Is Disposed

### State of Ohio v. Ruben Jordan

### PARTIES and ATTORNEYS

Jordan, Ruben (Appellant)
   Represented by:
      Berry, Michele (**81939**) , Counsel of Record

State of Ohio (Appellee)
   Represented by:
      Deters, Joseph (**12084**) , Counsel of Record
      Keeling, James (**68810**)

### PRIOR JURISDICTION

| Jurisdiction Information | Prior Decision Date | Case Number(s) |
| --- | --- | --- |
| Hamilton County, 1st District Court of Appeals | 08/24/2012 | C-110833 |

### DOCKET ITEMS

- Most documents that were filed in Supreme Court cases after December 1, 2006, are



EXHIBIT
29

scanned. They are available for viewing via the online dockets, generally within one business day from their date of filing.

- Supreme Court orders that were issued after January 1, 2007, are also available via the online docket as PDFs. Orders scanned prior to April 6, 2009, may not bear the signature of the Chief Justice. These online orders are identical to the original orders in all other respects.

- A  symbol in an online docket denotes a scanned filing or an electronic version of a Supreme Court order. Clicking the icon opens an image of the filing or order.

| Date Filed | Description |
|---|---|
| 10/05/12 View | **Notice of appeal of Ruben Jordan**<br>*Filed by:*  Jordan, Ruben |
| 10/05/12 View | **Memorandum in support of jurisdiction**<br>*Filed by:*  Jordan, Ruben |
| 10/08/12 | **Copy of notice of appeal sent to clerk of court of appeals** |
| 10/18/12 View | **Memorandum in response**<br>*Filed by:*  State of Ohio |
| 01/23/13 View | **DECISION: Jurisdiction declined** |
| 02/01/13 | **Ordinary mail returned; forward time expired (Michele Laura Berry)** |
| 02/06/13 | **Copy of entry sent to clerk** |

[ Back ]

**Question or Comments?**                                         ECMS Online 1.2.9

Home | Contact Us | Search | Feedback | Site Policy | Terms of Use