```
                    COURT OF COMMON PLEAS

                    HAMILTON COUNTY, OHIO

                            - - -

STATE OF OHIO,                 :

            Plaintiff.         :

vs.                            :Case Number B1003262

RUBEN JORDAN,                  :Appeal Number C1100833

            Defendant.         :Volume IX of X


                            - - -

                   TRANSCRIPT OF PROCEEDINGS

                            - - -

APPEARANCES:

        Seth S. Tieger, Esq.
        Megan E. Shanahan, Esq.
             On behalf of the State of Ohio.

        William P. Whalen, Jr., Esq.
        Amy R. Williams, Esq.
             On behalf of the Defendant.



            BE IT REMEMBERED that upon the Jury

Trial of this cause, on February 15, 2011, before

the Honorable NADINE L. ALLEN, a judge of the said

court, the following proceedings were had, to

wit:
```

MORNING SESSION, February 15, 2011

THE COURT: Counsel, you ready?

MR. TIEGER: Yes, Your Honor.

THE COURT: Are you ready?

MR. WHALEN: Yes.

THE COURT: Calling the matter of State versus Ruben Jordan, B-1003262 here for sentencing today. And counsel, state your name for the defense.

MR. WHALEN: William Whalen.

MS. WILLIAMS: Amy Williams.

THE COURT: And for the State of Ohio?

MS. SHANAHAN: Megan Shanahan.

MR. TIEGER: Seth Tieger.

THE COURT: Okay. And we are here for sentencing.

So first of all, I will indicate that I have read all the pre-sentence reports and your sentencing memorandums and the victim impact statements.

Counsel, would you like to proceed on mitigation?

MR. WHALEN: Yes, I would, Your Honor.

Basically to repeat what I've said, you know, we can go back and go over what

981

1  happened in the trial.  Obviously we disagree
2  with the verdict.  Mr. Jordan has maintained
3  his innocence throughout this whole thing.
4      So going to the sentencing posture and
5  the guidelines, one of the things they talk
6  about is protecting the public from this man.
7  Victor Davis was killed.  He was specifically
8  sought out and killed.  There isn't any
9  danger to any other people in the public.
10     Mr. Jordan is married but separated.  He
11 has five children.  He was going to college
12 at the time that this happened.  And I don't
13 believe that this sentence warrants his
14 getting any more than a 20-year sentence.
15     THE COURT:  And the State --  I will ask
16 the defendant if you would like to speak and
17 then I'll let the State speak.
18     Mr. Jordan, would you like to say
19 something?
20     THE DEFENDANT:  Yeah.  I guess I'd like
21 to say that I feel sorry for the parents -- I
22 mean, the victim's family because, you know,
23 he was a man, a father, you know, a dad and
24 all that.
25     I feel sorry about happened, but I just


981

1 happened in the trial.  Obviously we disagree
2 with the verdict.  Mr. Jordan has maintained
3 his innocence throughout this whole thing.
4      So going to the sentencing posture and
5 the guidelines, one of the things they talk
6 about is protecting the public from this man.
7 Victor Davis was killed.  He was specifically
8 sought out and killed.  There isn't any
9 danger to any other people in the public.
10     Mr. Jordan is married but separated.  He
11 has five children.  He was going to college
12 at the time that this happened.  And I don't
13 believe that this sentence warrants his
14 getting any more than a 20-year sentence.
15     THE COURT:  And the State --  I will ask
16 the defendant if you would like to speak and
17 then I'll let the State speak.
18     Mr. Jordan, would you like to say
19 something?
20     THE DEFENDANT:  Yeah.  I guess I'd like
21 to say that I feel sorry for the parents -- I
22 mean, the victim's family because, you know,
23 he was a man, a father, you know, a dad and
24 all that.
25     I feel sorry about happened, but I just

1 don't think that they got the right person
2 with what happened, you know. I do want to,
3 you know, express my condolences to the
4 family, and that's about it.
5     THE COURT: Okay. And certainly if
6 there's anyone here from the victim's family
7 that would like to come forward and speak,
8 you also will have an opportunity.
9     So is anybody here from the victim's
10 family who would like to come forward, from
11 Victor Davis's family?
12     The State, this is your opportunity to
13 speak also by way of --
14     MR. TIEGER: Somebody is here and wants
15 to speak.
16     THE COURT: Okay. Ma'am, would you
17 identify yourself? Speak a little louder.
18 Our court reporter can't hear you.
19     MS. WALTER: I'm sorry. My name is
20 Jasmine Walter. I'm Victor's cousin.
21     THE COURT: Have you been here through
22 the trial, ma'am?
23     MS. WALTER: I've been here a couple
24 times.
25     THE COURT: You do look familiar.

