# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RUBEN JORDAN,

               Petitioner,            :     Case No. 1:14-cv-68

     - vs -                           District Judge Michael R. Barrett
                                         Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
Institution,

                                  :

               Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case under 28 U.S.C. § 2254 brought by Petitioner Ruben Jordan with the assistance of counsel. Jordan seeks relief from his convictions for aggravated murder with a firearm specification and having weapons under disability, for which Judge Nadine Allen of the Hamilton County Court of Common Pleas imposed an aggregate sentence of life imprisonment with parole eligibility after thirty years (Petition, Doc. No. 1, PageID 2).

The issues have been extensively briefed in the Petition (Doc. No. 1), the Answer/Return of Writ (Doc. No. 11), and the Traverse (Doc. No. 14). The case is therefore ripe for decision.[1]

Jordan pleads the following Grounds for Relief:

> **Ground One:** The state courts unreasonably determined the facts and unreasonably applied Ruben Jordan's constitutional rights to due process, to confront all witnesses/evidence, and to have an impartial jury determine the facts and weigh the evidence when it permitted the prosecutor to caution the jury that a threat to public safety would result if Jordan were acquitted, basing these cautions

---

[1]   The case was transferred to the undersigned as part of the routine caseload rebalancing among the Magistrate Judges of the Western Division (Doc. No. 15).

on allegations outside the record and an explanation of Jordan's protection against double jeopardy.

**Supporting Facts:** Petition, Doc. No. 1, Appendix D, PageID 30-36.[2]

**Ground Two:** The state courts unreasonably determined the facts and unreasonably applied Ruben Jordan's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses/evidence when it permitted the prosecutor to undisputedly personally vouch for the credibility and truth of a State witness's recorded statement.

**Supporting Facts:** Petition, Doc. No. 1, Appendix D, PageID 36-43.

**Ground Three:** The state courts unreasonably determined the facts and unreasonably applied Ruben Jordan's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses/evidence when it permitted the prosecutor to undisputedly urge the jury to both review the statement during deliberations and improperly consider it for its truth.

**Supporting Facts:** Petition, Doc. No. 1, Appendix D, PageID 43-50.

**Ground Four:** The state courts unreasonably determined the facts and unreasonably applied and/or ruled contrary to Ruben Jordan's constitutional rights to due process, a fair trial before an impartial jury, and to confront all witnesses/evidence by upholding the trial court's undisputedly, improper admission and review-by-the-jury-during deliberations of a recorded statement when: (1) the recorded statement, if improperly considered for the truth, proved each essential element of the charges against Jordan; and (2) without the substance of the recorded statement, the State failed to present sufficient reliable evidence to prove Jordan's guilt beyond a reasonable doubt.

**Supporting Facts:** Petition, Doc. No. 1, Appendix D, PageID 50-53.

---

[2] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page. The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference. (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)" The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy. Therefore, nonconforming filings will be stricken.

**Ground Five:**  The state courts unreasonably determined the facts and unreasonably applied and/or ruled contrary to Ruben Jordan's constitutional rights to due process, confrontation, and a fair trial by an impartial jury by upholding a limiting instruction to purportedly cure the constitutional violations that resulted from the improper use, admission into evidence, and review-by-the-jury-during-deliberations of an undisputedly inadmissible recorded statement which, if considered for its truth, proved each essential element of the charges against Petitioner Jordan particularly when: (1) the State undisputedly urged the jury to improperly consider the recording for its truth and instructed the jury that the recording "had to be true"; and (2) without the substance of the recorded statement, the State failed to present sufficient reliable evidence to prove Jordan's guilt beyond a reasonable doubt.

**Supporting Facts:**  Petition, Doc. No. 1, Appendix D, PageID 54-59.

**Ground Six:** The state courts unreasonably determined the facts and ruled contrary to Ruben Jordan's constitutional right to the effective assistance of counsel by failing to find that trial counsel provided constitutionally deficient assistance: (1) when he failed to object to the admission of an inadmissible recording that proved the State's entire case and provided the only direct evidence from an alleged eyewitness to the murder who stated with certainty that Jordan was the perpetrator; (2) when he failed to properly object to the State's improper comments during its closing argument: (a) cautioning the jury to consider the consequences of an acquittal (specifically Jordan's protection against double jeopardy and an alleged threat to public safety); (b) personally vouching for the truth and credibility of the inadmissible recording; and (c) urging the jury to consider the truth of this same recording, which if considered for its truth, proved each essential element of the charges against Jordan; and (2) when he failed to ensure that the jury instructions sufficiently and properly conveyed the applicable law regarding the use of extrinsic evidence of a prior inconsistent statement that proved each essential element of the State's case.

**Supporting Facts:**  Petition, Doc. No. 1, Appendix D, PageID 60-61.

**Procedural History**

Jordan was indicted by the Hamilton County Grand Jury in 2010 on one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A)) (Count 1) with a firearm specification (Count 1), and one count of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(3)) (Count 2) (Return of Writ, Doc. No. 11-1, Ex. 1, PageID 157). After arraignment, he filed a Notice of Alibi, claiming to have been at 325 Hearne Avenue in Cincinnati in the presence of Dominic Turner, Leshonda Gilbert, Lamara Smith, and Otis Clark when the crime happened. *Id.* at Ex. 6, PageID 168. He was tried by a jury and found guilty as charged, receiving the sentence of thirty years to life.

Represented by new counsel Michele Berry, Jordan timely moved for a new trial pursuant to Ohio R. Crim. P.33, claiming ineffective assistance of counsel and prosecutorial misconduct. *Id.* at Ex. 11, PageID 182-95; Supplemental Motion, Return of Writ, Doc. No. 11-1, Ex. 12, PageID 205-21.

