# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

RUBEN JORDAN,

              Petitioner,           :    Case No. 1:14-cv-068

     - vs -                    District Judge Michael R. Barrett
                                    Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,

                              :
             Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 19) to the Magistrate Judge's Report and Recommendations which recommended that the Petition be dismissed with prejudice (the "Report," ECF No. 16). District Judge Barrett has recommitted the case for reconsideration in light of the Objections (ECF No. 20).

Petitioner has filed thirteen separately-numbered Objections (Roman numerals I through XIII). Most of them are quite prolix and contain a number of sub-claims. For example, Objection III fills two-thirds of a page single-spaced and contains arguably five asserted errors in the Report. Because Fed. R. Civ. P. 72(b)(3) requires the District Judge to "determine de novo any part of the magistrate judge's disposition that has been properly objected to," this Supplemental Report must of necessity be quite detailed and considers the Objections *seriatim*.

**Objection I:**

> **The Report and Recommendations incorrectly concludes that Petitioner Jordan did not point to specific facts as facts unreasonably determined by the state courts.**

(Objections, ECF No. 19, PageID 1517.)

Each of Jordan's six Grounds for Relief begins with the statement "[t]he state courts unreasonably determined the facts. . . ."  The Report noted that "Jordan's counsel has devoted four pages of the Petition (PageID 26-29) to a Statement of Facts without attempting to show how the evidence recited there proves by clear and convincing evidence that the court of appeals made an unreasonable determination of any particular fact."  (Report, ECF No. 16, PageID 1397.)

Jordan objects that there are at least sixteen places in his Petition and fourteen places in his Traverse where he argued "how the courts unreasonably determined the facts."  (Objections, ECF No. 19, PageID 1526, citing Petition, ECF No. 1, PageID 25, 30, 32, 36, 42, 43, 44, 46, 49, 50, 51, 54, 56, 59, 60, 61 and Traverse, ECF No. 14, PageID 1304, 1316, 1330, 1340, 1354, 1355, 1365, 1375, 1379, 1381, 1382, 1383, 1384 and 1386.)

Jordan's counsel apparently misunderstands the Report on this point.  While she has used the phrase "unreasonable determination of the facts" forty-three times in the Petition, Traverse, and Objections, at no point in her Statement of the Facts (ECF No. 1-1, PageID 26-29) does she relate what she says are the facts of the case to findings by the state courts and argue why the state courts were clearly wrong.  Instead she gives her own narrative of the facts, supported by record references.  This is what is meant by the language in the Report that the Statement of Facts does not attempt to show how the state court determinations were unreasonable.

**Objection II and II.A**

> **The Report and Recommendations incorrectly finds that the
> contemporaneous objection rule was enforced against Jordan
> with respect to Ground One.  Instead, the state appellate court
> did not enforce the contemporaneous objection rule; even if
> this Court agrees with the Report and Recommendations that
> the state court enforced the rule, the *Harris* presumption
> (which the Report and Recommendations failed to address)
> applies such that the rule is not an adequate and independent
> state procedural bar. Therefore, Ground One is properly
> before this Court and should be considered on the merits.**

> **A. The First District's purported "plain error analysis"
> demonstrates that it did not actually enforce the
> contemporaneous objection rule against Jordan for two
> reasons: (1) the First District applied the same two-part merits
> analysis that the Supreme Court of Ohio uses to address the
> merits and prejudicial impact of preserved prosecutorial
> misconduct claims of the exact same nature as those involved
> in Ground One; and (2) the First District used the same
> merits/prejudice analysis for Ground One as it did when
> considering Grounds Two and Three (the errors to which trial
> counsel objected and which the Report and Recommendations
> correctly found to be properly before this Court/not
> procedurally defaulted).**

Applying the governing standard from *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

1986), the Report concluded Ground One (prosecutorial misconduct) was procedurally defaulted

because trial counsel made no objection to the prosecutor's argument about public safety and the

First District enforced the contemporaneous objection rule by evaluating the prosecutor's

conduct under the Ohio plain error rule (Report, ECF No. 16, PageID 1400-03).

Jordan objects that, while the First District said it was applying plain error analysis, in

fact it "use[d] the same standard to address the merits . . . and prejudice as the state supreme

court uses to address preserved prosecutorial misconduct claims on the merits." (Objections, ECF No. 19, PageID 1528.) Jordan argues the relevant supreme court case is *State v. Jackson*, 92 Ohio St. 3d 436 (1977), and that the First District used *Jackson* to evaluate the prosecutorial misconduct claims in both Ground One and in Grounds Two and Three (Objections, ECF No. 19, PageID 1528).

*Jackson* is a post-1995 capital case, so the Supreme Court of Ohio was sitting as the first appellate court to review the case. In considering a claim that the trial court erred in allowing alternate jurors to remain in the jury room during deliberations, the court stated the standard for evaluating plain error: "an error 'does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.'" *Jackson, supra*, at 438, *quoting State v. Long*, 53 Ohio St. 2d 91, paragraph two of the syllabus (1978). That is the exact standard the First District applied to Jordan's Fourth Assignment of Error: "Jordan did not object to these comments about collusion and therefore must demonstrate that, but for the misconduct, the outcome of the trial would have been different." *State v. Jordan,* 2012-Ohio-3793, ¶ 25 , 2012 Ohio App. LEXIS 3415 (1st Dist. Aug. 24, 2012). While the First District does not cite to *Jackson* for the plain error standard, it does cite its own plain error precedent, *State v. Rucker*, 2012-Ohio-185, ¶ 20, relying on the Ohio Supreme Court's post-*Jackson* precedent to the same effect, *State v. Williams*, 79 Ohio St. 3d 1, 12 (1997).