1  So would you like to say something by
2  way of sentencing, ma'am?
3  MS. WALTER: I just hope he gets
4  everything he deserves.
5  THE COURT: That's what you want to say?
6  MS. WALTER: Yes, ma'am.
7  THE COURT: Thank you.
8  Now, the State?
9  MR. TIEGER: Judge, I think the games
10  that, you know, Mr. Jordan played in the
11  court were insulting, to try to set up the
12  plan where his son would recant and then, you
13  know, come in and deny responsibility, the
14  jury saw through that very, very quickly.
15  This was a very fast verdict. The jury
16  had no problem convicting Mr. Jordan. And
17  for the Defense to suggest since the target
18  of Mr. Jordan's homicide is now deceased that
19  he's not a danger to the public, basically
20  that he's killed his target and he won't kill
21  again, I don't think should be taken into
22  account by the Court as well.
23  As the Court knows, the penalties for
24  aggravated murder are set out in 2929.03, and
25  the Court has options. They're all life in

1    prison options.  The one is life without
2    parole.
3         And as Mr. Whalen says, there's also a
4    life in prison with parole eligibility up to
5    serving 20 years, 25 years, or 30 years.
6         Judge, we ask that you give him life in
7    prison without parole.  He's shown throughout
8    his history that he cannot obey the law.
9    He's got a lengthy criminal history.  He's
10   been in jail numerous times.  And actually
11   the -- I know there are a lot of bad crimes
12   in society, but to kill a witness, it does
13   not get much worse than that.
14        I know there was a case yesterday in
15   court where a case, a murder case had to be
16   dismissed because of witness problems.  This
17   is a persistent problem that our office and
18   Cincinnati in general has had for a lengthy
19   period of time, and actually to follow
20   through with killing a witness, to me, the
21   message should be sent by the Court that this
22   is not to be tolerated, and we ask for life
23   without parole.
24        THE COURT:  Anything else?
25        MS. SHANAHAN:  No, Your Honor.

1  THE COURT: Okay. Well, to the victim's
2  family, the family of Victor Davis, you know,
3  a person is insignificant only to those who
4  are criminals. To the rest of the community,
5  I consider Mr. Davis to be a hero, and I know
6  that the majority of people agree with that.
7  And he sounds like the kind of person I wish
8  I had the opportunity to know him.
9  But now as to sentencing, as to the
10  aggravated murder, the sentence of the Court
11  is life with eligibility for parole after 25
12  years in the Department of Corrections. And
13  Spec. 1 to Count 1 is three years prior to
14  and consecutive to the aggravated murder
15  charge. Count 2, weapons while under
16  disability is two years consecutive to the
17  aggravated murder. That is a conglomerate of
18  30 years to life with eligibility for parole
19  after 30 years, conglomerate.
20  This means, sir, the following -- that
21  you shall get credit for time served, also,
22  which is 289 days.
23  You have appellate rights today. Thirty
24  days from the day of the entry here today,
25  which is about 32 or 33 days, you may appeal

1 this decision. You may appeal the entire
2 process. If you cannot afford an attorney or
3 the paperwork from the court reporter or the
4 fee for filing an appeal, one will be
5 appointed for you free of charge.
6   I will now tell you what your post-
7 conviction rights means. Any prison term
8 that you get will be served without any
9 good-time reduction whatsoever. And if you
10 are released, the parole board will place you
11 on five years of mandatory post-release
12 control and they will determine what your
13 terms and conditions are for staying out.
14   If you violate the terms, the parole
15 board can send you back to prison for nine
16 months on each violation or for half the
17 prison term for repeated violations.
18   And if you commit another felony while
19 on post-release control, the parol board may
20 also send you back to prison for either 12
21 months or whatever period of time remains on
22 your five years. That will be served
23 consecutively to the new felony.
24   You also have to submit to a DNA test
25 when you enter the prison system if you're

```
 1    requested by the Director of the Department
 2    of Rehabilitations and Corrections, and if
 3    you refuse to do that, that is grounds for
 4    arrest and punishment also.
 5            I don't believe there's anything else to
 6    say except to commit and to find him
 7    indigent.  I will order restitution to the
 8    victim of $5,500 unless she is reimbursed by
 9    the Ohio Victims of Crime Fund.
10            MR. WHALEN:  I have an affidavit of
11    indigency, Your Honor.
12            THE COURT:  And I'll take that.
13            That it's.  Commit.
14            MR. WHALEN:  Well, Your Honor, you
15    informed him of his appellate rights.  He's
16    asking that you appoint Michele Berry to
17    represent him on the appeal.
18            THE COURT:  I understand she has filed a
19    motion for new trial which will be heard
20    separately, and I don't object to that.  She
21    has been involved in the case?
22            MR. WHALEN:  Yes.
23            THE COURT:  So Michele Berry?
24            MR. WHALEN:  Yes.
25            THE COURT:  She shall be appointed to
```

represent him.

    Give me an appointment on that.

    (Proceedings concluded.)

CERTIFICATE

I, Susan Coyle, the undersigned, an Official Court Reporter for the Hamilton County Court of Common Pleas, do hereby certify that at the same time and place stated herein, I recorded in stenotype and thereafter transcribed the within pages, and that the foregoing Transcript of Proceedings is a true, complete, and accurate transcript of my said stenotype notes.

IN WITNESS WHEREOF, I hereunto set my hand this 12th day of January, 2012.

_____
Susan Coyle, RPR
Hamilton County
Court Reporter