Judge Allen denied the Motion (Entry, Return of Writ, Doc. No. 11-1, Ex. 18, PageID 283). Jordan, still represented by Ms. Berry, then appealed to the First District Court of Appeals raising five assignments of error:

> 1. The trial court committed plain error in violation of Evid. Rule 613(B) and Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when it permitted the State to play Gilbert's entire recorded statement (extrinsic evidence of a prior inconsistent statement) during trial despite that earlier in his testimony Gilbert admitted to making said statement. Alternatively, trial counsel provided ineffective assistance in violation of Jordan's Sixth and Fourteenth Amendment rights by failing to object on the proper basis to the recording being played at trial and admitted into evidence. The trial court further abused its discretion by failing to

4

correct these errors when it denied Jordan's Motion for New Trial asserting same.

2. The State committed plain error in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront witnesses, by urging the jury to consider the substance of Gilbert's prior inconsistent statements when the statements were only admissible for purposes of impeaching Gilbert. Alternatively, trial counsel provided ineffective assistance for failure to timely object to the State's improper remarks. The trial court further abused its discretion by failing to correct this error when it denied Jordan's Motion for New Trial, which asserted this error.

3. The State committed misconduct in violation Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney remarked to the jury about his personal role in the plea agreement with Gilbert wherein Gilbert gave the recorded statement which was admitted solely for impeachment purposes. In doing so, the prosecuting attorney: (1) acted as a witness whom Jordan was unable to confront; and (2) undermined the jury's ability to impartially determine the facts and weigh the evidence.

4. The State committed plain error in violation Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses when the prosecuting attorney cautioned the jury that if it acquitted Appellant on the basis that Gilbert actually committed the murder, then the following events would unfold: (1) at Gilbert's future murder trial, Appellant could freely admit to the murder without repercussion (due to Double Jeopardy protections); (2) Gilbert likely also would be acquitted due to Appellant's confession; (3) no one would have successfully executed an elaborate scheme to both trick the criminal justice system and evade convictions for the murder of Victor Davis. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to object to the prosecutorial misconduct.

5. The trial court erred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights by failing to give an adequate limiting instruction to cure the errors explained in the First, Second, Third, Fourth, and Fifth Assignments of Error. Alternatively, trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to

5

ensure that the jury instruction sufficiently and properly conveyed the applicable law.

(Appellant's Brief, Return of Writ, Doc. No. 11-1, Ex. 20, PageID 291-95.)  The First District affirmed the conviction.  *State v. Jordan,* 2012-Ohio-3793; 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012).  The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Jordan,* 134 Ohio St. 3d 1421 (2013).  Jordan then filed this habeas corpus case January 21, 2014 (Petition, Doc. No. 1).

## Factual Background

The First District summarized the relevant facts as follows:

### The Murder of Victor Davis

[*P2] In October 2008, Brian Austin was murdered. Victor Davis identified Jordan's son, Kareem Gilbert, as the perpetrator.

[*P3] After he had identified Gilbert as Austin's killer, Davis told the police that he feared for *his life* because of threats from Gilbert's family. On October 31, 2008, Davis's fears were confirmed, as he was fatally shot outside of his apartment building.

[*P4] Gilbert was indicted for the murders of both Austin and Davis. But in May 2010, Gilbert gave a recorded statement to police and prosecutors in which he implicated Jordan as Davis's assailant. As part of a written plea arrangement, Gilbert agreed to plead guilty to reduced charges for the killing of Austin in exchange for his testimony against Jordan.

[*P5] The case against Jordan proceeded to trial in January 2011. At trial, the state presented the testimony of Dean Shade, a resident of Davis's apartment complex. Shade testified that on the night of Davis's murder, he had heard shots and had looked out of his window. He stated that he had seen a man who matched Jordan's general physical description walking from the scene of the shooting.

[*P6] Kenneth Heard was a drug dealer from whom Jordan had regularly bought crack cocaine. Heard testified that, after the murder of Davis, Jordan had confessed to him that he had killed Davis and that he had let Gilbert take the blame for the murder.

[*P7] Criminalist Paul Glindmeyer responded to the scene immediately after Davis had been shot, and he noticed a quantity of what appeared to be fresh saliva near Davis's body. Glindmeyer testified it was a custom among some people to mark their "turf" by spitting on the street, or sidewalk. He took a sample of the saliva and submitted it for deoxyribonucleic acid (DNA) testing. The testing revealed that the DNA in the saliva matched that of Jordan.

[*P8] Kareem Gilbert took the stand and immediately repudiated his prior statement implicating Jordan. Although he admitted having made the statement, he contended that it had been fabricated and that neither he nor Jordan had been present at the scene of Davis's murder. The trial court admitted the recording of the statement as well as a transcript into evidence with the limiting instruction that the jury was to consider the statement for impeachment purposes only.

[*P9] Jordan offered the testimony of his fiancée, Leshuande Ramsey, who testified that both Jordan and Gilbert had been at home with her the entire night of Davis's murder. Jordan also called one of the detectives who had testified for the state and questioned him about the possibility that Gilbert's brother might have killed Davis.

*State v. Jordan,* 2012-Ohio-3793; 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012).

Respondent notes that these factual findings by the court of appeals are, in habeas corpus, presumed to be correct and that presumption can be defeated only by clear and convincing evidence (Return of Writ, Doc. No. 11, PageID 104, citing 28 U.S.C. § 2254(e) and *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998)).

With respect to each Ground for Relief, Jordan's counsel asserts "[t]he state court**s** unreasonably determined the facts . . . ." (E.g., Petition, Doc. No. 1, PageID 30.)  As noted above, Judge Allen denied the Motion for New Trial summarily, without reciting any findings of

fact[3].  This Court therefore reads the attack on state court findings as leveled solely to those made in the decision of the First District Court of Appeals.

Jordan's counsel has devoted four pages of the Petition (PageID 26-29) to a Statement of Facts without attempting to show how the evidence recited there proves by clear and convincing evidence that the court of appeals made an unreasonable determination of any particular fact.