Jordan argues the First District defines the plain error standard as meaning "whether Jordan was deprived of a fair trial due to the misconduct." (Objections, ECF No. 19, PageID 1528.) But the Objections provide no citation for the purported quotation nor any place in which the First District says it is defining one test as the equivalent of the other. Furthermore, Jordan argues the Ohio Supreme Court used this "same two-part analysis" . . . "to address the merits of

preserved [i.e. by contemporaneous objection] prosecutorial misconduct claims" in *Jackson*.  Not

so.  As to the two prosecutorial misconduct claims related to comments by the prosecutor, the

*Jackson* court noted as to each of them that "defense counsel did not object to these questions"

(Sixth Proposition of Law) and "defense counsel did not object to these comments" (Seventh

Proposition of Law) and applied plain error analysis to deny each of them.  *Jackson, supra,* at

442-43.

In order to show a constitutional violation resulting from prosecutorial misconduct, a

habeas petitioner must show that the prosecutor's conduct was improper and that it was so

flagrant as to deny the defendant as fair trial.

> "In the evaluation of a claim for prosecutorial misconduct, it is not
> enough that the prosecutor's comments were improper, but '[t]he
> relevant question is whether the prosecutors' comments "so
> infected the trial with unfairness as to make the resulting
> conviction a denial of due process."'" *Smith*, 567 F.3d [246] at 255
> [6[th] Cir. 2009] (quoting *Darden v. Wainwright*, 477 U.S. 168, 181,
> 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)) (quoting *Donnelly v.
> DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431
> (1974)). In other words, "[i]n order to satisfy the standard for
> prosecutorial misconduct, the conduct must be both improper and
> flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir.2006),
> cert. denied, 549 U.S. 1255, 127 S.Ct. 1376, 167 L.Ed.2d 165
> (2007). To determine whether improper conduct is flagrant, we
> consider four factors:
>
> > (1) the likelihood that the remarks of the prosecutor
> > tended to mislead the jury or prejudice the defendant; (2)
> > whether the remarks were isolated or extensive; (3)
> > whether the remarks were deliberately or accidentally
> > made; and (4) the total strength of the evidence against
> > the defendant.
>
> *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, 546 U.S.
> 865, 126 S.Ct. 163, 163 L.Ed.2d 150 (2005).

*Goff v. Bagley*, 601 F.3d 445, 480 (6th Cir. 2010).  Any court deciding this constitutional claim is

supposed to apply this standard in determining the merits of the claim, in other words, in

determining whether there is error in what the prosecutor did.  Beyond that, when there has been no contemporaneous objection but the error is nonetheless raised on appeal, Ohio courts under Ohio R. Crim. P. 52(B), must determine if the error was "plain."

Petitioner wants this Court to ignore the fact that the First District said it was engaged in plain error analysis and noted the absence of a contemporaneous objection which required that, to decide the assignment of error, it engage in plain error analysis, because the First District used the same merits standard to undergird its plain error analysis.  But what other standard would it have used?  Petitioner does not cite any different "merits + plain error" standard adopted by the Ohio courts that the First District would have used if it was "really" engaged in plain error analysis.  The Report concluded "[t]his Court must take the First District at its word and conclude it conducted a plain error review on Ground One/Assignment of Error IV."  (Report, PageID 16, PageID 1403.)  To refuse to do that when the First District actually employed Ohio plain error analysis would seriously violate our duty of comity to the state courts.

**Objection III.B.**

> **If this Court agrees with the Report and Recommendations, that the state appellate court applied a plain error analysis, (1) the prejudicial impact standard that the court applied is equivalent to the least stringent prejudicial impact standard that could have applied had counsel objected, and (2) applying the prejudicial impact standard necessarily involves considering the constitutional claims. Therefore, the contemporaneous objection rule is not an independent procedural bar to this Court considering the merits of Ground One per the *Harris* presumption, which the Report and Recommendations failed to even consider.**

Petitioner's argument on Objection II.B is a variant of the argument on Objection II.A. Petitioner asserts that since the First District applied the same prejudicial impact test in deciding

6

this claim as it would have applied if it were doing a merits analysis, then the "plain error analysis" . . .is **not** independent from the analysis used by Ohio courts to evaluate the merits . . . (Objections, ECF No. 19, PageID 1533, emphasis sic).  As argued above as to Objection II.A, of course an appellate court must use the applicable merits standard first to determine if there is any error raised on appeal, and the add onto it the analysis of whether the error is "plain" or not.

Petitioner does not argue about what more must shown under Ohio law to prove "plain" error over and above error on the merits.  The case annotations on Ohio R. Crim. P. 52(B) present a myriad of examples of errors held to be plain or not, with no obvious rationalization among them.  Generalizing, the Ohio Supreme Court held in *State v. Lynn*, 2011-Ohio-2722, 129 Ohio St. 3d 146 (2011),

> [T]here are "three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, *i.e.*, a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240.

*Id.* at ¶ 13.  The *Lynn* Court continued that the appellate court has discretion to reverse or not even when plain error is found:

> Even when all three prongs are satisfied, a court still has discretion whether or not to correct the error. *State v. Noling*, 98 Ohio St.3d 44, 2002 Ohio 7044, 781 N.E.2d 88, at ¶ 62. This court "acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

*Id.* at ¶ 14.  The Ohio  Supreme Court does not attempt to quantify any of the parts of this test,

e.g., how "obvious" the defect must be or how large the effect on substantial rights must have been.  But its opinion makes clear that the plain error analysis requires more than just what is needed to find an error on the merits.

Petitioner objects further that the Report does not properly consider the impact of *Harris v. Reed,* 489 U.S. 255 (1989), on procedural default analysis (Objections, ECF No. 19, PageID 1535).  On the contrary, the Report recites the controlling standard from *Harris* and finds it inapplicable in this case because the First District complied with the plain statement rule of *Michigan v. Long*, 463 U.S. 1032 (1983), which *Harris* was enforcing:

> Nothing about the First District's decision of the fifth assignment of error suggests that it "rests primarily on federal law" or is somehow "intertwined" with federal law. The First District found that trial counsel failed to object and engaged thereafter in plain error review, a process the Sixth Circuit has repeatedly held is an enforcement of the contemporaneous objection rule.