# Analysis

## Procedural Default

The Warden asserts that all of Jordan's first five grounds for relief and two sub-claims of his sixth ground for relief are procedurally defaulted and this Court is therefore barred from reaching the merits of those claims (Return of Writ, Doc. No. 11, PageID 112-28).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72

---

[3] In addition to the summary entry, Judge Allen recited a decision on the record which is devoted to legal analysis rather than factual findings (Return of Writ, Doc. No. 11-1, PageID 332-37).

8

(1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(*quoting*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting*

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

This general law of procedural default is applied seriatim to each ground for relief below.


**Ground One:  Prosecutorial Misconduct**


In his First Ground for Relief, Jordan asserts he suffered from prosecutorial misconduct when the prosecutor "caution[ed] the jury that a threat to public safety would result if Jordan were acquitted, . . ."  This was Jordan's fourth assignment of error on direct appeal which the First District decided as follows:

> **[*P23]**  Finally, Jordan argues that the state engaged in misconduct by referring to matters not in evidence. Specifically, he argues that the assistant prosecutor improperly alleged that he and Gilbert had formulated a plot to ensure that they would both be acquitted of Davis's murder. In closing argument, the prosecutor made the following remarks:
>
>> Don't think this was something that had not been thought through. The whole thing is that they [Jordan and Gilbert] knew there was going to be a jury somewhere down the road, and this is his clear final test, his final obstacle is you folks, and we are asking that you not let him get past justice by a jury trial in this particular case, because when he is found not guilty, I don't know whether you have heard, it's a term called double jeopardy. And at a later point, if Kareem Gilbert is charged with Davis's homicide, there is nothing to prevent Ruben Jordan from coming in here, another jury months and months from now and saying, yes, I did do it. Now that would be pretty monumental, and I don't know if anybody would believe him, but double jeopardy prevents him from being tried twice for the same crime. So again, this is the kind of plan that you don't know where it's going to go, but it's

certainly foreseen that type of thing could happen depending on how this thing goes with you folks.

[*P24]  Once again, we find these comments to be inappropriate. A prosecutor may not express his personal beliefs or opinions regarding the guilt of the accused and may not refer to matters not supported by admissible evidence. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), citing *Smith*, 14 Ohio St.3d at 14, 470 N.E.2d 883. Here, the state asked the jury to convict Jordan not on the basis of the evidence, but to prevent Jordan and Gilbert from playing what the prosecutor referred to as a "grade-school simplistic trick." Such collusion on the part of Jordan and Gilbert was not demonstrated by the record, and the comments therefore went beyond the limits of proper argument.

[*P25]  Nonetheless, Jordan did not object to these comments about collusion and therefore must demonstrate that, but for the misconduct, the outcome of the trial would have been different. *State v. Rucker*, 1st Dist. No. C-110082, 2012 Ohio 185, ¶ 20, citing *State v. Williams*, 79 Ohio St.3d 1, 12, 1997 Ohio 407, 679 N.E.2d 646 (1997). In this instance, Jordan has not met his burden. As we have already commented, there was ample evidence to support the conviction, and we cannot say that the comments deprived Jordan of a fair trial. But we strongly caution the state that, in a closer case than the one before us now, such comments could very well result in reversal. But on the basis of the record before us, we overrule the second, third, and fourth assignments of error.

*State v. Jordan,* 2012-Ohio-3793, 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012).

Applying the *Maupin* analysis, the Court notes first that Ohio does have an applicable procedural rule, the contemporaneous objection rule, to wit, that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).  That rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301,

315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982); *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

The contemporaneous objection rule was enforced against Jordan when the First District reviewed his fourth assignment of error for plain error. A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Jordan asserts the First District did not review for plain error, but instead on the merits (Traverse, Doc. No. 14, PageID 1316). This Court disagrees. The First District stated **"**Jordan did not object to these comments about collusion and therefore must demonstrate that, but for the misconduct, the outcome of the trial would have been different. *State v. Jordan, supra*, ¶ 25. It then immediately cited its recent prior decision in *State v. Rucker*, 2012-Ohio-185, 2012 Ohio App. LEXIS 154 (1st Dist. 2012), for an application of the contemporaneous objection requirement to prosecutorial misconduct and application of plain error review when there is no contemporaneous objection. *Id.* at ¶ 20. In both *Rucker* and the instant case, the First District

13

then cited *State v. Williams*, 79 Ohio St. 3d 1 (1997) where the Supreme Court of Ohio applied the contemporaneous objection rule and plain error review for failure to make a contemporaneous objection in a prosecutorial misconduct setting, stating that on plain error review, an appellant must show that "the outcome of the trial clearly would have been otherwise." *Id.* at 12. This Court must take the First District at its word and conclude it conducted a plain error review on Ground One/Assignment of Error IV.

### 1. "Traditional" Cause and Prejudice Analysis

Jordan asserts that even if the Court finds procedural default, that default is excused by ineffective assistance of his trial counsel (Traverse, Doc. No. 14, PageID 1351-66).

When a habeas petitioner is shown under *Maupin* to have procedurally defaulted a claim, he can still obtain merits consideration of the claim if he can show excusing cause and resulting prejudice. *Hall v. Vasbinder,* 563 F.3d 222, 236 (6th Cir. 2009); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004), *quoting Murray v. Carrier*, 477 U.S. 478 (1986). Ineffective assistance of trial counsel can constitute excusing cause. *Murray v. Carrier,* 477 U.S. 478, 488 (1985); *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir. 2005); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir. 1996). Jordan asserts he received ineffective assistance of trial counsel when his attorney failed to object to the prosecutor's comments complained of in Ground One (Traverse, Doc. No. 14, PageID 1351-71).[4]

Before an ineffective assistance of trial counsel claim can be used to excuse a procedural default, it must itself be "exhausted" by being presented to the state courts. *Edwards v.*

---

[4] This twenty-page portion of the Traverse, labeled "Cause and Prejudice Analysis," argues for finding excusing ineffective assistance of trial counsel as to all of the Grounds for Relief the Court might find to be procedurally defaulted, rather than arguing them separately.