The Supreme Court clarified the *Harris* presumption in 1991:

> We can establish a per se rule that eases the burden of inquiry on the federal courts in those cases where there are few costs to doing so, but we have no power to tell state courts how they must write their opinions. We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim—every state appeal, every denial of state collateral review—in order that federal courts might not be bothered with reviewing state law and the record in the case.

*Coleman v. Thompson,* 501 U.S. 722, 739 (1991).

**Objection III:**

> **The Report and Recommendations incorrectly determined that the contemporaneous objections rule was enforced against Jordan with respect to Ground Four and failed to apply the**

> ***Harris* presumption. Despite that trial counsel failed to lodge an objection to the admission of this evidence, Ground Four is not procedurally defaulted because: (1) the claim was presented to the trial court in a timely motion for new trial, and all levels of state court addressed the claim on the merits; (2) the contemporaneous objection rule is not an adequate and independent state procedural bar per the *Harris* presumption, because the constitutional claims are at a minimum intertwined with the plain error review. Therefore, Ground Four is properly before this Court and should be considered on the merits.**

(Objections, ECF No. 19, PageID 1538.)

In his Fourth Ground for Relief, Jordan claims the trial court violated his constitutional rights when it admitted in evidence the pre-trial statement of Kareem Gilbert, Jordan's son, who had agreed to testify against Jordan and gave a statement inculpating him, but then repudiated that statement in his trial testimony. The Report concluded this Ground for Relief was procedurally defaulted because trial counsel made no contemporaneous objection (Report, ECF No. 16, PageID 1415, et seq.) Jordan objects that (1) the contemporaneous objection rule was not enforced against him; (2) in any event, that rule is overcome by the *Harris v. Reed* presumption; and (3) any failure of contemporaneous objection was cured by including the claim in the motion for new trial.

The analysis here parallels that for Objection II. Jordan says the contemporaneous objection rule was not enforced against him, but the First District plainly held "because Jordan did not object to the admission of the statement, we review the record for plain error." *State v. Jordan*, 2012-Ohio-3793, ¶ 13 (1st Dist. Aug. 24, 2012). The *Harris v. Reed* presumption, discussed above, is inapplicable because the First District's opinion complies with the *Michigan v. Long* plain statement rule.

Jordan previously claimed the lack of contemporaneous objection was cured by including

this claim in his motion for new trial (Traverse, ECF No. 14, PageID 1334-35). The Report noted that Petitioner had cited "no Ohio authority for that proposition." (Report, ECF No. 16, PageID 1417.) The Objections still cite no authority for that proposition. The denial of the motion for new trial was before the First District on appeal and it did not find the absence of contemporaneous objection excused by raising the objection in the motion for new trial. Instead, as it plainly said at ¶ 13, it was reviewing the claim for plain error, which the Sixth Circuit has repeatedly held is an enforcement, not a waiver, of the contemporaneous objection rule and that rule is an adequate and independent state procedural ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

## Objection III.A.

> The Report and Recommendations failed to recognize: (1) that all levels of state court considered Ground Four on the merits; and (2) that each level was able to do so because Jordan's Ground Four was fairly presented in a timely motion for new trial, which was the only state procedure available to preserve his claim following trial counsel's failure to object.

(Objections, ECF No. 19, PageID 1539.)

In addition to finding procedural default for lack of contemporaneous objection, the Report also found Ground Four was procedurally defaulted by failure to present it as a constitutional claim to the Ohio courts (Report, ECF No. 16, PageID 1417-1419). Objection III.A asserts this was an error because the claim was presented as a constitutional claim at all levels of the Ohio courts (Objections, ECF No. 19, PageID 1539-1543).

Petitioner points first to his Supplemental Motion for New Trial where he argues that admitting Gilbert's pre-trial statement "is highly prejudicial in violation of Jordan's Fifth, Sixth, and Fourteenth Amendment rights because it runs the risk of the jury considering the prior inconsistent statements for their truth rather than for impeachment purposes." (Objections, ECF No. 19, PageID 1540, citing Return of Writ, ECF No. 11-1, PageID 212.) The Report quoted this language from the Supplemental Motion, but found it was not a fair presentation of any constitutional claim because none of the case law cited dealt with admitting prior inconsistent statements as a constitutional matter (Report, ECF No. 16, PageID 1418).

To refute that finding, the Objections quote several pages of the Supplemental Motion and conclude "[b]y extensively arguing the prejudice Jordan suffered as a result of the error [of admitting Gilbert's statement] and linking the error and prejudice suffered with Jordan's constitutional rights to due process, a fair trial, and effective assistance of counsel, the error clearly was fairly presented." (ECF No. 19, PageID 1542.) Petitioner points to no place in the Supplemental Motion where any federal case law was cited. As the Report points out, the federal courts have long held that mere recitation of talismanic phrases such as "due process" or "fair trial" are insufficient to fairly present a federal constitutional claim (Report, ECF No. 16, PageID 1419).

Petitioner argues that the state courts at each level decided this claim on the merits

(Objections, ECF No. 19, PageID 1540, n. 6.)  Judge Allen's entire Entry Denying the Motion reads in its entirety: "This matter is before the court on the defendant's February 7, 2011 motion for new trial. Based upon the evidence submitted and the arguments of counsel this court finds that the motion is not well taken. The motion is DENIED."  (Return of Writ, ECF No. 11-1, PageID 283.)  The Entry is a decision on the merits of the new trial motion, but Judge Allem certainly evinces no understanding that she is deciding a constitutional claim.