*Carpenter*, 529 U.S. 446 (2000). Although he did not separately assign as error his trial counsel's ineffectiveness in failing to object to the prosecutor's comments complained of in Ground One, Jordan made that argument on direct appeal as an alternative argument and the First District elected to treat it as his sixth assignment of error. *State v. Jordan, supra*, ¶ 28. Having thus construed the argument, it decided the ineffective assistance of trial counsel claim as follows:

> **[*P29]** To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

> **[*P30]** As we have already noted, trial counsel failed to lodge a number of objections that were warranted. As a result, the jury was presented with an inadmissible out-of-court statement as well as a number of inappropriate comments on the part of the assistant prosecutor. But counsel's lapses did not deprive Jordan of a fair trial, and we accordingly overrule the sixth assignment of error.

*Id.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In deciding this ineffective assistance of trial counsel claim, the First District applied the correct federal standard enunciated in *Strickland, supra*. Having considered this one claim of ineffective assistance of trial counsel against the context of the whole case in the trial court, this

Court cannot say that the First District's application of *Strickland* was objectively unreasonable. That is to say, failure to object to the prosecutor's explanation of double jeopardy and his speculation about how it might have been planned to work in this case was not so plainly prejudicial as to offend the *Strickland* standard.

Accordingly, Jordan has not demonstrated cause and prejudice to excuse his procedural default on Ground One.

## 2.     Cause and Prejudice Under the Supposedly "Relaxed *Martinez/Trevino*" Standard

Jordan asserts that even if he cannot meet the traditional requirements for showing cause and prejudice, he can meet the "relaxed" standard adopted by the Supreme Court in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), where the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

132 S. Ct. at 1318-1319.   In *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), the Court extended *Martinez* to the Texas system.

It is not clear that *Martinez* and *Trevino* apply to the Ohio system for raising ineffective

assistance of trial counsel claims. *McGuire v. Warden*, 738 F.3d 741, 751-52 (6th Cir. 2013).

Even assuming they apply at all in Ohio, they have no application to this case. Together the

cases hold that when a habeas petitioner has procedurally defaulted a substantial ineffective

assistance of trial counsel claim by failing to raise it in collateral post-conviction proceedings

and that failure is itself ineffective assistance of post-conviction counsel, the habeas court can

hear the ineffective assistance of trial counsel claim on the merits. All of the ineffective

assistance of trial counsel claims made here are claims that appear on the face of the record and

thus under Ohio law were required to be raised on direct appeal or be later barred by *res

judicata.*


3.      **The "Miscarriage of Justice" Exception**


When a habeas petitioner cannot excuse his procedural default by showing cause and

prejudice, he can still obtain a review of the merits if failure to do so would cause a grave

miscarriage of justice. To establish this exception, as Jordan acknowledges, a habeas petitioner

must show that "a constitutional violation has probably resulted in the conviction of one who is

actually innocent," that is that it is more likely than not that no reasonable juror would have

convicted him in light of the new evidence he has presented. *Schlup v. Delo*, 513 U.S. 298

(1995); *Calderon v. Thompson*, 523 U.S. 538, 557-58 (1998) (holding that "avoiding a

miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing

of actual innocence"); *see Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Instead of presenting any new evidence, Jordan spends several pages in this section of his

Traverse arguing how unreliable the verdict is on the basis of the evidence the jury heard

17

(Traverse, Doc. No. 14, PageID 1368-70).  He claims that because this is his first habeas petition, he does not need to present new evidence to come within the actual innocence exception. *Id.* at PageID 1369.  He cites no authority for that proposition except a negative inference from the fact that *Schlup* involved a successive habeas petition.  However, *House v. Bell,* 547 U.S. 518 (2006), the one case where the Supreme Court found the petitioner satisfied the *Schlup* gateway, was not a successive petition.  Nor was *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005).  In both these first habeas petition cases, the deciding courts required new evidence.  And nothing in *Schlup* suggests that the new evidence requirement is limited to second or successive habeas petitions.  In fact, that classification of habeas petition only became material with the passage of the Antiterrorism and Effective Death Penalty Act in 1996, more than a year after *Schlup* was decided.

Because he has failed to show excusing cause and prejudice or actual innocence under the *Schlup* test, Jordan's First Ground for Relief should be dismissed with prejudice as procedurally defaulted.

**Ground Two:  Prosecutorial Misconduct by Vouching for Witness Credibility**

**Procedural Default**

In his Second Ground for Relief, Jordan claims he suffered unconstitutionally prejudicial prosecutorial misconduct when the prosecutor vouched for the credibility of a State witness's recorded statement.

Respondent asserts that "Jordan admits that he violated Ohio's contemporary objection

rule by failing to object to the alleged improper vouching argument at trial." (Return of Writ, Doc. No. 11, PageID 121, citing Petition, Doc. No. 1, Ground Six, Section 2(b)). In the Petition, Jordan states "[t]rial counsel's failure to properly object to the constitutional errors explained in the First, Second, Third, Fourth, and Fifth Grounds for Relief constitutes ineffective assistance of counsel." (Doc. No. 1-1, PageID 60.)

Although Jordan's counsel has never amended the Petition to remove this concession, she admits in the Traverse:

> Counsel mistakenly included in Jordan's habeas petition an ineffective assistance of counsel subclaim regarding trial counsel's purported failure to object to the prosecutor's comments improperly vouching for Kareem Gilbert's recorded statement. The inclusion of this claim in the habeas petition caused the Respondent to point out that this claim had never been raised in Jordan's direct appeal.

> But in fact, this subclaim should have never been included in Ground VI of Jordan's habeas petition because trial counsel clearly objected to this egregious misconduct. Doc. 11-10; PageID1220. *See* Doc. 11-10; PageID1218-1220 (After the prosecuting attorney explained to the jury during closing argument his personal role in the interrogation of and plea agreement with Gilbert wherein Gilbert gave his recorded statement, defense counsel objected and moved for mistrial). [Footnote omitted.]

(Traverse, Doc. No. 14, PageID 1310-11.)