The First District decided the matter purely as an interpretation of Ohio R. Evid. 613 with no mention of any constitutional issues.  *State v. Jordan*, 2012-Ohio-3793, ¶¶ 13-15.  In his First Assignment of Error on appeal, Jordan argued "[t]he trial court committed plain error[1] in violation of Evid. R. 613 and Jordan's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial before an impartial jury, and to confront all witnesses" when it allowed the jury to hear the recorded statement.  (Appellant's Brief, Return of Writ, ECF No. 11-2, PageID 301.)  Jordan argued this Assignment at length,[2] but in the thirteen pages of argument, only two federal cases are cited, one for the interpretation of Fed.  R. Evid.  613 which is cognate to Ohio R. Evid. 613 and one to *Strickland v. Washington,* 466 U.S. 668.  (1984), for the general standard for ineffective assistance of trial counsel.  A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim.  *Baldwin v. Reese*, 541 U.S. 27 (2004).   Thus the Magistrate Judge adheres to his prior conclusion that Ground Four was not fairly presented as a constitutional claim to the First District.

Jordan also claims that the Ohio Supreme Court decided this constitutional claim on the

---

[1] By claiming plain error, Jordan essentially admitted he had to overcome the lack of a trial objection to obtain review of this claim.
[2] Jordan was represented on appeal by the same attorney who represents him in this case, Attorney Michelle Berry, who became Jordan's lawyer at the time of the Motion for New Trial.

merits (Objections, ECF No. 19, PageID 1540, 1544).  On the contrary, the Ohio Supreme

Court's disposition is the standard form entry signed by the Chief Justice which declines to

accept jurisdiction (Entry, ECF No. 11-2, PageID 427).  The Ohio Supreme Court expressly

disclaims any merit impact from such a declination of jurisdiction: "The refusal of the Supreme

Court to accept any case for review shall not be considered a statement of opinion as to the

merits of the law stated by the trial or appellate court from which review is sought." Ohio Sup.

Ct. Rep. R. 4.1.[3]

Alternatively, if the Court were to accept Jordan's premise that this claim was decided on

the merits, then the First District's decision would be entitled to deference under the

Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the

"AEDPA").  When a state court decides on the merits a federal constitutional claim later

presented to a federal habeas court, the federal court must defer to the state court decision unless

that decision is contrary to or an objectively unreasonable application of clearly established

precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*,

562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S.

685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Jordan has not shown that the First District's decision on this claim is contrary to or an

objectively unreasonable application of United States Supreme Court precedent.  The rule that

extrinsic evidence of a prior inconsistent statement cannot be admitted once the witness has

admitted making it had never been held to be required by the United States Constitution and

Jordan cites no law to the contrary.  In lieu of admitting the prior statement, the prosecutor could

have introduced the substance of the statement by cross-examining Gilbert on it line by line, a

---

[3] For the proposition that the Ohio Supreme Court's form declination of jurisdiction constitutes a decision on the merits, Jordan cites *Arias v. Lafler*, 511 Fed. Appx. 440 (6th Cir. Jan. 9, 2013).  *Arias* contains no such holding.

point Jordan conceded on direct appeal and which the First District accepted. *State v. Jordan, supra*, ¶ 15.

Admission of the prior statement presents no Confrontation Clause issue because Kareem Gilbert was present and available for cross-examination by Jordan's counsel.

Jordan's sole citation to federal authority on this Objection III.A is to *Dowling v. United States*, 493 U.S. 342 (1990), which is cited for the very general proposition that "evidentiary errors may be so egregious as to violate due process and fundamental fairness." (ECF No. 19, PageID 1542.) Dowling was charged with bank robbery and the trial court allowed identification testimony, despite Fed. R. Evid. 404(b), from the victim of a burglary Dowling was alleged to have committed previously, but on which he was acquitted. In upholding the conviction, the Supreme Court held:

> Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly. As we observed in *Lovasco, supra*, at 790:
>
>  "Judges are not free, in defining 'due process,' to impose on law enforcement officials [their] 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' *Rochin* v. *California*, 342 U.S. 165, 170 (1952). . . . [They] are to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney* v. *Holohan*, 294 U.S. 103, 112 (1935), and which define 'the community's sense of fair play and decency,' *Rochin* v. *California, supra*, at 173."

493 U.S. at 353. If anything, *Dowling* works contrary to Jordan's position. In any event, it certainly cannot be said that the First District's decision was contrary to or an objectively unreasonable application of *Dowling*.

**Objection III.B**

> **The Report and Recommendations' conclusion that Jordan's motion for new trial failed to exhaust Ground Four in the aftermath of trial counsel's failure to object: (1) is inconsistent with the comity and federalism policies underlying the contemporaneous objection rule; (2) fails to acknowledge that all levels of state court reviewed the issue presented in Ground Four on the merits; and (3) renders Jordan absent a state corrective process such that the exception in 28 U.S.C. 2254(b)(1)(B) should apply, which the Report and Recommendations also failed to acknowledge.**

(ECF No. 19, PageID 1543.)

The premise of Objection III.B is that the Report found Ground Four was not exhausted.

The premise is false; there is no such finding in the Report.

**Objection III.C**

> **The Report and Recommendations failed to apply or even address the *Harris* presumption with respect to Ground Four. Even if this Court agrees with the Report and Recommendations and finds that the state appellate court enforced the contemporaneous objection rule, the rule is not an adequate and independent state procedural bar, per the *Harris* presumption, because: (1) the prejudicial impact analysis that would have applied had trial counsel objected is equivalent to the prejudice analysis pursuant to plain error review; and (2) the constitutional claims are interwoven with the state procedural rules involved in the plain error analysis.**

(ECF No. 19, PageID 1546.)

The *Harris* presumption is inapplicable to Ground Four for the same reason given above as to Ground One, to wit, the First District plainly stated it was performing plain error review. As noted above, the Sixth Circuit has repeatedly held that Ohio's contemporaneous objection rule is an adequate and independent state procedural rule and that plain error review is an

enforcement of that rule, not a waiver of it.

The Objections contain a page-long footnote about how the First District should have decided the Motion for New Trial (ECF No. 19, PageID 1546-47). The argument seems to assume, without citation of Ohio authority, that including an argument in a motion for new trial "cures" lack of a contemporaneous objection.