In deciding this claim, the First District wrote:

> **[\*P17]** The test for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Glenn*, 1st Dist. No. C-090205, 2011 Ohio 829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 14 Ohio B. 317, 470 N.E.2d 883 (1984) and *State v. Canyon*, 1st Dist. Nos. C-070729, C-070730, and C-070731, 2009 Ohio 1263, ¶ 17.

> * * *

[*P20] Jordan next argues that the assistant prosecutor improperly vouched for the credibility of Gilbert's out-of-court statement when he emphasized his own role in eliciting the statement. In this regard, the assistant prosecutor stated the following:

> I'm not trying to toot my own horn, but you got Detective McGuffey and Luke and Vaughn and they're all homicide investigators. And Ms. Shanahan and myself all part of a plea agreement, as you can see that it says that. The statement has to be truthful. And as Detective Ballman told you, a lot of people want to cooperate with us in investigations, and we have to make an independent determination of whether what they are saying is true, because we have got a duty, we are officers of the court, we are here to see that justice is done.

The prosecutor also emphasized that his and the other interrogators' techniques were calculated to reveal the truth, and he noted that the plea agreement included his signature.

[*P21] A prosecutor may elicit testimony that a witness has agreed to tell the truth as part of a plea agreement. *State v. Jackson*, 92 Ohio St.3d 436, 448, 2001 Ohio 1266, 751 N.E.2d 946 (2001). But he may not express his belief or opinion regarding the credibility of a witness. *Id.*

[*P22] In this case, the assistant prosecutor went beyond merely eliciting testimony that Gilbert had agreed to tell the truth. He vouched for the truth of the prior statement and went so far as to take personal credit for its trustworthiness. Such comments went beyond the limits of proper argument. Still, because of the trial court's admonitions about the prior statement, we cannot say that the comments deprived Jordan of a fair trial.

*State v. Jordan,* 2012-Ohio-3793, 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012).

Applying the analysis from *Maupin v. Smith, supra*, the Court concludes that the First District did not enforce the contemporaneous objection rule against Jordan, so his Second Ground for Relief is not barred by such a procedural default.

**Merits**

The standard the First District applied in evaluating Jordan's claims of prosecutorial misconduct is set out in ¶ 17 of its decision:  the reviewing court must decide if the prosecutor's questions or remarks were improper and, if so, whether they prejudicially affected the defendant's rights.  The First District relied on its own prior decisions in *State v. Glenn*, 2011-Ohio-829, 2011 Ohio App. LEXIS 737 (1st Dist. Feb. 25, 2011), and *State v. Canyon*, 1st Dist. Nos. C-070729, C-070730, and C-070731, 2009 Ohio 1263 (1st Dist. Mar. 20, 2009), both unpublished, but relying in turn on *State v. Smith*, 14 Ohio St. 3d 13 (1984).  *Smith* states the standard to be:

> The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *United States* v. *Dorr*, [636 F.2d 117 (5th Cir. 1981)] at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. *Berger* v. *United States,* [295 U.S. 78 (1935)] at 88. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.

14 Ohio St. 3d at 14.

The Sixth Circuit has articulated the relevant federal standard for habeas corpus claims of prosecutorial misconduct:

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. (citation omitted).  Even if the prosecutor's conduct was improper or even "universally condemned," *id*., we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.  Once

21

> we find that a statement is improper, four factors are considered in
> determining whether the impropriety is flagrant:  (1) the likelihood
> that the remarks would mislead the jury or prejudice the accused,
> (2) whether the remarks were isolated or extensive, (3) whether the
> remarks were deliberately or accidentally presented to the jury, and
> (4) whether other evidence against the defendant was substantial.
> *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  Under
> [the] AEDPA, this bar is heightened by the deference we give to
> the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's]
> prosecutorial-misconduct claims.  *See Macias v. Makowski*, 291
> F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the
> case on direct appeal, we might have concluded that the
> prosecutor's comments violated Macias's due process rights.  But
> this case is before us on a petition for a writ of habeas corpus.  So
> the relevant question is not whether the state court's decision was
> wrong, but whether it was an unreasonable application of clearly
> established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).  Thus the standard the First District

applied is not contrary to clearly established federal law.  The question this Court must decide is

whether it is an unreasonable application of that law.  That is, we must decide this ground for

relief through the lens of AEDPA deference.

The First District summarized the evidence as set forth above under Factual Background.

*State v. Jordan*, 2012-Ohio-3793, 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012).

In denying relief on this assignment of error, the First District did not discuss the

evidence as a whole, but held in summary fashion that "because of the trial court's admonition

about the prior statement, we cannot say that the comments deprived Jordan of a fair trial." *Id.*  at

¶ 22.[5]

Jordan adopts the First District's conclusion that the prosecutor's comments quoted at ¶

20 of the decision were improper, but objects to the conclusion that they did not deny him a fair

---

[5] That limiting instruction reads "You heard a tape-recorded statement of Kareem Gilbert.  This recorded statement
was admitted for the sole purpose of impeaching the witness.  This statement is not testimony and may only be used
to evaluate the credibility of the witness." (Trial Tr. at Return of Writ, Doc. No. 11-10, PageID 1238.)

trial.  He relies first on *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), for the general proposition that when a prosecutor's comments in closing "so infect the trial with unfairness," it denies a defendant a fair trial and requires reversal.  *Donnelly* does stand for that proposition, but the Supreme Court held in that habeas corpus case that the prosecutor's comments could be cured by an instruction to the jury.

Jordan next relies on *United States v. Young*, 470 U.S. 1 (1985), for the proposition that prosecutor vouching can mislead the jury into believing the State has more evidence of guilt than presented.  In that case defense counsel told the jury the prosecutor did not believe defendant was guilty and the prosecutor replied that he did believe in defendant's guilt.  The Supreme Court castigated both lawyers for misconduct, but held the prosecutor's did not rise to the level of plain error reviewable on direct appeal under Fed. R. Crim. P. 52 because there had been no objection.  Chief Justice Burger's comments about the dangers of prosecutorial vouching are dictum, because the Court ended up holding "the jury was not influenced to stray from its responsibility to be fair and unbiased." *Id.*  at 18.