**Objection IV**

> **The Report and Recommendations incorrectly determined that the contemporaneous objection rule was enforced against Jordan with respect to Ground Five and failed to properly apply the *Harris* presumption by incorrectly finding that the state procedural rules involved in the plain error analysis do not inherently involve analysis of the constitutional claims. Despite that trial counsel failed to lodge an objection to the jury instruction, Ground Five is not procedurally defaulted because: (1) all levels of state court addressed the claim on the merits; and (2) the contemporaneous objection rule not an independent or adequate state procedural bar per *Harris* because the constitutional claims are interwoven with the state procedural rules involved in the plain error analysis. Therefore, Ground Five is properly before this Court and should be considered on the merits.**

In his Fifth Ground for Relief, Jordan claims the First District violated his constitutional rights by upholding the limiting instruction Judge Allen gave with respect to what the jury could properly do with Kareem Gilbert's recorded pre-trial statement, i.e., consider it only for impeachment purposes.

The Report found Ground Five was barred from merits consideration by Jordan's procedural default in not making a contemporaneous objection (ECF No. 16, PageID 1419-22). The Report hypothesized that Jordan was claiming any limiting instruction would have been insufficient. *Id.* at PageID 1419. The Objections confirm that reading (ECF No. 19, PageID

1552).

As with the Grounds for Relief analyzed above, Jordan asserts his lack of contemporaneous objection was overcome by including this claim in his Motion for New Trial (Objections, ECF No. 19, PageID 1552). Again no Ohio authority is cited for that proposition. Jordan turns this argument on its head by stating "[t]here is no case law to support the application of the contemporaneous objection rule when an error is included in a timely new trial motion." Not so. In this very case, the First District applied the contemporaneous objection rule despite Jordan's having raised the claim in a new trial motion. Did it violate established Ohio law in doing so? Where is the case authority?

Jordan repeats the by now familiar argument that the First District considered the merits when conducting plain error review. For the reasons set forth above (*supra* at 6), that argument is unavailing because plain error review requires a court to determine if there is any error as well as determining whether it is "plain."

**Objection V**

> **The Report and Recommendations incorrectly finds that Ground Six, Subclaim One (ineffective assistance for failure to object to the admission of Gilbert's statement) is procedurally defaulted by abandonment in the Supreme Court of Ohio.**
>
> **A. Jordan's Memo in Support of Jurisdiction directly states the ineffective assistance subclaim pertaining to trial counsel's failure to object to the admission and review-by-the-jury-during-deliberations of extrinsic evidence (a recording) of Gilbert's prior statement. Therefore this claim was not abandoned in the state supreme court.**

(ECF No. 19, PageID 1557.)

In his Sixth Ground for Relief, Jordan claims he received ineffective assistance of trial

17

counsel in five different ways, which the Report characterizes as sub-claims one through five (ECF No. 16, PageID 1422).  Sub-claim One asserts it was ineffective assistance of trial counsel to fail to object to the admission of Kareem Gilbert's recorded statement.  The Report accepted the Warden's argument that this sub-claim had been abandoned by not including it in the appeal to the Ohio Supreme Court, quoting verbatim Jordan's Proposition of Law VI (ECF No. 16, PageID 1422-23).

The Objections assert this is incorrect, but does not dispute that the quotation of Proposition of Law VI in the Report is accurate.  Instead, Jordan points (without a record reference) to the argument he made in support of Proposition of Law VI:

> ***In the event that trial counsel failed to properly object to the constitutional errors explained in Propositions of Law I-V,*** such failure constitutes ineffective assistance of counsel. Proper and timely action by trial counsel potentially could have prevented these errors from occurring. Instead, the ultimate prejudice to Jordan resulted. The jury improperly considered: (1) ***the substance of Gilbert's recorded statement (which alone proved the State's case against Jordan);*** (2) the consequences of an acquittal, specifically Jordan's protection against double jeopardy, and an alleged threat to public safety attested to by the prosecutor based on unsupported speculation.

(Objections, ECF No. 19, PageID 1558, quoting Memorandum in Support of Jurisdiction, Return of Writ, ECF No. 11-2, PageID 395; bold face and italic added by Jordan in Objections.)  An assertion of law in a hypothetical in a different proposition of law does not constitute preservation of the issue for decision by the Ohio Supreme Court.  Jordan claims the "specific substantive error underlying this ineffective assistance subclaim . . . is presented in Proposition of Law IV." (Objections, ECF No. 19, PageID 1558.)  That is true but unavailing:  a claim that there was error in admitting evidence is not the same as a claim it was ineffective assistance of trial counsel to fail to object to the admission; one claims error by the trial judge and the other by

counsel.

Under Ohio law, the issues presented to the Ohio Supreme Court are required to be structured as "propositions of law" which serve in place of assignments of error raised in the courts of appeals.  The purpose behind the requirement of "propositions of law" is "to present the court in concise form the legal issues involved in the cause." *Drake v. Bucher,* 5 Ohio St. 2d 37 (1966).  Failure to raise an error properly may result in the Supreme Court's refusal to consider it. *State v. Carter*, 27 Ohio St. 2d 135, 139 (1971).  Before the Ohio Supreme Court abrogated the syllabus rule in Ohio, propositions of law were required to be in a form that could serve as the syllabus of the case if the appellant prevailed.[4]  Obviously, a point of law embedded in an argument does not meet this requirement.

Jordan's counsel complains that she was limited to fifteen pages in her Memorandum in Support of Jurisdiction (Objections, ECF No. 19, PageID 1559).  Contrasting that with the 46-page Petition, the 87-page Traverse, and the 80-page Objections filed in this habeas corpus case, the Magistrate Judge could wish for a stricter page limit in filings in this Court.  When one is faced with a page limitation by a court, especially an appellate court, one must choose carefully what to include.  Subclaim One was not chosen for inclusion.  It cannot now be restrospectively reinserted.