*Gordon v. Kelly,* 205 F.3d 1340 (table), 200 WL 145144 (6th Cir. Feb. 1, 2000), cited at PageID 39, is unpublished and therefore not precedential.

Jordan next argues that "a limiting instruction is *per se* ineffective because a jury, as a panel of human beings, cannot dismiss from their minds the extremely prejudicial statements which, if true, prove the State's entire case."  (Petition, Doc. No. 1-1, PageID 40, citing *Bruton v. United States*, 391 U.S. 123 (1968)).  *Bruton* is not about improper prosecutorial vouching at all, but about the admission of a non-testifying co-defendant's oral confession which inculpated the defendant but denied his Confrontation Clause rights.  Here the witness, whose out-of-court statement was improperly vouched for by the prosecutor, testified and was fully subject to cross-

23

examination.

In sum, Jordan has cited no law for the proposition that a jury instruction cannot overcome prosecutorial vouching; *Donnelly* and *Young*, relied on by Jordan, are both cases in which the Supreme Court found that the instruction was sufficient to overcome prejudice.

In contrast, the Warden cites *Ross v. Pineda*, 549 Fed. Appx. 444, 2013 U.S. App. LEXIS 25481 (6th Cir. Dec. 19, 2013).  There the Sixth Circuit affirmed a decision of this Court denying a writ of habeas corpus where one of the acts of prosecutorial misconduct was vouching for a witness.

Jordan has not demonstrated that the First District's conclusion that the trial was not rendered fundamentally unfair by the prosecutor's vouching is contrary to or an unreasonable application of clear Supreme Court precedent.  Therefore Ground Two should be dismissed.


**Ground Three:  Prosecutorial Misconduct Regarding Kareem Gilbert's Statement**


In his Third Ground for Relief, Jordan claims he was denied due process by the prosecutor's encouraging the jury to review Kareem Gilbert's recorded statement during deliberations and consider it for the truth of its content.

The Warden's procedural default defense to this Ground for Relief is without merit on the same basis as with Ground Two.

Jordan presented this claim as his second assignment of error on appeal and the First District decided it as follows:

> **[*P18]**  Jordan first argues that the assistant prosecutor improperly invited the jury to consider Gilbert's prior statement as substantive evidence rather than mere impeachment.

[*P19]  We agree that a number of the assistant prosecutor's statements tended to suggest that the jury could consider the prior statement for its truth. Nonetheless, we must presume that the jury followed the trial court's instruction that the prior statement was to be considered only for purposes of impeachment. *See State v. Loza, 71 Ohio St.3d 61, 79, 1994 Ohio 409, 641 N.E.2d 1082 (1994).*  Thus, we find no prejudice to have resulted from the asserted misconduct.

*State v. Jordan*, 2012-Ohio-3793, 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012).

In asserting that asking a jury to consider a prior inconsistent statement for its truth constitutes prosecutorial misconduct, Jordan relies on *State v. Kirk*, 2010-Ohio-2006, 2010 Ohio App. LEXIS 1668 (6th Dist. May 7, 2010).  In that case the prosecutor argued in closing the truth of hearsay statements admitted for asserted non-hearsay purposes.  Kareem Gilbert was available for thorough cross-examination about his out-of-court statement, so the prosecutor's incorrect suggestions to the jury that they could consider it for the truth was far less unfair to Jordan than considering completely uncross-examined hearsay for its truth would have been.  The limitation on use of prior inconsistent statements under Ohio R. Evid. 613 is certainly far less egregious than adverting in closing to completely uncross-examined hearsay.

Nonetheless, the First District elided the question of whether the reference was misconduct by the prosecutor and went directly to the prejudice question.[6]  And again, as with the Second Ground for Relief, the court of appeals held the limiting instruction cured any prosecutorial misstatement.  Jordan cites no authority for the proposition that such misstatements are *per se* prejudicial, and *Donnelly* and *Young, supra,* are authority to the contrary.

Jordan argues at some length that the other evidence against him was weak and thus the

---

[6] The court refers at ¶ 19 to this as "asserted misconduct" without going through the first step of the required analysis.  See *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).

First District should have found prejudice (Petition, Doc. No. 1-1, PageID 45-46).

First, Jordan argues the eyewitness identification by Dean Shade was uncertain. Nevertheless, it was thoroughly cross-examined, not inherently unreliable or self-contradictory, and credited by the jury to whom credibility issues are assigned.  Although he was only 75% certain that the shooter was Jordan, he was very certain it was neither Kareem nor Shawn Gilbert, both of whom he knew.

Second, Jordan discounts the testimony of his drug dealer Kenneth Heard.  While it was certainly proper to impeach Heard with his prior felony convictions, again, that is a credibility matter for the jury.  Heard did not claim to have heard Jordan's confession in jail and he was not the beneficiary of State leniency for his testimony.  Having allowed his son to take responsibility for a murder Jordan committed could well produce in a father the guilty admission Jordan made to someone he probably felt would not talk to the police.

Third, Jordan dismisses the evidence that his DNA was found in a spit sample near the victim's body with the assertion that "Jordan was innocently present at the scene on many occasions and could have deposited the spit on one of these occasions."  (Petition, Doc. No. 1-1, PageID 32.)  Jordan offers no record citation to any evidence supporting this claim and in any event it would not explain how his spit got there within three minutes of the shooting.

Accordingly, Ground Three is without merit and should be dismissed.