**Objection VI**

> **The Report and Recommendations' review of Jordan's Cause**
> **and Prejudice Analysis is incomplete because it considers only**

---

[4] The syllabus of an opinion issued by the Ohio Supreme Court states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication" and all lower courts in the States are bound to adhere to the principles set forth therein. *State, ex rel. Heck, v. Kessler*, 72 Ohio St. 3d 98, 103 (1995), *citing State v. Klem*, 6 Ohio St. 3d 16, 18 (1983); *Grange Mut. Cas. Co. v. Smith*, 80 Ohio App. 3d 426 (1982). See also *State ex rel Leonard v. White,* 75 Ohio St. 3d 516 (1996).   The syllabus rule was adopted in 1858 and abrogated in 2002.

> **one instance of ineffective assistance of trial counsel despite that Jordan exhausted several instances of ineffective assistance of trial counsel. The Court's consideration of all instances of ineffective assistance of trial counsel will demonstrate that Jordan satisfies the cause and prejudice exception to excuse any procedural defaults, and that Jordan is entitled to relief on the basis of ineffective assistance of trial counsel.**

(Objections, ECF No. 19, PageID 1560.)

Jordan complains that the Report's analysis of ineffective assistance of trial counsel as cause for procedural default is incomplete.  The Report found that the ineffective assistance of trial counsel claim, considered as excusing cause for the procedural default of Ground One, was decided on the merits by the First District, but its decision was neither contrary to nor an objectively unreasonable application of *Strickland, supra* (Report, ECF No. 16, PageID 1404-05).

The Report considers claims of ineffective assistance of trial counsel as possible excusing cause for a procedural default on a claim-by-claim basis.  It is not clear how it could be otherwise.  If, for example, a judge instructed a jury that the reasonable doubt standard was just an historical relic no longer binding and the trial attorney did not object, how could a completely different instance of ineffective assistance – say, failure to call an ironclad alibi witness – excuse the first default?  In any event, Jordan offers no case authority for the proposition that ineffective assistance causing one procedural default can be used to excuse others (Objections, ECF No. 19, PageID 1561).

The Objections next argue the Report was in error in finding the First District's ineffective assistance holdings were not contrary to *Strickland, supra* (ECF No. 19, PageID 1562).  The Report "should be rejected in this regard [because] [t]rial counsel undisputedly committed the errors in question." *Id.*   But the first prong of the *Strickland* analysis is not

satisfied by pointing to something a trial attorney could have done but did not do.  Rather, with

respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.  In other words, the attorney's act or omission must be shown to

have been a deviation from professional standards of conduct.   Counsel's performance is

measured by "prevailing professional norms" at the time of the alleged errors.  *Strickland, supra,*

at 690;  *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, *; 193 L. Ed. 2d 1 (2015); *Rickman v.*

*Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).  Earlier this month, the Supreme Court reemphasized

the deference which must be given to state court determinations on ineffective assistance

questions:

> "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter,* 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. ___, ___ (2014), slip op. at 4.
>
> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ___, ___ (2013), slip op. at

21

9)(quoting *Strickland v, Washington*, 466 U.S. 668, 690 (1984); internal quotation marks omitted).  In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  at ___ (slip op. at 1).

*Woods v. Etherton*, 578 U.S. ___, slip op. at 3-4, 136 S. Ct. 1149,  2016 U.S. LEXIS 2277 (Apr. 4, 2016)(per curiam; unanimous), *reversing Etherton v. Rivard*, 800 F.3d 737 (6th Cir. 2015).

The First District held that any possible prejudice from the jury's hearing the recorded statement was overcome by Judge Allen's curative instruction that they must not consider it except as it bore on Gilbert's credibility.  Jordan objects:

> The ruling that Jordan was not prejudiced as a result of the improperly admitted evidence, due to the jury instruction, is not only contrary to and an unreasonable application of *Strickland* and Jordan's constitutional rights to the effective assistance of counsel, due process, confrontation, and a fair trial by an impartial jury, but also, it constitutes an unreasonable determination of the facts.

(Objections, ECF No. 19, PageID 1565.)  This sentence is another example of counsel's tendency to cite every claim as a part of every other claim.  Indeed, the prejudice argument here properly relates to *Strickland*.  But what does it have to do with "confrontation"?  And what facts does Jordan contend were unreasonably determined by the prejudice finding?  Any claim that the jury ignored the instruction must be based on pure speculation and indeed Jordan cites no facts in evidence to show that the instruction did not work.

Jordan then devotes nine pages to detailing how weak the State's case against him was and therefore why allowing the jury to hear his son's record statement was prejudicial (Objections, ECF No. 19, PageID 1565-1577).  The record discloses in sum that Jordan had a motive (Davis was to be a witness in another murder case involving his son) and opportunity (his DNA was found in a wad of spit at the scene of the Davis murder within minutes of the

shooting). Furthermore there was an eyewitness[5] and an admission. Much effort is given to discrediting that testimony, but it is independent of Gilbert's recorded statement and the jury would have heard the content of that statement anyway if the prosecutor had engaged in the line-by-line cross-examination from the prior statement which the First District found would have been completely proper.

**Objection VII**

> **The Report and Recommendations incorrectly concludes that *Martinez* and *Trevino* do not apply in this case to excuse any procedural defaults.**

(Objections, ECF No. 19, PageID 1577.)

In *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court created an equitable exception to the procedural default doctrine for claims of ineffective assistance of trial counsel where the defendant was required to raise such claims in a collateral attack, as is the case in Arizona, and they were not thus raised because the defendant received ineffective assistance of post-conviction counsel. In *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), the Court extended *Martinez* to the Texas system. The Report noted that the Sixth Circuit has not yet decided whether *Martinez* and *Trevino* apply in Ohio.[6] The Report concluded that, even assuming they apply in Ohio, they would have no application to this case because all of Jordan's ineffective assistance of trial counsel claims appear on the face of the record and were therefore required to be raised on direct appeal

---

[5] Jordan persists in claiming this witness is not credible because he said he was only about 75% sure. But as counsel well knows, the wrongful conviction literature is full of eyewitnesses who were both 100% certain and clearly wrong. See Convicting the Innocent: Where Criminal Prosecutions Go Wrong – Brandon L. Garrett.