**Ground Four:  Appellate Court Error in Upholding the Admission of Gilbert's Statement**


In his Fourth Ground for Relief, Jordan claims his constitutional rights were violated when the First District upheld the admission of Kareem Gilbert's statement.  This claim was

Jordan's first assignment of error on direct appeal which the First District decided as follows:

### Admissibility of Kareem Gilbert's Statement

 [*P13]  In his first assignment of error, Jordan argues that the trial court erred in admitting extrinsic evidence of Kareem Gilbert's prior statement implicating Jordan in the murder of Davis. But because Jordan did not object to the admission of the statement, we review the record for plain error. Under the plain-error standard, we must affirm the conviction unless, but for the allegedly inadmissible evidence, the outcome of the trial would have been different. *See State v. Lukacs*, 188 Ohio App.3d 597, 2010 Ohio 2364, 936 N.E.2d 506, ¶ 34 (1st Dist.).

 [*P14]  Evid.R. 613 provides for the admissibility of a witness's prior inconsistent statement for the purpose of impeaching the witness's credibility. *See State v. Carusone*, 1st Dist. No. C-010681, 2003 Ohio 1018. But extrinsic evidence of the prior statement is admissible only "[w]hen a witness denies making a prior statement, or states that he is unable to recall the prior statement." *Id*. at ¶ 37, citing *State v. Davenport*, 1st Dist. No. C-980516, 1999 Ohio App. LEXIS 3469 (July 30, 1999); *see also State v. Johnson*, 10 Ohio App.3d 14, 17, 10 Ohio B. 20, 460 N.E.2d 625 (10th Dist.1983).

 [*P15]  Thus, because Gilbert admitted having made the prior statement, extrinsic evidence of the statement was not admissible. Nonetheless, the trial court did not commit plain error. In light of the limiting instruction, we must presume that the jury did not consider the prior statement as substantive evidence. And because of the other evidence adduced by the state-including eyewitness testimony, the statement of Jordan, and forensic evidence gathered at the crime scene-we cannot say that the outcome of the trial would have been different absent the error. Moreover, as Jordan himself concedes, the state could have properly engaged in a line-by-line cross-examination of Gilbert with respect to the prior statement, and the jury would have had been provided the identical evidence. *See State v. Hill*, 2d Dist. No. 20028, 2004 Ohio 2048, ¶ 41. Under these circumstances, Jordan was not deprived of a fair trial, and we overrule the first assignment of error.

*State v. Jordan, supra.*

Respondent asserts this ground for relief is barred by Jordan's failure to make a

contemporaneous objection and that this procedural default was enforced against Jordan by the First District's limiting its review to plain error (Return of Writ, Doc. No. 11, PageID 122-23). Although Jordan asserts in his Traverse that the First District did not enforce the contemporaneous objection rule (Doc. No. 14, PageID 1333-34), that court's plain statement in ¶ 13 that there was no objection and that it will engage in plain error review constitutes enforcement of the rule.

Jordan's counsel asserts that the lack of contemporaneous objection is cured by the new trial motion (Traverse, Doc. No. 14, PageID 1334-35), but cites no Ohio authority for that proposition.  Certainly the First District did not treat the lack of objection as cured by the new trial motion.

Respondent also asserts that any error in upholding the admission of Kareem Gilbert's statement is at most an Ohio evidence law error which is not cognizable in federal habeas (Return, Doc. No. 11, PageID 123-24).

Petitioner responds that "[t]he motion for new trial raised this issue in terms of its constitutional dimensions (rather than just state evidentiary rules) in identical fashion as the first appeal, memo in support of jurisdiction [in the Supreme Court of Ohio] and the instant habeas petition."  (Traverse, Doc. No. 14, PageID 1334.)  No record references are given.

The Motion for New Trial asserted ineffective assistance of trial counsel and prosecutorial misconduct, not error in the admission of evidence (Return of Writ,  Doc. No. 11-1, Ex. 11, PageID 182).  Nothing in that Motion purports to raise any constitutional claim of error in the admission of Gilbert's statement.[7]  Several months later Jordan filed a Supplemental Motion for New Trial. *Id.*  at Ex. 12, PageID 205 et seq.  In that document Jordan claimed admitting the Gilbert statement violated Ohio R. Evid. 613, but also argued "[a]dmitting the

---

[7] The only citation to federal constitutional law is to *Strickland v. Washington, supra*.

recorded statement into evidence occurred in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, effective assistance of counsel, and to confront all witnesses." *Id.* at PageID 209. Jordan cited *Rush v. Illinois Central Ry. Co.,* 399 F.3d 705 (6th Cir. 2005), but that case is an interpretation of the cognate Fed. R. Evid. 613, and not constitutional authority at all. Later in the Supplemental Motion, Jordan argues his "Fifth, Sixth, and Fourteenth Amendment rights strictly limit the State's use of the statements to impeaching Gilbert's credibility." *Id.* at PageID 213, citing *State v. Dick*, 27 Ohio St. 2d 162[8] (1971); *State v. Suman*, 2010-Ohio-6204 (4th Dist. Dec. 13, 2010); *State v. Risden*, 2010-Ohio-991 (2nd Dist. Mar. 12, 2010); and *State v. Greene*, 2009-Ohio-850 (8th Dist. Feb. 26, 2009). The courts that decided these four cases made no such rulings.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

---

[8] Miscited as 270 Ohio St. 2d 162.

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue.  *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans,* 228 F.3d at 681, *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd  Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter,* 450 F.3d at 236; *Blackmon*, 394 F.3d at 400 (same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Jordan did not fairly present his Fourth Ground for Relief to the state courts as a federal constitutional claim and is therefore barred from receiving merits consideration in this Court. His Fourth Ground for Relief should be dismissed with prejudice.

**Ground Five:  Appellate Court Error in Upholding the Limiting Instruction**

In his Fifth Ground for Relief, Jordan claims the First District violated his constitutional rights by "upholding a limiting instruction to purportedly cure the constitutional violations" resulting from the admission and use of Kareem Gilbert's recorded statement.  As the Court reads it, Jordan's claim is not that the limiting instruction actually given was erroneous, but that no limiting instruction could have cured the error of allowing the jury to have the Gilbert statement during deliberations (See Petition, Doc. No. 1-1, PageID 54-55).