[6] The Magistrate Judge has recommended that the Sixth Circuit conclude that *Martinez* and *Trevino* do apply to the Ohio system of adjudicating claims of ineffective assistance of trial counsel. *Landrum v. Anderson*, 2012 U.S. Dist. LEXIS 118501 (S.D. Ohio Aug. 22, 2012). On appeal in that case, the Sixth Circuit elided the question. *Landrum v. Anderson*, 813 F.3d 330, 336 (6th Cir. 2016).

(Report, ECF No. 16, PageID 1406).

The Objections essentially argue that *Martinez* and *Trevino* should be extended to petitioners like Jordan who preserved his ineffective assistance of trial counsel claims (Objections, ECF No. 19, PageID 1578).  That is a policy argument for the appellate courts, not this Court.  As to the likelihood the Supreme Court would reach that conclusion, the Magistrate Judge notes the result in *Trevino* garnered two fewer votes than that in *Martinez*.  Thus there is little probability that the current Supreme Court would extend *Martinez* more broadly.


**Objection VIII**

> **The Report and Recommendations is incorrect to interpret the *Schlup* miscarriage of justice exception as requiring new evidence in non-successive habeas petitions, and thus that Jordan, due to his lack of new evidence, does not satisfy this standard to excuse any procedural defaults.**

(Objections, ECF No. 19, PageID 1579.)

Even if other excuses for his procedural defaults were unavailing, Jordan argued he was entitled to the benefit of the "actual innocence"[7] gateway recognized in *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the

---

[7] Jordan refers to this as the "miscarriage of justice" gateway.  The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence.  In other words, they are the same standard, not alternative ways of avoiding a procedural default. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Calderon v. Thompson,* 523 U.S. 538 (1998).

threshold requirement unless he persuades the district court that, in light of the **new evidence**, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

\* \* \*

[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*Id.* at 1928 (emphasis added).

The Report found that Jordan did not qualify for the actual innocence gateway because he had presented no new evidence (Report, ECF No. 16, PageID 1406-07). In the Objections, Jordan argues "[i]t is erroneous and unreasonable to conclude that *Schlup* requires new evidence in non-successive habeas petitions, because such a standard would position actually innocent first-time petitioners in a worse procedural circumstance than actually innocent successive petitioners." (ECF No. 19, PageID 1579-80.) While that is an interesting policy argument, all the precedent says new evidence is required. See *McQuiggin, supra*; *House v. Bell*, 547 U.S. 518 (2006); and *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005).

**Objection IX**

> **The Report and Recommendations erroneously failed to consider the merits of Ground One, which warrants relief for the reasons explained in Jordan's Petition and Traverse. Additionally, the Report and Recommendations ruled contrary to and unreasonably applied applicable Supreme Court precedent when it denied Jordan relief on the merits of**

**Grounds Two and Three, which warrant relief for the reasons explained in Jordan's Petition and Traverse.**

(Objections, ECF No. 19, PageID 1580.)

The Objections complain that the Report did not consider the merits of Ground One, "improperly deeming it procedurally defaulted." (ECF No. 19, PageID 1580.)  For the reasons set forth above in dealing with the First Ground for Relief, the Magistrate Judge continues to be of the opinion that the claim is procedurally defaulted.  When a habeas court concludes a claim is procedurally defaulted, it is not obliged to provide an alternative merits analysis.

Jordan objects that the Report's conclusion on the merits of Ground Two "ruled contrary to and unreasonably applied applicable Supreme Court precedent." (ECF No. 19, PageID 1580.)  Without further analysis of how the Report was wrong in this regard, the Objections list "*Young*, *Parker*, *Turner*, *Donnelly*, *Thompson*, [and] *Berger*" without even giving the citations.  The Magistrate Judge stands on the analysis given on the merits in the Report (ECF No. 16, PageID 1410-14).

With respect to Ground Three, the Report overruled the Warden's procedural default defense, but upheld the First District's decision on the merits (Report, ECF No. 16, PageID 1414-15).  In the course of reaching that decision, the Magistrate Judge wrote that "the First District elided the question of whether the reference [to Gilbert's recorded statement] was misconduct by the prosecutor and went directly to the prejudice question."  (Report, ECF No. 16, PageID 1414.)  Jordan objects that "this is . . . blatantly incorrect."[8]  (Objections, ECF No. 19, PageID 1580.)

There are two prongs to the test for unconstitutional prosecutorial misconduct:  (1) was the conduct improper and (2) was it prejudicial.  *Darden v. Wainwright*, 477 U.S. 168, 181,

---

[8] Not just "incorrect," but "blatantly incorrect."

(1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In other words, "[i]n order to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir.2006), cert. denied, 549 U.S. 1255 (2007).  The entire opinion of the First District on this assignment of error follows:

### Prosecutorial Misconduct

[**\*P16**]  In his second, third, and fourth assignments of error, Jordan claims that he was deprived of a fair trial because of prosecutorial misconduct. We address these assignments together.

[**\*P17**]  The test for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Glenn*, 1st Dist. No. C-090205, 2011 Ohio 829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 14 Ohio B. 317, 470 N.E.2d 883 (1984) and *State v. Canyon*, 1st Dist. Nos. C-070729, C-070730, and C-070731, 2009 Ohio 1263, ¶ 17.

[**\*P18**]  Jordan first argues that the assistant prosecutor improperly invited the jury to consider Gilbert's prior statement as substantive evidence rather than mere impeachment.

[**\*P19**]  We agree that a number of the assistant prosecutor's statements tended to suggest that the jury could consider the prior statement for its truth. Nonetheless, we must presume that the jury followed the trial court's instruction that the prior statement was to be considered only for purposes of impeachment. *See State v. Loza*, 71 Ohio St.3d 61, 79, 1994 Ohio 409, 641 N.E.2d 1082 (1994).  Thus, we find no prejudice to have resulted from the asserted misconduct.