The Warden asserts Ground Five is procedurally defaulted under the contemporaneous objection rule, relying on the First District's overruling of Jordan's cognate fifth assignment of error:

[**\*P26**]  In his fifth assignment of error, Jordan contends that the trial court erred in failing to provide the jury with a proper limiting instruction concerning Gilbert's out-of-court statement. Specifically, he argues that the court failed to adequately inform the jury that it could consider the statement for impeachment purposes only and not as substantive evidence. Once again, Jordan did not object to the jury instructions, and we therefore review the matter under the plain-error standard. Crim.R. 30(A); *State v. Coley*, 93 Ohio St.3d 253, 266, 2001 Ohio 1340, 754 N.E.2d 1129 (2001).

[**\*P27**]  We find no plain error. The trial court informed the jury that the "statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness." This instruction was accurate and fully explained the import of the prior statement. Although Jordan contends that the instruction was deficient, he essentially reiterates his argument that extrinsic evidence of the statement was simply inadmissible. Having already addressed that argument, we need not do so again. The fifth assignment of error is overruled.

*State v. Jordan, supra.*

Jordan responds that the First District considered this claim on the merits.  The Court rejects this argument for the same reason it was rejected above as to the First Ground for Relief. The First District said it was engaged in plain error review and the Sixth Circuit has repeatedly held that to be an enforcement rather than a waiver of the contemporaneous objection rule, most recently in *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012).

As with Ground Four, Jordan contends this claim was preserved by being included in the Motion for New Trial.  However, that is a question of Ohio law and the First District upheld the contemporaneous objection rule and reviewed the claim for plain error regardless of what was in the Motion for New Trial.

The Warden notes that the end of Ground Five reads as if Petitioner is attempting to raise a sufficiency of the evidence claim and notes that this was not done in state court.  Nothing in the

Traverse suggests that Jordan was in fact trying to raise an independent sufficiency of the evidence claim.

Jordan argues that *Harris v. Reed*, 489 U.S. 255 (1989) creates a presumption that "when the application of a state procedural rule necessarily involves or is intertwined with consideration of the federal constitutional issues . . . the state procedural rule is not an adequate and independent procedural bar to the federal district court['s] conducting a merits review." (Traverse, Doc. No. 14, PageID 1340, citing *Arias v. Lafler*, 511 Fed. Appx. 440, 446 (6th Cir. Jan. 9, 2013)).

After *Harris v. Reed,* 489 U.S. 255 (1989), "federal courts ...  will presume there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722 (1991), *quoting Michigan v. Long*, 463 U.S. 1032,  1040-1041 (1983).  "A predicate to the application of the *Harris* presumption is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest on federal law or to be interwoven with federal law." *Coleman*, 501 U.S. at  735; *Simpson v. Jones*, 238 F.3d 399, 407-408 (6th Cir. 2000); *Coe v. Bell,* 161 F.3d  320 (6th Cir. 1998).

Nothing about the First District's decision of the fifth assignment of error suggests that it "rests primarily on federal law" or is somehow "intertwined" with federal law.  The First District found that trial counsel failed to object and engaged thereafter in plain error review, a process the Sixth Circuit has repeatedly held is an enforcement of the contemporaneous objection rule. While *Arias,* which is unpublished and therefore nonprecedential, does indeed cite the *Harris*

presumption, it also involved upholding the Michigan contemporaneous objection rule as adequate and independent of federal law.

Ground Five is procedurally defaulted and should therefore be dismissed with prejudice.

## Ground Six:  Ineffective Assistance of Counsel

In his Sixth Ground for Relief, Jordan asserts he received ineffective assistance of trial counsel in five different ways.

1.      Failing to object to the admission of the Gilbert recorded statement;

2.      Failing to object to the prosecutor's double jeopardy remarks;

3.      Failing to object to the prosecutor's vouching for the truth of Gilbert's recorded statement;

4.      Failing to object to the prosecutor's urging the jury to consider Gilbert's statement for the truth of its content; and

5.      Failing to ensure that the jury instructions properly conveyed the law about the use of Gilbert's recorded statement for any purpose other than impeachment.

(Petition, Doc. No. 1, Appendix D, PageID 60-61.)

## Subclaim One:  Failure to Object to the Admission of Gilbert's Statement

The Warden argues that this subclaim is procedurally defaulted because, although it was raised in the court of appeals, it was abandoned on further appeal to the Ohio Supreme Court (Return of Writ, Doc. No. 11, PageID 128).

Jordan responds that this subclaim was directly stated in Proposition of Law VI which reads as follows:

> Proposition of Law No VI: Ineffective assistance of counsel attaches when trial counsel fails to properly object to the State's improper comments during its closing argument: (1) cautioning the jury to consider the consequences of an acquittal (specifically Jordan's protection against double jeopardy and an alleged threat to public safety); (2) personally vouching for the truth and credibility of an inadmissible recording; and (3) urging the jury to consider the truth of this same recording, which if considered for its truth, proves each essential element of the charges against the defendant.

.

(Memorandum in Support of Jurisdiction, Return of Writ, Doc. No. 11-2, Ex. 24, PageID 380.) This proposition of law does not include Subclaim One and it is accordingly procedurally defaulted.

**Subclaim Three:  Failure to Object to Prosecutorial Vouching**

In the Traverse Jordan's counsel concedes that this subclaim was improperly pleaded because counsel did object to the vouching.  (Doc No. 14  at PageID 1310-11).  Therefore, no further analysis is needed on that subclaim.

**Subclaims Two, Four, and Five**

Subclaims Two, Four, and Five are concededly not procedurally defaulted:  they were raised on direct appeal and decided on the merits by the First District.  However, for the reasons given above in analysis of these subclaims as proof of excusing cause and prejudice, the Court has concluded that the First District's denial of these subclaims is neither contrary to nor an objectively unreasonable application of *Strickland v. Washington, supra*.  Therefore they should be dismissed with prejudice.

34

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 23, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

**If Petitioner files objections to this Report, his counsel is reminded that the Court treats objections as motions to which S. D. Ohio Civ. R. 7.2 is applicable.**