*State v. Jordan, supra*.  Having recited the proper standard for evaluating prosecutorial conduct and the conduct complained of, the First District conceded Jordan had an arguable point – "statements tended to suggest."  Nevertheless, it never made a finding that the statements were in fact improper.  Instead, it concluded there was "no prejudice from the **asserted** misconduct."  Since the test for prosecutorial misconduct is conjunctive (misconduct + prejudice), it was

perfectly proper for the First District to decide the assignment by finding Jordan had failed on one of the prongs of the test. The Magistrate Judge respectfully suggests that is a reasonable reading of what the First District did.

The Objections then jump from "tended to suggest" to the conclusion the jury actually decided "not on the basis of the evidence." (ECF No. 19, PageID 1581.) But the First District never reached that conclusion, but credited Judge Allen's curative instruction as having avoided that result.

The Objections then complain that "[t]he Report and Recommendations failed even to address the most basic concept at issue – that a conviction must be based on actual evidence presented at trial, and that a defendant is necessarily prejudiced when the jury bases its decision on other factors." (ECF No. 19, PageID 1581, *citing Thompson v. City of Louisville*, 362 U.S. 199 (1960)).[9] With respect, the Magistrate Judge would note that there is no Ground for Relief pleaded that claims the jury decided the case on the basis of facts not in evidence.[10] Jordan argues "it is not even in dispute that the jurors considered factors beyond the evidence adduced at trial." (Objections, ECF No. 19, PageID 1591.) Here again there is a leap of logic. While the First District noted that the prosecutor had asked the jury to convict "not on the basis of the evidence, but to prevent Jordan and Gilbert from playing what the prosecutor referred to as a "grade-school simplistic trick,'" (*State v. Jordan, supra*, ¶ 24) there is no proof that they did so and they were instructed that attorney's comments are not evidence. Of course the assignment of

---

[9] *Thompson v. City of Louisville* was decided on certiorari directly from the Supreme Court to the Police Court of Louisville, Kentucky. The Supreme Court unanimously decided there was insufficient evidence to convict Thompson of loitering and disorderly conduct; the evidence merely showed he was waiting in a public cafe for a bus and, when arrested for loitering on that basis, became argumentative with the arresting officer. *Thompson* was decided twelve years before *Papachristou v. Jacksonville*, 405 U.S. 156 (1972), made loitering constitutionally protected conduct and nineteen years before *Jackson v. Virginia*, 443 U.S. 307 (1979), adopted the sufficient evidence standard as mandated by the Fourteenth Amendment, but it is clearly a case on the way to both of those decisions.

[10] The Grounds for Relief as pleaded are set out verbatim in the Report, ECF No. 16, PageID 1390-92.

error claiming prosecutorial misconduct in this regard was procedurally defaulted for lack of a contemporaneous objection. *Id.*

**Objection IX.A**

> **Additional errors in the Report and Recommendations with respect to the merits discussion of Grounds Two and Three: The Report and Recommendations' conclusions regarding the impact of cross-examination of Gilbert in relation to the prejudice Jordan suffered as a result of Gilbert's erroneously admitted statement is misguided and irrelevant to this Court's analysis of the prejudice Jordan actually suffered as a result of the improperly admitted evidence.**

The Magistrate Judge presumes this Objection IX.A, which comprises nearly six pages of text in the Objections (ECF No. 19, PageID 1590), is directed at the comparison of this case with *State v. Kirk*, 2010-Ohio-2006, 2010 Ohio App. LEXIS 1668 (6th Dist. May 7, 2010), which appears at ECF No. 16, PageID 1414. No further analysis is needed on this point.

**Objection X:**

> **The Report and Recommendations erroneously failed to consider the merits of Ground Four, which warrants relief for the reasons explained in Jordan's Petition and Traverse.**

(Objections, ECF No. 19, PageID 1595.)

For the reasons given in the Report (ECF No. 16, PageID 1415-19), the Magistrate Judge remains of the opinion that this Court should not reach the merits of Ground Four because it was procedurally defaulted. There is no requirement in habeas corpus law that the Court consider the merits of a claim in the alternative when the claim is found barred by procedural default.

**Objection XI:**

> **The Report and Recommendations erroneously failed to consider the merits of Ground Five, which warrants relief for the reasons explained in Jordan's Petition and Traverse.**

(Objections, ECF No. 19, PageID 1597.)

For the reasons given in the Report (ECF No. 16, PageID 1419-22), the Magistrate Judge remains of the opinion that this Court should not reach the merits of Ground Five because it was procedurally defaulted.  There is no requirement in habeas corpus law that the Court consider the merits of a claim in the alternative when the claim is found barred by procedural default.

**Objection XII:**

> **The Report and Recommendations erroneously failed to consider the merits of Ground Six, Subclaim One, which warrants relief for the reasons explained in Jordan's Petition and Traverse. Additionally, the Report and Recommendations ruled contrary to and unreasonably applied applicable Supreme Court precedent when it denied Jordan relief on the merits of the remaining three subclaims, which warrant relief for the reasons explained in Jordan's Petition and Traverse.**

(Objections, ECF No. 19, PageID 1601.)

For the reasons given above, the Magistrate Judge continues to be of the opinion that Ground Six, Subclaim One, was procedurally defaulted when it was omitted from the Memorandum in Support of Jurisdiction in the Ohio Supreme Court and that the decision of the First District on Subclaims Two, Four, and Five is neither contrary to nor an objectively unreasonable application of *Strickland v. Washington, supra*.

**Objection XIII**

> **The Report and Recommendations is incorrect to suggest that reasonable jurists would agree with its conclusions such that an appeal would be objectively frivolous.**

(Objections, ECF No. 19, PageID 1602.)

This Objection offers no argument as to why or how a reasonable jurist would disagree with the conclusions of the Report, but merely makes a summary argument, incorporating everything previously pled.  As such it does not require separate analysis.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice.  Because Petitioner has not shown how or why reasonable jurists would disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 22, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).